# EXHIBIT A

1  | Grant Woods (AZ Bar No. 006106)
**GRANT WOODS, PC**
2  | 1726 North Seventh Street
Phoenix, Arizona 85006
3  | Telephone: (602) 258-2599
Facsimile: (602) 258-5070
4  |
5  | Robert B. Carey (AZ Bar No. 011186)
Stephanie Levin Bozzo (AZ Bar No. 018470)
6  | **HAGENS BERMAN SOBOL SHAPIRO PLLC**
2425 E. Camelback Road, Suite 650
7  | Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
8  |
9  | Daniel C. Girard
Aaron M. Sheanin
10 | Sanjay M. Ranchod
Stefanie G. Bernay
**GIRARD GIBBS & De BARTOLOMEO LLP**
11 | 601 California Street, Suite 1400
San Francisco, California 94108
12 | Telephone: (415) 981-4800
Facsimile: (415) 981-4846
13 |
14 | Attorneys for Individual and Representative Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

SHARY EVERETT, on behalf of herself and all others similarly situated,

            Plaintiff

      v.

MCI, INC., a Delaware Corporation,

            Defendant.

Case No. **CV '05   2122 PHX ROS**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 1 8 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____
              J   DEPUTY

1    Plaintiff Shary Everett, on behalf of herself and all others similarly situated throughout

2    the United States, alleges by and through her attorneys, upon information and belief, as follows:

3    **JURISDICTION AND VENUE**

4    1.    This action asserts claims for violations of the Communications Act of

5    1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment. This court has

6    jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(d), and pursuant to

7    47 U.S.C. § 207. This court has supplemental jurisdiction over the state law claims pursuant to

8    28 U.S.C. § 1367.

9    2.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because

10   a substantial number of the acts giving rise to the violations of law complained of herein

11   occurred and had their primary effect in this judicial district.

12   **NATURE OF THE CASE**

13   3.    This is a class action on behalf of all persons in the United States who were billed

14   by MCI, Inc. ("MCI") for monthly service charges and related taxes, regulatory fees, and other

15   charges despite the fact they did not have an active account with MCI or an ongoing business

16   relationship with MCI at any relevant time. Many of the persons who were billed by MCI

17   without authorization are former MCI subscribers. Other persons who were billed by MCI

18   without authorization never have been MCI subscribers. Plaintiff had no contractual

19   relationship with MCI at the time she was billed by MCI for monthly service charges.

20   4.    Consumers who have detected unauthorized charges from MCI in their telephone

21   bills and attempted to dispute the charges report that MCI representatives often refuse to

22   reverse, refund, or credit back the charges. Consumers who do not pay unauthorized charges

23   are turned over to collections agencies.

24   5.    On behalf of herself and all similarly situated persons throughout the United

25   States, Plaintiff brings claims for violations of the Communications Act of 1934, as amended,

26   47 U.S.C. §§ 151, et seq. ("Communications Act"), and for unjust enrichment. This action seeks

27   to recover, among other things, damages sustained by Plaintiff and the Class as a result of

28   MCI's practice of assessing monthly service charges and related fees without authorization to

CLASS ACTION COMPLAINT                                                        2

1   non-MCI customers; equitable relief; and declaratory relief.

2                               **THE PARTIES**

3       6.      Plaintiff Shary Everett is a resident of Goodyear, Arizona.

4       7.      Defendant MCI, Inc. is a Delaware corporation that provides local and long

5   distance telephone service to customers in the State of Arizona and throughout the United

6   States, and maintains offices and facilities within the State of Arizona.

7                          **FACTUAL ALLEGATIONS**

8       8.      Consumers throughout the United States contract with local exchange carriers

9   (LECs) to provide them with local telephone services.  The LECs provide monthly bills for

10  local telephone services to such consumers.  MCI has agreements with LECs throughout the

11  United States pursuant to which LECs permit MCI to include bills for long distance service

12  along with the monthly telephone bills the LECs issue to consumers for local telephone service.

13  For other consumers, MCI assesses charges for long distance service on separate bills that it

14  sends directly to consumers.  These bills, whether issued by a LEC or by MCI, represent that

15  certain telephone charges have been incurred by the consumer, and that payment is due from

16  the consumer for such charges.

17  **Defendant MCI's Unlawful Practice of Billing Non-Customers For Monthly Charges**

18      9.      MCI bills consumers without their authorization for monthly service charges and

19  related taxes, regulatory fees, and other charges even though these consumers do not have an

20  active account with MCI or an ongoing business relationship with MCI.  The consumers who

21  receive the bills in question are not MCI customers, have not used MCI services at any relevant

22  time, and have instead either contracted for long distance service with carriers other than MCI

23  or canceled their long distance service.

24      10.     MCI misuses data it purchases from LECs to generate bills for consumers whom it

25  has no reasonable basis to believe are current MCI customers.  The data MCI receives from

26  LECs include codes and/or other information that reveal the subscriber status of telephone lines.

27      11.     A telephone line may be designated to the MCI network even though MCI is not

28  maintaining an active account with the owner of that line.  Former MCI subscribers who

---

CLASS ACTION COMPLAINT                                                            3

1    canceled their MCI service but did not also advise their LEC of the change may remain

2    designated to the MCI network. Such a consumer who remains designated to the MCI network

3    would appear to have an inactive MCI account because he or she would not have made any

4    long distance calls through MCI. A person who never has been an MCI subscriber but who has

5    been designated to the MCI network similarly would appear to have an inactive MCI account.

6         12.    MCI identifies inactive accounts by comparing the data it receives from LECs to

7    its own lists of active accounts. For telephone lines that have an inactive MCI account or that

8    do not have any MCI account, MCI either uses the inactive account to bill the owner of that line

9    or creates a new account for that line through which it can bill the owner of that line. MCI does

10   so without the knowledge, consent, or authorization of the owners of these telephone lines.

11        13.    MCI does not verify whether a consumer had previously canceled or terminated

12   their MCI service or whether a consumer had previously requested cancellation or termination

13   of their MCI service. MCI does not verify whether a consumer intends to switch their long

14   distance service to MCI or subscribe to MCI as their preferred long distance carrier.

