# EXHIBIT K

1 of 2 DOCUMENTS

**Shary Everett, on behalf of herself and all others similarly situated, Plaintiff, vs. MCI, Inc., Defendant.**

**No. 05-2122-PHX-ROS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

*2006 U.S. Dist. LEXIS 71871*

**September 29, 2006, Decided**

**COUNSEL:** [*1] For Shary Everett, on behalf of herself and all others similarly situated, Plaintiff: A J DeBartolomeo, Aaron M Sheanin, Daniel C Girard, Lindy K Lucero, Girard Gibbs LLP, San Francisco, CA; Joel Grant Woods, Law Offices of Grant Woods, Phoenix, AZ; Robert B Carey, Hagens Berman Sobol Shapiro PLLC, Phoenix, AZ.

For MCI, Inc., a Delaware Corporation, Defendant: Charles P Scheeler, Quincy M Crawford, DLA Piper Rudnick Gray Cary US LLP, Baltimore, MD; Lawrence Arthur Kasten, Lewis & Roca LLP, Phoenix, AZ.

**JUDGES:** Roslyn O. Silver, United States District Judge.

**OPINION BY:** Roslyn O. Silver

**OPINION**

**ORDER**

This action arises out of charges that were allegedly improperly assessed with respect to local and long distance services provided by Defendant. Pending is Defendant's Motion To Dismiss. (Doc. # 11). For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

Plaintiff Shary Everett contends that in or around February 2003 MCI assessed her account ("Everett Account") a monthly service charge and related charges in the amount of $ 9.88 in connection with an MCI long distance plan that were neither incurred nor authorized

(Doc. # 1, P25). [1] Plaintiff further alleges that [*2] despite several requests to have the charges reversed or removed, she received a collections notice in July 2003 for failure to pay the unauthorized charges and subsequently paid them. (*Id.*, PP 27-29).

> 1   The account against which these charges were assessed is in Plaintiff's husband's name but is for the telephone number at the residence they share. Plaintiff contends she is jointly responsible for paying the bill.

Defendant's records indicate that in December 2002, MCI received an order from the Local Exchange Carrier ("LEC") for MCI to provide long distance services for the Everett's phone number. (*Id.*, P 7). [2] This particular order was one where MCI designated itself as the carrier through the LEC during a move. (*Id.*). Once the account was active with long distance service, it became subject to minimum usage fees as set forth in MCI's Federal Communications Commission ("FCC") Tariff and the MCI General Service Agreement, which is mailed to all customers and is available on its website. (*Id.* [*3] ). Such fees were billed on the December 2002 and January 2003 invoices in the total amount of $ 9.88. (*Id.*). Defendant's records further indicate that in February 2003, Plaintiff called to dispute authorization of the account, but did not request a credit. (*Id.*, P 8). MCI's procedure was to advise Plaintiff to contact the LEC to switch services away from MCI in order to cancel her account. (*Id.*, P 9). Three days after Everett's call, MCI received a disconnect order from the LEC and cancelled the Everett Account. (*Id.*). MCI records do not indicate that the Everetts initiated any other contact. (*Id.*, P10).

> 2   Notably, only a LEC, and not a long distance

2006 U.S. Dist. LEXIS 71871, *3

carrier such as MCI, can switch a customer's long distance provider from one carrier to another. (Doc. # 11, p. 4). All changes made to service, including switching the designated long distance carrier, are transmitted by the LEC to the appropriate long distance carrier.

On behalf of herself and others similarly situated, Plaintiff filed a [*4] putative class action on July 19, 2005 for violations of the Communications Act of 1934, *47 U.S.C. §§ 151, et seq.,* ("Communications Act") and for unjust enrichment. (Doc. # 1). Plaintiff seeks monetary damages, equitable relief and declaratory relief. Upon filing her lawsuit, Defendant credited the LEC with $ 12.00 for the Everett's Account (Doc. # 11, Exh. A at P11), although the credit did not post to Plaintiff's account until after the Motion For Class Certification was filed. (Doc. # 46).

Plaintiff is a resident of Goodyear, Arizona. Defendant MCI, Inc. is a Delaware corporation providing local and long distance telephone service to customers in Arizona and throughout the United States, and maintains offices within the State of Arizona. Because this case involves a federal question under the Communications Act, the Court has jurisdiction pursuant to *28 U.S.C. § 1331* over the federal claim, and supplemental jurisdiction pursuant to *28 U.S.C. § 1367* over the state law claim. (Doc. # 1).

On September 29, 2005 Defendant MCI filed a Motion To Dismiss. (Doc. # 11). Plaintiff responded on October 31, 2005 (Doc. # [*5] 12), and Defendant replied on November 15, 2005. (Doc. # 16). On April 26, 2006 the Court held oral argument and ordered supplemental briefing. [3] On May 26, 2006 the parties filed simultaneous supplemental briefs (Doc. # 38, Defendant's Supplemental Brief; Doc. # 39, Plaintiff's Supplemental Brief), and on June 9, 2006 simultaneous opposition briefs were filed (Doc. # 46, Defendant's Opposition Brief; Doc. # 48, Plaintiff's Opposition Brief) followed by simultaneous replies filed on June 23, 2006. (Doc. # 51, Defendant's Reply In Support of Its Supplemental Brief; Doc. # 52, Plaintiff's Reply In Support of Its Supplement Brief).

[3] The Court ordered supplemental briefing on the following issues: (1) whether *Manson v. MCI, Inc. and Telecom USA, Inc., 2005 U.S. Dist. LEXIS 43734, Case No. 04-73374 (E.D. Mich. Feb. 24, 2005),* is controlling in this case; (2)

whether it is disputed that Plaintiff has received all damages; (3) whether it is determinative that Plaintiff alleges fraud; (4) whether or not the court's application of the "picking-off" doctrine in *Manson* is distinguishable; (5) whether the potential class members may be transitory such that there is a likelihood of repetition.

[*6] **II. DISCUSSION**

**A. Legal Standard**

Defendant argues that the Court should dismiss Plaintiff's claim pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure* for lack of subject matter jurisdiction because (1) it is moot, [4] and (2) Plaintiff's claims fall within the primary jurisdiction of the Federal Communications Commission ("FCC"). Plaintiff, as the party seeking to invoke the jurisdiction of the court, bears the burden of establishing subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); Fenton v. Freedman, 748 F.2d 1358, 1359 (9th Cir. 1994).* A *Rule 12(b)(1)* motion to dismiss for lack of subject matter jurisdiction may be either a facial or a factual challenge. When the moving party challenges jurisdiction based on the allegations in the complaint, the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).*

[4] Defendant also argues that Plaintiff lacks standing, because the Everett account was in her husband's name. (Doc. # 38, p. 2 fn 1). The cases on which Defendant relies do not support its contention that Plaintiff lacks standing to sue over charges assessed to an account for which she is jointly responsible. Ms. Everett paid the debts from a joint checking account she shared with her husband (Doc. # 39, p.5; Everett Decl., P4), and has suffered an economic injury for which she has standing to sue. *See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996)* ("Economic injury is clearly a sufficient basis for standing"). Moreover, it appears that Ms. Everett was authorized to make changes to the account on behalf of her husband. (Doc. # 38, Exh. A).

[*7] On the other hand, when a court reviews a

complaint under a factual challenge, the allegations have no presumptive truthfulness, *Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 369 (9th Cir. 1988)* (quoting *Mortensen, 549 F.2d at 891*), and the court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits of [the] case." *Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).* Rather, the court weighing the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, 56 F.3d 1177 (9th Cir. 1995), Mortensen, 549 F.2d at 891.*

## B. Analysis

### 1. Mootness

Defendant contends that Plaintiff's claim is moot, because it credited Plaintiff for all of her alleged damages plus interest, and as a result, there is no actual, ongoing controversy. (Doc. # 11, Exh. A, P 11). [5] Plaintiff argues that Defendant's attempt to satisfy her claim shortly after [*8] it was filed, and before she could file a Motion for Class Certification, is an attempt to "pick-off" her claim and should not be subject to the mootness limitation.

