# EXHIBIT P



LEWIS
AND
ROCA
LLP
L A W Y E R S

1   40 North Central Avenue
Phoenix, Arizona 85004-4429
Facsimile (602) 262-5747
2   Telephone (602) 262-5311

3   Lawrence A. Kasten State Bar No. 020204
lkasten@lrlaw.com

4   DLA Piper Rudnick Gray Cary USLLP
6225 Smith Avenue
Baltimore, MD 21209
Facsimile (410) 580-3001
5   Telephone (410) 580-3000

6   Attorneys for Defendant MCI, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

SHARY EVERETT, on behalf of herself and )
all others similarly situated, )
                                 )    No. CIV 05-2122-PHX-ROS
               Plaintiff, )
                                   )    **REPLY MEMORANDUM IN**
vs.                            )    **FURTHER SUPPORT OF**
                                     )    **DEFENDANT'S MOTION TO**
MCI, INC., a Delaware Corporation,     )    **DISMISS**
                                     )
            Defendants. )   (Oral argument requested)
                                     )
                                     )

      Defendant MCI, Inc. ("MCI"), through its attorneys, submits this memorandum in

further support of its motion to dismiss plaintiff's complaint and in reply to plaintiff's

memorandum in opposition to MCI's motion.

**I.    Plaintiff's Claims are Moot**

      Plaintiff has not disputed MCI's assertion that it issued a credit to plaintiff in the

amount of $12.00, which represents plaintiff's total potential damages in this case plus

interest. Plaintiff nonetheless contends that she can continue in this case as a

representative of her putative class, even though she has never moved to certify a class.

She asserts that MCI is attempting to "pick [her] off," an alleged tactic she contends is

prohibited by binding precedent. Plaintiff, however, inaccurately describes both the nature

of MCI's mootness argument and the precedents on which she relies.

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    MCI is not attempting to "pick off" the plaintiff.  The cases that condemn this

2    practice involve offers of judgment.  *See, e.g., Weiss v. Regal Collections*, 385 F.3d 337

3    (3d Cir. 2004).  As explained in MCI's initial memorandum, MCI's contention that

4    plaintiff's claims, including her putative class action claims, are moot is not based on an

5    offer of judgment but on the payment to plaintiff in accordance with MCI's credit and

6    cancellation practices that predated plaintiff's complaint.  Although plaintiff may assert

7    that MCI's payment was merely a tactic directed specifically at her to negate her putative

8    class action claims, the Settlement Agreement between CPSD and MCI – which plaintiff

9    herself attaches and relies on – memorializes the facts that (1) in June 2005, before

10   plaintiff filed her complaint, MCI had instituted a new cancellation policy and (2) well

11   prior to the Settlement Agreement MCI had in place a liberal credit policy with regard to

12   consumer MUF-related complaints, which resulted in over 90% of persons making such

13   complaints receiving credits in the period ending the second quarter of 2005.  Settlement

14   Agreement, ¶¶ 21, 26, 27.  Plaintiff's characterization of MCI's payment as an attempt to

15   "pick her off" is thus negated by the CPSD documents on which she herself relies.

16   Plaintiff's characterization of the controlling case law on the mootness issue is also

17   inaccurate.  Plaintiff principally relies on *Weiss v. Regal Collections*, a Third Circuit case

18   she asserts is both factually apposite and legally binding.  The *Weiss* decision, however, is

19   neither apposite nor binding.  *Weiss* is not apposite because it involved an offer of

20   judgment, not the payment to the plaintiff in accordance with business practices that

21   predated the plaintiff's complaint.  It is not binding because it is a Third Circuit decision

22   that is not consistent with Ninth Circuit precedents.

23   In the Ninth Circuit, the general rule is that the mooting of the named plaintiff's

24   individual claim means that that plaintiff is not in a position to seek class action

25   certification as a class representative.  *Kennerly v. United States*, 721 F.2d 1252, 1260 (9th

26   Cir. 1983).  The Ninth Circuit recognizes exceptions to this general rule where a class has

2

1687635.1



1  been certified prior to the mooting of the named plaintiff's claims (or, for purposes of the

2  right to appeal, after denial of the named plaintiff's motion to certify), or where the

3  proposed class claims were "inherently transitory," *i.e.*, there is a "constantly changing

4  putative class." *Id.*; *see also Sze v. Immigration and Naturalization Service*, 153 F.3d

5  1005, 1008-1010 (9th Cir. 1998). Neither exception applies here: No class has been

6  certified, no motion to certify has been denied, and the putative class is not inherently

7  transitory. Plaintiff thus requests the Court to make two precedential leaps: first, accept

8  *Weiss* as apposite when it involves significantly different facts; and second, adopt the

9  holding in *Weiss*, which essentially creates a new exception to the mootness doctrine,

10  when the Ninth Circuit has never recognized such an exception. This request, MCI

11  respectfully submits, should be declined. *Cf Manson v. MCI, Inc. and Telecom\* USA,*

12  *Inc.*, No 04-73374 (E.D. Mich. Feb. 24, 2005), Exhibit E to MCI's Init. Motion at 7-8

13  (noting Sixth Circuit refusal to create a "picking off" exception to mootness doctrine).

14  Plaintiff also cites the Supreme Court's decision in *Deposit Guaranty Nat'l Bank v.*

15  *Roper*, 445 U.S. 326 (1980). That case involved the issue of the right of a named plaintiff

16  to appeal the denial of his class certification motion when the defendant tendered an offer

17  of judgment after the motion had been denied. The Supreme Court was careful to limit its

18  holding to these particular facts, which are not present in this case. *Id.* at 340 n.12. In the

19  twenty-five years since *Roper* was decided, no Ninth Circuit case has interpreted *Roper* in

20  the manner plaintiff urges. *Cf. Labora v. MCI Telecommunications Corp.*, No. 98-1073

21  CIV, 1998 WL 1572719 (S. D. Fla. July 20, 1998) (Exhibit F to MCI's Init. Memo.), *aff'd*

22  204 F.3d 1121 (11th Cir. 1999) (citing *Roper* in favor of its holding that plaintiff's claims

23  are moot).

24  **II.    MCI Will Challenge Any Motion to Substitute Plaintiffs**

25  Plaintiff asserts in her opposition that there are three other alleged class members

26  who "are prepared to act as class representatives, if requested by the Court or required by

3

1687635.1



1    the needs of this class action." Opp. at 9. Substitution should not be permitted without a

2    motion. No such motion to substitute has been filed, and MCI will oppose any such

3    motion, if and when it is filed. At this time, MCI will only briefly comment on plaintiff's

4    apparent proposed substitution.

5        First, MCI is unaware of any Ninth Circuit authority permitting substitution when

6    no class has been certified, except in the special circumstance where similarly situated

7    absent class members relied to their detriment on the named plaintiff's representation. *See*

8    *Kennerly*, 721 F.2d at 1260. This circumstance is not present here.

9        Second, it would appear from Mr. Hubert's declaration that he lacks standing to act

10   as a class representative, or even to bring an individual claim, as he has attested that he is

11   not the account holder for the account of which he complains. Hubart Declaration at ¶ 3.

12       Third, more generally, the substantially differing circumstances set forth in the

13   three declarations (including plaintiff-specific credit rating issues) and the remoteness of

14   their claims to the MUF issues described in plaintiff's complaint show the unlikelihood

15   that these plaintiffs could properly be substituted for Ms. Everett. Given its millions of

16   customers, billing issues inevitably arise for MCI, as for other large telecommunications

17   companies, in a variety of permutations. No class should be certified when the billing

18   issues exhibit the variety shown by the three declarations plaintiff has attached to her

19   opposition.

20   **III.    Plaintiff's Claims Fall Within the Primary Jurisdiction of the FCC**

21       As MCI explained in its motion to dismiss, plaintiff's claims against MCI result

22   from MCI charging an MUF after MCI received a "2005 Order" from a LEC. MCI Init.

23   Memo. at 13. If the LEC was accurate in informing MCI that plaintiff was a customer,

24   MCI was required to charge the MUF in accordance with its FCC Tariff and the General

25   Service Agreement it maintains with its customers. Thus, "[i]n determining whether or

26   not MCI acted properly, one must examine the manner in which LECs and long distance

4

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    carriers ("IXCs") exchange information, the rules that apply to the exchange of

2    information between IXCs and LECs, the rules that apply to how IXCs should and can use

3    information that is supplied by LECs, and which entity is liable, if any, when an IXC relies

4    on incorrect information provided by a LEC." *Id.*

5          Plaintiff challenges none of this in her opposition.  Instead, she argues that courts

6    have ruled that the FCC does not have primary jurisdiction in cases where the plaintiff do

7    not challenge the "reasonableness" of a rate.  Opposition at 11.  She then cites cases in

8    other jurisdictions where courts allegedly rejected arguments that the FCC maintains

9    primary jurisdiction in instances where the court found that the issue did not involve the

10   propriety of the rates being charged.  Plaintiff cites *Gilmore v. Southwestern Bell Mobile*

11   *Systems, L.L.C.*, 210 F.R.D. 212, 222 (N.D. Ill. 2001) and claims that in that case "[t]he

12   court found that the Communications Act claims did not directly attack the

13   ***reasonableness*** of the rate, but rather asserted that 'defendant breached the [cellular

14   telephone services] contract by adding an additional charge (the Fee) without providing

15   any additional service."  Opposition at 11 (emphasis added).

