# EXHIBIT S



LEWIS
AND
ROCA
LLP
L A W Y E R S

40 North Central Avenue
Phoenix, Arizona 85004-4429
Facsimile (602) 262-5747
Telephone (602) 262-5311

Lawrence A. Kasten State Bar No. 020204
lkasten@lrlaw.com

MUNGER, TOLLES & OLSON, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant MCI, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

SHARY EVERETT, on behalf of herself an
all other similarly situated,

Plaintiff,

vs.

MCI, INC., a Delaware Corporation,

Defendants.

No. CIV 05-2122-PHX-ROS

**DEFENDANT'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES 1- 4 AND 10-12 OF PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant MCI, LLC, f/k/a MCI, Inc. ("MCI" or "Defendant"), by its attorneys, hereby provides these supplemental answers to Interrogatories 1-4 and 10-12 of the first set of interrogatories served by plaintiff Shary Everett ("Everett" or "Plaintiff") as follows:

## PRELIMINARY STATEMENT

MCI's supplemental responses should not be taken as an admission that MCI admits or accepts the existence of any evidence, document, fact, or thing set forth in or assumed by any of Plaintiff's interrogatories, or that MCI's supplemental responses constitute admissible evidence. MCI's supplemental responses are not intended, and should not be construed to be, a waiver of all or any part of an objection interposed by

2714321.4

LEWIS
AND
ROCA
LLP
L A W Y E R S

MCI to any of the following interrogatories. MCI's investigation and discovery in this case is ongoing and MCI reserves the right to further amend and supplement its responses.

## SUPPLEMENTAL RESPONSES

**INTERROGATORY NO. 1:**     State the number of persons for whom MCI established an account with a MUF FEE based upon data from a LEC RECON LIST or ACCOUNT MAINTENANCE INFORMATION received from a Local Exchange Carrier (Access Provider).

**SUPPLEMENTAL RESPONSE:**     MCI incorporates by reference as though set forth in full the objections in Defendant's First Amended Responses to Plaintiff's First Set of Interrogatories. MCI further states that the information sought by this interrogatory is not readily available and MCI's investigation and analysis of the relevant information is ongoing. The information provided herein is based on MCI's preliminary analysis, and MCI expressly reserves its right to amend and/or further supplement this response.

MCI interprets this interrogatory as seeking information regarding the following category of consumers: consumers in all states, including California (1) for whom an account was established through a LEC reconciliation or account maintenance transaction; (2) whose account was established after or was still in existence after April 20, 2004; (3) where a basic Dial-1 plan was established because the consumer did not select a particular MCI calling plan; (4) the consumer had no Dial-1 long distance usage; and (5) a minimum usage or monthly fee was charged after April 20, 2004. By including information about consumers with accounts that were established prior to but still in existence after April 20, 2004, MCI does not intend to waive any of its arguments that consumer claims arising before April 20, 2004 were discharged by the WorldCom bankruptcy.

2714321.4

**LEWIS**
**AND**
**ROCA**
**LLP**
L A W Y E R S

Subject to and without waiving the foregoing objections and conditions, MCI responds as follows: the total number of consumers with accounts established as a result of a LEC reconciliation or account maintenance transaction is: 28,884.

**INTERROGATORY NO. 2:**    State the number of persons for whom MCI established an account with an MUF FEE based upon data from a LEC RECON LIST or ACCOUNT MAINTENANCE INFORMATION received from a Local Exchange Carrier (Access Provider), and to whom MCI has subsequently refunded or credited the MUF FEE or a portion thereof.

**SUPPLEMENTAL RESPONSE:**    MCI incorporates its supplemental response to Interrogatory 1 as though set forth here in full. MCI's records currently reflect that the number of consumers falling within the category identified in MCI's supplemental response to Interrogatory 1 and whose accounts reflect credits and/or refunds is 7165. As MCI continues to issue credits and/or refunds of MUF fees to consumers for various reasons, including as a result of its 2006 settlement agreement with the California Public Utilities Commission, it will supplement this response accordingly.

**INTERROGATORY NO. 3:**    State the name, address and telephone number of each Local Exchange Carriers (Access Providers) from which MCI purchased or received a LEC RECON LIST.

**SUPPLEMENTAL RESPONSE:**    MCI is providing a list of all the Local Exchange Carriers from which it purchased and/or received a LEC RECON LIST. The following list includes the most recent contact information available in MCI's files for each such Local Exchange Carrier, as well as dates for each occasion where MCI purchased, received and/or processed LEC RECON LISTS to the extent this information is still available:

3

LEWIS
AND
ROCA
LLP
L A W Y E R S

| LEC Name | Contact Information | Date(s) purchased/ received | Date(s) processed |
|---|---|---|---|
| Aliant (now owned by Alltel) | 1440 M Street Lincoln, NE 68501 | n/a | 1/01 3/02 |
| Alltel | 1 Allied Drive Little Rock, AR 72202 (501) 748-7036 | n/a | 3/01 3/02 |
| AT&T Local | 1053 Glenwood Avenue Joliet, IL 60435 (815) 774-9570 | n/a | 1/03 |
| Atlantic Tel | P.O. Box 3198 Charlotte, NC 91075 | 1/04 | 2/04 |
| BellSouth | 754 Peachtree St. NE 8D54 Atlanta, GA 30308 (404) 986-6354 | 9/01 | 2/02 |
| Big Bend Tel | 808 N. Fifth Alpine, TX 79830 | 1/04 | 1/04 |
| Chillicothe Tel | 68 E. Main St. Chillicothe, OH 45601 (740) 772-8885 | 5/05 | 6/05 |
| Cincinnati Bell | n/a | 2001 | 2001 |
| Citizens | 180 S. Clinton Ave., 5th Floor Rochester, NY 14623 (585) 777-4620 | n/a | 1/01 1/03 |
| Comcast/TCG | 2535 E. 40th Ave. Denver, CO 80205 (303) 294-6722 | 5/03 | 6/03 |
| Cox Communications | 1400 Lake Hearn Drive Atlanta, GA 30319 (404) 843-7524 | 12/03 | 2/04 |
| Dixville Tel | One Cranberry Hill, Suite 105 Lexington, MA 02421 (508) 675-0181 ext. 266 | n/a | 5/05 |
| Frontier/RTC | 180 South Clinton Avenue Rochester, New York 14646 (585) 777-7656 | n/a | 2001 10/02 6/03 |
| Litestream (now Granite Tel) | 3350 W. Waters Ave. Tampa, FL 33614 (617) 933-5521 | n/a | 3/04 |
| McLeod | 2116 S. 17th St. Mattoon, IL 61938 (319) 790-6003 | 6/05 | 7/05 |
| Onvoy | n/a | 2001 | 2001 |
| People's Tel | (903) 878-2800 | 3/04 | 5/04 |
| Puerto Rico Tel | 1515 Roosevelt Av San Juan, Puerto Rico 00968 | n/a | 7/01 |
| Qwest | 200 S 5th St Rm 1800 Minneapolis, MN 55402 (612) 359-5152 | n/a | 2001 1/03-2/03 |

4

2714321.4



LEWIS
AND
ROCA
LLP
LAWYERS

| SBC | Ameritech | 33500 Northwestern Hwy, Room E120 Southfield, MI 48075 (248) 423-3568 | 10/01 | 10/01-11/01 |
|---|---|---|---|---|
| | Southwestern | | 7/01 | n/a |
| | SNET | | 11/00 | 12/00 |
| | | | n/a | 2001 |
| | Pacific Bell | | n/a | 2001 |
| | | | | 2/02 |
| Sprint | | 6180 Sprint Parkway Overland Park, KS 66251 (913) 534-2870 | n/a | 2001 |
| | | | 7/04 | 9/04 |
| Supra Telecommunications | | 2620 Southwest 27th Ave Miami, FL 33133 | 9/05 | Never processed |
| TCG | | 2535 E. 40th Ave. Denver, CO 80205 (303) 294-6722 | n/a | 1/03 |
| TDS | | c/o Rosedale 5046 88th Street East Bradenton, FL 34211 | 9/05 | Never processed |
| US Exchange (Choice One) | | 100 Chestnut St. Rochester, NY 14604 | n/a | 7/05 |
| Verizon - Bell Atlantic | | 25 Bank Street St Albans, VT 05478 (972) 718-3703 | 3/01 | 4/01-5/01 |
| | | | 4/02 | Never processed |
| Verizon - NYNEX | | | n/a | 4/01-5/01 |
| Verizon - GTE | | | n/a | 11/01 |
| West River Tel | | 101 W. Main St. Hazen, ND 58545 (800) 748-7220 | 2/04 | Never processed |
| | | | 6/04 | |

**INTERROGATORY NO. 4:**    State the date of each instance in which MCI

purchased or received a LEC RECON LIST from a Local Exchange Carrier (Access

Provider).

**RESPONSE:**    See response to Interrogatory 3.

**INTERROGATORY NO. 10:**    State the name, address and telephone number of

each collections agency MCI uses to collect unpaid bills on consumer accounts.

**SUPPLEMENTAL RESPONSE:**    MCI is providing a list of each collection

agency it has used to collect unpaid bills on residential accounts on its behalf since April

20, 2004.  This list includes the most recent contact information available in MCI's files

for each such collection agency.