15        14.    MCI uses an inactive account or creates a new account for a telephone line to bill

16   the owner of that line, as described above, by enrolling the telephone line and/or the owner of

17   that line in the "Basic Dial-1" long distance plan or another MCI long-distance calling plan that

18   carries a monthly service charge. MCI then indicates to the relevant LEC that the owner of that

19   line intends to establish a new account with MCI that carries a monthly service charge when, in

20   fact, the consumer does not. Plaintiff and Class members did not affirmatively select an MCI

21   long distance plan that carries a monthly service charge at any relevant time, and they were

22   enrolled in such a plan without their knowledge, consent, or authorization.

23        15.    Since 2002, MCI has charged a minimum usage fee ("MUF") to persons enrolled

24   in its "Basic Dial-1" long distance plan. Persons who did not generate bills for long distance

25   telephone calls in a given month equal to or exceeding $3.00 or $5.00 were charged the

26   difference between the amount of charges for long distance telephone calls they made and the

27   amount of the minimum usage fee. MCI also has charged a $3.95 monthly recurring fee, which

28

CLASS ACTION COMPLAINT                                                                    4

1  is charged regardless of the amount of bills for long distance telephone calls generated in a

2  given month, to persons enrolled in its "Basic Dial-1" long distance plan.

3        16.    According to internal MCI documents, MCI established the MUF program for its

4  "Basic Dial-1" long distance plan "to generate an additional $24.6M in revenue through the

5  application of the new $3 minimum usage fee." This revenue would not otherwise be generated

6  because the MUF was to be applied to persons with no usage on the MCI network. MCI

7  established the MUF program because not doing so would "unnecessarily avoid[] a significant

8  source of additional revenue from this customer segment." MCI has acknowledged that it

9  could have avoided assessing monthly service charges and related fees without authorization,

10  but did so because it could generate tens of millions of dollars in additional revenue.

11        17.    MCI did not obtain valid authorization at any relevant time from members of the

12  Class to enroll them in an MCI long distance plan that carries a monthly service charge prior to

13  assessing them monthly service charges and related fees. Plaintiff and other Class members

14  have not consented to pay a monthly service charge or related fees in connection with MCI long

15  distance service at any relevant time.

16        18.    During the Class period, MCI placed unauthorized monthly service charges and

17  related taxes, regulatory fees, and other charges on bills distributed by LECs to consumers

18  throughout the United States. For other consumers, MCI placed unauthorized monthly service

19  charges and related taxes, regulatory fees, and other charges on separate bills that it issued

20  directly to consumers throughout the United States.

21        19.    MCI has assessed a monthly service charge, including an MUF and monthly

22  recurring fee, without authorization to a staggering number of consumers nationwide. In

23  California alone, MCI assessed an MUF to approximately 500,000 consumers between June

24  2002 and February 2004.

25        20.    MCI's unlawful practice described herein affects former MCI long distance

26  subscribers who cancel MCI long distance service and switch their long distance service to

27  another carrier, former MCI long distance subscribers who cancel MCI long distance service

28

---

CLASS ACTION COMPLAINT

1  and do not select a new long distance carrier, and persons who have never been MCI

2  subscribers. This practice also affects persons who have a secondary telephone line that has

3  never been subscribed to MCI.

4      21.    MCI has obstructed the efforts of consumers to obtain credits, adjustments

5  or refunds of the improper charges. Consumers complain that in response to requests for

6  refunds and corrections to MCI billing records MCI representatives promise refunds and

7  corrections which are subsequently not made, that MCI issues "credits" to consumers who are

8  not MCI customers and thus cannot use the credits, and that even if MCI issues a credit or

9  refund for unauthorized charges, the unauthorized charges reappear in subsequent billing

10  statements or MCI imposes new, unauthorized charges in later billing periods.

11      22.    MCI's policy and practice is to reverse, refund, or credit back unauthorized

12  charges only to persons who threaten to bring legal action, lodge complaints with regulatory

13  authorities, or take other action in response to being billed without authorization by MCI.

14  Consumers who do not pay unauthorized charges are turned over to collections agencies.

15                      **Plaintiff Shary Everett's Experience**

16      23.    At all relevant times, Plaintiff Shary Everett had residential telephone service

17  through Qwest and had either long distance service through AT&T or no long-distance service.

18      24.    Mrs. Everett has not contracted with MCI or obtained services from MCI at any

19  time since approximately 1999, when she terminated MCI long distance service on a telephone

20  line at a previous address.

21      25.    Beginning in or around February 2003 and continuing thereafter, MCI assessed

22  Mrs. Everett a monthly service charge and related charges in connection with an MCI long

23  distance plan. The charges were not incurred or authorized by Mrs. Everett.

24      26.    On several occasions, Mrs. Everett attempted to have the unauthorized MCI

25  charges reversed or removed and/or to stop MCI from billing her for unauthorized charges.

26  When she called MCI, its representatives refused to reverse or remove the unauthorized MCI

27  charges assessed to her. MCI continued to assess Mrs. Everett charges without authorization.

28

CLASS ACTION COMPLAINT

27.     In or around July 2003, Mrs. Everett received a collections notice for failure to pay unauthorized charges assessed by MCI.

28.     Mrs. Everett subsequently paid unauthorized charges assessed by MCI. To prevent MCI from continuing to bill her for unauthorized charges, Mrs. Everett terminated her AT&T long distance service and restricted all long distance service on her telephone line.

29.     MCI has not refunded the unauthorized charges paid by Mrs. Everett.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on behalf of herself and all other similarly situated persons throughout the United States as members of a proposed plaintiff Class initially defined as:

> **All persons and entities who, on or after July 18, 2001, (1) were assessed or paid non-usage monthly charges in connection with an MCI calling plan and (2) were not MCI customers at the time the charges were assessed.**

Excluded from the Class are persons who filed complaints with the Federal Communications Commission, in compliance with 47 C.F.R. 1.716, 1.719, 1.720, or 1.721, regarding Defendant's conduct alleged herein; Defendant; any entity in which Defendant has or had a controlling interest; any officers or directors of Defendant; the legal representatives, heirs, successors, and assigns of Defendant; and any judge assigned to this action and his or her immediate family.