> 5 Plaintiff's request for costs and interest does not create a case or controversy. *See Bank of Marin v. England, 385 U.S. 99, 111 n. 1, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966)* (Fortas, J., dissenting) (citations omitted). Nor does Plaintiff's claim for attorneys' fees save an otherwise moot case. *See Lewis v. Continental Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990).*

Article III of the United States Constitution requires a plaintiff to present an actual case or controversy, which is a prerequisite to the Court's exercise of subject matter jurisdiction. *See American-Arab Anti-Discrimination Comm. v. Thornburgh, 940 F.2d 445, 448, 970 F.2d 501 (9th Cir. 1991).* The doctrine of mootness is derived from the case-or-controversy limitation. *See Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1128-29 (9th Cir. 2005).* A live [*9] controversy must persist throughout all stages of the litigation. *See id.* When this condition is not met, the case has become moot and is no longer within the Court's constitutional purview. *Id.*

In most cases, a case becomes moot when a defendant offers to satisfy the plaintiff's requested relief. *Holstein v. City of Chicago, 29 F.3d 1145, 1147 (7th Cir. 1994).* But, when the plaintiff attempts to represent a class, the mootness doctrine is somewhat different. *See Bd. of School Comm'rs v. Jacobs, 420 U.S. 128, 129, 95 S. Ct. 848, 43 L. Ed. 2d 74 (1975); Kuahulu v. Employers Ins. of Wausau, 557 F.2d 1334, 1336 (9th Cir. 1977).* The application of the mootness doctrine depends on the idiosyncrasies of each case and "does not require an automatic dismissal in every case where the district court has failed to certify the class before the representative's claim has become moot." *Kuahulu, 557 F.2d at 1336.* A plaintiff whose claims have been satisfied and are no longer active may avoid dismissal by showing that the claims are nonetheless "capable of repetition, yet evading review." *Sosna v. Iowa, 419 U.S. 393, 401-02, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975).* [*10] Application of this exception to the mootness doctrine is limited to situations where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Weinstein v. Bradford. 423 U.S. 147, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975).* In addition, the Supreme Court has held, "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." *Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).* Where a named plaintiff's claims become moot before the court certifies a class, the class certification motion is deemed to relate back to the named plaintiff's standing when she filed the class complaint. *See, Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir. 1997).* The "relation-back" exception [*11] applies where the claims are transitory or acutely susceptible to mootness as a result of the defendant's effort to pick them off. *See, e.g., id; Weiss v. Regal Collections, 385 F.3d 337, 347-48 (3d Cir. 2004).*

Defendant cites two cases involving similar facts in which courts have dismissed the action on grounds of mootness where the claims are satisfied before the court certified the class action. In *Manson v. MCI, Inc. and Telecom USA, Inc., 2005 U.S. Dist. LEXIS 43734, Case*

*No. 04-73374 (E.D. Mich. Feb. 24, 2005)*, aff'd by the Sixth Circuit without opinion on April 25, 2006 (Doc. # 36, Exh. A), the court held that there was no case or controversy over plaintiff's moot claims where MCI issued a credit to plaintiff in an amount equal to or greater than the potential damages. [6] The court rejected plaintiff's argument that defendants were attempting to "pick off" the claims with settlement offers in an attempt to avoid a class action, because the motion for class certification had not yet been filed. Defendant argues that like *Manson*, at the time MCI credited Plaintiff's account, no Motion For Class Certification had been filed. [7]

> 6  Although *Sixth Circuit Rule 28(g)* disfavors the "[c]itation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit, except for the purposes of establishing res judicata, estoppel, or the law of the case," Defendant is not prohibited from citing the case in this Circuit. Contrary to Defendant's assertion that the Sixth Circuit's oral disposition "compels dismissal of this case" (Doc. # 38, p. 2), the Sixth Circuit decision is not binding on this Court.

[*12]

> 7  Plaintiff filed a Motion For Class Certification on May 30, 2006 (Doc. # 43).

Like *Manson*, Plaintiff's claim was satisfied before the motion for class certification had been filed. [8] *Manson* is distinguishable on other grounds, because the defendants in that case agreed to institute a recovery program to determine what other class members were entitled to the same credit afforded plaintiff such that all claims would be moot, therefore alleviating any concerns that there would be repetitious claims. Here, MCI has not offered to credit other putative plaintiffs who were also improperly charged. At oral argument, MCI contended that based on the factual circumstances in *Manson*, it was easier to rectify the wrong, whereas here, the alleged wrong is based on incorrect information MCI receives from the LEC. MCI further contends that through its liberal credit policy, all putative plaintiffs who requested a credit received one. Under this reasoning, however, MCI has placed the burden on the putative plaintiff to contact MCI and not only identify herself as an account holder whose account [*13] was improperly charged, but also request a credit. If a putative plaintiff fails to do so, perhaps because she is unable to reach a live person through the automated customer service line, then the putative plaintiff is deemed to have accepted the services. MCI's policy does not sufficiently rectify the problem or alleviate this Court's concern over future claims.

> 8  Although Defendant issued a credit to the LEC before Plaintiff filed its Motion For Class Certification, the credit did not post to Plaintiff's account until after the Motion was filed. (Doc. # 46). Whether the claim was mooted on the date the credit was issued or the date the credit appeared is immaterial, as this Court rejects the brightline rule that focuses solely on the date on which the motion for class certification was filed.

Defendant also cites to *Labora v. MCI Telecommunications Corp.*, No. 98-1073 (S.D. Fl. July 20, 1998), in which the plaintiff filed a class action alleging improper and duplicative billing practices. [9] Plaintiff, [*14] a customer, did not contact MCI's customer service center to inquire about the calls and instead filed a class action complaint. Upon receipt of the complaint, however, MCI refunded the plaintiff the total alleged duplicate charges of $ 1.52 and moved to dismiss the complaint as moot. The court held that this credit mooted plaintiff's cause of action and rendered him ineligible to represent the class, and also held that his request for costs and interest did not salvage the otherwise moot case. It was upheld with no written opinion by the Eleventh Circuit.

> 9  Like the Sixth Circuit's disposition in *Manson*, the Eleventh Circuit's summary affirmance in *Labora* has no precedential value. *See 11th Cir. R. 36-1*.

This case is also distinguishable, because in *Labora*, the court found relevant that prior to the filing of the lawsuit, MCI had no notice that it had improperly charged the plaintiff. The fact that MCI credited the plaintiff shortly after the complaint was filed was more indicative of an intent [*15] to rectify an error upon receiving notice than of any intent to "pick-off" the plaintiff's claim. In this case, Plaintiff notified Defendant that she did not authorize initiation of services well before filing suit. Defendant argues that its policy prevented it from issuing a credit until Plaintiff specifically requested one, which its records indicate Plaintiff did not do at the time she called to inquire about the charges. Defendant further contends that the fact it credited Plaintiff pursuant to its internal policy is evidence that it is not intending to "pick off" her claim.

The basis for the refund is immaterial, however, where unlike *Labora*, Defendant was on notice beforehand but did not act until after the lawsuit was filed. Moreover, it is these very policies and practices that are issue in this lawsuit.

Plaintiff cites the Third Circuit decision, *Weiss v. Regal Collections, 385 F.3d 337, 344 (3d Cir. 2004)*, as support for its argument that mootness should not apply. *Weiss* involved a plaintiff who, within six weeks of filing his amended complaint and before filing a motion for class certification, was made an offer of judgment by defendant under *Fed. R. Civ. P. 68* [*16] for the amount of statutory damages plus attorneys' fees and costs. The plaintiff declined the offer of judgment, and the district court granted the defendant's motion to dismiss on grounds of mootness. *Id. at 340*. In reversing the district court's opinion, the Third Circuit held that the defendant's offer of judgment, which provided complete relief to Weiss but not to the class, would not be given effect, because to allow the defendant to make an offer of judgment to a named plaintiff prior to class certification would undermine the purposes of *Rule 23*. *Id. at 345*. The Third Circuit cited precedent for its holding that a class action would not be moot if a trial court lacked the opportunity to rule on a pending motion for class certification when a defendant made an offer of judgment. *Id. at 346* (citing *Susman v. Lincoln Am. Corp., 587 F.2d 866, 869-71 (7th Cir. 1978)*; *Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1051 (5th Cir. 1981)*; *Lusardi V. Xerox Corp., 975 F.2d 964, 975 (3d Cir. 1992))*. In rejecting a brightline rule followed by other courts, the Third Circuit instead focused [*17] on whether the plaintiff had unduly delayed in moving for certification; it held that plaintiff had not delayed, and as a result, found the case was not moot. *See id. at 348*.