16         In citing these cases, plaintiff mischaracterizes MCI's position and ignores the

17   preeminence that the interpretation of FCC orders and rules will play in this litigation.

18   MCI is not arguing that the FCC has primary jurisdiction merely because this case

19   involves the "reasonableness" of MCI's rates.  Rather, the FCC has primary jurisdiction

20   because the FCC has the knowledge and expertise to resolve disputes arising out of the

21   exchange of information between IXCs and LECs:  the FCC "knows what information

22   should be provided by LECs and what IXC's are permitted and/ or required to do with that

23   information."  MCI Init. Memo. at 13.  As the *Gilmore* Court acknowledged, deferral

24   based on primary jurisdiction is proper not just when rate "reasonableness" is in question,

25   but when the case involves "technical or policy issues within the [FCC's] field of

26   expertise."  212 F.R.D. at 221.  This case involves such technical and policy issues.

5

1687635.1



LEWIS
AND
ROCA
LLP
L A W Y E R S

1    Indeed, plaintiff acknowledges the complexity and policy interests in play when she

2    attempts to distinguish her action from the rulemaking proceeding in the FCC Order and

3    FCC Notice. Opposition at 13-14. She goes through pains to explain why she believes

4    that this action does not implicate the FCC Order or FCC Notice, concluding that "[t]his

5    case is about what MCI did with the information it got from the LECs, rather than how

6    MCI got the information from the LECs." Opposition at 13. This distinction is

7    insubstantial and plainly wrong. What MCI may do in reliance upon information it

8    receives from the LEC is precisely the type of issue that is within the expertise of the FCC.

9    These issues should not be resolved by this Court without the FCC's institutional and

10    technical knowledge.

11    MCI would add as well that plaintiff's virtually complete reliance on the CPSD

12    proceeding to state and defend her theory of the case belies her assertion that this matter is

13    not appropriate for agency determination. The CPSD's expertise is much like that of the

14    FCC, and the CPSD's resolution of the complex MUF issues in California underscores the

15    appropriateness of deferring these issues on a nationwide basis to the FCC.

16    **IV.    Plaintiff Has Mischaracterized the Documents Attached to the Opposition to
       the Motion to Dismiss**

17
       It is an understatement to say that the plaintiff, in bringing her complaint and
18
       defending against MCI's motion to dismiss, has relied on documents from the California
19
       Public Utilities Commission's Consumer Protection and Safety Division ("CPSD"). In
20
       reality, plaintiff's complaint does little more than copy, sometimes nearly verbatim, the
21
       allegations in the CPSD's April 21, 2005 "Order Instituting Investigation into the
22
       Operations of MCI, WorldCom, or MCI WorldCom" ("OII"), and except for the affidavits
23
       from the proposed possible substitute plaintiffs, every document plaintiff has attached to
24
       her opposition memorandum has been drawn from the CPSD's OII investigation. Plaintiff
25

26

6

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    in her opposition memorandum, however, mischaracterizes or ignores the plain import of

2    the CPSD documents on which she relies.

3        The first paragraph on page three of plaintiff's opposition memorandum provides a

4    clear example of this. Plaintiff there states:

5            As alleged in the Complaint and confirmed by documents
             made available in the CPUC proceeding, MCI purchases
6            electronic data from LECs to identify telephone lines that are
             assigned to MCI for long-distance service. See Complaint,
7            ¶¶ 8-10 . . . . The data MCI purchases from the LECs is dated
             and unreliable. Many of the persons ultimately billed have
8            terminated service and are no longer customers of MCI.
             Others were never MCI customers in the first place, but were
9            instead assigned a number previously assigned to an MCI
             customer. See Complaint, ¶ 11. MCI nevertheless uses LEC
10           data to create a new account for the "end user" associated with
             the line and enrolls the end user in an MCI "calling plan" (the
11           "Basic Dial-1" plan) which provides for an MUF. See id.,
             ¶ 14. MCI makes no attempt to contact consumers to verify
12           that they are or wish to be MCI long-distance customers or
             check its own records to determine whether the consumers
13           previously terminated or attempted to cancel MCI long-
             distance service. See id., ¶ 13. MCI then bills these
14           individuals, either directly or through the LEC, for an MUF
             and related charges for each line PIC'd to MCI. See id., ¶ 18.
15           Many consumers inadvertently pay the charges.

16   Plaintiff thus recites the allegations in her complaint, which parrot the allegations in the

17   CPSD's April 21, 2005 OII. But the CPSD's allegations were just that — allegations,

18   made before its investigation. The CPSD's conclusions after its investigation are set forth

19   in the Settlement Agreement that accompanied the CPSD's and MCI's Joint Motion for

20   Approval of Settlement Agreement (Exhibit E to plaintiff's opposition memorandum),

21   which was filed on October 3, 2005. There, in Paragraphs 12 and 13, as part of the Joint

22   Statement of the Case, and again in Paragraph 23 the CPSD makes perfectly clear that in

23   January 2003 – over two and a half years ago — MCI *ended* the practice of which plaintiff

24   complains. Plaintiff has thus failed to inform the Court that, as shown on the CPSD

25   documents she herself has submitted, MCI long ago ended the practice that forms the

26   gravamen of her complaint.

                                      7

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    Exhibits C and D to plaintiff's opposition provide additional examples of plaintiff's

2    inaccurate characterization of the CPSD documents.  Those exhibits are, respectively, a

3    "Business Case Write-Up" and an e-mail chain relating to the Minimum Usage Fee, both

4    of which were made available to the public through the CPSD OII proceeding.  Plaintiff

5    casts these documents as proof of MCI's plans to bilk the public through the Minimum

6    Usage Fee ("MUF").  *See* Pl's Opp. Memo. at 3.  But there is nothing inherently unfair or

7    inappropriate about a minimum usage fee.  Such fees are widely used throughout the

8    telecom industry and in other industries.  *Cf. Brown v. MCI WorldCom Network Services,*

9    *Inc.*, 277 F.3d 1166, 1171 (9th Cir. 2002) (noting that MCI's tariff authorizes MCI to

10   charge a MUF).  Exhibits C and D do nothing more than analyze the benefits of employing

11   this common business practice.  The plaintiff asks the Court to accept these documents as

12   evidence of something tantamount to fraud, but the CPSD, which obviously reviewed the

13   documents, did not draw this inference, and no such inference is appropriate.

14   A third example of plaintiff's inaccurate characterization of the CPSD documents

15   concerns the plaintiff's description of the MCI/CPSD Settlement Agreement.  Plaintiff

16   makes reference to this agreement, but does not inform the Court that MCI has instituted a

17   new cancellation process designed to ensure the consumers receive multiple notices

18   relating to the effects of cancellation, Settlement Agreement at ¶ 21;[1]  that under MCI's

19   new cancellation policy consumers who request cancellation will not be billed an MUF

20   following the billing period in which cancellation is requested,  *id.* at ¶ 22;  that MCI has

21   used historically and will continue to use a liberal credit policy pursuant to which a

22   customer service representative is authorized and instructed to credit a customer who

23   contends that he or she was inappropriately charged an MUF, *id.*, at ¶ 26;  and that as a

---

[1]    Although the new cancellation process is contained in the Settlement Agreement
with California, MCI instituted the new cancellation process prior to the execution of the
Settlement Agreement and developed the new cancellation process prior to the institution
of the OII.

8



1   result of MCI's continuing efforts to address MUF issues, complaints relating to MUFs

2   have decreased dramatically, from approximately 2400 in the first quarter of 2003 to

3   approximately 300 during the second quarter of 2005, *id.* at ¶ 17.[2] Although the new

4   cancellation policy and liberal credit policy are set forth in the California Settlement

5   Agreement, these policies have been adopted by MCI on a nationwide basis. *See* Affidavit

6   of Gail Garey attached as Exhibit A.

### Conclusion

8         For the reasons set forth above and in the memorandum in support of the motion to

9   dismiss, the complaint should be dismissed on mootness grounds. In the alternative, MCI

10  respectfully requests that this Court dismiss the present action on primary jurisdiction

11  grounds so that the FCC can address the issues raised by Plaintiff.

12        Respectfully submitted, this 15th day of November, 2005,

13                        LEWIS AND ROCA LLP

15                        s/Lawrence A. Kasten
                          Lawrence A. Kasten
16                        40 North Central Avenue
                          Phoenix, Arizona 85004-4429

17                        and

18                        DLA PIPER RUDNICK GRAY CARY US LLP
                          6225 Smith Avenue
19                        Baltimore, Maryland 21209

20                        Attorneys for Defendant MCI, Inc.

---

[2]       Not every complaint received by MCI, of course, is well-founded. MCI, however, has pledged to examine every complaint in accordance with its new cancellation and liberal credit policies.