5

2714321.4



**LEWIS** AND **ROCA** LLP
L A W Y E R S

| Agency Name | Contact Information |
|---|---|
| Allied Interstate | 55 North Arizona Ave, Suite 505 Chandler, AZ 85225 (866) 246-5205 |
| Asset Management Outsourcing (AMO) | PO Box 100050 Kennesaw, GA 30156 (866) 842-8857 |
| Credit Bureau Collection Services | 250 East Town Street Columbus, OH 43216 (800) 947-2987 |
| Credit Plus Solutions Group (CPSG) | 2491 Paxton Street #17111 Harrisburg, PA 17106 (800) 238-5877 |
| Encore Receivable Management | 400 N. Rogers Road Olathe, KS 66062 (877) 409-2088 |
| GC Services | Executive Park Suite 1405 Atlanta, GA 30329 (800) 206-5542 |
| Harvard | 4839 North Elston Ave Chicago, IL 60630 (800) 246-6850 |
| NCO Financial | 101 Overland Drive North Aurora, IL 60542 (800) 722-8955 |
| Park Dansan | 113 West Third Avenue Gastonia, NC 28052 (800) 766-1851 |
| Penn Credit | 916 S. 14th Street Harrisburg, PA 17104-3425 (800) 900-1370 |
| Progressive Asset Management (PAMS) | 5924 E. Los Angeles Ave, Suite P Simi Valley, CA 93063 (800) 821-8063 |
| Progressive Management Systems (PMS) | 1521 W. Cameron Avenue, First Floor West Covina, CA 91790 (866) 767-1037 |
| Solomon & Solomon | Five Columbia Circle Albany, NY 12203 (877) 803-1942 |
| The CBE Group | PO Box 900 Waterloo, IA 50704 (800) 648-3304 |
| VanRu Credit Corp | PO Box 46249 Lincolnwood, IL 60646-0249 (888) 593-5183 |

**INTERROGATORY NO. 11:**    State the number of persons for whom MCI

established an account with an MUF FEE based upon data from a LEC RECON LIST or

LEWIS
AND
ROCA
LLP
L A W Y E R S

ACCOUNT MAINTENANCE INFORMATION received from a Local Exchange Carrier (Access Provider), and who MCI subsequently referred to a collection agency for non-payment.

**RESPONSE:** MCI incorporates its supplemental response to Interrogatory 1 as though set forth here in full. The number of consumers falling within the category identified in MCI's supplemental response to Interrogatory 1 and whose accounts were referred or sold to a collection agency for non-payment is: 5244.

**INTERROGATORY NO. 12:** State with specificity any inquiry, request for information or investigation by state or federal authorities or agencies concerning MCI's implementation or assessment of an MUF FEE on persons who say they are not MCI customers or are former MCI customers.

**RESPONSE:** The following is a list of formal inquiries and investigations by state or federal authorities or agencies concerning MCI's implementation or assessment of monthly fees on persons claiming they are not MCI customers or are former MCI customers within the relevant period:

1. California Public Utilities Commission Investigation 05-04-018.

2. Oregon Department of Justice 2003 Investigation.

3. Connecticut Department of Public Utility Control Investigation of Billing, Transfer and Slamming Allegations Against MCI WorldCom Communications, Inc., 00-03-02.

In providing this list, MCI clarifies that while the Oregon Department of Justice and Connecticut Department of Public Utility Control investigations included allegations that

//

//

7

2714321.4

LEWIS
AND
ROCA
LLP
———————
L A W Y E R S

1   MCI was charging monthly fees to persons who claimed they were no longer MCI

2   customers, they did not focus solely on this issue.

3   DATED:  April 13, 2007            MUNGER TOLLES & OLSON LLP

4                                     By: _____

5                                          Henry Weissmann
                                           (admitted *pro hac vice*)
6

7   Jean Y. Rhee (admitted *pro hac vice*)
    Kristin Sherratt Escalante (admitted *pro hac vice*)
8   Jean Y. Rhee (admitted *pro hac vice*)
    355 South Grand Avenue, 35th Floor
9   Los Angeles, California 90071-1560
    Telephone:  (213) 683-9100
10  Facsimile:  (213) 687-3702

11  **LEWIS & ROCA LLP**
    Lawrence A. Kasten (AZ Bar No. 020204)
12  40 North Central Avenue
    Phoenix, Arizona  85004-4429
13  Telephone:  (602) 262-5311
    Facsimile:  (602) 262-5311
14
    Attorneys for Defendant MCI, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

                                8

2714321.4

## PROOF OF SERVICE

1
2
3  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

4          I, the undersigned, declare that I am employed in the aforesaid County; I am over

5  the age of 18 and not a party to the within action; my business address is 355 South Grand

6  Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

7

8          On **April 13, 2007,** I served upon the interested party(ies) in this action the

9  foregoing document(s) described as: **DEFENDANT'S SUPPLEMENTAL RESPONSES TO**

10 **INTERROGATORIES 1- 4 AND 10-12 OF PLAINTIFF'S FIRST SET OF**

11 **INTERROGATORIES**

12  ☒    By placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed
13        as stated on the attached service list.

14  ☒    **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such
        envelope(s) to be deposited with postage thereon fully prepaid in the United States mail at
15      a facility regularly maintained by the United States Postal Service at Los Angeles,
        California. I am "readily familiar" with the firm's practice of collecting and processing
16      correspondence for mailing. Under the practice it would be deposited with the U.S. Postal
        Service on that same day with postage thereon fully prepaid at Los Angeles, California in
17      the ordinary course of business. I am aware that on motion of the party served, service is
        presumed invalid if postal cancellation dated or postage meter date is more than one day
18      after dated of deposit for mailing, pursuant to this affidavit.

19  ☐    **BY Electronic Mail (AS INDICATED ON ATTACHED SERVICE LIST)** By sending
        a copy of said document by electronic mail for instantaneous transmittal.

20  ☐    **(STATE)** I declare under penalty of perjury under the laws of the State of California that
21      the foregoing is true and correct.