31.     This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil Procedure and case law thereunder.

### Numerosity of the Class
### (Fed. R. Civ. P. 23(a)(1))

32.     Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff estimates that the Class comprises at least tens of thousands of members. The precise number of Class members and their addresses are unknown to Plaintiff at this time, but can be ascertained from MCI's records. Class members may be notified of the

CLASS ACTION COMPLAINT

1 | pendency of this action by mail, supplemented (if deemed necessary or appropriate by the

2 | Court) by published notice.

3 | **Existence and Predominance of Common Questions of Fact and Law**

4 | **(Fed. R. Civ. P. 23(a)(2); 23(b)(3))**

5 |     33.    Common questions of law and fact exist as to all members of the Class.  These

6 | questions predominate over the questions affecting only individual Class members.  These

7 | common legal and factual questions include:

8 |     (a)    Whether MCI has assessed non-usage monthly charges on telephone lines

9 | without the end-user's authorization;

10 |     (b)    Whether MCI has enrolled end-users in calling plans that carry a monthly

11 | service charge without their authorization;

12 |     (c)    Whether MCI's assessment of charges on telephone lines without

13 | authorization violates the Communications Act of 1934, as amended,

14 | 47 U.S.C. §§ 151, et seq.;

15 |     (d)    Whether MCI was unjustly enriched by the charges it collected on

16 | telephone lines without authorization; and

17 |     (e)    The nature of the relief, including damages, equitable and declaratory

18 | relief, to which Plaintiff and Class members are entitled.

19 | **Typicality of Claims**

20 | **(Fed. R. Civ. P. 23(a)(3))**

21 |     34.    Plaintiff's claims are typical of the claims of the Class because Plaintiff,

22 | like all other Class members, was assessed monthly service charges by MCI on one or

23 | more telephone lines without her authorization.

24 | **Adequacy of Representation**

25 | **(Fed. R. Civ. P. 23(a)(4))**

26 |     35.    Plaintiff is an adequate representative of the Class, because her interests do not

27 | conflict with the interests of the Class members she seeks to represent, and she has retained

28 | counsel competent and experienced in complex class action and telecommunications litigation.

CLASS ACTION COMPLAINT

1  The interests of the Class members will be fairly and adequately protected by Plaintiff and her

2  counsel.

3                          **Superiority of the Class Action**
                              **(Fed. R. Civ. P. 23(b)(3))**
4

5       36.     A class action is superior to other available means for the fair and efficient adjudication

6  of this dispute.  The damages suffered by each individual Class member may be small, especially given

7  the burden and expense of individual prosecution of the complex and extensive litigation necessitated

8  by MCI's conduct.  It would be virtually impossible for Class members individually to obtain effective

9  redress for the wrongs done to them.  Furthermore, even if the Class members themselves could afford

10 such individual litigation, the court system could not.  Individualized litigation presents a potential for

11 inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all

12 parties and to the court system presented with the complex legal and factual issues of this case.  By

13 contrast, the class action device presents far fewer management difficulties, and provides the benefits of

14 single adjudication, economy of scale, and comprehensive supervision by a single court.

15              **The Risk of Inconsistent or Dispositive Adjudications and**
                **the Appropriateness of Final Injunctive or Declaratory Relief**
16                           **(Fed. R. Civ. P. 23(b)(1) and (2))**

17      37.     In the alternative, this action may properly be maintained as a class action,

18 because:

19              (a)     the prosecution of separate actions by individual Class members would

20                      create a risk of inconsistent or varying adjudication with respect to

21                      individual Class members, which would establish incompatible standards

22                      of conduct for MCI; or

23              (b)     the prosecution of separate actions by individual Class members would

24                      create a risk of adjudications with respect to individual members of the

25                      Class which would, as a practical matter, be dispositive of the interests of

26                      other Class members not parties to the adjudications, or substantially

27                      impair or impede their ability to protect their interests; or

28

---

CLASS ACTION COMPLAINT

(c)    MCI has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class members as a whole.

## FIRST CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 201)

38.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

39.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members for violations of 47 U.S.C. § 201.

40.    47 U.S.C. § 201(b) states, "All charges, practices, classifications, and regulations for and in connection with such communication service [i.e., service for interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

41.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons who have no contractual relationship with MCI for services they have not requested or received, and that MCI has not provided.

42.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons monthly service charges in connection with an MCI calling plan who do not have an active MCI account and who have not agreed to enroll in said calling plan.

43.    Plaintiff and Class members have been injured as a result of MCI's above-described violations of 47 U.S.C. § 201 in an amount to be determined according to proof.

44.    Under 47 U.S.C. §§ 206 and 207, Plaintiff and Class members are entitled to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**
**(Violations of the Communications Act of 1934, 47 U.S.C. § 202)**

45.     Plaintiff hereby incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

46.     Plaintiff asserts this claim against MCI on behalf of herself and all Class members for violations of 47 U.S.C. § 202.

47.     47 U.S.C. § 202(a) states in relevant part:

> Charges, services, etc. It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

48.     MCI has assessed persons who were not MCI customers at any relevant time, including Plaintiff, for charges for telephone service they did not request, authorize, subscribe to, or use. MCI has failed to reverse, refund, or credit back such unauthorized charges to Plaintiff. MCI has reversed, refunded, or credited back charges for telephone service to other persons who were assessed such charges without authorization.

49.     MCI has violated 47 U.S.C. § 202(a) by unreasonably discriminating in charges and practices for or in connection with communication service, and by subjecting a class of consumers (namely, those persons who were assessed unauthorized charges for telephone service and for whom MCI failed to reverse, refund, or credit back such charges) to unreasonable prejudice.

50.     As a direct and proximate result of MCI's above-described practice of discrimination in violation of 47 U.S.C. § 202(a), Plaintiff and Class members have been injured in an amount to be determined at trial.

51.     Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled both to recover the full amount of damages sustained as a result of MCI's above-described

1   violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

2   wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

3   entitled to a judgment declaring that MCI violated the Communications Act of 1934.