This is an issue of first impression in the Ninth Circuit, whether a claim is rendered moot where plaintiff's damages are satisfied not only before a court has ruled on a motion for class certification, but before plaintiff has even filed such a motion. Defendant seeks adoption of a brightline rule focusing solely on whether a motion for certification was filed at the time plaintiff's damages were satisfied.

Defendant attempts to distinguish this case from *Weiss* by claiming that its credit was not an offer of judgment made pursuant to *Fed. R. Civ. P. 68*. Regardless of whether it was issued as part of a formal settlement

offer or not, Defendant's credit satisfied Plaintiff's claim; thus, for purposes of mooting Plaintiff's claim, it is the same as an offer of judgment. To hold otherwise would permit a defendant to circumvent the practical considerations underlying the court's reasoning in *Weiss*, as well as subsequent cases, which speak most closely to the [*18] issues at hand while recognizing the modifications to *Fed. R. Civ. P. 23* in 2003 allowing for more time to file for certification. Creating a brightline based on whether the claim was satisfied before the filing of the class certification motion would necessitate that putative plaintiffs seek class certification on the date a complaint is filed or immediately thereafter in order to preserve their claim; similarly, it would encourage defendants to "race to pay off" named plaintiffs very early in the litigation before a motion for class certification is filed, which is inconsistent with the purposes of *Rule 23*. *Liles v. American Corrective Counseling Servs., Inc., 201 F.R.D. 452, 455 (S.D. Iowa 2001)*; *Schaake v. Risk Management Alternatives, Inc., 203 F.R.D. 108 (S.D.N.Y. 2001)* ("Taken to its absurd logical conclusion, the policy urged by defendant. . . . would also allow defendants to essentially opt-out of *Rule 23*, by allowing a defendant to avoid liability for class wide relief, which could be prevented by the mere service of a *Rule 68* offer at the outset of the case."); *Nasca v. GC Servs. Ltd. P'ship, 01 Civ. 10127 (DLC), 2002 U.S. Dist. LEXIS 16992, at *9 (S.D.N.Y. Sept. 13, 2002)* [*19] ("To allow a *Rule 68* offer to moot a named plaintiff's claim in these circumstances [where an offer of judgment was made less than two months after defendant filed its answer] would encourage defendants to pick off named plaintiffs in the earliest stage of the case."); *Bond v. Fleet Bank (RI), N.A., C.A. No. 01-177 L, 2002 U.S. Dist. LEXIS 4131, at *21-22 (D.R.I. Feb. 21, 2002)* ("To permit Fleet to intentionally moot Bond's claims, before Bond had an opportunity to move for class certification, in an effort to avoid a class action, would do violence to the interests of justice."); David Hill Koysza, *Preventing Defendants From Mooting Class Actions By Picking Off Named Plaintiff's, 53 Duke L.J. 781, 781-82 (Nov. 2003)* (an offer of judgment to named plaintiffs before class certification "both thwarts the function of the class action device and vitiates the policies behind it"). Though *Weiss* involved an offer of judgment, the Court finds the Third Circuit's reasoning to be persuasive and rejects the brightline rule in favor of an approach that permits sufficient time to allow *Rule 23* to play out.

Another inquiry is whether Plaintiff [*20] engaged

in "undue delay" in not filing the Motion For Class Certification before the claim was satisfied. MCI credited the Plaintiff's account via the LEC only seven weeks after she filed her Complaint. Defendant had not answered or even moved against the Complaint; thus, Plaintiff had not had a reasonable opportunity to move for class certification at that time. In addition, unlike *Manson* where the court believed that the entire class action would be moot, because MCI indicated that it was in the process of "identify[ing] all customers incorrectly billed. . . . [and crediting] those accounts in full for any over-billing," *Manson. 2005 U.S. Dist. LEXIS 43734 at 12*, MCI here has made no such effort. The Court has strong concerns that to render Plaintiff's claims moot would only result in repetitious claims.

**2. Primary Jurisdiction**

Alternatively, Defendant argues that Plaintiff's claims should be dismissed, because the FCC has primary jurisdiction over the claims. "Primary jurisdiction is not implicated simply because a case presents a question, over which the FCC could have jurisdiction. . . . Rather, primary jurisdiction is properly invoked when a case presents a far-reaching question [*21] that 'requires expertise or uniformity in administration.'" *Brown v. MCI Worldcom Network Servs, Inc., 277 F.3d 1166, 1172 (9th Cir. 2002)* (citations omitted). In considering whether to dismiss a federal action based on primary jurisdiction, courts have considered four factors: (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or whether it requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *See Total Telecomm. Servs., Inc. v. Am. Tel. & Telegraph Co., 919 F. Supp. 472, 478 (D.D.C. 1996)*. "A court 'should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to litigants . . . .'" *McDonnell Douglas Corp., 751 F.2d 220, 224 (8th Cir. 1984)* (citations omitted).

This Court need not decide whether the alleged unlawful charges were reasonable, but rather whether MCI's decision to assess the fee to non-customers was part of [*22] a deceptive scheme. Plaintiff's allegations of consumer fraud are well within the competence of this Court. *See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06, 96 S. Ct. 1978, 48 L. Ed. 2d 643 (1976)* ("The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful."). Moreover, other courts have rejected such attempts to refer jurisdiction over cases involving similar issues. *See Brennan v. AT&T Corp., No. 04-CV-433, 2006 U.S. Dist. LEXIS 8237, at *4 (S.D. Ill. Feb. 8, 2006)* (rejecting defendant's argument to refer jurisdiction over underlying claim that defendant deliberately charged improper non-usage fees) (Doc. # 20, Exh. A). Contrary to Defendant's assertion that the FCC has an interest in adjudicating this matter, its recent Report and Order and Further Notice of Proposed Rulemaking, which addresses the problem of LECs providing incorrect information to long distance carriers such as MCI contains no such indication. (Doc. # 11, Exh. B&C). Moreover, the Rulemaking did not address the issue raised in this action, which is whether [*23] Defendant violated the Communications Act after obtaining data from the LECs by establishing accounts and enrolling consumers in billing plans with MUFs without customer authorization. For these reasons, a referral would be improper.

Accordingly,

IT IS ORDERED that Defendant's Motion To Dismiss (Doc. # 11) is denied.

DATED this 29th day of September, 2006.

Roslyn O. Silver

United States District Judge

# EXHIBIT L

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   SHARY EVERETT, on behalf of herself)    No. CV-05-2122-PHX-ROS
    an all other similarly situated,     )
10                                        )   **ORDER**
              Plaintiff,                  )
11                                        )
                                          )
12  v.                                    )
                                          )
13  MCI, INC., a Delaware Corporation,    )
                                          )
              Defendant.                  )
14                                        )
15  ─────────────────────────────────────

16

17          Pending before the Court is Defendant's Motion for Judgment on the Pleadings, or in

18  the Alternative, Motion for Summary Judgment (Doc. #64). While Defendant has titled its

19  Motion as a Motion for Judgment on the Pleadings, or in the Alternative, Motion for

20  Summary Judgment, Defendant also requests that the Court refer this matter to the

21  Bankruptcy Court. For the following reasons, the Court will grant Defendant's Motion in

22  part and refer the case to the Bankruptcy Court.

23          Defendant's predecessor, WorldCom, Inc. filed for bankruptcy under Title 11 in July

24  2002. On October 31, 2003, the Bankruptcy Court issued the confirmation order approving

25  the Bankruptcy Plan (the "Plan"), which became effective in April 2004 (the "Effective

26  Date"). Plaintiff's Complaint alleges that her claims arose in and were liquidated by 2003.

27  Therefore, the parties agree that Plaintiff's claims against the bankruptcy estate are defined

28  as "Administrative Expense Claims" under the Plan.