9



# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2005, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Stefanie G Bernay**
sgb@girardgibbs.com

**Stephanie Bozzo**
Stephanie@hbsslaw.com

**Robert B Carey**
rcarey@hbsslaw.com

**Daniel C Girard**
dcg@girardgibbs.com

**Aaron M Sheanin**
ams@girardgibbs.com

**Joel Grant Woods**
gw@grantwoodspc.net

I hereby certify that on November 15, 2005, I served the attached document by first class mail on the following, who are not registered participants of the CM/ECF System:

**Sanjay M Ranchod**
Girard Gibbs & De Bartolomeo LLP
601 California St
Ste 1400
San Francisco, CA 94108

/s/May Livingston

10

1687635.1

# EXHIBIT Q



LEWIS
AND
ROCA
LLP
L A W Y E R S

1    40 North Central Avenue
     Phoenix, Arizona 85004-4429
     Facsimile (602) 262-5747
2    Telephone (602) 262-5311

3    Lawrence A. Kasten State Bar No. 020204
     lkasten@lrlaw.com

4    DLA Piper US LLP
     6225 Smith Avenue
     Baltimore, MD 21209
5    Facsimile (410) 580-3001
     Telephone (410) 580-3000

6    Attorneys for Defendant MCI, Inc.

7

8

9

10

11

12                   UNITED STATES DISTRICT COURT

13                        DISTRICT OF ARIZONA

14   SHARY EVERETT, on behalf of herself an      )
     all other similarly situated,               )
15                                               )    No. CIV 05-2122-PHX-ROS
                                Plaintiff,       )
16                                               )    **DEFENDANT'S ANSWER**
         vs.                                     )
17                                               )
     MCI, INC., a Delaware Corporation,          )
18                                               )
                                Defendant.       )
19                                               )
                                                 )
20                                               )

21       Defendant MCI, Inc. ("MCI" or "Defendant"), answers Plaintiff's Complaint as

22   follows:

23       1.     The allegations of Paragraph 1 assert legal conclusions to which no response

24   is required.

25       2.     MCI denies the allegations of Paragraph 2.

26

                                                                    BALT1:4290410 V1

LEWIS
AND
ROCA
LLP
L A W Y E R S

1       3.     MCI denies the allegations of Paragraph 3.

2       4.     MCI denies the allegations of Paragraph 4.

3       5.     The allegations of Paragraph 5 assert legal conclusions to which no response

4 is required.  To the extent a response is required, MCI denies the allegations of

5 Paragraph 5.

6       6.     MCI is without knowledge sufficient to admit or deny the allegations of

7 Paragraph 6 and therefore denies the allegations.

8       7.     MCI denies the allegations of Paragraph 7.

9       8.     MCI admits the allegations of Paragraph 8.

10      9.     MCI denies the allegations of Paragraph 9.

11

12    10.    MCI denies the allegations of Paragraph 10.

13    11.    MCI denies the allegations of Paragraph 11.

14    12.    MCI denies the allegations of Paragraph 12.

15    13.    MCI denies the allegations of Paragraph 13.

16    14.    MCI denies the allegations of Paragraph 14.

17    15.    MCI denies the allegations of Paragraph 15.

18    16.    Plaintiff's quotations from the document are taken out of context.  The

19 document speaks for itself.  MCI denies the remaining allegations of Paragraph 16.

20    17.    MCI denies the allegations of Paragraph 17.

21    18.    MCI denies the allegations of Paragraph 18.

22    19.    MCI denies the allegations of Paragraph 19.

23    20.    MCI denies the allegations of Paragraph 20.

24

25    21.    MCI denies the allegations of Paragraph 21.

26

2

LEWIS
AND
ROCA
LLP
L A W Y E R S

22.    MCI denies the allegations of Paragraph 22.

23.    MCI is without knowledge or information sufficient to admit or deny the allegations of Paragraph 23 and therefore denies the allegations.

24.    MCI admits that Mrs. Everett did not have a contract with MCI after 1999. The MCI account was in the name of James Everett. MCI denies the remaining allegations of Paragraph 24.

25.    MCI admits that Mrs. Everett did not incur any charges from MCI in or around February 2003. The MCI account was in the name of James Everett. MCI denies the remaining allegations of Paragraph 25.

26.    MCI denies the allegations of Paragraph 26.

27.    MCI denies the allegations of Paragraph 27.

28.    MCI denies the allegations of Paragraph 28.

29.    MCI denies the allegations of Paragraph 29.

30.    Paragraph 30 consists of a class definition, presumably of a class that Plaintiff believes she may represent pursuant to Fed. R. Civ. P. 23, and, accordingly, does not appear to state any allegation that may be admitted or denied. To the extent a response is required, MCI admits that the complaint purports to state class allegations, but denies that any such class is entitled to relief or that certification is appropriate. To the extent further response is deemed necessary, MCI denies the allegations of Paragraph 30.

31.    The allegations of Paragraph 31 assert legal conclusions to which no response is required. To the extent a response is required, MCI denies the allegations of Paragraph 31.

32.    The allegations of Paragraph 32 assert legal conclusions to which no response is required. To the extent a response is required, MCI denies the allegations of Paragraph 32.

3

LEWIS
AND
ROCA
LLP
L A W Y E R S

33.    The allegations of Paragraph 33 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 33.

34.    The allegations of Paragraph 34 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 34.

35.    The allegations of Paragraph 35 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 35.

36.    The allegations of Paragraph 36 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 36.

37.    The allegations of Paragraph 37 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 37.

38.    MCI repeats, realleges, and incorporates its responses to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.    The allegations of Paragraph 39 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 39.

40.    The allegations of Paragraph 40 assert legal conclusions to which no response is required.

41.    The allegations of Paragraph 41 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 41.

4

LEWIS
AND
ROCA
LLP
L A W Y E R S

1    42.    The allegations of Paragraph 42 assert legal conclusions to which no

2    response is required.  To the extent a response is required, MCI denies the allegations of

3    Paragraph 42.

4    43.    MCI denies the allegations of Paragraph 43.

5    44.    MCI denies the allegations of Paragraph 44.

6    45.    MCI repeats, realleges, and incorporates its responses to Paragraphs 1

7    through 44 of the Complaint as if fully set forth herein.

8    46.    The allegations of Paragraph 46 assert legal conclusions to which no

9    response is required.  To the extent a response is required, MCI denies the allegations of

10   Paragraph 46.

11   47.    The allegations of Paragraph 47 assert legal conclusions to which no

12   response is required.

13

14   48.    MCI admits that, pursuant to its liberal and long-standing credit policy, it has

15   issued credits to certain consumers who have asserted that they have received an

16   unauthorized charge.  MCI denies the remaining allegations of Paragraph 48.

17   49.    MCI denies the allegations of Paragraph 49.

18   50.    MCI denies the allegations of Paragraph 50.

19   51.    MCI denies the allegations of Paragraph 51.

20   52.    MCI repeats, realleges, and incorporates its responses to Paragraphs 1

21   through 51 of the Complaint as if fully set forth herein.

22   53.    The allegations of Paragraph 53 assert legal conclusions to which no

23   response is required.  To the extent a response is required, MCI denies the allegations of

24   Paragraph 53.

25

26

5

LEWIS
AND
ROCA
LLP
L A W Y E R S

54.     The allegations of Paragraph 54 assert legal conclusions to which no response is required.

55.     MCI denies the allegations of Paragraph 55.

56.     MCI denies the allegations of Paragraph 56.

57.     MCI denies the allegations of Paragraph 57.

58.     MCI denies the allegations of Paragraph 58.

59.     MCI repeats, realleges, and incorporates its responses to Paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.     The allegations of Paragraph 60 assert legal conclusions to which no response is required.  To the extent a response is required, MCI denies the allegations of Paragraph 60.

61.     MCI denies the allegations of Paragraph 61.

62.     MCI denies the allegations of Paragraph 62.

63.     MCI denies the allegations of Paragraph 63.

## AFFIRMATIVE DEFENSES

MCI sets forth below its affirmative defenses.  Each defense is asserted as to all causes of action against MCI.  By setting forth these affirmative defenses, MCI does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject matter necessarily is relevant to Plaintiff's allegations.

BALT1:4290410 V1



**LEWIS**
AND
**ROCA**
LLP
L A W Y E R S

1
2
3
4

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each cause of action alleged therein, fail to state facts sufficient to constitute a cause of action against MCI.

5
6

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by federal statutes of limitation.

7
8

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by common law and state law statutes of limitation.

9
10
11
12

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the filed tariff and/or filed rate doctrine.

13
14
15
16

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by discharge in bankruptcy, including, but not limited to, the bankruptcy proceedings of WorldCom, Inc. and its subsidiaries.

17
18
19
20

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the failure of Plaintiff to file a notice of claim in the bankruptcy court by the Claims Bar Date.

21
22
23
24

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the settlement or accord and satisfaction of Plaintiff's claims.