22  ☒    **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this
        Court at whose direction the service was made.

23          Executed on **April 13, 2007,** at Los Angeles, California.

24

25                                                          Bobbie Morris

26

27

28

1247939.1

1

## SERVICE LIST

2

Shary Everett v. MCI, Inc.

3

4 Aaron Sheanin
  Amanda Steiner
5 Girard Gibbs LLP
  601 California Street, 14th Floor
  San Francisco, CA 94108-2805

6

  Tel: (415) 981-4800
7 Fax: (415) 981-4846

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1247939.1                           - 2 -

# EXHIBIT T

Grant Woods (AZ Bar No. 006106)
**GRANT WOODS, PC**
1726 North Seventh Street
Phoenix, Arizona 85006
Telephone: (602) 258-2599
Facsimile: (602) 258-5070

Robert B. Carey (AZ Bar No. 011186)
Stephanie Levin Bozzo (AZ Bar No. 018470)
**HAGENS BERMAN SOBOL SHAPIRO PLLC**
2425 E. Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Daniel C. Girard (admitted *pro hac vice*)
Aaron M. Sheanin (admitted *pro hac vice*)
**GIRARD GIBBS & De BARTOLOMEO LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>MCI, INC., a Delaware Corporation,<br><br>Defendant. | Case No.  CIV 05-2122-PHX-ROX<br><br>**DECLARATION OF CANDACE BENTLEY IN OPPOSITION TO MOTION TO DISMISS CLASS ACTION COMPLAINT** |

DECLARATION OF CANDACE BENTLEY IN OPP'N TO MOT. TO DISMISS CLASS ACTION COMPLAINT

I, Candace Bentley, declare as follows:

1.     I am over the age of eighteen.  This declaration is based on personal knowledge.  If called to testify to the matters stated herein, I could and would do so competently.

2.     I have read the Class Action Complaint filed in this case.  I believe I was assessed a non-usage monthly charge in connection with an MCI calling plan, and I was not a customer at the time the charge was assessed, as described in the Class Action Complaint.

3.     At all times relevant to the Class Action Complaint, I have not had long-distance telephone service on my home telephone line.

4.     I was an MCI long-distance customer approximately five or six years ago.  Since I cancelled as an MCI customer, I have not received a bill from MCI.

5.     On or around July 22, 2005, I received financing from Ford Motor Company to buy a car.  When I applied for financing, Ford checked my credit report.  At that time, there were no outstanding debts on my credit report.  My credit score from Equifax was 686.  Ford offered me the lowest rate for my car loan.

6.     In August 2005, I applied for a loan with the International Bank of Commerce ("IBC") to replace my second mortgage.  On or about August 10, 2005, IBC checked my credit report through Equifax.  The IBC loan officer told met that there was an outstanding charge from MCI for $20.00 on the Equifax credit report.

7.     I did not authorize or incur this charge from MCI, as I was not a customer of MCI.

8.     The IBC loan officer told me that, because of the MCI charge on my Equifax credit report, my credit score was 653, 33 points less than what it had been a few weeks earlier.  This score was just 13 points above the cut-off of 640 for me to qualify for the loan.

9.     Because I refused to pay the unauthorized MCI charge, IBC did not offer its lowest interest rate to me.  The IBC loan officer told me that, as a result of the reduced credit score, I would be required to pay $4.45 per month more than I would have, had I been offered the lowest interest rate.  The total additional cost to me over the life of the loan will be $534.

10.     Upon learning of the unauthorized MCI charge on my credit report, I called MCI.

---

DECLARATION OF CANDACE BENTLEY IN OPP'N TO MOT. TO DISMISS CLASS ACTION COMPLAINT

1

1  I spoke with a customer service representative who told me that he could not access my account

2  without an account number.  I was not aware of any account number, because I never authorized

3  MCI to establish an account for me.  When I contacted MCI, MCI refused to remove the

4  unauthorized charge from my credit report.

5      11.    I recently contested the unauthorized MCI charge with Equifax.  I believe that my

6  dispute over the unauthorized MCI charge went uncontested by MCI, and Equifax removed the

7  unauthorized MCI charge from my credit report.

8      12.    Now, I intend to ask IBC to rewrite my loan at a lower interest rate.  Even if IBC

9  reduces my interest rate for the rest of the life of the loan, I still will have paid a higher amount

10 for the first few months of the loan.

11     13.    I have communicated with attorneys with Girard Gibbs & De Bartolomeo LLP

12 ("Girard Gibbs") about this class action, and I have retained Girard Gibbs as my counsel.

13     14.    I have been informed of and understand the responsibilities of a class

14 representative.  I intend to follow the progress of this class action.  I am ready to act as a class

15 representative, if requested by the Court or required by the needs of this class action.

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28

DECLARATION OF CANDACE BENTLEY IN OPP'N TO MOT. TO DISMISS CLASS ACTION COMPLAINT

2

1    I declare under penalty of perjury under the laws of the United State of America that the

2  foregoing is true and correct.  Executed on this 31st day of October, 2005, at Harrah, Oklahoma.