4                              **THIRD CAUSE OF ACTION**

5           **(Violations of the Communications Act of 1934, 47 U.S.C. § 203)**

6       52.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

7   paragraphs as if fully set forth herein, and further alleges as follows:

8       53.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

9   for violations of 47 U.S.C. § 203.

10      54.    47 U.S.C. §203 states in relevant part:

11

12          (a)    Every common carrier, except connecting carriers, shall, within such
                   reasonable time as the Commission shall designate, file with the
13                 Commission and print and keep open for public inspection schedules
                   showing all charges for itself and its connecting carriers for interstate and
14                 foreign wire or radio communication between the different points on its
                   own system . . . .
15
            . . . .
16
            (c)    No carrier, unless otherwise provided by or under authority of this Act,
17                 shall engage or participate in such communication unless schedules have
                   been filed and published in accordance with the provisions of this Act and
18                 with the regulations made thereunder; and no carrier shall (1) charge,
                   demand, collect, or receive a greater or less or different compensation, for
19                 such communication, or for any service in connection therewith, between
                   the points named in any such schedule than the charges specified in the
20                 schedule then in effect, or (2) refund or remit by any means or device any
                   portion of the charges so specified, or (3) extend to any person any
21                 privileges or facilities, in such communication, or employ or enforce any
                   classifications, regulations, or practices affecting such charges, except as
22                 specified in such schedule.
23

24

25      55.    MCI billed Plaintiff and Class members for charges for telephone service they did

26   not request, authorize, subscribe to, or use.  Members of the Class had no contract with MCI at

27   any relevant time.  MCI thus has violated 47 U.S.C. § 203(c) by charging, demanding, or

28

CLASS ACTION COMPLAINT

1  collecting compensation under rates and conditions that are not set forth in tariffs or in

2  contracts with the members of the Class and/or charging, demanding, or collecting

3  compensation from persons with whom MCI has no contract of any kind.

4       56.    By charging Plaintiff and Class members with whom it has no contract, for

5  services that were neither requested from nor provided by MCI, MCI has violated 47 U.S.C.

6  § 203(c)(1) in that it charged, demanded, collected, or received compensation at rates greater or

7  different than the rates specified in its tariffs.

8       57.    As a direct and proximate result of MCI's above-described violations of 47 U.S.C.

9  §§ 203(c) and 203(c)(1), Plaintiff and Class members have been injured in an amount to be

10  determined according to proof.

11       58.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled

12  both to recover the full amount of damages sustained as a result of MCI's above-described

13  violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

14  wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

15  entitled to a judgment declaring that MCI violated the Communications Act of 1934.

16  **FOURTH CAUSE OF ACTION**

17  **(Unjust Enrichment)**

18       59.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

19  paragraphs as if fully set forth herein, and further alleges as follows:

20       60.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

21  for unjust enrichment.

22       61.    MCI has assessed Plaintiff and Class members for charges for telephone services

23  they did not request, authorize, subscribe to, or use, and it has collected from Plaintiff and Class

24  members and retained money for such charges.  Accordingly, MCI has received, and continues

25  to receive, money at the expense of Plaintiff and Class members.

26       62.    MCI has received benefits from Plaintiff and Class members that it has unjustly

27  and inequitably retained at their expense.

28

CLASS ACTION COMPLAINT

63.    As a direct and proximate result of MCI's violations of law, Plaintiff and Class members were deprived of the use of their monies that were unlawfully billed, collected, and retained by MCI, and are therefore entitled to restoration of their monies.

## REQUEST FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

A.    An order that this action is properly brought and maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff and her counsel of record to represent the proposed Class;

B.    An order declaring unlawful the acts and conduct of MCI complained of herein;

C.    An order permanently enjoining MCI from engaging in the unlawful acts and conduct complained of herein and any attempts by MCI to collect the erroneous or unlawful charges it has assessed, including the reporting to credit agencies of non-payment of such charges;

D.    An order that MCI withdraw or reverse any adverse reports made to credit agencies in connection with erroneous charges;

E.    An order compelling restitution, disgorgement, and/or other equitable relief as the Court deems proper;

F.    A judgment declaring that MCI violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.;

G.    An award of compensatory damages to Plaintiff and the Class, together with an award of consequential and incidental damages and costs suffered by Plaintiff and Class members because of MCI's wrongful conduct;

H.    An award of pre-judgment and post-judgment interest to Plaintiff and the Class;

I.    An award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class in this action, including expert-witness fees; and

J.    Such other relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a trial by jury on all claims so triable.

3

4    DATED: July 18, 2005                    **HAGENS BERMAN SOBOL SHAPIRO PLLC**

5

6                                            By: _____

7

8                                            Robert B. Carey
                                             Stephanie Levin Bozzo
9                                            2425 E. Camelback Road, Suite 650
                                             Phoenix, Arizona 85016
10                                           Telephone: (602) 840-5900
                                             Facsimile: (602) 840-3012
11

12                                           Grant Woods
                                             **GRANT WOODS, PC**
13                                           1726 North Seventh Street
                                             Phoenix, Arizona 85006
14                                           Telephone: (602) 258-2599
                                             Facsimile: (602) 258-5070
15

16                                           Daniel C. Girard
                                             Aaron M. Sheanin
17                                           Sanjay M. Ranchod
                                             Stefanie G. Bernay
18                                           **GIRARD GIBBS & De BARTOLOMEO LLP**
19                                           601 California Street, Suite 1400
                                             San Francisco, California 94108
20                                           Telephone: (415) 981-4800
                                             Facsimile: (415) 981-4846
21

22                                           Attorneys for Individual and Representative Plaintiff

23

24

25

26

27

28

CLASS ACTION COMPLAINT

15

# EXHIBIT B

**Victoria Kelly**

From:          Suzanne Wicker [suzanne.wicker@wcom.com]
Sent:          Wednesday, April 03, 2002 11:23 AM
To:            Karen Eads (E-mail); Victoria Kelly (E-mail)
Subject:       FW: VP Approval of Benefits:  Free Minute Counting and Minimum Us    ageFee



02 AFE Free Minute
Counting.xl...          Karen/Vicki -- Please find below Joyce's approval for the Free Minute
Counting and Minimum Usage Fee projects.