1   28 U.S.C. § 157(a) states:

2       Each district court may provide that any or all cases under title
3       11 and any or all proceedings arising under title 11 or arising in
        or related to a case under title 11 shall be referred to the
        bankruptcy judges for the district.
4

5   The U.S. District Court of Arizona has a standing general order which states:

6       Pursuant to 28 U.S.C. § 157(a), the court hereby refers to the
        bankruptcy judges for this district all cases under title 11 and all
7       proceedings under title 11 or arising in or related to a case under
        title 11 as of the effective date of the present Bankruptcy Act.

8   General Order 01-15.

9       Since Plaintiff's claims arose and were liquidated prior to the Effective Date of the

10  Plan, the Plan dictates how those claims must be resolved. The Plan states that the

11  Bankruptcy Court retains exclusive jurisdiction to hear and determine Administrative

12  Expense Claims. Accordingly, this Court must refer those claims to the Bankruptcy Court

13  pursuant to the general order, the Plan and 28 U.S.C. § 157(a).

14      Plaintiff objects to the referral of this matter to the Bankruptcy Court, arguing that

15  since the case is non-core to Defendant's Bankruptcy, the Bankruptcy Court cannot enter a

16  final binding judgment and may only submit "proposed findings of fact and conclusions of

17  law to the district court." See 28 U.S.C. § 157(c)(1) (stating "[a] bankruptcy judge may hear

18  a proceeding that is not a core proceeding but that is otherwise related to a case under title

19  11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and

20  conclusions of law to the district court, and any final order or judgment shall be entered by

21  the district judge after considering the bankruptcy judge's proposed findings and conclusions

22  and after reviewing de novo those matters to which any party has timely and specifically

23  objected").

24      However, whether Plaintiff's claims are classified as core or non-core under 28 U.S.C.

25  § 157(b)(2) is irrelevant at this point, as that determination must be made by the Bankruptcy

26  Court. See 28 U.S.C. § 157(b)(3) (stating that "the bankruptcy judge shall determine . .

27  .whether a proceeding is a core proceeding under this subsection or is a proceeding that is

28  otherwise related to a case under title").

- 2 -

1   Accordingly,

2   **IT IS ORDERED THAT** this case is referred to the Bankruptcy Court for further

3   proceedings.

4   **IT IS FURTHER ORDERED** Counsel shall prepare and file a status report every

5   four months commencing September 24, 2007.

6   **IT IS FURTHER ORDERED** the Rule 16 Scheduling Conference set for June 1,

7   2007 at 2:00 P.M. is **VACATED**.

8

9   DATED this 24th day of May, 2007.

10

11

12

13

14   _____
     Roslyn O. Silver
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# EXHIBIT M

**IT IS HEREBY ADJUDGED
and DECREED this is SO
ORDERED.**

The party obtaining this order is responsible for
noticing it pursuant to Local Rule 9022-1.

**Dated: June 18, 2007**



*Randolph J. Haines*

RANDOLPH J. HAINES
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA (PHOENIX)

| | | |
|---|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated, | § § § | Underlying District Court Civil Action No. 05-2122-PHX-ROS |
| Plaintiffs, | § § | |
| vs. | § § | Adversary Proceeding No. 07-00333-RJH |
| MCI, INC., a Delaware Corporation, | § § | |
| Defendant. | § | |

## ORDER GRANTING MOTION TO IMPLEMENT ORDER BY FORWARDING MATTER TO THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Upon consideration of the Motion to Implement Order by Forwarding Matter to the Bankruptcy Court for the Southern District of New York (the "Motion"), the Court finds that there is good cause for the relief sought in the Motion, and accordingly, the Court hereby ORDERS that:

1.    The Motion is in all respects GRANTED.

2.    The matter referred to in the Motion shall be forwarded to the NY Bankruptcy Court[1] so that it may be resolved by such court pursuant to the jointly administered cases of *In re Worldcom, Inc., et al.*, Case No. 02-13533(AJG).

DATED AND SIGNED ABOVE



---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

# EXHIBIT N

FeeDueAP, PENAP

# U.S. Bankruptcy Court
## Southern District of New York (Manhattan)
## Adversary Proceeding #: 07-01792-ajg

*Assigned to:* Judge Arthur J. Gonzalez
*Related BK Case:* 02-13533
*Related BK Title:* WorldCom, Inc.
*Related BK Chapter:* 11
*Demand:*

*Date Filed:* 06/06/07
*Date Transferred:* 07/03/07

*Nature[s]
of Suit:*   02 Other (e.g. other actions that would have been
brought in state court if unrelated to
bankruptcy)

## Plaintiff
-----------------------

**Shary Everett, *On Behalf Of Herself and
others similarly situated***

represented by **Daniel Girard**
Girard Gibbs LLP
601 California Street
14th Floor
San Francisco, CA 94108
415-981-4800
Fax : 415-9814846
*LEAD ATTORNEY*

**Donald L. Gaffney**
Snell & Wilmer, LLP
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
(602) 382-6254
Fax : (602) 382-6070
Email: dgaffney@swlaw.com
*LEAD ATTORNEY*

**Grant Woods**
Grant Woods PC
1726 North Seventh Street
Phoenix, AZ 85006
602-258-2599
Fax : 602-258-5070
*LEAD ATTORNEY*

**Robert B. Carey**
Hagens Berman Sobol Shapiro PLLC
2425 E Camelback RD
Suite 650
Phoenix, AZ 85016
602-840-5900
Fax : 602-840-3012
*LEAD ATTORNEY*

V.

**Defendant**
-----------------------
**MCI, INC., a Delaware Corporation**

represented by **Henry Weissmann**
Munger Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
213-683-9100
Fax : 212-687-3702
*LEAD ATTORNEY*

**Lawrence A. Kasten**
Lewis And Roca LLP
40 North Central Avenue
Phoenix, AZ 85004-4429
602-262-5747
Fax : 602-262-5311
*LEAD ATTORNEY*

**Susan M. Freeman**
Lewis And Roca
40 North Central Avenue
Phoenix, AZ 85004-4429
602-262-5756
Fax : 602-262-5747
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 06/06/2007 | 1 | Adversary case 07-01792. Complaint against MCI, INC., a Delaware Corporation */Matter Forwarding To The U.S Bankruptcy Court Sourthern District Of NY( See Att #1)*. Nature(s) of Suit: (02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) Filed by Grant Woods, Robert B. Carey, Daniel Girard, Donald L. Gaffney on behalf of Shary Everett. (Attachments: # 1 Motion# 2 Notice Of Motion# 3 Order# 4 Docket report# 5 Letter) (Rodriguez, Maria) (Entered: 07/05/2007) |
| 09/21/2007 | 2 | Application for Pro Hac Vice Admission *to represent Verizon Business Global, Inc* filed by Kristin S. Escalante on behalf of Kristin S. Escalante. Filing fee collected, receipt #173747. (Villegas, Carmen) (Entered: 09/21/2007) |
| 09/24/2007 | 3 | Order signed on 9/24/2007 admitting Kristin S. Escalante, Esq. to practice pro hac vice in this Court (Related Doc # 2). (DePierola, Jacqueline) (Entered: 09/24/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/23/2007 19:27:21 | | | |
| **PACER Login:** | gg0108 | **Client Code:** | MCI7 |
| **Description:** | Docket Report | **Search Criteria:** | 07-01792-ajg Fil or Ent: filed From: 1/1/2007 To: 10/23/2007 Doc From: 0 Doc To: 99999999 Format: HTML |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# EXHIBIT O



LEWIS
AND
ROCA
LLP
L A W Y E R S

1  40 North Central Avenue
   Phoenix, Arizona 85004-4429
   Facsimile (602) 262-5747
2  Telephone (602) 262-5311

3  Lawrence A. Kasten State Bar No. 020204
   lkasten@lrlaw.com

4  DLA Piper Rudnick Gray Cary USLLP
   6225 Smith Avenue
   Baltimore, MD 21209
   Facsimile (410) 580-3001
5  Telephone (410) 580-3000

6  Attorneys for Defendant MCI, Inc.

7              UNITED STATES DISTRICT COURT

8                   DISTRICT OF ARIZONA

9   SHARY EVERETT, on behalf of herself an  )
    all other similarly situated,           )
10                                          )     No. CIV 05-2122-PHX-ROS
                                    Plaintiff, )
11                                          )     **DEFENDANT'S MOTION TO
                                            )     DISMISS PLAINTIFF'S
12     vs.                                  )     COMPLAINT**
                                            )
    MCI, INC., a Delaware Corporation,      )     (Oral argument requested)
13                                          )
                                  Defendants. )
14                                          )
                                            )
15  _____ )

16         Defendant MCI, Inc. ("MCI"), through its attorneys, hereby moves for dismissal of

17  plaintiff's complaint.  The grounds for this motion are set forth below in the incorporated

18  memorandum of points and authorities.