25
26

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

7

LEWIS
AND
ROCA
LLP
L A W Y E R S

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of equitable estoppel and/or quasi estoppel.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the Supremacy Clause of the United States Constitution, article VI, Section 2, because those claims are preempted and/or precluded by federal law, including but not limited to, the Communications Act.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the relief sought conflicts with federal law and the rules and regulations of the Federal Communications Commission.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that the claims or the relief sought are moot.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of <u>res judicata</u> and estoppel.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are not appropriate for a class action.

8

LEWIS
AND
ROCA
LLP
L A W Y E R S

1

## SIXTEENTH AFFIRMATIVE DEFENSE

2

Plaintiff is not an adequate representative of the purported class.

3

## SEVENTEENTH AFFIRMATIVE DEFENSE

4

5

Plaintiff lacks standing to bring this action.

6

## EIGHTEENTH AFFIRMATIVE DEFENSE

7

Plaintiff's claims are barred by the doctrine of payment.

8

## NINETEENTH AFFIRMATIVE DEFENSE

9

10

MCI hereby gives notice that it intends to rely upon any other defense that may

11

become available or appear during the discovery proceedings in this case, and hereby

12

reserves the right to amend its Answer to assert any such defenses.

13

## TWENTIETH AFFIRMATIVE DEFENSE

14

15

Plaintiff's claims are barred by the doctrine of primary jurisdiction.

16

## TWENTY-FIRST AFFIRMATIVE DEFENSE

17

On information and belief, MCI alleges that members of the proposed class are

18

19

subject to affirmative defenses identical or similar to, or in addition to, those set forth in

20

the foregoing affirmative defenses of this Answer. If the case goes forward as a class

21

action, and upon further factual development and identification of putative class members

22

with more precision, MCI will state by supplemental disclosure any additional affirmative

23

24

defenses that may be applicable to each putative class member.

25

26

9

BALT1:4290410 V1



LEWIS
AND
ROCA
LLP
L A W Y E R S

1

## TWENTY-SECOND AFFIRMATIVE DEFENSE

2

MCI intends to rely upon, reserves its right to assert, and hereby pleads such other

3

and related defenses as may become available in the event of a determination that the

4

5    action, or some part thereof, is governed by the substantive law of a State other than

6    Arizona or of a foreign country.

7

## PRAYER FOR RELIEF

8

MCI prays for entry of judgment in its favor and against Plaintiff as follows:

9

10        1 .    That the Complaint be dismissed in its entirety with prejudice;

11        2.    That Plaintiff take nothing by way of the Complaint;

12

13        3.    That MCI recover its costs, disbursements, and attorneys' fees in this

           action; and

14

15        4.    For such other and further relief as this Court deems just and proper.

16

Dated:  October 16, 2006.

17

                       LEWIS AND ROCA LLP

18

19                           s/Lawrence A. Kasten
                         Lawrence A. Kasten

20                             40 North Central Avenue
                         Phoenix, Arizona 85004-4429

21

22                           and

23                           DLA PIPER US LLP
                         6225 Smith Avenue
                         Baltimore, Maryland 21209

24

25                           Attorneys for Defendant MCI, Inc.

26

10



LEWIS
AND
ROCA
LLP
L A W Y E R S

**CERTIFICATE OF SERVICE**

1

2      I hereby certify that on October 16, 2006, I electronically transmitted the attached
       document to the Clerk's Office using the CM/ECF System for filing and transmittal
3      of a Notice of Electronic Filing to the following CM/ECF registrants:

4      **Stefanie G Bernay**
5      sgb@girardgibbs.com

6      **Stephanie Bozzo**
       Stephanie@hbsslaw.com
7

8      **Robert B Carey**
       rcarey@hbsslaw.com
9
       **Daniel C Girard**
10     dcg@girardgibbs.com

11     **Aaron M Sheanin**
       ams@girardgibbs.com
12

13     **Joel Grant Woods**
       gw@grantwoodspc.net
14

15     I hereby certify that on October 16, 2006, I served the attached document by first
16     class mail on the following, who are not registered participants of the CM/ECF System:

17     **Sanjay M Ranchod**
       Girard Gibbs & De Bartolomeo LLP
       601 California St
18     Ste 1400
       San Francisco, CA 94108
19

20                            _s/Lynette Drafton_____

21

22

23

24

25

26

                                    11

# EXHIBIT R

1   Grant Woods (AZ Bar No. 006106)          Lawrence A. Kasten (AZ Bar No. 020204)
    **GRANT WOODS, PC**                       **LEWIS & ROCA LLP**
2   1726 North Seventh Street                 40 North Central Avenue
    Phoenix, Arizona 85006                    Phoenix, Arizona  85004-4429
3   Telephone: (602) 258-2599                 Telephone:  (602) 262-5311
    Facsimile: (602) 258-5070                 Facsimile:  (602) 262-5311
4
    Robert B. Carey (AZ Bar No. 011186)       Henry Weissmann (admitted *pro hac vice*)
5   Stephanie Levin Bozzo (AZ Bar No. 018470) Kristin S. Escalante (admitted *pro hac vice*)
    **HAGENS BERMAN SOBOL**                    Jean Y. Rhee (admitted *pro hac vice*)
6   **SHAPIRO PLLC**                           **MUNGER TOLLES & OLSON LLP**
    2425 E. Camelback Road, Suite 650         355 South Grand Avenue, 35th Floor
7   Phoenix, Arizona 85016                    Los Angeles, California 90071-1560
    Telephone: (602) 840-5900                 Telephone:  (213) 683-9100
8   Facsimile: (602) 840-3012                 Facsimile:  (213) 687-3702

9   Daniel C. Girard (admitted *pro hac vice*)  Attorneys for Defendant MCI, Inc.
    A. J. De Bartolomeo (admitted *pro hac vice*)
10  Aaron M. Sheanin (admitted *pro hac vice*)
    Amanda M. Steiner (admitted *pro hac vice*)
11  **GIRARD GIBBS LLP**
    601 California Street, 14th Floor
12  San Francisco, California 94108
    Telephone: (415) 981-4800
13  Facsimile: (415) 981-4846

14  Attorneys for Individual and Representative
    Plaintiff Shary Everett
15

16
                    **UNITED STATES DISTRICT COURT**
17
                        **DISTRICT OF ARIZONA**
18

19  SHARY EVERETT, on behalf of herself and    Case No.  CIV 05-2122-PHX-ROS
    all others similarly situated,
20
                    Plaintiff
21                                             **PROPOSED JOINT CASE MANAGEMENT
                                               PLAN**
22      v.

23
    MCI, INC., a Delaware Corporation,
24
                    Defendant.
25

26

27

28

                        PROPOSED JOINT CASE MANAGEMENT PLAN

1    Pursuant to this Court's May 14, 2007 Order (Doc. No. 101), the parties hereby jointly

2    submit the following proposed Case Management Plan:

3        1.    Following is a description of the nature of the case:

4        A.    Plaintiff's Statement of the Case

5        This is a class action on behalf of all persons in the United States who were assessed

6    monthly "minimum usage" fees and related charges by long-distance telephone carrier MCI,

7    Inc., despite the fact that they did not have an active account with MCI or an ongoing business

8    relationship with MCI at any relevant time.   According to internal MCI documents, the

9    company concluded it could earn a 3,600 percent return on its investment by implementing an

10    aggressive new billing initiative directed at non-customers of MCI.  MCI used data feeds from

11    local exchange carriers to identify individual telephone lines it referred to as "Zero Usage/No

12    Plan customers," who were people shown on MCI's electronic billing systems as not using

13    MCI long distance usage and not enrolled in an MCI billing plan.

14        Plaintiff alleges that MCI enrolled these individuals (without their authorization) in a

15    "billing plan" that provides for a "minimum usage" fee – a monthly fee that is assessed

16    whether or not the consumer makes any long-distance calls on the MCI network.  MCI then

17    bills consumers for the monthly charges and other related fees and taxes.  Consumers who fail

18    to pay are threatened with adverse notations on their credit reports.   When consumers

19    complain, MCI uses their calls as an opportunity to sell long distance service, refusing to issue

20    refunds and conditioning credits for past charges on the consumer's agreement to enroll for

21    MCI long distance service. (An overview of the alleged facts and evidentiary support appears

22    in Plaintiff's May 30, 2006 Motion for Class Certification at pages 1-7.)

23        On September 30, 2005, MCI and the Public Utilities Commission of the State of

24    California ("CPUC") jointly moved to settle an investigation by the CPUC into MCI's practice

25    of billing former customers a monthly minimum usage fee without their authorization.  The

26    CPUC's investigation and settlement pertained to California consumers who had complained

27    to the CPUC only.  In the Settlement Agreement, MCI acknowledged that it created new

28

1  accounts for and charged minimum usage fees to consumers who had not requested or
2  authorized MCI to be their long-distance telephone carrier. Plaintiff's investigation shows that
3  MCI continues to bill minimum usage fees to non-customers and former customers
4  nationwide, despite the CPUC settlement.