3

4

5

6  Candace Bentley

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CANDACE BENTLEY IN OPP'N TO MOT. TO DISMISS CLASS ACTION COMPLAINT
3

# EXHIBIT U

Mark D. Silverschotz (MDS-8393)
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Daniel C. Girard
A. J. De Bartolomeo
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARY and TOM EVERETT, and CANDACE BENTLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> VERIZON BUSINESS GLOBAL, LLC, a Delaware Corporation, f/k/a MCI, Inc. <br><br> Defendant. | Case No. <br><br> **[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Shary and Tom Everett and Candace Bentley, on behalf of themselves and all others similarly situated throughout the United States, allege by and through their attorneys, upon information and belief, as follows:

### JURISDICTION AND VENUE

1.      This action asserts claims for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment. This court has jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331, 1332(d) and 1367, and 47 U.S.C. § 207.

2.      This action was originally filed on July 18, 2005, in the United States District Court for the District of Arizona, where venue was proper pursuant to 28 U.S.C. § 1391(b)(2). A substantial number of the acts giving rise to the violations of law complained of herein occurred and had their primary effect in that judicial district. On Defendant's motion, this action was referred to the bankruptcy court and transferred to the Southern District of New York. Accordingly, Defendant has consented to venue in this judicial district.

## NATURE OF THE CASE

3.      This class action arises out of a decision by MCI, Inc., predecessor-in-interest to Defendant Verizon Business Global, LLC, ("MCI") to implement an aggressive billing initiative directed at non-customers of MCI. MCI harvested data from local telephone service providers on hundreds of thousands of consumers who did not have active long-distance accounts with MCI. MCI then activated accounts for these consumers in its "Basic Dial-1" default billing plan without their authorization or consent, and sent bills to these consumers for approximately seven to ten dollars in monthly charges. These charges included minimum usage fees or monthly recurring charges and related fees and taxes. As a result, MCI has billed monthly charges to hundreds of thousands of persons, despite the fact that they never authorized, requested or used MCI telecommunication services and had no contractual or customer relationship with MCI at any relevant time.

4.      Consumers who detected these unauthorized charges from MCI and attempted to dispute them reported that MCI representatives often refused to reverse, refund or credit back the charges. Consumers also reported that MCI representatives conditioned the issuance of refunds or credits on the consumer's agreement to subscribe to MCI for long-distance service, or otherwise used the improper billings as a means to sell MCI services. Consumers who did not pay MCI for the unauthorized charges were threatened with adverse notations on their credit reports and/or turned over to collections agencies.

5.      On behalf of themselves and all similarly situated persons throughout the United

States, Plaintiffs bring claims for violations of the Communications Act of 1934, as amended,

47 U.S.C. §§ 151, et seq. ("Communications Act"), and for unjust enrichment.

## THE PARTIES

6.      Plaintiffs Shary and Tom Everett are citizens of Arizona, residing in Goodyear,

Arizona.

7.      Plaintiff Candace Bentley is a citizen of Oklahoma, residing in Harrah, Oklahoma.

8.      Defendant Verizon Business Global, LLC, formerly known as MCI LLC, is the

successor-in-interest to MCI, Inc., the defendant in this action when the case was filed.  Verizon

Business Global, LLC is a Delaware corporation with its principal place of business at One

Basking Ridge Way, Basking Ridge, New Jersey.  Defendant is referred to herein as "MCI."

During the class period, MCI provided long-distance telephone service to consumers throughout

the United States.

## FACTUAL ALLEGATIONS

### MCI Harvested Inaccurate Billing Data About Non-Customers

9.      Consumers who buy telephone services for a specific telephone line are called

"end-users."  End-users contract with local exchange carriers ("LECs") for local telephone service

and with "primary interexchange carriers" ("IXCs") for long-distance telephone service.  The

LECs maintain records of the IXCs to which their end-users subscribe for long-distance service.

10.     During the class period, MCI bought and received electronic data from the LECs to

identify telephone lines that are shown in LEC databases as being assigned or "presubscribed" to

MCI for long-distance service.  For example, MCI purchased "snapshots" or "reconciliation lists,"

showing the end-users who the LECs identified as presubscribed to MCI.  MCI also received

"account maintenance information" from the LECs about changes to end-user accounts, such as

name or address updates, for end-users whom the LECs identified as presubscribed to MCI.  MCI

received other types of LEC data about end-users as well.

11.     The LEC data MCI received was often dated, inaccurate and unreliable.  During

the class period, the LEC data identified end-users who never were MCI customers as being

presubscribed to MCI.  The LEC data also identified one-time MCI customers who had canceled MCI service as being presubscribed to MCI.

12.    Beginning in June 2002, MCI misused LEC data to generate bills for consumers with whom it had no contractual or customer relationship and who did not use MCI for long-distance calls at any relevant time.  MCI activated accounts for end-users upon receiving LEC data identifying them as presubscribed to MCI.  Because these end-users had not affirmatively selected an MCI billing plan, MCI placed them by default in its "Basic Dial-1" billing plan.  As described below, because MCI assessed monthly charges on "Basic Dial-1" accounts, MCI billed these end-users, even though they were not MCI customers and never used MCI to make long-distance telephone calls.