Enclosed is the AFE for Free Minute Counting, which I do believe is the
final piece needed for both of these projects.  Please let me know if
otherwise.

Thanks,

Suzanne

-----Original Message-----
From: Andy Stickel [mailto:Andy.Stickel@wcom.com]
Sent: Wednesday, April 03, 2002 11:05 AM
To: Suzanne (E-mail)
Subject: FW: VP Approval of Benefits: Free Minute Counting and Minimum
Us age Fee


-----Original Message-----
From: Joyce Dorris
Sent: Wednesday, April 03, 2002 10:53 AM
To: Andy Stickel
Subject: RE: VP Approval of Benefits: Free Minute Counting and Minimum
Usage Fee


approved.

-----Original Message-----
From: Andy Stickel
Sent: Wednesday, April 03, 2002 10:51 AM
To: Joyce Dorris
Subject: FW: VP Approval of Benefits: Free Minute Counting and Minimum
Usage Fee


Can you please approve these.  Thanks

-----Original Message-----
From: Suzanne Wicker [mailto:suzanne.wicker@wcom.com]
Sent: Monday, April 01, 2002 3:02 PM
To: Joyce Dorris (E-mail)
  c: Andy Stickel (E-mail); Suzanne Wicker (E-mail)
Subject: VP Approval of Benefits: Free Minute Counting and Minimum Usage
Fee

11/03CAL:000098

1

Joyce,

Given the condition of Andy's typing abilities this week, he asked me to
nd this request to you directly.

We are ready to proceed with two Billing projects: Free Minute Counting and
Minimum Usage Fee. In order to initiate the capital funding process, we are
in need of your approval of the financial benefits for each project. Below
are brief summaries for your reference:

## FREE MINUTE COUNTING SUMMARY

The Free Minute Counting project will provide the capability in the billing
system to count minutes across multiple invoices. This functionality will
allow customers who are subscribed to products with a free minute or
block-of-time component to clearly see their used minutes displayed, their
unused minutes calculated, and their balance carried forward to the next
month's invoice. The project will specifically address the ongoing issue
with the existing Domestic 10 free minute Card offer, but will also lay the
foundation to support more attractive product configurability across
Consumer's products and services.

The details of the business case for Free Minute Counting include:

- Capital cost       =      $187,000

- IRR                =      134%

  Payback            =      Year 1

- Primary business benefit is eliminate $1.27M in Card promo expenses,
over five years

## MINIMUM USAGE FEE SUMMARY

The Minimum Usage Fee project will create a $3 minimum charge that will be
applied to Consumer customers who are not subscribed to an LD plan, in order
to secure additional revenue from zero or low-usage spenders. Additionally,
this initiative will extend Billing's capabilities to more flexibly support
the rollout of new minimum fees to both Plan and Non-Plan customers.

The details of the business case for Minimum Usage Fee include:

-      Capital cost   =      $400,000

-      IRR            =      3,662%

-      Payback        =      Year 1

-      Primary business benefit is to generate $24.6M in revenue from
imposing a
new $3 minimum on zero-usage and zero-    $1.30 usage Non-Plan Consumer
customers.

11/03CAL:000099

Please let me know if you need further details on either business case.

2

Thanks,

Suzanne

11/03CAL:000100

3

EXHIBIT C

# Business Case Write-up

Submitting Organization (select one):    Consumer

AFE/Project Name:              Minimum Usage Fee
Project Owner and VNET:      Mike Acuna, V235-6942
BCN:                           02-Y05-R-J00
Amount Previously Requested:
Amount Currently Requesting:     $400,000
MEMO AFE (if any):

1. Please provide complete description of project (spell out all acronyms):

The Minimum Usage Fee project will create a $3 minimum charge that will be applied to Consumer customers who are not subscribed to a Long Distance Plan. Current billing functionality does not allow for minimum usage charges to be applied to these customers who receive standard Dial-1 rates, and do not typically incur high Long Distance usage. Without the ability to apply a minimum fee to these accounts, MCI has no means of extracting additional revenue from this large customer segment.

In addition, this initiative will extend the billing system functionality to more flexibly support the rollout of new minimum usage fees to both Plan and Non-Plan customers. The project intends to move the minimum fee functionality out of rigid hard-coded rules and into the robust Promo platform, which will allow Billing to properly layer selected usage and fees when calculating the charges that apply, or do not apply, to the minimum usage fee. Development is also needed to support the proper application of taxes, financial reporting, and audit controls for the minimum usage fees.

These new capabilities will allow MCI to quickly respond to fee increases or decreases, to include or exclude certain usage categories in minimum fee calculations, and to control the application of fees across, or within, states and customer segments.

2. Would you categorize this project as Infrastructure, New Product / Enhancement, or Capacity related?

(   )    Infrastructure
        ⇒  Those investments needed to maintain the property, plant and equipment. This includes replacement of equipment when its useful life is over and replacement due to technological obsolescence.

( X )    New Products/Product Enhancements
        ⇒  New products and product enhancements which generate revenue, new businesses or new lines of business.
        ⇒  Development needed to remain competitive, to retain business, customers, or to meet regulatory requirements.
        ⇒  All projects in this category do not necessarily generate revenue, they can produce a needed benefit, improvement or cost savings.

(   )    Capacity
        ⇒  Those investments needed to meet the growth requirements of existing products, services, or businesses.
        ⇒  The business unit marketing a product or service will estimate the minutes/data adjusted minutes base, and growth or decline in minutes.

11/03CAL:000081

3. What is the driving business need for this project?

This project is needed to generate an additional $24.6M in revenue through the application of the new $3 minimum usage fee from zero usage non-Plan Consumer customers, and $0-$1.30 non-Plan customers.

4. Who are the intra-company and external customers?

Intra-company customers include Marketing, Finance, and Product Development

External customers include all Plan and non-Plan Consumer customers

5. What will be the impact if this project is not funded? (detailed explanation , i.e., what system(s) will not function, what revenue will be lost, how will this affect the company)

If this project is not funded, MCI will lose the opportunity to receive $24.6M in revenue from Consumer customers who are not subscribed to a Long Distance Plan.