19            **MEMORANDUM OF POINTS AND AUTHORITIES**

20  **I.    INTRODUCTION**

21         This Court should dismiss Plaintiff Shary Everett's ("Plaintiff" or "Everett") claim

22  pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because it is moot.  MCI

23  has credited Plaintiff for all of her alleged damages plus interest.  Accordingly, she has

24  suffered no injury and does not have standing to pursue her claim.  If this Court should

25  decide that the complaint is not moot, then it should dismiss Plaintiff's claims on primary

26  jurisdiction grounds.  The fees incurred by Plaintiff resulted from an installation order that

1674541.1



1   MCI received from the Plaintiff's Local Exchange Carrier ("LEC"). The Federal

2   Communications Commission ("FCC") recently issued a Report and Order and Further

3   Notice of Proposed Rulemaking that addresses the problem of LECs providing incorrect

4   information to long distance carriers such as MCI. As such, in accordance with well-

5   settled authority, this Court should defer to the FCC as the agency with specific expertise

6   in this area.

7   **II.    BACKGROUND**

8   **A.**

9   **THE PLAINTIFF'S ACCOUNT**

10          Plaintiff alleges that she has not contracted with MCI or obtained services from

11   MCI at any time since approximately 1999. Complaint at ¶ 24. She further alleges that

12   beginning in or around February 2003 and continuing thereafter, MCI assessed her a

13   monthly service charge and related charges in connection with an MCI long distance plan,

14   charges she had not incurred or authorized. *Id.*, ¶ 25. She does not state the amount of the

15   alleged charges. She further alleges that she attempted without success on several

16   occasions to have the unauthorized charges reversed or removed. *Id.*, ¶ 26. Finally, she

17   alleges that in July 2003 she received a collections notice for failure to pay the

18   unauthorized charges, that she subsequently paid them, and that MCI has not refunded the

19   charges. *Id.*, ¶¶ 27-29.[1]

20   _____

21   [1]On April 21, 2005, the California Public Utilities Commission ("CPUC") issued an
     "Order Instituting Investigation into the Operations of MCI, WorldCom, or MCI
22   WorldCom" (the "OII"). The OII alleged that MCI had charged certain customers a
     minimum usage fee ("MUF") in a manner that did not comply with the California Public
23   Utility Code. MCI has been cooperating with the CPUC since the OII was instituted. The
     CPUC's April 21, 2005 Order is a public document and has been posted on the CPUC's
24   website. On July 18, 2005, Everett filed her present putative class action complaint. The
     allegations in her complaint copy the CPUC's allegations in its April 21, 2005 Order, in
25   some instances taking statements verbatim from the OII without attribution.

26

2

LEWIS
AND
ROCA
LLP
LAWYERS

1    MCI's records show that a long distance service account was ordered by James T.

2    Everett in May 2000 (the "Everett Account") via an online order in which he secured a

3    promotion to earn miles with Southwest Airlines by signing up with MCI. See Exhibit A

4    (Affidavit of Amanda L. Childs) at ¶ 4. The address for James T. Everett is the same as

5    that for the plaintiff Shary Everett.[2] MCI does not have records of an account in Arizona

6    under the name "Shary Everett." *Id.* Moreover, MCI's records show that it received a call

7    regarding the Everett Account from a Ms. Everett in February 2003, a date which

8    corresponds to Everett's allegations in Paragraph 25 of her complaint. *Id.* at ¶ 8. It is

9    therefore plain that the Everett Account — the account opened by James T. Everett — is

10   the account at issue in Shary Everett's complaint.

11       The Everett Account was established for telephone number 623-932-9012 with long

12   distance and local long distance service.[3] *Id.* at ¶ 4. MCI's records show that in June

13   2002, MCI received a disconnect notice from the LEC on the Everett 623-932-9012

14   number, but for long distance services only. *Id.* In August 2002, Everett contacted MCI

15   and asked to cancel her long distance service with MCI. *Id.* at ¶ 5. In response, MCI

16   cancelled all service for phone number 623-932-9012. *Id.*

17

18

19   [2]An Internet search using zabasearch.com (which accesses public records) shows that
     Shary Everett and James T. Everett both reside at 14377 W. Alvarado Drive, Goodyear,
20   Arizona 85323-1610. The same search shows that Shary Everett's phone number is the
     same number as the phone number for James T. Everett.
21

22   [3]There are two components to switched long distance service, intra-LATA (local long
     distance) and inter-LATA (long distance). LATA stands for Local Access Transport Area,
23   which are imaginary boundaries that in the past were used to determine whether the local
     company or the long distance company will carry the long distance call. *Id.* Calls made
24   within the same LATA are intraLATA calls and calls made from one LATA to another are
     interLATA calls. A consumer can have separate carriers or the same carrier for each local,
25   intraLATA, and interLATA call. *Id.*

26

3

1674541.1



1         In December 2002, MCI received a "2005 Order" from the LEC for MCI to provide

2    long distance service for phone number 623-932-9012. Exhibit A at ¶ 7. *Id.* A "2005

3    Order" is defined as a subscription order in which the end user selected the carrier (in this

4    case MCI) through the LEC during a move. *Id.* In response to the notice from the LEC,

5    MCI updated the Everett Account to reflect that the 623-932-9012 number was active for

6    MCI for long distance service. *Id.* Because the account was now active with long distance

7    service, the account became subject to minimum usage fees as outlined in MCI's FCC

8    Tariff and the MCI General Service Agreement, which is mailed to all customers and

9    which is available on MCI's website. *Id.* Such fees were billed on the December 2002

10   and January 2003 invoices in the total amount of $9.88. *Id.*

11        The local telephone company, or LEC, provides dial tone and local service to a

12   consumer. The LEC also maintains records that indicate which company carries the long

13   distance traffic for a consumer at any given time and routes long distance calls

14   appropriately to the network of the selected long distance carrier. *Id.* at ¶ 2. Only a LEC,

15   and not a long distance carrier such as MCI, can switch a customer's long distance

16   provider from one carrier to another. In addition, as a consumer makes changes to service,

17   including switching their designated long distance carrier, the LEC will transmit

18   notification of the change to the appropriate long distance carrier(s). *Id.* MCI must rely

19   on the LEC for information on which customers are assigned by the LEC to MCI.

20   Accordingly, MCI had no reason to believe that phone number 623-932-9012 had not been

21   switched to MCI when it received the notice from the LEC.

22        MCI's records show Everett called in February 2003 regarding phone number 623-

23   932-9012 to dispute the authorization of the account. Exhibit A at ¶ 8. The MCI customer

24   service representative explained that MCI had received an order from the LEC and that the

25   account was established due to information received from the LEC. *Id.* MCI's records do

26   not show that Everett requested a credit during this call. *Id.* MCI's procedure at the time

4

LEWIS
AND
ROCA
LLP
L A W Y E R S

1   was to advise Everett to contact the LEC to switch services away from MCI in order to

2   cancel her account. *Id.* at ¶ 9. Within three days following Everett's call to MCI, a

3   disconnect order was received from the LEC indicating that 623-932-9012 was no longer

4   switched to MCI. *Id.* In response to that order, MCI cancelled the Everett Account. *Id.*

5        MCI guidelines allowed a customer service representative to credit Everett's

6   account for the billed fees since there was no usage on the account. Exhibit A at ¶ 10.