5      Plaintiff Shary Everett is not an MCI customer. She has not had a business relationship
6  with MCI at any relevant time. Still, MCI billed a minimum usage fee on an "account" that
7  neither she nor her husband authorized or used. Plaintiff filed this class action on behalf of
8  herself and all non-MCI customers who were billed monthly fees by MCI, asserting four
9  causes of action: (1) violation of Section 201 of the Communications Act of 1934; (2)
10  violation of Section 202 of the Communications Act of 1934; (3) violation of Section 203 of
11  the Communications Act of 1934; and (4) unjust enrichment.

12      On September 29, 2005, MCI moved to dismiss, arguing that (1) Plaintiff's claim was
13  moot because MCI had issued a credit to her after she filed the case, and (2) the Federal
14  Communications Commission has primary jurisdiction over the case. On September 29, 2006,
15  the Court denied MCI's Motion To Dismiss. *Everett v. MCI, Inc.*, Case No. CIV 05-2122-
16  PHX-ROS, 2006 U.S. Dist. LEXIS 71871 (D. Ariz. Sep. 29, 2006).

17      On May 30, 2006, Plaintiff filed a motion for certification of a proposed nationwide
18  class, defined as: All "zero usage non-Plan Consumers" who were enrolled by MCI in an
19  account for which MCI charged a minimum usage fee, monthly recurring charge or other
20  monthly service charge, however denominated, on or after July 18, 2001; and paid such
21  charges.

22      Plaintiff seeks the following relief: (1) an order declaring MCI's conduct unlawful; (2)
23  an order permanently enjoining MCI from engaging in the unlawful conduct alleged in the
24  Complaint, including MCI's attempts to collect the unauthorized charges directly or through
25  collections agencies; (3) an order directing MCI to withdraw or reverse adverse reports made
26  to credit reporting agencies in connection with the conduct alleged in the Complaint; (4)
27  restitution, disgorgement or other equitable relief; (5) compensatory, consequential and

28

1  incidental damages to Plaintiff and the Class; (6) pre-judgment and post-judgment interest; (7)

2  an award of reasonable attorneys' fees and costs; and (8) such other relief as the Court may

3  deem just and proper.

4       On October 31, 2006, MCI filed a Motion For Judgment On The Pleadings Or, In The

5  Alternative, Motion For Summary Judgment, arguing that the April 20, 2004 Confirmation

6  Order approving the Chapter 11 reorganization plan of MCI's predecessor, WorldCom, Inc.,

7  discharged Plaintiff's claims. That motion has been fully briefed since November 30, 2006.

8       B.    <u>Defendant's Statement of the Case</u>

9       In this action, Plaintiff Shary Everett asserts claims under the Federal Communications

10  Act and state law on behalf of herself and a putative class to recover minimum usage fees

11  assessed against her and other consumers for long distance services. Plaintiff alleges that she

12  was not an MCI customer at the time the fees were assessed and that the fees were thus

13  improper. The evidence will show that MCI properly assessed the minimum usage fee against

14  plaintiff, that plaintiff's claims are barred by several affirmative defenses, and that the case is

15  not suitable for class treatment because individual issues predominate over common ones.

16       Plaintiff's claims arise out of the procedure by which a residential customer is assigned

17  to an interexchange carrier (also known as a long distance carrier). A consumer generally

18  initiates telephone service by contacting a local exchange carrier ("LEC"). The consumer

19  communicates its choice of an interexchange carrier to the LEC, and the LEC sets a switch that

20  routes long distance calls through the preferred interexchange carrier's network. Only the

21  LEC can set the switch that places the consumer on the interexchange carrier's network.

22  When the switch is so set, the customer is said to be "subscribed" or "PIC'd" to the

23  interexchange carrier. After the customer informs the LEC of its choice of an interexchange

24  carrier, the LEC must notify the interexchange carrier so the carrier can establish an account

25  for the customer.

26       The customer may – but is not required to – contact the interexchange carrier to enroll

27  in an optional calling plan. At all relevant times, if a customer who was subscribed to MCI did

28

1    not enroll in an optional calling plan, he or she was enrolled by default into the "Basic Dial-1

2    Plan" or other default plan.    The default plans were described in MCI's Federal

3    Communications Commission tariffs and in the MCI General Services Agreement, which is

4    mailed to all account holders and is available on its website.  For a number of years, the Basic

5    Dial-1 Plan had a monthly minimum usage fee.

6          In December 2002, MCI received an install order from a LEC that indicated that James

7    Everett (Plaintiff's husband) had subscribed to MCI in connection with a move.  Because Mr.

8    Everett had not selected an optional calling plan, MCI set up his account with the default Basic

9    Dial-1 Plan which was subject to the minimum usage fee.   The fees were billed on the

10   December 2002 and January 2003 invoices in the total amount of $9.88.   In February 2003,

11   Plaintiff contacted MCI and claimed that she had not authorized the establishment of an

12   account, but did not request a credit.  MCI advised Plaintiff that she needed to contact her LEC

13   in order to cancel the account with MCI and switch to a new carrier.   Three days after

14   Everett's call, MCI received a disconnect order from the LEC and cancelled the Everett

15   account.  All fees that had been assessed against Everett have now been credited with interest.

16         The evidence will show that MCI properly established the Everett account when it was

17   informed by Everett's LEC that the account holder had selected MCI as its long distance

18   carrier; that the assessment of the minimum usage fee was proper under those circumstances;

19   that, in any event, Plaintiff's claim is moot because MCI has credited the amounts at issue;

20   that Plaintiff's federal claims were filed more than two years after they accrued and thus are

21   barred by the applicable statute of limitations; that Plaintiff's claim for unjust enrichment is

22   barred because the imposition of the minimum usage fee is governed by an express contractual

23   provision; and that Plaintiff's claims were discharged by the WorldCom Bankruptcy Order.

24         In her papers filed in this action, Plaintiff has repeatedly referenced two sources of

25   information provided by LECs that MCI relied on to ensure its billing records were accurate:

26   account maintenance transactions and the LEC reconciliation process.  The Everett MCI

27   account was not established as a result of either of these types of transactions, and thus to the

28

1    extent that her class allegations are directed at these procedures, Plaintiff's claim is not typical
2    of the class.

3        In any event, MCI's use of this information for updating its account records was
4    entirely proper. While LECs were supposed to transmit information about newly added
5    customers to the interexchange carriers in a timely and complete manner, this was not always
6    the case. An interexchange carrier sometimes would not learn that the subscriber had been
7    placed on its network until a subsequent event triggered a communication from the LEC to the
8    carrier. For example, MCI sometimes learned for the first time that a consumer had subscribed
9    to its network when the LEC informed MCI that the subscriber had changed his or her name,
10   or made other changes to the billing information on his or her LEC account. Such events
11   trigger an obligation for the LEC to inform the long distance carrier associated with the
12   consumer's account of changes in the billing records through communications called "account
13   maintenance transactions." Because LECs only send account maintenance transactions to
14   MCI when they relate to consumers who are subscribed to MCI and have been placed on the
15   MCI network by the LECs, MCI's practice before 2005 was to open accounts for such
16   consumers to ensure that its subscribers were protected against the higher rates and surcharges
17   that apply to non-subscribers or "casual callers" whose calls may be routed through the MCI
18   network by their LECs even if they do not have an active account with MCI.

19       In addition, MCI sometimes learned that consumers had subscribed to its service
20   through an account reconciliation process whereby MCI compared its own account records to
21   those of the LECs. At all relevant times, LECs maintained internal databases that identified
22   the long distance carrier associated with each of its customers and made snapshots from these
23   databases available for purchase by long distance providers such as MCI. Historically, MCI
24   (like many other long distance carriers) would compare these snapshots from the LEC
25   databases with its own account lists to make sure that all customers identified by the LECs as
26   MCI customers had accounts with MCI. When MCI did not have a consumer on the LEC's
27   list on its own account roster, MCI's previous practice was to create an account for that
28

1 individual, again, for the purpose of ensuring that MCI subscribers were not subject to higher
2 casual caller rates.

3      Plaintiff cannot show that either of those procedures were improper.  But even if
4 Plaintiff could demonstrate that the use of these procedures sometimes resulted in the
5 establishment of an account for a consumer who had not selected MCI, such a claim would not
6 support a class action.  Determining whether an account was properly established for any
7 particular customer would require the adjudication of individual factual issues, and those
8 individual issues would predominate over common issues.
9

10      2.    Following are the elements of proof necessary for each count of the Complaint
11 and each Affirmative Defense:

12      A.    Plaintiff's Statement of the Elements of Proof of Each Count of the Complaint:

13      To prove a violation of Section 201(b) of the Communications Act, Plaintiff must
14 establish that:  (1) MCI's creation of new accounts for and billing "minimum usage" fees to
15 former MCI subscribers and non-MCI subscribers is an unjust or unreasonable charge,
16 practice, classification or regulation; and (2) Plaintiff and Class members have been injured as
17 a result of MCI's violation.  See 47 U.S.C. §§ 201(b), 206.