13.    MCI never verified that these end-users intended to establish accounts with MCI. MCI made no effort to contact these end-users to determine that they were or wished to be MCI long-distance customers.  Nor did MCI check its own records to see whether these end-users previously canceled MCI long-distance service or tried to do so.  MCI did not obtain valid authorization from these end-users at any relevant time to assess them monthly charges.

### MCI Billed Monthly Charges To Non-Customers

14.    In March 2002, MCI devised a plan to increase its revenues by millions of dollars, by billing a $3 minimum usage fee to consumers on the "Basic Dial-1" billing plan.  Under this plan, end-users who did not generate bills with at least $3 in charges for long-distance telephone calls in a given month would be charged the difference between the $3 minimum usage fee and the total charges for the calls made during that month.

15.    MCI expected to generate much of these revenues from millions of end-users who did not use MCI for long-distance calls, had not affirmative selected a calling plan, and were placed by default on the "Basic Dial-1" billing plan.  MCI considered these end-users to be "zero usage non-plan consumers."  Before MCI implemented the minimum usage fee, these end-users did not generate income for MCI.

16.    According to an internal MCI Business Case Write-up, MCI decided that it

"needed to generate an additional $24.6M in revenue through the application of the new $3 minimum usage fee from zero usage non-Plan Consumer customers. . . ." MCI's documents show that MCI established the minimum usage fee program because not doing so would "unnecessarily avoid[] a significant source of additional revenue from this customer segment."

17.    In June 2002, MCI started assessing a $3 minimum usage fee to end-users for whom MCI had activated Basic Dial-1 accounts. At subsequent times, MCI increased the minimum usage fee and then replaced the minimum usage fee with a monthly recurring charge. The monthly recurring charge was imposed on all Basic Dial-1 accounts regardless of whether they had long-distance traffic on the MCI network.

18.    The zero usage/non-plan consumers whom MCI billed had not contracted with MCI at any relevant time, did not use MCI services at any relevant time, and instead either contracted for long-distance service with carriers other than MCI or previously canceled their MCI long-distance service. MCI had no legal authority to assess minimum usage fees or monthly recurring charges to these end-users. Nevertheless, by billing monthly charges to these end-users, MCI represented that they incurred the charges, and that they owed payment for such charges.

19.    During the class period, MCI assessed unauthorized monthly charges to a staggering number of consumers nationwide. In California alone, MCI assessed minimum usage fees to approximately 500,000 consumers between July 2002 and February 2004.

20.    MCI obstructed the efforts of consumers to obtain credits, adjustments or refunds of the improper charges. Consumers have complained that, in response to requests for refunds and corrections to MCI billing records, MCI representatives promised refunds and corrections which were subsequently not made, that MCI issued "credits" to consumers who were not MCI customers and thus could not use the credits, and that even if MCI issued a credit or refund for unauthorized charges, the unauthorized charges reappeared in subsequent billing statements, or MCI imposed new, unauthorized charges in later billing periods.

21.    MCI's policy and practice was to reverse, refund, or credit back unauthorized charges only to persons who threatened to bring legal action, lodged complaints with regulatory

authorities, or took other action in response to being billed without authorization by MCI. Consumers who did not pay unauthorized charges were turned over to collections agencies.

## Plaintiffs Shary and Tom Everett's Experience

22.    At all relevant times, Plaintiffs Shary and Tom Everett had local residential telephone service through Qwest, and had either long-distance service through AT&T or no long-distance service.

23.    The Everetts had not contracted with MCI or obtained services from MCI at any time since approximately August 2002, when they terminated MCI long-distance service.

24.    In or around August 2002, the Everetts subscribed to AT&T for long-distance service. At approximately the same time at the Everetts' request, Qwest placed a "freeze" on the Everetts' account to prevent their long-distance service from being switched to another carrier without their prior knowledge and consent.

25.    In or around December 2002, MCI received LEC data concerning the Everetts' telephone number. MCI activated a "Basic Dial-1" account for the Everetts on which it began assessing minimum usage fees and related charges. The Everetts did not authorize or incur the charges.

26.    On several occasions, Mrs. Everett contacted MCI to have the unauthorized MCI charges reversed or removed, and to prevent MCI from assessing additional unauthorized charges. MCI's representatives refused to reverse or remove the unauthorized charges. MCI continued to assess charges to the Everetts without their authorization.

27.    In or around March 2003, the Everetts received a notification that payment for the charges was past due. The notice informed the Everetts that failure to pay the charges would result in collections.

28.    Subsequently, in 2003, Mrs. Everett paid the unauthorized charges assessed by MCI in full to prevent damage to her family's credit.

29.    To prevent MCI from continuing to bill them, Mrs. Everett terminated her AT&T long-distance service and restricted all long-distance service on her telephone line.

30.     MCI refused to refund or credit Mrs. Everett's payments until after she filed this lawsuit. In September 2005, approximately two months after Mrs. Everett filed this case, MCI attempted to issue a credit to the Everetts' current LEC for the unauthorized minimum usage fees and related charges. That credit did not post to the Everetts' account until sometime in or around June 2006.