6. Show total capital spending by year to include detail for hardware and software labor.

($'000)

| Hardware | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Servers | | | | | | - |
| LAN Equipment | | | | | | - |
| PC's | | | | | | - |
| CPE | | | | | | - |
| Purchased Software & Licenses | | | | | | - |
| Servers | | | | | | - |
| Indirect Capital | | | | | | - |
| Transmission | | | | | | - |
| Facilities | | | | | | - |
| Support Systems | | | | | | - |
| Other | | | | | | - |
| Total Hardware | $- | $- | $- | $- | $- | $- |

| Software Labor | Present | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Internal Labor | 400 | | | | | 400 |
| Contractor Labor | | | | | | - |
| Other | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| | | | | | | - |
| Total Software Labor | $400 | $- | $- | $- | $- | $400 |

| Total Capital | Present | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Hardware | - | - | - | - | - | 400 |
| Capital Labor | 400 | - | - | - | - | 400 |
| Total Capital Investment | $400 | $- | $- | $- | $- | $400 |

7. Provide a timeline of spending by quarter for this project, including all phases.

2Q 2002 =    $200,000

3Q 2002 =    $200,000

8. If this project will generate new revenue or cost savings identify how much, with timing, and explain your calculations.

Revenue projections were calculated using the following assumptions:
- There are 3.3M No Plan Customers
- 42% are zero users and would generate $3.00 in minimum fee revenue
- 16% are $.01-$3.00 users with an average bill of $1.30. Therefore they would generate $1.70 in minimum fee revenue
- We assumed a six month spike in churn from June to Nov of 4%
- The financial loss due to a churned customers was assumed to be $1.30 for $.01-$3.00 customers and $0.00 for zero users

| Revenue ($'000) | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Incremental New Revenue by Product | 24,614 | - | - | - | - | $ 24,614 |
| | | - | | - | - | $ - |
| | | - | | - | - | $ - |
| | | - | | - | - | $ - |
| | - | | | - | - | $ - |
| | - | | - | - | | $ - |
| Total Revenue | $ 24,614 | $ - | $ - | $ - | $ - | $ 24,614 |

| Expense Savings ($'000) | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Productivity Savings (Labor) | | | | | | $ - |
| Cost Savings (Material) | - | - | - | - | | $ - |
| Cost Savings (Other) | | | | | | $ - |
| | | | | | | $ - |
| | - | - | - | - | | $ - |
| Total Expense Savings | $ - | $ - | $ - | $ - | $ - | $ - |

| Total Cash Flows ($'000) | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| Revenue | 24,614 | - | - | - | - | $ 24,614 |
| Expense Savings | | | | | | $ - |
| Total Cash Flows | $ 24,614 | $ - | $ - | $ - | $ - | $ 24,614 |

9. Will additional operating expenses be needed in the future to maintain the asset?

| Profit & Loss ($'000) | | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|
| Revenue | | 24,614 | - | - | - | - | 24,614 |
| Operating Expense | | | | | | | |
| Depreciation Expense | | (80) | (80) | (80) | (80) | (80) | (400) |
| Net Income Before Tax | | 24,534 | (80) | (80) | (80) | (80) | 24,214 |
| Taxes at 39% | | (9,568) | 31 | 31 | 31 | 31 | (9,443) |
| Net Income | | $ 14,966 | $ (49) | $ (49) | $ (49) | $ (49) | 14,770 |

10. What is the Return on Investment (ROI), Initial Rate of Return (IRR), and Net Present Value (NPV)?

11/03CAL:000083

| Cash Flow Analysis | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cash Flow @12% Discounted Capital | $ (400) | $ 15,046 | $ 31 | $ 31 | $ 31 | $ 31 | $ 14,771 |
| Cash Flow @15% Discounted Capital | $ (400) | $ 15,046 | $ 31 | $ 31 | $ 31 | $ 31 | $ 14,771 |
| IRR | 3642% | | | | | | |
| NPV @ 12% | $13,118 | | | | | | |
| NPV @ 15% | $12,751 | | | | | | |
| Payback in Years | .51 | | | | | | |

11. Identify 2 or more key metrics that can be used for measuring success of this project over time. (LPH lift, AHT savings, cost savings including department name and number --- THIS IS A CORPORATE REQUIREMENT.)

- $24.6M in Consumer revenue from $3 minimum fee [Company Code = T330; Consumer Core Profit Center = 2100019]
- Application of $3 minimum usage fee to zero usage non-Plan Consumer customers and $0-$2.99 non-Plan Consumer customers [dept name/number = N/A]


12. Who will monitor the quantified justification and what reporting will be available to validate the achievement of the benefits? Please include contact name and a description of the reporting including frequency.

Existing monthly reporting will be used to monitor the application of the $3 minimum usage fee and the associated revenue. [Jeff Altman, Business Analysis, V235-6303]

13. Who is accountable (VP Level or higher) for the success of this capital investment?

Joyce Dorris, VP of Consumer Markets


14. Is this project a component of the current Capital Plan? If not, how will this fit within your current capital allocation?

Yes


15. Identify what other alternatives been researched, and why they have been rejected.

The alternative to this project is for MCI to continue to do without a $3 minimum usage fee for non-Plan customers. This has been rejected since it unnecessarily avoids a significant source of additional revenue from this customer segment. Furthermore, MCI can continue to support minimum usage fees in general through the restrictions imposed by the current hard-coded billing rules, but this will not allow for the flexibility and speed MCI needs to adjust fee limits and applications, as well as to quickly respond to competitive pressures.

# EXHIBIT D

Date: Thu, 28 Mar 2002 11:00 -0500 (EST)
From: Joyce Dorris <Joyce.Dorris@wcom.com>
To: Wayne Huyard <wayne.huyard@wcom.com>
CC: Thomas ONeil <Thomas.Oneil@wcom.com>,
    "Andrew.Graves@wcom.com"' <Andrew.Graves@wcom.com>,
    Victoria Harker <victoria.harker@wcom.com>
Content-return: allowed
Subject: $3 Monthly Minimum For Basic Dial-1

Redacted

Beginning June 1st, MCI will implement a $3 minimum to our Basic
Dial-1 customers. Implementation of this charge will improve '02
EBITDA by $22.2M and revenue by $24.7M.