7   MCI's records show that Everett spoke with only one representative and there is no record

8   of a request for credit made by Everett on that call. *Id.* As a result, a credit was not issued

9   at that time. *Id.* There are no records of any other contacts with MCI nor any other

10  requests for credit by Everett. *Id.* As a result, the charges billed in December 2002 and

11  January 2003 remained on the account. *Id.* MCI's records indicate that in April 2003, the

12  account was paid in full. *Id.* There is no record of any collection effort for this account

13  after April 2003 at which time all charges had been recorded as paid in full. *Id.*

14       Upon learning from Everett's complaint in this case that she had not received credit

15  and confirming that there was no usage during the time in which she was billed, MCI took

16  action to credit Everett for the $9.88 that she paid plus interest. Exhibit A at ¶ 11. MCI

17  confirmed that the number 623-932-9012 is still in service with a different carrier in the

18  name of Tom Everett and according to a directory assistance search for 623-932-9012, the

19  address remains 14377 W Alvarado Dr. in Goodyear, AZ 85323-1610. *Id.* As a result, on

20  9/6/2005, a credit of $12.00 was transmitted by MCI to Cox Communications, the local

21  exchange carrier of record for 623-932-9012. *Id.* Cox Communications confirmed that

22  the credit was received and that an adjustment will appear on the September 26, 2005

23  invoice for that number. *Id.* This credit is within MCI credit guidelines and will fully

24  compensate Everett for the charges that she paid to MCI. *Id.*

25

26

5



## B.

## THE FCC NOTICE AND ORDER

On March 25, 2004, the FCC issued a Notice of Proposed Rulemaking (FCC 04-50; CG Docket No. 02-386) ("FCC Notice") to address whether all carriers (LECs and long distance carriers ("IXCs")) "should be subject to the same mandatory, minimum requirements with regards to the accurate and timely exchange of customer information." Exhibit B at p. 1. The FCC concluded that the recent proliferation of LECs and their failure to maintain accurate CARE[4] records has resulted in consumer complaints being attributed to long distance carriers. The FCC stated:

> "CARE data is not currently exchanged in a uniform manner now that the number of LECs has increased significantly. . . . IXCs may therefore be unaware of whether a customer remains on the network, has switched to another local or long distance carrier, has been disconnected, or has made changes to BNA information. This can . . . result in substantial increases in unbillable calls and customer complaints. . . . In addition, carriers may be viewed as being responsible for . . . continued billing, cramming, slamming . . . when they do not receive accurate, timely, or complete information regarding their customers' accounts."

Exhibit B at ¶ 5.

As a result of its investigation following the FCC Notice, the FCC found that consumer complaints have been caused by LECs providing imperfect and inaccurate information to carriers such as MCI. In its Final Report and Order and Further Notice of Proposed Rulemaking dated February 25, 2005 (the "FCC Order"), the FCC concluded: "we find that the record of this proceeding demonstrates that basic customer account information that carriers require to ensure accurate billing of end user customers and to execute end user customer requests in a timely manner is not being provided by all LECs . . ." February 25, 2005 Final Report and Order (FCC 04-50; CG Docket No. 02-386) attached as Exhibit C at ¶ 1. The FCC has taken steps to address this problem by

---

[4] "CARE" stands for Customer Account Record Exchange.

LEWIS
AND
ROCA
LLP
LAWYERS

1  adopting "new rules to facilitate the exchange of customer account information between

2  LECs and IXCs and to establish carriers' responsibilities with respect to such exchanges."

3  *Id.* at ¶ 2.

4  **III.    ARGUMENT**

5      A.    <u>Everett's Claim is Moot Because MCI Issued a Credit to Her in the Full
           Amount of the Charges in Dispute.</u>
6
7          In the present case, there is no actual, ongoing controversy.  It is undisputed that

8  MCI issued a credit to Everett in the amount of $12.00, which represents Everett's total

   potential damages in this case plus interest.  *See* Exhibit A at ¶ 11.  According to MCI's
9
   records, MCI provided the credit as soon as it learned that Everett was seeking a credit for
10
   the charges at issue.  *Id.* at ¶¶ 10-11.  This credit mooted Everett's own cause of action and
11
   rendered her ineligible to represent the putative class.  Article III of the U.S. Constitution
12
   requires a plaintiff to present an actual case or controversy, and this constitutional
13
   requirement is a prerequisite to the Court's exercise of subject-matter jurisdiction.
14
   *American-Arab Antidiscrimination Committee v. Thornburgh*, 940 F.2d 445, 448 (9th Cir.
15
   1991).  Because the only named plaintiff in this suit has no case or controversy, this case
16
   must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.
17
          In a "factual" challenge to subject-matter jurisdiction under Rule 12(b)(1), this
18
   Court may review evidence to determine if jurisdiction in fact exists.[5]  *Thornhill*
19

20  [5]It is well settled that a motion to dismiss for lack of subject matter jurisdiction (or Rule
    12(b)(1) motion) may refer to and rely upon affidavits and other evidence.  *See*
21  *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1558 (9th Cir.
    1987) ("The defendants' motion to dismiss for lack of subject matter jurisdiction was filed
22  as a 'speaking motion' because it was accompanied by two contracts and an affidavit");
    *Thornhill Publishing Co. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th
23  Cir. 1979) (considering affidavits); *Timberlane Lumber Co. v. Bank of America Nat'l Trust
    & Sav. Ass'n*, 574 F. Supp. 1453, 1461 (N.D. Cal. 1983) (same).  "Unlike a motion to
24  dismiss for failure to state a claim under Rule 12(b)(6), a motion to dismiss for lack of
    subject matter jurisdiction 'may be made as a speaking motion attacking the existence of
25  subject matter jurisdiction' without converting the motion into a summary judgment
26

7



LEWIS
AND
ROCA
LLP
L A W Y E R S

1  *Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.

2  1979). No presumptive truthfulness attaches to plaintiff's allegations, and the existence of

3  disputed material facts will not preclude the trial court from evaluating for itself the merits

4  of the jurisdictional claims. *Id.* The plaintiff bears the burden of proving that subject

5  matter jurisdiction does in fact exist. *Id.*

6      The doctrine of mootness has its source in the case-or-controversy limitation in

7  Article III of the Constitution. *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-

8  29 (9th Cir. 2005). Article III requires that a live controversy persist throughout all stages

9  of the litigation. *Id.* When this condition is not met, the case has become moot and is no

10  longer within the Court's constitutional purview. *Id.* *See also Deposit Guaranty Nat'l

11  Bank v. Roper*, 445 U.S. 326, 335 (1980) ("the definitive mootness of a case or

12  controversy . . . ousts the jurisdiction of the federal courts and requires dismissal of the

13  case"); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) ("Ordinarily,

14  simply determining that a plaintiff's case is moot dictates that his claim must be dismissed

15  for lack of subject matter jurisdiction.").

16      A case becomes moot when "the dispute between the parties no longer rages, or

17  when one of the parties loses his personal interest in the outcome of the suit." *Holstein*, 29

18  F.3d at 1147. Thus, a case will be subject to dismissal on grounds of mootness when a

19  defendant offers to satisfy the plaintiff's demand for relief. *Id.* at 1147 (holding that

20  plaintiff's claim was moot because city offered "all the damages due him"); *Rand v.

21  Monsanto Co.*, 926 F.2d 596, 597 (7th Cir. 1991) ("Once the defendant offers to satisfy the

22  

23  motion." *Trentacosta*, 813 F.2d at 1558 (quoting *Land v. Dollar*, 330 U.S. 731, 735 n. 4

(1947)). *See also Jensen v. Johnson County Youth Baseball League*, 838 F. Supp. 1437,

24  1440 (D. Kan. 1993) ("A 12(b)(1) motion is considered a 'speaking motion' and can

include references to evidence outside of the pleadings ...."); Wright & Miller, Federal

25  Practice & Procedure, Sec. 1366 (Supp. 1986) (same).

26

LEWIS
AND
ROCA
LLP
LAWYERS

1    plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who

2    refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has

3    no remaining stake."); *see also Lehnert v. Ferris Faculty Ass'n.*, 881 F.2d 1388, 1394 n.2

4    (6th Cir. 1988), *modified on other grounds,* 500 U.S. 507 (1991) ("We do not address this

5    issue because the [defendant] has made the issue moot by agreeing to refund the funds

6    involved").