18      To prove a violation of Section 202(a) of the Communications Act, Plaintiff must
19 establish that:  (1) by reversing, refunding or crediting "minimum usage" charges to some, but
20 not all affected persons, MCI (a) made unjust or unreasonable discrimination in charges,
21 practices, classifications, regulations, facilities for or in connection with like communication
22 service, or (b) made or gave any undue or unreasonable preference or advantage to any
23 particular person, class of persons, or locality, or (c) subjected any particular person, class of
24 person, or locality to any undue or unreasonable prejudice or disadvantage; and (2) Plaintiff
25 and Class members have been injured as a result of MCI's violation.  See 47 U.S.C. §§ 202(a),
26 206.

27
28

1    To prove a violation of Section 203 of the Communications Act, Plaintiff must establish
2   that:  (1) by assessing "minimum usage" fees on non-customers, MCI charged, demanded,
3   collected, or received compensation at rates greater or different than the rates specified in its
4   tariffs; and (2) Plaintiff and Class members have been injured as a result of MCI's violation.
5   See 47 U.S.C. §§ 203, 206.

6    To prove a cause of action for unjust enrichment, Plaintiff must establish:  (1) an
7   enrichment by MCI; (2) an impoverishment by Plaintiff and the Class; (3) a connection
8   between the enrichment and the impoverishment; (4) absence of justification for the
9   enrichment and the impoverishment; and (5) an absence of a remedy provided by law.  See
10  Community Guardian Bank v. Hamlin, 898 P.2d 1005, 1008, 182 Ariz. 627, 630 (Ct. App.
11  1995).

12     B.    Defendant's Statement of the Element of Proof of Each Affirmative Defense:

13     1.    Federal statute of limitations:  A claim under the Federal Communications Act is
14  barred if it is brought more than two years after the claim accrued.  47 U.S.C. § 415(b).

15     2.    State statute of limitations:  The statute of limitations for a state law claim for
16  unjust enrichment varies from state to state.

17     3.    Filed rate doctrine or filed tariff doctrine:  A claim is barred by the filed rate or
18  filed tariff doctrine if (1) the claimant seeks to challenge the terms of a filed tariff; or (2) the
19  claimant challenges services, billing or other practices when such challenges, if successful,
20  would have the effect of changing the filed tariff.  Brown III v. MCI WorldCom Network
21  Servs. Inc., 277 F.3d 1166, 1170-71 (9th Cir. 2002).

22     4.    Discharge in bankruptcy/ failure to file a claim by Claims Bar Date:  To prove
23  this defense, MCI must show (1) WorldCom Inc. was duly adjudicated bankrupt; (2)
24  WorldCom was granted a discharge in bankruptcy and the court established a bankruptcy plan;
25  and (3) Plaintiff's claim was within the scope of the bankruptcy court's order.    In re
26  WorldCom, Inc., 320 B.R. 772, 774 (S.D.N.Y. 2005).

27

28

5.    <u>Settlement or accord and satisfaction</u>:  To make out this defense, defendant must prove (1) the parties agreed to a discharge of an obligation in a manner other than originally stated; and (2) the defendant satisfied the terms of the discharge agreement.  <u>Flowers v. Diamond Shamrock Corp.</u>, 693 F.2d 1146, 1151 (5th Cir. 1982).

6.    <u>Laches</u>:   The elements of laches are (1) Plaintiff unreasonably delayed in asserting her rights, and (2) Defendant suffered prejudice as a result.  <u>Kansas v. Colorado</u>, 514 U.S. 673, 687 (1995).

7.    <u>Waiver</u>:    To prove waiver, the defendant must prove that the plaintiff intentionally relinquished known rights after knowledge of relevant facts.  <u>See</u>, <u>e.g.</u>, <u>Nissho-Iwai Co. v. Occidental Crude Sales, Inc.</u>, 729 F.2d 1530, 1544 (5th Cir. 1984).

8.    <u>Equitable estoppel</u>:  To prove equitable estoppel, defendant must show that the plaintiff knew relevant facts that the defendant did not know; that the plaintiff failed to reveal those facts and intended the defendant to act upon her silence; and that the defendant relied on the plaintiff's silence.  <u>Stewart v. Ragland</u>, 934 F.2d 1033, 1041 (9th Cir. 1991).

9.    <u>Preemption/ conflicts with federal law</u>:  A state law claim is preempted by the Federal Communications Act when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or of the Federal Communications Commission.  The state law is preempted "to the extent it actually interferes with the methods by which the federal regulatory scheme was designed to reach its goal."
<u>Metrophones Telecomms. Inc. v. Global Crossing Telecomms., Inc.</u>,  423 F.3d 1056, 1072-73 (9th Cir. 2005).

10.    <u>Doctrine of payment/ mootness</u>:  A claim is barred by the doctrine of payment when the plaintiff claims that the defendant is obligated to pay plaintiff money, and the defendant has tendered payment in full.  A claim for injunctive relief is moot when the defendant has ceased the action at issue in the case in good faith, and there is no evidence that the acts are likely to be repeated.  <u>Lee v. Gates</u>, 141 Cal. App. 3d 989, 993 (1983).

11.    <u>Res Judicata</u>:  The elements of res judicata are (1) a final decision on the merits by a court of competent jurisdiction or an administrative body; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent litigation which was litigated or should have been litigated in a prior action; and (4) an identity of the causes of action.  <u>Pavlovich v. Nat'l City Bank</u>, 461 F.3d 832, 835 (6th Cir. 2006); <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 703, 713 (9th Cir. 2001).

12.    <u>Claims are not appropriate for a class action; plaintiff is not an adequate representative</u>:  The elements that plaintiff must prove to certify a class are set forth in Federal Rule of Civil Procedure 23.

13.    <u>Standing</u>:  The test for standing has three elements:  The plaintiff must show a distinct and palpable injury to himself; that this injury is caused by the challenged activity; and that this injury is apt to be redressed by a remedy that the court is prepared to give.  <u>Wright & Miller</u>, 13 Fed. Prac. & Proc. Juris. 2d § 3531.4.

14.    <u>Primary jurisdiction</u>:  "[P]rimary jurisdiction is properly invoked when a case presents a far-reaching question that 'requires expertise or uniformity in administration'."  <u>Brown v. MCI WorldCom Network Serv's, Inc.</u>, 277 F.3d 1166, 1172 (9th Cir. 2002).  Courts consider four factors when considering whether to dismiss a federal action based on primary jurisdiction: "(1) whether the question at issue is in the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or whether it requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."  <u>Everett v. MCI, Inc.</u>, Court's Order, Sept. 29, 2006 at 11.

3.    The following disputed issues will need to be resolved by motion practice:

<u>Plaintiff's Statement of Disputed Issues to be Resolved by Motion Practice:</u>

(a)   Is MCI's assessment of monthly "minimum usage" fees on persons who were not MCI's customers when the charges were supposedly incurred unjust and unreasonable in violation of the Communications Act?

(b)   Did MCI engage in unjust and unreasonable discrimination in charges and practices for or in connection with communication service by reversing, refunding or crediting back "minimum usage" fees to some, but not all, affected persons.

(c)   Did MCI charge, demand, collect or receive compensation at rates greater or different than the rates specified in its tariffs by assessing "minimum usage" fees on non-customers?

(d)   Was MCI unjustly enriched by the "minimum usage" fees it collected from non-customers?

(e)   Were Plaintiff and Class members damaged by MCI's conduct?

(f)   Should the Class be certified?

Defendant's Statement of Disputed Issues to Be Resolved by Motion Practice:

(a)   Are Plaintiff's claims barred by the statutes of limitation?

(b)   Are Plaintiff's claims discharged or otherwise barred by the WorldCom Bankruptcy Plan?

(c)   Should a class be certified, in light of the predominance of individual issues?

(d)   Should the nationwide class allegations be dismissed?

(e)   Is Defendant entitled to summary judgment on the merits?

4.   This action asserts claims for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(d), and pursuant to 47 U.S.C. § 207. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.    All parties have been served.

6.    All parties are subject to the Court's jurisdiction.

7.    The following dispositive issues must be decided by pretrial motions and hearings:

Defendant's Statement of Dispositive Issues to be Decided by Pretrial Motions:

(a)    Are Plaintiff's claims barred by the statutes of limitation?

(b)    Are Plaintiff's claims discharged or otherwise barred by the WorldCom Bankruptcy Plan?

(c)    Is Defendant entitled to summary judgment on the merits?

8.    The parties do not consent to refer this case to arbitration, a master, and/or to a United States Magistrate Judge.

9.    No related cases are presently pending before other judges of this Court or before other courts.

10.    The parties suggest the following changes in the timing, form, or requirement for disclosures under Rule 26(a), Fed. R. Civ. P.:

The parties have made their initial disclosures.  Plaintiff served her initial disclosures on March 3, 2006.  On October 10, 2006, MCI served initial disclosures which provided information about Plaintiff's individual claim, but not about the claims of the putative class. On April 6, 2007, the Court issued a Rule 16 Scheduling Order which directed MCI to "supplement its Initial Disclosures to address information in its possession, custody or control,

1    as that information relates to the claims of the class Plaintiff seeks to represent." (Doc. No. 94

2    at 1.) MCI served supplemental initial disclosures on April 16, 2007.