### Plaintiff Candace Bentley's Experience

31.     At all relevant times, Plaintiff Candace Bentley had residential telephone service through McLeod Telephone Company and has not had long-distance service.

32.     Ms. Bentley has not contracted with MCI or obtained services from MCI at any time since approximately 2000, when she terminated MCI long-distance service.

33.     On or around July 2004, MCI received LEC data concerning one of Ms. Bentley's former telephone numbers. MCI activated a "Basic Dial-1" account for Ms. Bentley on which it began assessing minimum usage fees and related charges. Ms. Bentley did not authorize or incur those charges, and did not pay MCI.

34.     In or around August 2005, MCI placed an adverse notation on Ms. Bentley's credit report for failure to pay the unauthorized charges that it assessed on Ms. Bentley's former telephone number. This adverse notation reduced Ms. Bentley's credit score. As a result of the reduced credit score, Ms. Bentley received a less favorable interest rate on a home equity loan, causing her to pay more in interest than she would have otherwise.

35.     Ms. Bentley contacted MCI to have the unauthorized charges reversed, and to have MCI remove the adverse notations from her credit report. MCI's representatives did not do so.

### CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons throughout the United States as members of a proposed plaintiff Class initially defined as:

> **All "zero usage non-Plan Consumers" for whom MCI activated an account on which MCI charged a minimum usage fee, monthly recurring charge or other monthly service charge, however denominated, on or after July 22, 2002; and who were damaged thereby.**

[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT

Excluded from the Class are persons who filed complaints seeking damages with the Federal Communications Commission, in compliance with 47 C.F.R. 1.716, 1.719, 1.720, or 1.721, regarding Defendant's conduct alleged herein; Defendant; any entity in which Defendant has or had a controlling interest; any officers or directors of Defendant; the legal representatives, heirs, successors, and assigns of Defendant; and any judge assigned to this action and his or her immediate family.

37.     This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil Procedure and case law thereunder.

## Numerosity of the Class
### (Fed. R. Civ. P. 23(a)(1))

38.     Members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs estimate that the Class comprises at least tens of thousands of members. The precise number of Class members and their addresses are unknown to Plaintiffs at this time, but can be ascertained from MCI's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

## Existence and Predominance of Common Questions of Fact and Law
### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

39.     Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal and factual questions include:

        (a)     Whether MCI activated accounts with minimum usage fees or monthly recurring charges for zero usage non-Plan consumers based on LEC data;

        (b)     Whether MCI collected payments for minimum usage fees or monthly recurring charges from zero usage non-Plan consumers;

        (c)     Whether MCI threatened to make and actually made negative reports to credit reporting agencies about zero usage non-Plan consumers;

(d)    Whether MCI's activating accounts for, and billing minimum usage fees or monthly recurring charges to, non-customers is an unjust or unreasonable charge, practice, classification, or regulation in violation of Section 201 of the Communications Act;

(e)    Whether MCI's assessment of charges on telephone lines without authorization from the consumer violates the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.;

(f)    Whether MCI unjustly or unreasonably discriminated in charges, practices, classifications, regulations, facilities for, or in connection with like communication services in violation of Section 202 of the Communications Act, by reversing, refunding or crediting minimum usage fees or monthly recurring charges to some, but not all affected persons;

(g)    Whether MCI was unjustly enriched by its conduct; and

(h)    The nature of the relief, including damages, equitable and declaratory relief, to which Plaintiffs and Class members are entitled.

## Typicality of Claims
### (Fed. R. Civ. P. 23(a)(3))

40.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, were assessed minimum usage fees or monthly recurring charges by MCI, when they were not MCI customers, and were damaged thereby.

## Adequacy of Representation
### (Fed. R. Civ. P. 23(a)(4))

41.    Plaintiffs are adequate representatives of the Class, because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in complex class action and telecommunications litigation. Plaintiffs' interests are aligned with those of the Class. They all share an interest in stopping MCI from: (1) charging minimum usage fees or monthly recurring charges to non-customers; (2) collecting these fees from non-customers; and (3) threatening to place adverse notations on the

---

credit reports of non-customers who refuse to pay the unauthorized charges. The interests of the
Class members will be fairly and adequately protected by Plaintiffs and their counsel.

## Superiority of the Class Action
### (Fed. R. Civ. P. 23(b)(3))

42.     A class action is superior to other available means for the fair and efficient
adjudication of this dispute. The damages suffered by each individual Class member may be
small, especially given the burden and expense of individual prosecution of the complex and
extensive litigation necessitated by MCI's conduct. It would be virtually impossible for Class
members individually to obtain effective redress for the wrongs done to them. Furthermore, even
if the Class members themselves could afford such individual litigation, the court system could
not. Individualized litigation presents a potential for inconsistent or contradictory judgments.
Individualized litigation increases the delay and expense to all parties and to the court system
presented with the complex legal and factual issues of this case. By contrast, the class action
device presents far fewer management difficulties, and provides the benefits of single
adjudication, economy of scale, and comprehensive supervision by a single court.