Basic Dial-1 minimums were eliminated by IXCs in July 2000 following
the FCC's adoption of the CALLS settlement. In addition to reducing
interstate access charges and moving PICC to the LECs, the settlement
called for the availability of 'no fee, no minimum' pricing options.
Though MCI did not participate in the CALLS settlement, we rebalanced
Dial-1 rates and eliminated our $3 minimum at this time.

Although we are adding a $3 minimum to Dial-1, we continue to satisfy
the requirement of CALLS by having a "no fee, no minimum" calling plan
option for consumers. There is a risk of this change will create some
controversy, but the following competitive "no fee, no minimum"
options provide significantly better rates than our Basic Dial-1
offering and should mitigate this risk.

    - Mundo Simple
       * Provides international callers competitive domestic
         and international rates (targeted to Latin American
         countries)
       * $.07 interstate (24x7) rates with a $.49 per call
         connection fee
    - MCI Anytime Calling (Available only in CS)
       * Provides domestic low volume callers competitive rates
       * $.07 interstate (24x7) rates with a $.35 per call
         connection fee

For our base customers, this minimum implementation will be messaged
within the April invoices (allowing customers at least 30 days
notice), plus it will be printed in the April re-print of the GSA.

Development has been completed allowing us to exclude stand-alone
intralata accounts from receiving this minimum. Therefore, we don't
have any instate tariffing requirements.

11/03CAL:000103

1

# EXHIBIT E

# $1.50 BOC Billing Fee and $3 Minimum for Dial 1 No Plan

## Consumer Finance
### March 22, 2002

MCI CONFIDENTIAL

11/03CAL:000085

# Timeline of Events

## BOC Billing Fee

- In May 2002 a billing fee of $1.50/month is proposed for all BOC-billed customers

- Beginning April, the default billing option for customers will be DR. Customers choosing BOC-billed will be pre-sold the fee.

- Current base customers will be notified via postcard in April.

## $3 No Plan Minimum

- In June 2002 a $3.00 Minimum will be added to all base and acquisition customers who do not have a domestic dial 1 calling plan
  – Sunday rate is also increasing from 10¢ to 20¢

- Customers will be pre-sold the minimum beginning April 2002 to avoid "Bait and Switch" issues. As a result, pre-selling will eliminate the need for bridge promotions.

- Current base customers will be notified via invoice messaging in April.

MCI CONFIDENTIAL

2

# BUSINESS CASE IMPACTS

MCI CONFIDENTIAL

11/03CAL:000087

# Top-Level Assumptions

## BOC Billing Fee

- 8.2M BOC-billed base customers impacted initially with
  - California and Maine customers affected beginning June (rest in May)
- 25% of IR Base converting to DR after notification
- $1.6M cost for postcard messaging
- 90% Acquisition customers choose/default to DR
- First 3 months following notification:
  - Additional 0.5% churn
  - Escalations in CS amounting to 5% of BOC Fees in Credits

## $3 No Plan Minimum

- 3.2M No Plan customers, 58% are zero or less than $3 monthly billers
- Additional 4% churn assumed for first 6 months
- Chip and/or Tortilla plans will serve as "no fee/no minimum" plans offered reactively

MCI CONFIDENTIAL

4

11/03CAL:000088

# BOC billing fee improves EBITDA by $41.0M in 2002 but only $19.9M in 2003 as billing shift to DR increases Sales Allowance

| FINANCIAL IMPACTS | BASE CASE | | SENSITIVITIES | | | |
|---|---|---|---|---|---|---|
| | 2002 | 2003 | 2002 | 2003 | 2002 | 2003 |
| Conversion Rate | 15% | 15% | 25% | 25% | 52% | 52% |
| (millions) | | | | | | |
| BOC Fee | $68.9 | $66.9 | $61.0 | $59.8 | $39.9 | $40.7 |
| Loss from Incremental Churn | -$11.8 | -$17.3 | -$11.8 | -$17.3 | -$11.8 | -$17.3 |
| CS Credits | -$1.4 | $0.0 | -$1.2 | $0.0 | -$0.8 | $0.0 |
| REVENUE | $55.6 | $49.6 | $48.0 | $42.5 | $27.3 | $23.4 |
| SG & A | -$1.6 | $0.0 | -$1.6 | $0.0 | -$1.6 | $0.0 |
| Billing, Coll and Sales Allow | -$13.1 | -$29.7 | -$16.5 | -$32.7 | -$25.7 | -$41.1 |
| Offset to Lost Revenue | $4.3 | $6.2 | $4.3 | $6.2 | $4.3 | $6.2 |
| EXPENSES | -$14.6 | -$29.7 | -$18.0 | -$32.7 | -$27.3 | -$41.1 |
| EBITDA | $41.0 | $19.9 | $29.9 | $9.8 | $0.0 | -$17.7 |

MCI CONFIDENTIAL

5

11/03CAL:000089

Taking into account a 6 month spike in churn, the implementation of $3 minimum on No Plan in June still results in a $25M revenue uplift

| | % Cust | REV / Cust | 2002 Revenue (MILLIONS) |
|---|---|---|---|
| Zero Users | 42% | $3.00 | $20.7 |
| $.01 - $3.00 | 16% | $1.70 | $4.7 |
| > $3.00 | 42% | $0.0 | $0.0 |
| | | | |
| Incremental Churn of 4% (June-Nov)* | | ($1.30) | ($0.7) |
| | | | |
| TOTAL | 100% | | $24.7 |

* Incremental Churn impacts assume that only people under $3.00 will churn out due to the minimum and that the loss of revenue is equal to the average per customer spending of people in the $.01 - $3.00 bucket.

MCI CONFIDENTIAL

6

# CUSTOMER SERVICE IMPACTS

MCI CONFIDENTIAL

11/03CAL:000091

# Dial 1 No Plan $3 Minimum Past History

Consumer $3.00 Minimum was added to Dial 1 No Plan base customers in Feb 99 (acquisition in Nov 98). Base customers were notified of increase in Nov 98.

- Call volume spiked in Mar 99 when customers saw the increase on their bill but then return to previous levels in Apr and May.
- Customer churn spiked in Feb and ran above previous levels until minimum was removed in May 99

*Conclusions*

Call volume appears to be a one time hit and then returns to previous levels whereas churn continued to run above pre minimum levels and did return to previous levels until after minimum was removed

8

MCI CONFIDENTIAL

11/03CAL:000092



Consumer Churn and NCO Historical Trend

| | J-98 | F-98 | M-98 | A-98 | M-98 | J-98 | J-98 | A-98 | S-98 | O-98 | N-98 | D-98 | J-99 | F-99 | M-99 | A-99 | M-99 | J-99 | J-99 | A-99 | S-99 | O-99 | N-99 | D-99 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Churn | 5.5% | 5.8% | 6.6% | 6.5% | 7.1% | 7.1% | 6.9% | 9.0% | 8.3% | 8.9% | 7.6% | 7.3% | 9.5% | 11.7% | 13.1% | 10.5% | 10.4% | 9.0% | 9.0% | 8.7% | 9.1% | 8.6% | 7.1% | 6.9% |
| NCO | 4.0 | 3.6 | 4.4 | 4.0 | 4.1 | 4.1 | 4.2 | 4.3 | 3.9 | 3.8 | 3.6 | 3.7 | 4.3 | 4.3 | 5.4 | 4.4 | 4.2 | 4.7 | 4.8 | 5.3 | 5.2 | 5.1 | 4.7 | 4.1 |

MCI CONFIDENTIAL

9

11/03CAL:000093

# Projected LD Call Volume Impact - High Case



| | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 |
|---|---|---|---|---|---|---|
| BOC Fee | | 22.1 K | 814.9 K | 364.1 K | 28.9 K | 30.6 K |
| \$3 Min | | 1,888.9 K | 39.2 K | 654.1 K | 296.1 K | |
| Core LD CS | 1,899.6 K | | 1,700.9 K | 1,762.9 K | 1,629.9 K | 1,457.8 K |

- ▲ BOC Fee
- ■ \$3 Min
- ♦ Core LD CS

MCI CONFIDENTIAL

10

# Customers Impacted by $3 Min Called CS in 1999

|                                          | 1999 | 2002 |
|------------------------------------------|------|------|
| Total Dial 1 Customers                   | 4.7  | 3.5  |
| Dial 1 Customers Impacted (Spend <$3)    | 2.1  | 1.9  |
| Customer Service Calls                   | 1.1  | 1.0  |
| Impacted Customer Call in Rate           | 52%  | 52%  |

*Note:* All numbers in millions

MCI CONFIDENTIAL

11

# Dial 1 Min and BOC Fee Call Volume Projections

## Monthly Summary
## Dial One Minimum

|  | June | July | August | Total |
|---|---|---|---|---|
| 50% of Impacted Customers Call | 14,280 | 878,832 | 124,338 | 1,017,450 |

## Monthly Summary
## BOC Fee Minimum

|  | June | July | August | Total |
|---|---|---|---|---|
| 15% Base Calls in | 891,203 | 309,258 | 26,464 | 1,226,925 |

12

MCI CONFIDENTIAL

11/03CAL:000096

# BOC Fee Increase And $3 Min D1 Impact On ABA

**NCO**

| Consumer | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 | Oct-02 | Nov-02 | Dec-02 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Core LD | 2,069,397 | 2,077,940 | 2,205,079 | 2,383,122 | 1,843,446 | 1,643,716 | 1,708,105 | 1,365,156 | 1,256,080 | 16,552,041 |
| Local Legacy | 1,568,887 | 1,700,528 | 1,626,466 | 1,889,885 | 2,080,024 | 1,969,748 | 2,421,087 | 2,064,118 | 2,276,293 | 17,597,037 |
| Local Ztel | 158,218 | 235,066 | 263,402 | 330,236 | 405,301 | 416,218 | 567,198 | 536,197 | 622,410 | 3,534,246 |
| Total Consumer | 3,796,502 | 4,013,535 | 4,094,946 | 4,603,243 | 4,328,771 | 4,029,682 | 4,696,390 | 3,965,471 | 4,154,783 | 37,683,324 |

**NCH**

| Consumer | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 | Oct-02 | Nov-02 | Dec-02 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Core LD | 1,738,293 | 1,745,470 | 1,299,569 | 1,382,601 | 1,548,495 | 1,366,527 | 1,434,808 | 1,146,731 | 1,055,107 | 12,717,601 |
| Local Legacy | 1,108,931 | 1,317,754 | 1,432,585 | 1,651,076 | 1,872,022 | 1,772,773 | 2,093,418 | 1,857,706 | 2,010,820 | 15,117,086 |
| Local Ztel | 148,725 | 220,962 | 247,598 | 310,421 | 380,983 | 391,245 | 533,166 | 504,025 | 585,065 | 3,322,191 |
| Total Consumer | 2,995,949 | 3,284,187 | 2,979,752 | 3,344,098 | 3,801,499 | 3,530,545 | 4,061,392 | 3,508,463 | 3,650,993 | 31,156,878 |

**ABA**

| Consumer | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 | Oct-02 | Nov-02 | Dec-02 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Core LD | 16.0% | 16.0% | 41.1% | 42.0% | 16.0% | 16.9% | 16.0% | 16.0% | 16.0% | 23.2% |
| Local Legacy | 29.3% | 22.5% | 11.9% | 12.6% | 10.0% | 10.0% | 13.5% | 10.0% | 11.7% | 14.1% |
| Local Ztel | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% | 6.0% |
| Total Consumer | 21.1% | 18.2% | 27.2% | 27.4% | 12.2% | 12.4% | 13.5% | -11.5% | 12.1% | 17.3% |

MCI CONFIDENTIAL

13

11/03CAL:000097