7          The Article III limitations imposed by the mootness doctrine necessarily apply to

8    class actions. *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 129 (1975);

9    *Kuahulu v. Employers Insurance of Wausau*, 557 F.2d 1334, 1336 (9th Cir. 1977);

10   *Valentine v. Secretary of Health and Human Services*, 542 F. Supp. 76, 78 (N.D. Cal.

11   1982) ("the mootness of plaintiff's individual claim requires the Court to dismiss the class

12   action"); *see also Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("If the

13   plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the

14   claim as moot"); *Dallas Gay Alliance, Inc. v. Dallas County Hosp. Dist.*, 719 F. Supp.

15   1380, 1384 (N.D. Tex. 1989) ("A putative class representative who alleges no individual

16   injury may not seek relief on behalf of himself or any other member of a class"). Stated

17   another way, a plaintiff cannot represent a class of which he is not a member. *See Bailey

18   v. Patterson*, 369 U.S. 31, 31-32 (1962). If the claim of the class action plaintiff is moot,

19   the action must be dismissed under Fed. R. Civ. P. 12(b)(1).

20         Quite recently, in a case involving facts and legal issues directly on point with those

21   in this case, the District Court for the Eastern District of Michigan in *Manson v. MCI, Inc.

22   and Telecom *USA, Inc.* Case No. 04-73374 (E.D. Mich. Feb. 24, 2005)[6] (attached as

23   Exhibit D) dismissed a putative class action on mootness grounds. There, as here, the

24   plaintiff alleged that the defendants engaged in improper billing practices with respect to

25   ───────────────
     [6]This case is currently on appeal in the United States Court of Appeals for the Sixth
26   Circuit.

9

1674541.1



1   long distance telephone services;  there, as here, the defendants contended that the

2   plaintiff's claims were moot because the defendants issued a credit in the full amount of

3   the charges in dispute; there, as here, the defendants supported their mootness argument

4   with an affidavit; and there, as here, no class had been certified.  On these facts, the Court

5   in *Manson* dismissed the plaintiff's complaint, stating:  "MCI has issued a credit to

6   Plaintiff's LEC account in an amount equal to or greater than Plaintiff's total potential

7   damages in this case.  Thus there is no actual, ongoing controversy in this case.  This

8   credit mooted Plaintiff's action and renders him ineligible to represent the putative."

9   *Manson* (Ex. E) at 9.  This reasoning applies with equal force to the present case.  *See also*

10  *Labora v. MCI Telecommunications Corp.*, No. 98-1073-CIV-Highsmith D. (S.D. Fl.

11  July 20, 1998)[7] (dismissing putative class action alleging improper telecommunications

12  carrier billing practices on grounds of mootness, where telecommunications carrier

13  refunded charges at issue) (attached as Exhibit E).

14          Everett's request for "such other relief as this Court deems just and proper" does

15  not save her claim from dismissal on mootness grounds.  Such a request cannot be read as

16  a claim for nominal damages.  *Fox v. Board of Trustees of the State Univ. of N.Y.*, 764 F.

17  Supp. 747, 756 (N.D.N.Y. 1991), *modified on other grounds*, 148 F.R.D. 474 (N.D.N.Y.

18  1993).  "This court simply cannot read into plaintiff's . . . complaint a claim for damages,

19  nominal or otherwise, where none exists."  *Id.*

20          Likewise, Everett's request for costs and interest does not create a case or

21  controversy.  As Judge Fortas noted with extensive citation, "[a]n unbroken line of cases

22  establishes the rule that controversy as to costs alone does not salvage an otherwise moot

23  case."  *Bank of Marin v. England*, 385 U.S. 99, 111 n.1 (1966) (Fortas, J., dissenting)

24  (citations omitted).  MCI provided a credit to Everett that included interest.

25

26  [7]*Labora* was affirmed on appeal by the 11th Circuit Court of Appeals without an opinion.

10

LEWIS
AND
ROCA
LLP
LAWYERS

1    Nor does Everett's claim for attorneys' fees save this case from dismissal. The

2  Supreme Court has held:

> This interest in attorneys' fees is, of course, insufficient to
> create an Article III case or controversy where none exists on
> the merits of the underlying claim. Where on the face of the
> record it appears that the only concrete interest in the
> controversy has terminated, reasonable caution is needed to be
> sure that mooted litigation is not pressed forward, and
> unnecessary judicial pronouncements on even constitutional
> issues obtained, solely in order to obtain reimbursement of
> sunk costs.

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

Accordingly, because MCI has credited Everett's account in the full amount of the

charges at issue plus interest, Everett's claim is moot and her complaint must be dismissed

with prejudice. *See Simer v. Rios*, 661 F.2d 655, 660 (7th Cir. 1981) ("Since the eight

individual plaintiffs had received their relief and the class action had been denied, there

was no case or controversy before the court and [the court] ordered the case dismissed

with prejudice."), *cert. denied*, 456 U.S. 917 (1982); *Holstein v. City of Chicago*, 803 F.

Supp. 205, 210 (N.D. Ill. 1992) (holding that "because plaintiff Grove is unable to

demonstrate that an actual case or controversy exists, Counts I and II must be dismissed

with prejudice for a lack of subject matter jurisdiction"), *aff'd*, 29 F.3d 1145 (7th Cir.

1994).

**B.    Everett's Claims Fall Within the Primary Jurisdiction of the FCC.**

In Count I of her complaint, Everett alleges that MCI engaged in "unjust and

unreasonable" practices in violation of 47 U.S.C. § 201(b). In Count II of her complaint,

Everett alleges that MCI unreasonably discriminated against its customers in violation of

47 U.S.C. § 202. In Count III of her complaint, Everett alleges that MCI engaged in

improper billing contrary to the tariffed rates in violation of 47 U.S.C. § 203.[8] Resolution

---

[8] Count IV of the complaint, for unjust enrichment, is based solely on the allegations used
to support the Communications Act claims.

11

LEWIS
AND
ROCA
LLP
L A W Y E R S

1   of all three Communications Act claims will center on the relationship between LECs and

2   long distance carriers and the rules that govern the exchange of information between LECs

3   and long distance carriers. These claims fall within the primary jurisdiction of the FCC

4   and should be dismissed to be pursued in that forum.

5       Primary jurisdiction is a "doctrine under which courts may, under appropriate

6   circumstances, determine that the initial decisionmaking responsibility should be

7   performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v.*

8   *Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "It is a 'doctrine used by

9   the courts to allocate initial decisionmaking responsibility between agencies and courts

10  where such [jurisdictional] overlaps and potential for conflict exist.'" *Id.* (quoting Richard

11  J. Pierce, Jr., *Administrative Law Treatise*, § 14.1, p. 917 (4th ed. 2002)). "Primary

12  jurisdiction is properly invoked when a claim is cognizable in federal court but requires

13  resolution of an issue of first impression, or of a particularly complicated issue that

14  Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network*

15  *Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

16      In considering whether to dismiss a federal court action based on primary

17  jurisdiction, courts have considered these factors: (1) whether the question at issue is

18  within the conventional expertise of judges; (2) whether the question at issue lies

19  particularly within the agency's discretion or whether it requires the exercise of agency

20  expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4)

21  whether a prior application to the agency has been made. *See Total Telecommunications*

22  *Servs., Inc. v. American Tel. & Telegraph Co.*, 919 F. Supp. 472, 478 (D. D.C. 1996);

23  *AT&T, Co. v. MCI Telecommunications Corp.*, 837 F. Supp. 13, 16 (D. D.C.). Based on

24  application of these factors to this case, this case should be dismissed or referred to the

25  FCC.

26

12

1674541.1



1

2

###### 1.    The Issues Raised in the Complaint Require Agency Expertise and Are Not Within the Conventional Expertise of Judges.

3

4      Everett's complaint raises issues that are uniquely within the FCC's expertise and

5   that are not within the conventional experience of the courts. Everett was charged a MUF

6   after MCI received a "2005 Order" from a LEC. In other words, the LEC informed MCI

7   that there was a subscription order install for the number in question. Because MCI was

8   informed by the LEC that Everett was a customer, MCI charged a MUF in accordance

9   with its FCC Tariff and the General Service Agreement it maintains with its customers. In

10  determining whether or not MCI acted properly, one must examine the manner in which

11  LECs and long distance carriers ("IXCs") exchange information, the rules that apply to the

12  exchange of information between IXCs and the LECs, the rules that apply to how IXCs

13  should and can use information that is supplied by LECs, and which entity is liable, if any,

14  when an IXC relies on incorrect information provided by a LEC.

15      The FCC has the institutional knowledge and expertise to resolve disputes that arise

16  out of the exchange of information between IXCs and LECs. It knows what information

17  should be provided by LECs and what IXCs are permitted and/or required to do with that

18  information. As set forth above in the FCC Notice and the FCC Order, the FCC has been

19  active in addressing the very type of problem that forms the basis for the present

20  complaint. Since the issues involving the exchange of information between LECs and

21  IXCs are both specialized and technical in nature, the FCC is in a better position than the

22  courts to address those issues.

23      The doctrine of primary jurisdiction emphasizes that courts should defer to the

24  appropriate expert agency in cases such as this requiring administrative expertise and

25  raising "issues of fact not within the conventional experience of judges." *Far East*

26  *Conference v. United States*, 342 U.S. 570, 574 (1952). Courts have not hesitated to defer

13



LEWIS
AND
ROCA
LLP
LAWYERS

1    to the unique expertise of administrative agencies, including the FCC. *Miranda v.*

2    *Michigan*, 141 F.Supp.2d 747 (E.D. Mich. 2001); *MCI Telecommunications Corp. v.*

3    *AT&T*, 496 F.2d 214, 220-21 (3d Cir. 1974); *see, e.g., Alltel Tennessee v. Tennessee*

4    *Public Serv. Comm'n*, 913 F.2d 305, 309-10 (6th Cir. 1990); *Carter v. Am. Tel. & Tel Co.*,

5    365 F.2d 486, 497-98 (5th Cir. 1966).

6         The FCC is the administrative agency with expertise in the field of

7    telecommunications.  As explained in *AT&T Corp. v. PAB, Inc.*, 935 F. Supp. 584, 590

8    (E.D. Pa. 1996), "[t]he FCC is the expert regulatory agency on affairs relating to

9    telecommunications carriers," and "the FCC has the authority not only to determine the

10   reasonableness of rates and practices, but also to grant relief to those victimized by

11   unreasonable rates and practices." *See also* 47 U.S.C. §§ 207 through 209; *AT&T Corp. v.*

12   *IMR Capital Corp.*, 888 F. Supp. 221, 244 (D. Mass. 1995) ("[T]here is no doubt that a

13   determination of the reasonableness or discriminatory nature of common carrier rules and

14   charges is squarely at the heart of the FCC's mandate. . . . Indeed, the FCC was created by

15   Congress specifically to enforce the provisions of the Communications Act of 1934 . . . .")

16   (citations omitted); *Sprint Corp. v. Evans*, 846 F. Supp. 1497, 1508 (M.D. Ala. 1994)

17   ("The FCC is 'expert' at determining the rights and duties of a common carrier under the

18   Act").  In *Total Telecommunications Servs.*, this Court noted that the "FCC has broad

19   authority to evaluate both prices and terms of proposed rates, it can investigate existing

20   ones, and if necessary, prescribe alternatives. 919 F. Supp. at 478.  Its supervisory powers

21   extend to a carrier's "charges, practices, classifications, and regulations." 47 U.S.C.

22   § 201(b).  It concluded that the "powers granted to the FCC are a reflection of Congress'

23   intention that one governmental entity be vested with the responsibility of developing,

24   coordinating and enforcing a uniform telecommunications policy." *Id.*  Thus, courts have

25   routinely deferred to the unique expertise of the FCC in disputes involving tariff

26

14

1674541.1



1  interpretations. *See Allnet Communications Servs., Inc. v. National Exh. Carrier Ass'n,*

2  965 F.2d 1118, 1120 (D.C. Cir. 1992)

3         Further, the courts have long recognized that, in the context of regulated industries,

4  "reasonableness" is not a justiciable legal right. *See Gge. Am. Tank Car Corp. v. El*

5  *Dorado Terminal*, 308 U.S. 422, 432-33 (1939); *United States Navigation Co. v. Cunard*

6  *S. S. Co.*, 284 U.S. 474, 481-82 (1932); *Danna v. Air France*, 463 F.2d 407, 409-10 (2d

7  Cir. 1972). Rather, it is a criterion to be applied by the regulatory agency in determining

8  the lawfulness of a rate or practice. Here, resolution of Defendant's practice depends upon

9  a determination of statutory reasonableness that the Communications Act directs the FCC

10  to undertake in the first instance. 47 U.S.C. § 205(a).

11         **2.    Danger of Inconsistent Decisions**

12         There is a danger of inconsistent decisions if this matter is not addressed by the

13  FCC. As noted above, the present complaint is a "copycat complaint" that is based on the

14  Order Instituting Investigation brought by the CPUC. If this case is not dismissed on

15  primary jurisdiction grounds, there is a risk that this Court and the CPUC will adopt

16  positions that contradict each other. If Plaintiff is required to file her complaint with the

17  FCC, the FCC can render a decision that is national in scope and that will ensure that the

18  rules are applied uniformly throughout the country.

19         **3.    MCI Is Not Aware of a Prior Application to the FCC**

20         MCI is not aware of any prior application to the FCC on this precise issue. As

21  such, this factor also supports dismissal on primary jurisdiction grounds. Because the

22  FCC has not yet addressed a case involving the allegations raised by Plaintiff, it has not

23  had the opportunity to offer its guidance on how such allegations should be resolved.

24  Since the FCC has recently issued new rules governing the exchange of information

25  between long distance carriers and LECs in the FCC Order, it should be given the

26  opportunity to examine and/or apply those rules in the context of the present dispute.

1674541.1

LEWIS
AND
ROCA
LLP

L A W Y E R S

1
2
3    **IV.    CONCLUSION**
4        For the reasons set forth above, the complaint should be dismissed as moot.  In the
5    alternative, this Court should defer to the FCC and dismiss the complaint on primary
6    jurisdiction grounds.
7                    Respectfully submitted, this 29th day of September, 2005,
8                                LEWIS AND ROCA LLP
9
10                               s/Lawrence A. Kasten
                                     Lawrence A. Kasten
11                                   40 North Central Avenue
                                     Phoenix, Arizona 85004-4429
12                               and
13                               DLA PIPER RUDNICK GRAY CARY US LLP
14                                   6225 Smith Avenue
                                     Baltimore, Maryland 21209
15
16                               Attorneys for Defendant MCI, Inc.
17
18
19
20
21
22
23
24
25
26

                                16

LEWIS
AND
ROCA
LLP
L A W Y E R S

## CERTIFICATE OF SERVICE

1

2      I hereby certify that on September 29, 2005, I electronically transmitted the
attached document to the Clerk's Office using the CM/ECF System for filing and
3      transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4
      **Stefanie G Bernay**
5      sgb@girardgibbs.com

6      **Stephanie Bozzo**
      Stephanie@hbsslaw.com
7
      **Robert B Carey**
8      rcarey@hbsslaw.com

9      **Daniel C Girard**
10      dcg@girardgibbs.com

11      **Aaron M Sheanin**
      ams@girardgibbs.com
12
      **Joel Grant Woods**
13      gw@grantwoodspc.net

14

15      I hereby certify that on September 29, 2005, I served the attached document by first
class mail on the following, who are not registered participants of the CM/ECF System:
16
      **Sanjay M Ranchod**
17      Girard Gibbs & De Bartolomeo LLP
      601 California St
18      Ste 1400
      San Francisco, CA 94108
19

20      s/Michelle Blakeley

21

22

23

24

25

26

17

1674541.1