3

4        11.    The parties suggest the following changes on the limitations imposed by Fed. R.

5    Civ. P. 30, 31 and 33:

6        Plaintiff's Statement:

7        Plaintiff does not propose any changes on the limitations imposed by Fed. R. Civ. P. 30,

8    31 and 33 at this time.  In light of the complex nature of this case, however, Plaintiff reserves

9    the right to seek leave of Court to propound additional interrogatories or take additional

10   depositions as may be necessary during the course of the litigation.

11       Defendant's Statement:

12       Defendant sees no reason to deviate from the limitations imposed by Fed. R. Civ. P. 30,

13   31 and 33.

14

15       12.    The parties make the following proposals concerning the scope of discovery, the

16   date discovery should be completed, and whether discovery should be conducted in phases or

17   should be limited to or focused upon particular issues:

18       Plaintiff's Statement:

19       Following the Rule 26(f) conference held on February 17, 2006, Plaintiff served

20   focused and precise discovery requests in the form of requests for admission, interrogatories,

21   and requests for production of documents.  These requests are directed at the critical internal

22   communications that led up to and implemented the business program at MCI that is directly

23   responsible for the billing practices at issue in this litigation.  Plaintiff believes the discovery at

24   issue will show that there was a common course of conduct directed at the members of the

25   class, and that common questions of law and fact accordingly predominate over individual

26   issues.  Thus, the discovery Plaintiff is seeking will allow Plaintiff to determine whether to file

27   an amended motion for class certification and will advance the ultimate resolution of this

28

1    litigation by settlement or trial.  MCI refused to respond to Plaintiff's discovery and sought to

2    stay all discovery while its Motion To Dismiss was pending.

3            As noted above, on September 29, 2006, the Court denied MCI's Motion To Dismiss.

4    On October 11, 2006, MCI responded to Plaintiff's requests for admission and served written

5    objections to her interrogatories and requests for production of documents.  At that time, MCI

6    argued that discovery should be stayed pending the resolution of Plaintiff's May 30, 2006

7    Motion For Class Certification.  Plaintiff sought an order to compel.  At a November 1, 2006

8    telephonic discovery dispute conference, the Court declined to stay discovery, ordered

9    discovery to proceed on a phased basis, and directed that Phase I would focus on class

10   certification.

11           In January 2007, the parties agreed to the following proposals concerning the scope and

12   dates for completion of discovery:

13   - Phase I fact discovery would be completed by June 15, 2007;

14   - Phase I expert discovery would follow the filing of the motion (for deposition of

15        Plaintiff's experts) and the opposition (for deposition of Defendant's experts);

16   - Phase II fact discovery would be completed by January 18, 2008;

17   - Phase II expert discovery would be completed by March 21, 2008; and

18   - Each party reserved the right to ask the Court to modify this proposed schedule

19        if the completion of discovery takes longer than is currently estimated.

20           Plaintiff agreed to these dates in good faith because MCI represented that it would

21   complete its rolling production of documents for Phase I discovery by May 1, 2007.  MCI

22   failed to comply with its discovery obligations, however.  MCI has withdrawn its commitment

23   to complete its production by May 1, 2007, and refuses to say when it will complete

24   production.  To date, MCI has produced approximately 10,000 *pages* of documents (several

25   thousand of which were publicly available), despite its representation that it has reviewed

26   close to 174,000 *documents* from approximately 50 custodians since the beginning of this year.

27

28

1  MCI has not produced critical documents concerning its business decision to charge minimum

2  usage fees and monthly recurring charges to non-customers.

3      On May 14, 2007, MCI informed Plaintiff that it will ask the Court to stay discovery for

4  a third time in this case. MCI wants all discovery postponed until the Court rules on its

5  pending Motion For Judgment On The Pleadings. Plaintiff believes that staying discovery is

6  inappropriate and would serve only to delay the progress of this case. The Court rejected

7  MCI's attempt to stay class certification discovery in its November 1, 2006 order. At that

8  time, the Court was aware of MCI's Motion For Judgment On The Pleadings, and concluded

9  that discovery should proceed nonetheless. See Transcript of Proceedings dated November 1,

10  2006, at 7:21-8:1 ("Well, and in light of this motion . . . [Plaintiff has] given me some reason

11  to believe that perhaps if the discharge is appropriate for Ms. Everett and others, that there still

12  may be a Class, then with that in mind, then I'm going to allow discovery."). Plaintiff believes

13  MCI has no new argument in support of staying discovery now, and that all MCI's arguments

14  were considered and rejected last November. Plaintiff's need for discovery concerning MCI's

15  practices of charging and collecting minimum usage fees from non-customers, which is critical

16  to her Motion For Class Certification, outweighs the purported burden on MCI in producing

17  such evidence. See Green v. Baca, 219 F.R.D. 485, 492-93 (C.D. Cal. 2003).

18      Plaintiff requests that the Court order MCI to complete its rolling production of

19  documents by July 1, 2007. Plaintiff proposes that Phase I fact discovery be completed 45

20  days after the completion of MCI's rolling production. Plaintiff proposes no additional

21  changes to the discovery deadlines listed above, but reserves the right to move the Court to

22  extend those deadlines, pending MCI's actual completion of its discovery obligations.

23      A detailed description of the status of discovery appears in the First Notice Of

24  Discovery And Settlement filed on May 18, 2007.

25      Defendant's Statement:

26      MCI respectfully suggests that further discovery should be stayed until MCI's Motion

27  for Judgment on the Pleadings, Or, In The Alternative Summary Judgment, is resolved.

28

1    MCI filed its Motion for Judgment on the Pleadings on October 31, 2006. In that
2    motion, MCI argued that the action should be dismissed because Plaintiff's claim had been
3    discharged in bankruptcy.

4        The Court held a telephonic discovery conference on November 1, 2006. MCI argued
5    that the Bankruptcy Court's discharge injunction prohibited Plaintiff from proceeding in this
6    case, including proceeding with discovery. In response, Plaintiff's counsel implied that he
7    would seek leave to add a new named plaintiff, arguing that even if Plaintiff's claim were
8    discharged, counsel "would still have another client and we will still have . . . a class that will
9    be litigated . . . ." Transcript of Proceedings dated November 1, 2006, at 6:20-6:22. The Court
10   accepted this argument, concluding that Plaintiff's counsel had given the Court "some reason
11   to believe that perhaps if the discharge is appropriate for Ms. Everett and others, . . . there still
12   may be a Class . . . ." Id. at 7:23-7:25. "[W]ith that in mind," the Court stated that it would
13   permit Phase I discovery to proceed. Id. at 7:25-8:1.

14       The Court nonetheless recognized that MCI's Motion for Judgment "certainly may"
15   impact the scope of such discovery and that "obviously [said Motion] need[ed] to be resolved
16   as quickly as possible." Id. at 7:16-8:5. Accordingly, the Court ordered the parties to
17   complete their briefing on an expedited basis prior to the Rule 16 scheduling conference
18   which, which the Court set for January 26, 2007. The Motion for Judgment has been fully
19   briefed since November 30, 2006.

20       Since that time, Plaintiff has not sought leave to add any additional plaintiff or
21   plaintiffs, belying counsel's contention that the action would proceed even if Ms. Everett's
22   claim were dismissed. Moreover, MCI has expended massive resources in collecting,
23   reviewing and producing documents in response to Plaintiff's extremely broad discovery
24   requests and onerous demands regarding the format of production. Since January alone, MCI
25   has spent more than 6700 man hours and more than $900,000 on the document production
26   alone. The production has been particularly costly in this case because Plaintiff's broad
27   requests have required MCI to collect, review and analyze an extremely large number of
28

1  privileged documents.  To date, MCI has reviewed close to 174,000 documents and identified

2  more than 10,000 potentially privileged documents that must undergo a costly second level

3  review.

4      This process has been much more time consuming and expensive than MCI had

5  originally anticipated.  In January 2007, MCI informed Plaintiff and the Court that it was "still

6  in the initial stages of its collection effort" and that "[b]ased on the limited information

7  available at th[e] time," it hoped to produce paper and electronic documents kept in standard

8  electronic formats that it was able to locate upon a reasonable search by May 1, 2007.  <u>See</u>

9  January 16, 2007 Proposed Joint Case Management Plan (Doc. No. 77) at 13.  By March, it

10 became clear that MCI would not be able to complete its production by that date, and

11 immediately informed Plaintiff of this fact during a telephonic meet and confer held on March

12 16, 2007.

13     During the March 16, 2007 teleconference, MCI told Plaintiff that it believed the

14 substantial burdens it was incurring were unwarranted in light of the bankruptcy order.  MCI

15 further told Plaintiff that it intended to request that the Court set a Rule 16 scheduling

16 conference and that it would raise the issue of staying further discovery pending resolution of

17 its Motion for Judgment at that conference.  The following week, MCI filed a Request for

18 Rescheduling of Rule 16 Conference and also asked that the Court permit the parties to update

19 the Proposed Joint Case Management Plan and Proposed Scheduling Order filed on January

20 16, 2007.  In response, the Court set this conference for June 1, 2007.

21     MCI has continued to participate fully in discovery since that time.  MCI supplemented

22 its initial disclosures and served substantive responses to interrogatories.  MCI has produced

23 three witnesses to testify on various of the topics specified in Plaintiff's 30(b)(6) deposition

24 notices, and has taken depositions of Plaintiff; her husband, James T. Everett; and two of the

25 three other persons who filed declarations in opposition to MCI's Motion To Dismiss.  On the

26 document front, MCI has continued to collect, review and produce documents. Notwithstanding

27

28

MCI's major expenditures, MCI believes that a substantial amount of document review and production remains to be completed.

Accordingly, MCI respectfully requests that the Court enter an order staying discovery until MCI's Motion For Judgment has been resolved. MCI further suggests that the Court set a status conference for after the resolution of that motion to determine what, if anything, remains of the case.

13.    The parties make the following proposals concerning the final date for supplementation of discovery:

Plaintiff's Statement:

In January 2007, the parties agreed to finally supplement all fact and expert discovery by March 28, 2008. Although Plaintiff stands by that date, Plaintiff reserves the right to move the Court to extend the deadline, pending MCI's actual completion of its discovery obligations.

Defendant's Statement:

As set forth above, MCI respectfully requests a stay of discovery pending resolution of the outstanding Motion for Judgment and, in light of this request, proposes that the Court postpone any additional discovery-related scheduling until after that time.

14.    The parties make the following proposals concerning the deadlines for (a) disclosures of experts and testimony under Rule 26(a)(2) of the Fed. R. Civ. P.; (b) the filing of procedural motions including motions to amend, consolidate, and join additional parties; (c) the filing of one dispositive motion per party; (d) and the lodging of the Joint Proposed Pretrial Order:

Plaintiff's Statement:

In January 2007, the parties made the following joint proposals:

1      (a)     Plaintiff shall disclose experts and testimony under Rule 26(a)(2) by February 8,

2             2008. Defendant shall disclose experts and testimony under Rule 26(a)(2) by

3             February 29, 2008.

4      (b)     All procedural motions including motions to amend, consolidate, and join

5             additional parties shall be filed by July 13, 2007.

6      (c)     All dispositive motions shall be filed by April 28, 2008. Each party shall file

7             only one dispositive motion.

8      (d)     A Joint Proposed Pretrial Order shall be lodged by July 14, 2008.

9      As Plaintiff has informed MCI, Plaintiff intends to move by July 13, 2007, for leave to

10  file an amended complaint to include persons who submitted declarations in opposition to

11  MCI's Motion To Dismiss. Although Plaintiff stands by the dates proposed above, Plaintiff

12  reserves the right to move the Court to extend these deadlines, pending MCI's actual

13  completion of its discovery obligations.

14      Defendant's Statement:

15      In light of its request for a stay of discovery pending resolution of its Motion for

16  Judgment, MCI proposes that the Court postpone any additional discovery-related scheduling

17  until after that time.

18

19      15.    The parties make the following proposals concerning the estimated date the case

20  will be ready for trial, the anticipated length of the trial, and any suggestions for shortening the

21  trial:

22      Plaintiff's Statement:

23      In January 2007, the parties agreed to a proposed trial date of August 11, 2008.

24  Plaintiff estimated that the trial will last for approximately three weeks. MCI took the position

25  that estimating the length of trial was premature. Although Plaintiff stands by the proposed

26  trial date and anticipated length of trial discussed above, Plaintiff reserves the right to move

27

28

the Court to extend this deadline, pending MCI's actual completion of its discovery obligations.

Defendant's Statement:

Any attempt to estimate the length of trial is premature, given the breadth of the proposed class and the number of individual issues that will have to be resolved if a class is certified.

16.    Plaintiff has requested a jury trial on all counts so triable.

17.    The parties have not engaged in any substantive discussions about settlement at this time.

18.    The parties make the following proposals concerning the dates for class certification proceedings and other class management issues:

Plaintiff's Statement:

Plaintiff filed a motion for class certification on May 30, 2006, before receiving any substantive discovery responses or documents from MCI.   In January 2007, the parties proposed the following schedule for class certification briefing:

- Plaintiff will file an amended motion for class certification if she deems it necessary by July 13, 2007;

- Defendant will respond to the motion for class certification by August 13, 2007;

- Plaintiff will file a reply by September 10, 2007; and

- Each party reserved the right to ask the Court to modify this proposed briefing schedule if the completion of discovery takes longer than is currently estimated.

Plaintiff agreed to these dates in good faith because MCI represented that it would complete its rolling production of documents for Phase I discovery by May 1, 2007.   As discussed in paragraph 12 above, MCI failed to meet its discovery obligations, withdrew its

1    commitment to complete production by May 1, 2007, refuses to say when it will complete
2    production, and once again wants all discovery stayed.

3        Plaintiff requests that the Court order MCI to complete its rolling production of
4    documents by July 1, 2007.  Plaintiff proposes the following revised deadlines for class
5    certification briefing:

6        • Plaintiff will file an amended motion for class certification, if she deems it
7          necessary, within 75 days of MCI's completion of is rolling production;
8        • Defendant will respond to the motion for class certification within 30 days of
9          Plaintiff's filing an amended motion for class certification, or notifying the Court
10         that she will stand on the motion presently on file; and
11       • Plaintiff will file a reply within 30 days of Defendant's filing its opposition.
12   Plaintiff reserves the right to move the Court to extend these deadlines, pending MCI's actual
13   completion of its discovery obligations.

14       <u>Defendant's Statement</u>:

15       MCI suggests that the Court postpone the scheduling of briefing on class certification
16   issues until after the Motion for Judgment on the Pleadings is resolved.  At that time, the
17   parties and the Court can assess what, if anything, remains of the case, and the time necessary
18   to complete Phase I discovery with respect to any remaining issues.

19

20       19.    As a class action, this case should be placed on the complex track for case
21   management purposes.

22

23       20.    The e-mail address of respective counsel or parties:
24   <u>Plaintiff's Counsel</u>:
25   dcg@girardgibbs.com, ajd@girardgibbs.com, ams@girardgibbs.com,
26   as@girardgibbs.com, rcarey@hbsslaw.com, Stephanie@hbsslaw.com,
27   gw@grantwoodspc.net

28

Defendant's Counsel:

Henry.Weissmann@mto.com, Kristin.Escalante@mto.com, Jean.Rhee@mto.com, LKasten@lrlaw.com.

21.    Any other matters that counsel believe will aid the Court in resolving this dispute in a just, speedy, and inexpensive manner:

The parties make no additional proposals to the Court at this time.

DATED:  May 22, 2007

**GIRARD GIBBS LLP**                                    **MUNGER TOLLES & OLSON LLP**

By:   */s/Aaron M. Sheanin*                           By:   */s/Kristin Sheratt Escalante*
      Aaron M. Sheanin *(pro hac vice)*                       *(with permission)*
                                                              Kristin Sherratt Escalante *(pro hac vice)*

Daniel C. Girard                                       Henry Weissmann
A. J. De Bartolomeo                                    Jean Y. Rhee
Amanda M. Steiner                                      355 South Grand Avenue, 35th Floor
601 California Street, 14th Floor                      Los Angeles, California 90071-1560
San Francisco, California  94108                       Telephone:  (213) 683-9100
Telephone: (415) 981-4800                              Facsimile:  (213) 687-3702
Facsimile: (415) 981-4846

Grant Woods                                            Lawrence A. Kasten (AZ Bar No. 020204)
**GRANT WOODS, PC**                                    **LEWIS AND ROCA LLP**
1726 North Seventh Street                              40 North Central Avenue
Phoenix, Arizona 85006                                 Phoenix, Arizona  85004-4429
Telephone: (602) 258-2599                              Telephone: (602) 262-5747
Facsimile: (602) 258-5070                              Facsimile: (602) 262-5311

                                                       Attorneys for Defendant MCI, Inc.

Robert B. Carey
**HAGENS BERMAN SOBOL
SHAPIRO PLLC**
2425 E. Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Attorneys for Individual and
Representative
Plaintiff Shary Everett

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on May 22, 2007, I electronically filed the attached document with

3    the Clerk of the Court:

4

5    1.        **PROPOSED JOINT CASE MANAGEMENT PLAN**

6        I also certify that the above document was filed using the CM/ECF system, which will

7    send electronic notification of said filing to the following:

8    **Henry Weissmann**
9    henry.weissmann@mto.com

10    **Lawrence Arthur Kasten**
11    lkasten@lrlaw.com

12    **Stephanie Bozzo**
      stephanie@hbsslaw.com
13

14    **Robert B. Carey**
      rcarey@hbsslaw.com
15

16    **Joel Grant Woods**
      gw@grantwoodspc.net
17

18

19              /s/   Aaron M. Sheanin

20        **GIRARD GIBBS LLP**
          601 California Street, 14th Floor
21        San Francisco, CA  94108

22

23

24

25

26

27

28