## The Risk of Inconsistent or Dispositive Adjudications and
## the Appropriateness of Final Injunctive or Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

43.     In the alternative, this action may properly be maintained as a class action,
because:

(a)     the prosecution of separate actions by individual Class members would
create a risk of inconsistent or varying adjudication with respect to
individual Class members, which would establish incompatible standards of
conduct for MCI; or

(b)     the prosecution of separate actions by individual Class members would
create a risk of adjudications with respect to individual members of the
Class which would, as a practical matter, be dispositive of the interests of

other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    MCI has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class members as a whole.

## FIRST CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 201)

44.    Plaintiffs incorporate by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further allege as follows:

45.    Plaintiffs assert this claim against MCI on behalf of themselves and all Class members for violations of 47 U.S.C. § 201.

46.    47 U.S.C. § 201(b) states, "All charges, practices, classifications, and regulations for and in connection with such communication service [i.e., service for interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

47.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons who have no contractual relationship with MCI for services they have not requested or received, and that MCI has not provided.

48.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to activate accounts for, and assess monthly charges that were not incurred to, persons without their authorization.

49.    MCI's placing of such unauthorized, misleading or deceptive charges on the telephone bills of Plaintiffs and Class members is a form of "cramming," and is an unjust or unreasonable practice in violation of 47 U.S.C. § 201(b). See In The Matter Of Truth-In-Billing and Billing Format, 14 FCC Rcd 7492 (FCC 1999).

50.    Plaintiffs and Class members have been injured as a result of MCI's above-described violations of 47 U.S.C. § 201 in an amount to be determined according to proof.

---

51.     Under 47 U.S.C. §§ 206 and 207, Plaintiffs and Class members are entitled to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees.

## SECOND CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 202)

52.     Plaintiffs hereby incorporate by reference and reallege each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

53.     Plaintiffs assert this claim against MCI on behalf of themselves and all Class members for violations of 47 U.S.C. § 202.

54.     47 U.S.C. § 202(a) states in relevant part:

> Charges, services, etc.  It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

55.     MCI has assessed persons who were not MCI customers at any relevant time, including Plaintiffs and Class members, for charges for telephone service they did not request, authorize, subscribe to, or use.  MCI has failed to reverse, refund, or credit back such unauthorized charges to Plaintiffs and Class members.  MCI has reversed, refunded, or credited back charges for telephone service to other persons who were assessed such charges without authorization.

56.     MCI has violated 47 U.S.C. § 202(a) by unreasonably discriminating in charges and practices for or in connection with communication service, and by subjecting a class of consumers (namely, those persons who were assessed unauthorized charges for telephone service and for whom MCI failed to reverse, refund, or credit back such charges) to unreasonable prejudice.

57.     As a direct and proximate result of MCI's above-described practice of

discrimination in violation of 47 U.S.C. § 202(a), Plaintiffs and Class members have been injured in an amount to be determined at trial.

58.      Under 47 U.S.C. §§ 206, 207, and 406, Plaintiffs and Class members are entitled both to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiffs and Class members also are entitled to a judgment declaring that MCI violated the Communications Act of 1934.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

59.      Plaintiffs hereby incorporate by reference and reallege each of the foregoing paragraphs as if fully set forth herein, and further allege as follows:

60.      Plaintiffs Shary and Tom Everett only assert this claim against MCI on behalf of themselves and all Class members for unjust enrichment.

61.      MCI has assessed Plaintiffs and Class members for charges for telephone services they did not request, authorize, subscribe to, or use, and it has collected from Plaintiffs and Class members and retained money for such charges.  Accordingly, MCI has received, and continues to receive, money at the expense of Plaintiffs and Class members.

62.      MCI has received benefits from Plaintiffs and Class members that it has unjustly and inequitably retained at their expense.

63.      As a direct and proximate result of MCI's violations of law, Plaintiffs and Class members were deprived of the use of their monies that were unlawfully billed, collected, and retained by MCI, and are therefore entitled to restoration of their monies.

### REQUEST FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

---

A.    An order that this action is properly brought and maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel of record to represent the proposed Class;

B.    An order declaring unlawful the acts and conduct of MCI complained of herein;

C.    An order permanently enjoining MCI from engaging in the unlawful acts and conduct complained of herein and any attempts by MCI to collect the erroneous or unlawful charges it has assessed, including the reporting to credit agencies of non-payment of such charges;

D.    An order that MCI withdraw or reverse any adverse reports made to credit agencies in connection with erroneous charges;

E.    An order compelling restitution, disgorgement, and/or other equitable relief as the Court deems proper;

F.    A judgment declaring that MCI violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.;

G.    An award of compensatory damages to Plaintiffs and the Class, together with an award of consequential and incidental damages and costs suffered by Plaintiffs and Class members because of MCI's wrongful conduct;

H.    An award of pre-judgment and post-judgment interest to Plaintiffs and the Class;

I.    An award of reasonable attorneys' fees and costs incurred by Plaintiffs and the Class in this action, including expert-witness fees; and

J.    Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


DATED: _____


By: _____

Mark D. Silverschotz (MDS-8393)
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733

Daniel C. Girard
A. J. De Bartolomeo
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiffs