Mark D. Silverschotz (MDS-8393)
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Daniel C. Girard
A. J. De Bartolomeo
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiff Shary Everett

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MCI, INC., a Delaware Corporation,<br><br>Defendant. | Adversary Proceeding<br><br>No. 07-01792-AJG |
| In re:<br>WORLDCOM, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 02-13533-AJG<br><br>(Jointly Administered) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................ 1

I. FACTUAL BACKGROUND ........................................ 2

A. MCI engaged in a scheme to charge "minimum usage fees" to non-customers between 2002 and 2005. ........................................ 2

B. MCI settled litigation in 2005 by California regulators over the same sharp billing practices. ........................................ 3

C. MCI established an account and charged a monthly minimum fee to the Everetts. 4

II. PROCEDURAL HISTORY ........................................ 4

III. ARGUMENT ........................................ 7

A. The Court must withdraw the reference of these claims for violations of the Communications Act. ........................................ 7

B. The Court should withdraw the reference of these non-core claims under the discretionary prong of Section 157(d). ........................................ 10

1. This class action presents non-core claims. ........................................ 10

2. The remaining *Orion* factors support withdrawal of the reference. .......... 11

a. Judicial economy favors withdrawal. ........................................ 11

i. The bankruptcy court lacks jurisdiction over class members' post-confirmation claims ........................................ 11

ii. Unnecessary duplication would result if the bankruptcy court hears only pre-confirmation claims. ........................................ 13

iii. The district court can adjudicate this class action with greater efficiency than the bankruptcy court. ........................................ 14

b. The jury demand supports Plaintiff's motion to withdraw the reference. ........................................ 15

c. Withdrawing the reference will prevent MCI from forum-shopping. ........ 15

d. Withdrawing the reference will not adversely affect the uniform administration of bankruptcy law ........ 17

C. This Motion To Withdraw the Reference Is Timely. ........ 18

IV. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Cases**

*Brown v. MCI WorldCom Network Servs., Inc.*
277 F.3d 1166 (9th Cir. 2002) .......... 9

*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*
2004 U.S. Dist. LEXIS 28183 (D. Ak. Sep. 17, 2004) .......... 15

*City of New York v. Exxon Corp.*
932 F.2d 1020 (2d Cir. 1991) .......... 7

*Everett v. MCI, Inc.*
2006 U.S. Dist. LEXIS 71871 (D. Ariz. Sep. 29, 2006) .......... 5

*In re Adelphia Comms. Corp. Sec. & Derivative Litig.*
2006 U.S. Dist. LEXIS 8700 (S.D.N.Y. Feb. 9, 2006) .......... 13, 16

*In re Burger Boys, Inc.*
94 F.3d 755 (2d Cir. 1996) .......... 10

*In re Casimiro*
2006 U.S. Dist. LEXIS 41176 (E.D. Cal. June 6, 2006) .......... 14

*In re Chateaugay Corp.*
86 B.R. 33 (S.D.N.Y. 1987) .......... 9

*In re CIS Corp.*
172 B.R. 748 (S.D.N.Y. 1994) .......... 11

*In re Combustion Equipment Assocs., Inc.*
67 B.R. 709 (S.D.N.Y. 1986) .......... 9

*In re Craig's Stores of Texas, Inc.*
266 F.3d 388 (5th Cir. 2001) .......... 12

*In re Enron Power Marketing, Inc.*
2003 U.S. Dist. LEXIS 189 (S.D.N.Y. Jan. 8, 2003) .......... 8

*In re FWI Forwarding Co.*
2005 U.S. Dist. LEXIS 941 (S.D.N.Y. Jan. 24, 2005) .......... 18

*In re Gardner*
913 F.2d 1515 (10th Cir. 1990) .......... 11

*In re General Media, Inc.*
335 B.R. 66 (S.D.N.Y. 2005) .......... 12

*In re Homeland Stores*
204 B.R. 427 (D. Del. 1997)........................................ 9, 17

*In re Ionosphere Clubs, Inc.*
103 B.R. 416 (S.D.N.Y. 1989)........................................ 9

*In re J. Baranello & Sons, Inc.*
149 B.R. 19 (E.D.N.Y. 1992) ........................................ 11

*In re J.T. Moran Fin. Corp.*
124 B.R. 931 (S.D.N.Y. 1991)........................................ 10

*In re Johns-Manville Corp.*
7 F.3d 32 (2d Cir. 1993)........................................ 12

*In re Lipstein*
1995 U.S. Dist. LEXIS 16969 (S.D.N.Y. Nov. 14, 1995)........................................ 11

*In re McMahon*
222 B.R. 205 (S.D.N.Y. 1998)........................................ 13, 15, 16, 17

*In re Orion Pictures Corp.*
4 F.3d 1095 (2d Cir. 1993)........................................ 10, 15

*In re Resorts Int'l, Inc.*
372 F.3d 154 (3d Cir. 2004)........................................ 12

*In re Rickel & Assocs., Inc.*
2003 U.S. Dist. LEXIS 23136 (S.D.N.Y. Dec. 24, 2003) ........................................ 18

*In re Sunbrite Cleaners, Inc.*
284 B.R. 336 (N.D.N.Y. 2002)........................................ 12

*In re Texaco Inc.*
84 B.R. 911 (S.D.N.Y. 1988)........................................ 18

*In re The VWE Group, Inc.*
359 B.R. 441 (S.D.N.Y. 2007)........................................ 11, 13, 15, 16, 19

*In re WorldCom, Inc.*
2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 26, 2006) ........................................ 18

*Laine v. Gross*
128 B.R. 588 (D. Me. 1991) ........................................ 19

*Lone Star Indus. v. Rankin County Economic Dev. Dist.*
158 B.R. 574 (S.D.N.Y. 1993)........................................ 18, 19

*Malone v. Norwest Fin. Calif., Inc.*
245 B.R. 389 (E.D. Cal. 2000)........................................................................................ 14

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*
458 U.S. 50 (1982)........................................................................................................ 10

*Security Farms v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers*
124 F.3d 999 (9th Cir. 1997) ........................................................................................ 14

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*
994 F. Supp. 202 (S.D.N.Y. 1996); *adopted in its entirety*, 201 B.R. 635 (S.D.N.Y.1996); *rev'd on other grounds*, 135 F.3d 837 (2nd Cir. 1992) ........................................................ 16

*Weiner's, Inc. v. T.G. & Y. Stores Co.*
191 B.R. 30 (S.D.N.Y. 1996)........................................................................................ 11

**Statutes**

28 U.S.C. § 157(a) ...........................................................................................................6

28 U.S.C. § 157(b) .......................................................................................................6, 10

28 U.S.C. § 157(c) ...........................................................................................................13

28 U.S.C. § 157(d) ........................................................................... 1, 7, 9, 10, 17, 18

**Other Authorities**

*Collier on Bankruptcy*
3.04[2] (15th ed. 1999) .................................................................................................... 8

Communications Act of 1934
47 U.S.C. § 201, *et seq.*............................................................................................. 1, 7

## PRELIMINARY STATEMENT

In July 2005, Shary Everett filed this class action in the United States District Court for the District of Arizona ("Arizona District Court") against long-distance telephone carrier, MCI, Inc., for billing unauthorized charges to her and other non-MCI customers in violation of the Communications Act of 1934, 47 U.S.C. § 201, *et seq.*, and the common law.

After more than one year of proceedings in which MCI failed to convince the Arizona District Court that MCI had mooted Ms. Everett's claims or that the Federal Communications Commission ("FCC") had primary jurisdiction over the case, MCI tried a new forum shopping strategy. MCI suddenly decided that this case should be referred to the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court"), which confirmed the plan of reorganization for MCI's predecessor, WorldCom, Inc., more than one year before this case was filed. The Arizona District Court erroneously perceived that it was obliged to refer the case to that district's bankruptcy court under its standing general reference order. Subsequently, the case was transferred to the New York Bankruptcy Court from the Arizona Bankruptcy Court without hearing or opposing brief.

Ms. Everett now moves to withdraw to the district court the automatic reference to the bankruptcy court. Adjudication of the claims of Ms. Everett and the class require substantial and material interpretation of the Communications Act, not the Bankruptcy Code, and call for consideration of issues of first impression both in this District and in the District of Arizona. Notwithstanding the considerable time the New York Bankruptcy Court has spent presiding over the WorldCom Chapter 11 case, this lawsuit present matters which are *sui generis* and fall well-outside that court's specialized expertise. In prior pleadings, MCI specifically made this argument, urging the Arizona District Court to turn the case over to the FCC on the grounds that the claims alleged required that agency's specialized expertise. As a result, the Court must withdraw the reference under the mandatory provisions of 28 U.S.C. § 157(d).

Cause also exists for the Court to exercise its discretion to withdraw the reference. The bankruptcy court lacks subject matter jurisdiction over the claims of numerous class members that arose after WorldCom's plan of reorganization took effect. Those post-confirmation claims must proceed in the district court. The bankruptcy court also lacks the authority to issue final decisions over the claims of class members that arose between the time WorldCom filed for and emerged from bankruptcy. As those post-petition claims are non-core, the bankruptcy court's findings of fact and conclusions of law are subject to *de novo* review by the district court.

Allowing post-petition claims to proceed in the bankruptcy court would lead to delays and inefficiencies, as the bankruptcy court would have to familiarize itself with two years of proceedings before the Arizona District Court. Moreover, splitting the class to keep post-petition claims in the bankruptcy court and post-confirmation claims in the district court would result in needless duplication and waste judicial resources.

Finally, withdrawing the reference will thwart MCI from achieving its improper top priority from the outset of this case: successful forum-shopping.

## I. FACTUAL BACKGROUND

### A. MCI engaged in a scheme to charge "minimum usage fees" to non-customers between 2002 and 2005.

As described in Plaintiff's Class Action Complaint, this case arises out of a "revenue enhancement" initiative undertaken by long-distance telephone carrier MCI from June 2002 through at least August 2005. (*See* Ex. A.)[1] According to internal MCI documents, the company concluded it could earn a 3,600 percent return on its investment by implementing an aggressive new billing initiative directed at *non-customers* of MCI. (*See* Ex. B.) Using data feeds from local telephone service providers ("local exchange carriers" or "LECs"), MCI identified individual telephone lines it referred to as "Zero Usage/No Plan customers." MCI's "Zero

[1] Citations to "Ex. __" refer to exhibits to the Declaration of A. J. De Bartolomeo In Support Of Motion To Withdraw The Reference, submitted herewith.

Usage/No Plan customers" were people who appeared on MCI's electronic billing systems as *not using* MCI long-distance service and *not enrolled* in any MCI billing plan.

MCI justified billing these individuals by enrolling them (without their authorization) in a default calling plan called "Basic Dial-1" that provided for a "minimum usage" fee—a monthly fee that was assessed whether or not the consumer made any long-distance calls on the MCI network. MCI then billed these non-customers for the monthly charges and other related fees and taxes, anticipating that the billings would "generate an additional $24.6M in revenue." (Ex. C.). MCI had no illusions about how consumers would react to the minimum usage fee. At a minimum, billing non-MCI customers was likely to "create some controversy." (Ex. D.) MCI expected to see a material increase in its incremental "churn rate," as consumers reacted to the unauthorized minimum usage fee and demanded that MCI cancel their "accounts." (Ex. E.)

Although many consumers attempted to dispute the charges, MCI's customer service representatives resisted issuing credits to them. (*See* Ex. F at 11.) An internal MCI memorandum directed customer service representatives to try to convert these consumers to fully-fledged MCI customers enrolled in a long-distance plan, rather than to issue credits:

> If a customer calls into Customer Service regarding the Dial-1 $3.00 minimum, follow these steps:
>
> 1. Verify customer's current calling plan.
> 2. Advise the customer on the Dial-1 $3.00 minimum and the advance communication.
> 3. Do not issue credit.
> 4. Follow current conversion strategy outlined in Knowledgebase (index term: conversion).

(Ex. G.) In other words, MCI treated consumer complaints as an opportunity to sell long-distance service, rather than to issue refunds. MCI also referred consumers' unpaid charges to collections agencies. (*See* Ex. H at 3.)

**B. MCI settled litigation in 2005 by California regulators over the same sharp billing practices.**

On April 21, 2005, the Public Utilities Commission of the State of California ("CPUC") issued an Order Instituting Investigation which accused MCI of the same practice alleged in this

case, namely harvesting LEC data on non-MCI customers, creating "accounts" for these consumers without their authorization, and billing them for minimum usage fees. (*See* Ex. H.) On September 30, 2005, MCI and the CPUC jointly moved to settle the CPUC's investigation. (*See* Ex. I.) MCI agreed to pay $2.3 million to the California State General Fund, and agreed to reimburse only those California consumers who affirmatively complained to MCI about being charged minimum usage fees. (*See id.*, ¶ 28.) The CPUC settlement does not govern MCI's conduct outside of California and fails to provide complete relief to California consumers.

### C. MCI established an account and charged a monthly minimum fee to the Everetts.

Shary and Tom Everett are residents of Goodyear, Arizona. Between December 2002 and February 2003, MCI assessed $9.88 in minimum usage fees and related charges on the Everetts' home telephone. (Ex. A, ¶ 25; Ex. J, ¶ 2.) The Everetts were not MCI customers at the time MCI assessed the charges. (Ex. A, ¶ 24; Ex. J., ¶ 2.) The Everetts did not authorize the charges. (Ex. A, ¶¶ 24-25; Ex. J, ¶ 2.) Although Ms. Everett disputed the charges with MCI, MCI refused to reverse or remove them. (Ex. A, ¶ 26; Ex. J, ¶ 3.) After receiving a collections notice from MCI, Ms. Everett paid the full amount demanded to prevent MCI from damaging her family's credit. (Ex. A, ¶¶ 27-28; Ex. J, ¶ 4.) Ms. Everett also restricted all long-distance service on her telephone line to prevent MCI from continuing to bill her without her authorization. (Ex. A, ¶ 28.) MCI only provided a credit to the Everetts' current LEC after this lawsuit was filed.

## II. PROCEDURAL HISTORY

On July 18, 2005, Shary Everett filed this class action in the Arizona District Court on behalf of herself and all non-MCI customers who were billed monthly fees by MCI. (*See* Ex. A.) Ms. Everett alleges that: (1) MCI's creating new accounts for and billing monthly minimum usage fees to non-customers are unjust or unreasonable charges, practices, classifications or regulations in violation of Section 201 of the Communications Act; (2) MCI unjustly or unreasonably discriminated in charges, practices, classifications, regulations, facilities for or in

connection with like communication service in violation of Section 202 of the Communications Act by reversing, refunding or crediting minimum usage fees to some, but not all affected persons; (3) MCI charged, demanded, collected, or received compensation at rates greater or different than the rates specified in its tariffs in violation of Section 203 of the Communications Act, by charging minimum usage fees to non-customers; and (4) MCI's conduct gives rise to the common law claim of unjust enrichment. (*See id.*, ¶¶ 38-63.)

Ms. Everett seeks injunctive relief and damages, and demands a jury trial on all counts so triable. (*See id.*, at 14-15.) On May 30, 2006, Ms. Everett filed a motion for certification of a proposed nationwide class of all "zero usage non-Plan Consumers" who were enrolled by MCI in an account for which MCI charged a minimum usage fee, monthly recurring charge or other monthly service charge on or after July 18, 2001.

MCI has made numerous efforts to avoid litigating the merits of this case. Seven weeks after Ms. Everett filed her class action complaint, MCI attempted to issue a credit to her local exchange carrier in an effort to moot her claim. Then, on September 29, 2005, MCI filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), contending that the case was moot. In the alternative, MCI argued that the Arizona District Court should refer the case to the FCC under the doctrine of primary jurisdiction. After extensive briefing, on September 29, 2006, the Arizona District Court denied MCI's motion to dismiss. *Everett v. MCI, Inc.*, Case No. CIV 05-2122-PHX-ROS, 2006 U.S. Dist. LEXIS 71871 (D. Ariz. Sep. 29, 2006). (Ex. K.) In an issue of first impression, the Arizona District Court concluded that MCI had not mooted Ms. Everett's claims by paying her damages before she had filed her motion for class certification. *See id.* at *7-20. The Arizona District Court also declined to refer the case to the FCC. *See id.* at *20-23.

Dissatisfied with the Arizona District Court's ruling and again seeking to avoid litigating the merits of these claims, on October 31, 2006, MCI filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). MCI argued that Ms. Everett's claims had been discharged and barred by the order approving the Chapter 11 reorganization plan of MCI's

predecessor, WorldCom. In the alternative, MCI requested that the class action be referred to the bankruptcy court. MCI cannot deny its awareness of WorldCom's bankruptcy long before it sought to refer this case to the bankruptcy court. WorldCom had filed for bankruptcy under Title 11 in the New York Bankruptcy Court four years earlier on July 21, 2002. On October 31, 2003, the New York Bankruptcy Court issued the Confirmation Order approving WorldCom's Bankruptcy Plan. The Confirmation Order became effective on April 20, 2004 ("Effective Date"), more than one year before Ms. Everett filed this case.[2]

On May 24, 2007, the Arizona District Court referred this case to the United States Bankruptcy Court for the District of Arizona ("Arizona Bankruptcy Court"). (*See* Ex. L.) The Arizona District Court concluded that Ms. Everett's claims related to a case under title 11, because the factual circumstances giving rise to her claims took place in 2003 during the pendency of WorldCom's bankruptcy. The Arizona District Court made clear it that believed it was compelled to refer this case to the bankruptcy court pursuant to that district's standing General Order 01-15 which states: "Pursuant to 28 U.S.C. § 157(a), the court hereby refers to the bankruptcy judges for this district all cases under title 11 and all proceedings under title 11 or arising in or related to a case under title 11 as of the effective date of the present Bankruptcy Act." The Arizona District Court declined to address whether Ms. Everett's claims are core or non-core under 28 U.S.C. § 157(b)(2), however, leaving that determination to the bankruptcy court. (*See id.* at 2.) The Arizona District Court appeared to be unaware of its inherent power to withdraw the automatic reference on Plaintiff's motion or *sua sponte*.

The clerk of the Arizona Bankruptcy Court opened the case file for this action on June 6, 2007. On June 13, 2007, MCI filed a motion to transfer the case to the New York Bankruptcy

---

2 Although MCI hatched its scheme to charge unauthorized minimum usage fees during the pre-petition period between March and June 2002, the damages to Plaintiff and class members were caused by MCI's improper billings during the post-petition and/or post-confirmation periods. MCI never informed class members that they had been victimized by the minimum usage fee scheme or that they should have filed a claim in the WorldCom bankruptcy proceeding, despite the fact that all class members were known creditors who could have been identified and given actual notice by MCI.

Court. The Arizona Bankruptcy Court granted MCI's motion on June 18, 2007, before Ms. Everett was afforded the opportunity under the local rules to file a response. (*See* Ex. M.) This case first appeared on the New York Bankruptcy Court's docket on July 3, 2007. (*See* Ex. N)

The New York Bankruptcy Court has scheduled a status conference for October 30, 2007, but has not taken any other action. Plaintiff has not requested payment of an administrative expense from the bankruptcy court, and neither party has filed any motions. Discovery has been effectively stayed since the case was transferred.

Plaintiff now moves to withdraw the automatic reference to the bankruptcy court of this class action.

## III. ARGUMENT

### A. The Court must withdraw the reference of these claims for violations of the Communications Act.

Withdrawal of the reference to bankruptcy court is mandatory under 28 U.S.C. § 157(d), because resolution of this class action requires substantial and material application of the Communications Act. Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under the section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceedings requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The Second Circuit has construed this provision narrowly to mandate withdrawal of the reference only for "cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991). Mandatory withdrawal under Section 157(d) reflects congressional intent that bankruptcy judges should avoid adjudicating matters that fall outside of their expertise. *See* 1 *Collier on Bankruptcy* ¶ 3.04[2] (15th ed. 1999). "Situations in which courts have found 'substantial and material' issues of federal statutory interpretation [to mandate withdrawal of the

reference] include: (1) issues of first impression; (2) analyses of tariffs requiring something other than a rote application of existing precedent; and (3) the decision as to whether resort to administrative remedies is a prerequisite to commencing an action in court." *In re Enron Power Marketing, Inc.*, 02 Civ. 7964, 2003 U.S. Dist. LEXIS 189, at *12 (S.D.N.Y. Jan. 8, 2003). This case fits well within the Second Circuit's standard for mandatory withdrawal.

MCI has long taken the position that resolution of this action will require significant interpretation, rather than mere application, of the Communications Act. In September 2005, MCI asked the Arizona District Court to refer this class action to the FCC under the doctrine of primary jurisdiction. MCI argued that Plaintiffs' Communications Act claims "raise[] issues that are uniquely within the FCC's expertise and that are ***not within the conventional experience of the courts***." (Ex. O at 13 (emphasis added).)

According to MCI, resolution of these claims requires an examination of "the manner in which LECs and long distance carriers ('IXCs') exchange information, the rules that apply to the exchange of information between IXCs and the LECs, the rules that apply to how IXCs should and can use information that is supplied by LECs, and which entity is liable, if any, when an IXC relies on incorrect information provided by a LEC." (*Id.*) MCI argued that "the FCC has primary jurisdiction because the FCC has the knowledge and expertise to resolve disputes arising out of the exchange of information between IXCs and LECs." (Ex. P at 5.) In its October 2006 answer and May 2007 case management plan, MCI continued to raise defenses that would require significant interpretation of the Communications Act. For example, MCI contends that Plaintiff's claims are barred by the filed rate/filed tariff doctrine, must be referred to the FCC under the doctrine of primary jurisdiction, and are preempted by the FCC's regulatory scheme. (*See* Ex. Q at 7-9; Ex. R at 7-9.)

As MCI has long asserted that only the FCC—not even a district court—has the capability and expertise to adjudicate these Communications Act claims, it cannot now change course and argue that the claims fall within the conventional experience of the more specialized bankruptcy court, or that adjudicating these claims will require a mere application of the

Communications Act. *See In re Homeland Stores, Inc.*, 204 B.R. 427, 434 (D. Del. 1997) ("Congress did not intend the Bankruptcy Courts, which have sharpened their expertise in a specialized body of law, to be flooded with non-chapter 11 disputes that have such a tenuous relationship to a bankruptcy proceeding.").

The mandatory withdrawal standard of Section 157(d) also is generally satisfied "when the non-Bankruptcy law under consideration raises issues of first impression." *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 419 (S.D.N.Y. 1989) (citing *In re Chateaugay Corp.*, 86 B.R. 33, 36 (S.D.N.Y. 1987) (interpretation of ERISA mandated withdrawal); *In re Combustion Equipment Assocs., Inc.*, 67 B.R. 709, 713 (S.D.N.Y. 1986) (interpretation of CERCLA mandated withdrawal)). MCI already has admitted that this case presents issues of first impression under the Communications Act. (*See* Ex. N at 12 (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) ("Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression. . . .")).)

That the issues presented in this case are matters of first impression is not in dispute. As an initial matter, the Arizona District Court has already decided one issue of first impression under both Rule 23 and the mootness doctrine of Article III of the Constitution, namely that a defendant may not moot a class action by paying the named plaintiff's damages before she has the opportunity to file a motion for class certification. Moreover, this case presents other issues of first impression under federal law. For example, Plaintiff is unaware of any other court that has decided whether a long-distance carrier violates the Communications Act by billing minimum monthly fees to non-customers, without their authorization, after obtaining data from the LECs.

Section 157(d) mandates withdrawal of the reference here, as adjudication of Plaintiff's claims presents issues of first impression and, by MCI's own admission, will require the Court to undertake substantial and material interpretation of the Communications Act.

**B. The Court should withdraw the reference of these non-core claims under the discretionary prong of Section 157(d).**

While the reference of this class action is subject to mandatory withdrawal, good cause for withdrawal under the "discretionary" prong of Section 157(d) also exists. The Court "may withdraw" the reference of this case from the bankruptcy court "for cause shown." 28 U.S.C. § 157(d). The Second Circuit holds that discretionary withdrawal of a reference under Section 157(d) requires consideration of several factors. "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). "[O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id. See also In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996). Each of these factors supports Plaintiff's motion for withdrawal.

**1. This class action presents non-core claims.**

Bankruptcy courts lack authority under Article III of the Constitution or the Bankruptcy Code to enter final orders with respect to non-core claims. *See Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982); *In re Orion*, 4 F.3d at 1101 ("[T]he bankruptcy court may hear" non-core proceedings, but "is only empowered to submit proposed findings of fact and conclusions of law to the district court for *de novo* review."). Section 157(b) distinguishes between "core" and "non-core" bankruptcy proceedings and provides a non-exclusive list of examples of "core" proceedings.

Core proceedings are "generally defined as matters arising under title 11, or arising in a case under title 11 and which would have no existence outside of the bankruptcy case." *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 937 (S.D.N.Y. 1991). Core proceedings "must invoke a substantive right provided by title 11." *Id.* In contrast, "Non-core proceedings involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under the

federal bankruptcy law and would exist in the absence of a bankruptcy case." *In re J. Baranello & Sons, Inc.*, 149 B.R. 19, 24 (E.D.N.Y. 1992). *See also In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."); *In re The VWE Group, Inc.*, 359 B.R. 441, 448 (S.D.N.Y. 2007).

While the Arizona District Court deferred consideration of the core/non-core issue, this class action is a non-core proceeding. Ms. Everett brings claims for violation of the federal telecommunications laws and for unjust enrichment. These claims arose out of the regular business operations of MCI. The factual basis for Ms. Everett's claims took place while WorldCom was in bankruptcy, but the claims themselves do not involve rights created by bankruptcy law. There is no question that these Communications Act and common law claims would exist, and could be litigated in the district court, in the absence of WorldCom's bankruptcy. As Ms. Everett's substantive claims do not depend upon the Bankruptcy Code for their existence, they are non-core and should be litigated in the district court.[3]

**2. The remaining *Orion* factors support withdrawal of the reference.**

**a. Judicial economy favors withdrawal.**

**i. The bankruptcy court lacks jurisdiction over class members' post-confirmation claims.**

Although Ms. Everett's claims arose during the pendency of WorldCom's bankruptcy, the class that she seeks to represent includes persons whose claims arose after the April 20, 2004 Effective Date. MCI admits that it charged minimum monthly fees ***after the Effective Date*** to

---

3 That the claims of Ms. Everett and a substantial portion of the class arose in the post-petition period does not cause them to be core proceedings. *See Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 34 (S.D.N.Y. 1996) ("I am unpersuaded that the fact that a claim arises post-petition can, without more, transform the claim into a core proceeding."); *In re CIS Corp.*, 172 B.R. 748, 758 (S.D.N.Y. 1994) (holding that action for conversion was non-core, even if the "alleged acts of conversion occurred post-petition"); *In re Lipstein*, 94 Civ. 7100 (LLS), 1995 U.S. Dist. LEXIS 16969 (S.D.N.Y. Nov. 14, 1995) (holding that RICO and tort claims that "could have been brought outside the bankruptcy environment" are non-core, without discussing whether those claims arose pre- or post-petition).

more than 28,000 accounts that it established on the basis of LEC data for consumers who did not use MCI for long-distance service. (*See* Ex. S at 2-3.) MCI's conduct gives rise to post-confirmation claims.

The bankruptcy court has no subject matter jurisdiction over the claims of class members that arose after the Effective Date. "[A]s a general rule, a bankruptcy court's jurisdiction extends until the debtor's plan of reorganization has been confirmed." *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 339-40 (N.D.N.Y. 2002) (citing *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993)). "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). ***Only*** "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus" to a bankruptcy plan or proceeding to warrant post-confirmation bankruptcy jurisdiction. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004).

The claims of class members that arose after the Effective Date are unrelated to the interpretation, implementation, consummation, execution, or administration of the WorldCom Bankruptcy Plan and therefore lack a sufficient nexus to support post-confirmation bankruptcy jurisdiction. *See id.* at 169; *In re General Media, Inc.*, 335 B.R. 66, 74 (S.D.N.Y. 2005) ("Accordingly, the outcome of a post-confirmation proceeding cannot affect the estate."). As a result, they must be pursued in the district court.

Candace Bentley is a class member whose claims against MCI arose after the Effective Date. Although Ms. Bentley was not an MCI customer, beginning in July 2004, more than two months after WorldCom emerged from bankruptcy as MCI, the company charged minimum usage fees to Ms. Bentley on an account that it activated without her authorization. When Ms. Bentley did not pay these improper charges, MCI placed an adverse notation on her credit report, causing her to pay a higher interest rate on a bank loan than she otherwise would have. Ms. Bentley already has submitted a declaration, produced documents, and testified at a deposition in

this action. (*See* Ex. T.) She is prepared to represent the class as a named plaintiff. Once the Court rules on this motion to withdraw the reference, Plaintiff will seek permission to file a proposed amended complaint to include Ms. Bentley as a named plaintiff. (*See* Ex. U.)[4]

Splitting the class into two separate actions—one for pre-Effective Date claims led by Ms. Everett in the bankruptcy court, and one for post-Effective Date claims led by Ms. Bentley in the district court—is inefficient, wasteful of the resources of the courts and the parties, and creates the potential for inconsistent rulings on discovery, class certification and the merits. Instead, judicial economy would be better served by withdrawing the reference to allow all claims to proceed in a single court.

**ii. Unnecessary duplication would result if the bankruptcy court hears only pre-confirmation claims.**

As discussed above, class members' post-petition claims are non-core matters. Absent the consent of the parties (and neither party has consented here), the bankruptcy court may hear—*but cannot adjudicate*—non-core proceedings. *See* 28 U.S.C. § 157(c)(1). "Since the Bankruptcy Court's determination of this non-core claim would be subject to *de novo* review in the district court, unnecessary costs can be avoided by a single proceeding in this court." *In re The VWE Group*, 359 B.R. at 451 (granting motion to withdraw reference). *See also In re McMahon*, 222 B.R. 202, 208 (S.D.N.Y. 1998); *In re Adelphia Comms. Corp. Sec. & Derivative Litig.*, 03 MDL 1529 (LLM), 2006 U.S. Dist. LEXIS 8700 , at *20 (S.D.N.Y. Feb. 9, 2006) (withdrawal will eliminate duplication of effort arising from district court's *de novo* review of bankruptcy court's recommended findings over non-core claims). Withdrawing the reference is appropriate to avoid such unnecessary duplication and expense.

---

4 Plaintiff has not previously sought to leave to add Ms. Bentley as a named plaintiff, because, as described herein, the bankruptcy court lacks subject matter jurisdiction over her claims. The proposed complaint also includes other amendments in light of the discovery taken to date and the procedural posture of the case. Among other things, the proposed complaint revises the class period to exclude from the class persons whose claims arose before WorldCom filed its initial Chapter 11 petition.

**iii. The district court can adjudicate this class action with greater efficiency than the bankruptcy court.**

That this case is a large class action which would be more economical to try in the district court favors withdrawal of the reference. *See Malone v. Norwest Fin. Calif., Inc.*, 245 B.R. 389, 400 (E.D. Cal. 2000). "Although bankruptcy courts are empowered to oversee class actions, there is little reason to assume that they regularly do so. On the other hand, the district court has long experience in the management of this complex action litigation." *Id.* "Having the bankruptcy court handle a class action suit would indeed impose a burden on that court and would not be an 'efficient use of judicial resources.'" *In re Casimiro*, No. CIV-F-06-0028 AWISMS, 2006 U.S. Dist. LEXIS 41176, at *18 (E.D. Cal. June 6, 2006) (quoting *Security Farms v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997)).

This class action was litigated in the Arizona District Court for nearly two years before it was referred to the bankruptcy court. During that time, the Arizona District Court became familiar with the factual and legal questions at issue. The Arizona District Court denied MCI's motion to dismiss the case as moot, and refused to refer the action to the FCC under the doctrine of primary jurisdiction. The Arizona District Court also granted Plaintiff's motion to compel discovery.[5] In addition, Plaintiff's motion for class certification was pending before the Arizona

---

[5] The documents made available through the CPUC proceeding alone demonstrate that MCI engaged in a scheme to add millions of dollars to its bottom line at the expense of non-MCI customers. Additional discovery is likely to prove even more devastating to MCI. It is therefore not surprising that MCI has consistently sought to evade its discovery obligations in this case. MCI refused to participate in discovery while its motion to dismiss was pending. After the Arizona District Court denied its motion to dismiss, MCI argued that discovery should be stayed pending a decision on Plaintiff's motion for class certification. On November 1, 2006, the Arizona District Court rejected MCI's argument and granted Plaintiff's motion to compel discovery. Even then, MCI dragged its heels, produced limited documents and again argued that discovery should be stayed pending a ruling on its motion to refer this case to the bankruptcy court. Discovery has been effectively stayed since that motion was granted.

District Court when the motion to refer the case to the bankruptcy court was filed and decided.[6] Efficiency is not served by requiring the bankruptcy court to come up to speed on two years of litigation. *See Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, A04-58 CIV (JWS), 2004 U.S. Dist. LEXIS 28183, at *6 (D. Ak. Sep. 17, 2004) ("This court has already issued its pretrial orders, entered rulings on motions, has pending before it motions that are ripe for decision, and is generally already familiar with the legal and factual issues presented; these efforts would have to be duplicated by the bankruptcy court if the matter were transferred to it."). Withdrawal of the reference will enhance judicial economy, preserve the resources of the parties and the courts, and avoid duplicative litigation.

**b. The jury demand supports Plaintiff's motion to withdraw the reference.**

Plaintiff demands a jury trial to recover damages for violations of the Communications Act under 47 U.S.C. § 206 on behalf of herself and the class. As described above, these claims are non-core. The Second Circuit has explained that, "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *In re Orion Pictures Corp.*, 4 F.3d at 1101. "Under *Orion*, the court's finding that the claim is non-core coupled with [Plaintiff's] jury demand is sufficient cause to withdraw the reference." *In re The VWE Group*, 359 B.R. at 451. *See also In re McMahon*, 222 B.R. at 208.

**c. Withdrawing the reference will prevent MCI from forum-shopping.**

MCI's persistent efforts to remove this class action from the Arizona District Court are examples of blatant forum-shopping. Rather than litigate in Arizona where Ms. Everett resides (and where MCI billed her), in September 2005, MCI moved to refer this case to the FCC, a tribunal located just across the Potomac River from MCI's then-corporate headquarters in Ashburn, Virginia. It should come as no surprise that the FCC has far greater familiarity with MCI, one of the nation's largest telecommunications carriers, than the Arizona District Court. In

---

6 Plaintiffs may file an amended motion for class certification to include Ms. Bentley as an additional class representative.

October 2006, one month after the Arizona District Court denied MCI's motion, MCI moved to have the case referred to the bankruptcy court, where it has been in litigation since 2002.

MCI was well aware of the bankruptcy proceeding and could have sought to refer the case immediately after Plaintiff filed her complaint. MCI's decision to delay until just after the Arizona District Court issued an unfavorable ruling on its motion to dismiss speaks volumes. There can be not doubt that MCI wants two bites at the apple. *See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 994 F. Supp. 202 (S.D.N.Y. 1996) (recommending withdrawal of reference where trustee invoked bankruptcy court jurisdiction to avoid outcome of adverse ruling), *adopted in its entirety,* 201 B.R. 635, 639 (S.D.N.Y. 1996), *rev'd on other grounds*, 135 F.3d 837 (2d Cir. 1992). MCI's brazen attempts to manipulate the federal judicial system so that it may appear in a geographically convenient and more hospitable forum should not be condoned. *See In re Adelphia Comms.*, 2006 U.S. Dist. LEXIS 8700, at *21 (noting that "the usual objectives of 'forum-shopping'" include "finding a jurisdiction with more favorable law, and geographical convenience").

In addition, withdrawing the reference would not encourage forum-shopping. This class action presents non-core claims as well as claims over which the bankruptcy court lacks jurisdiction. These class claims were properly brought, and must be tried by a jury, in the district court. *See In re The VWE Group, Inc.*, 359 B.R. at 451 ("Finally, withdrawing the reference will not result in forum-shopping because, due to defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this court."); *In re McMahon*, 222 B.R. at 208 ("Forum shopping would not be encouraged by granting the Defendant's motion [to withdraw the reference] as this case involves a non-core proceeding that could have and probably should have been brought in the district court originally.").

In sum, withdrawing the reference serves the interest of preventing forum-shopping.

**d. Withdrawing the reference will not adversely affect the uniform administration of bankruptcy law.**

This class action turns on questions of telecommunications law, namely whether MCI's practice of charging monthly minimum usage fees to non-customers is unjust or unreasonable in violation of the Communications Act. Resolving this issue does not implicate bankruptcy law. *See In re McMahon*, 222 B.R. at 208 ("Finally, uniformity in the administration of bankruptcy law will not be effected [sic] as the breach of contract claim does not turn on questions of bankruptcy law.").

Even if Plaintiff had requested payment of an administrative expense from the bankruptcy court—which she has not—the Bankruptcy Plan and Confirmation Order establish the procedure for paying such claims and set the amount that class members are entitled to receive: Persons asserting valid Administrative Expense Claims are entitled to <u>payment in full</u>. *See* Bankruptcy Plan, § 2.01 ("[E]ach holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim become an Allowed Administrative Expense Claim, or as soon thereafter as is practicable. . . ."). Moreover, the Bankruptcy Plan does not set any deadline for asserting these claims, which are payable once they become "Allowed by Final Order" of the "Bankruptcy Court or ***any other court of competent jurisdiction***." *Id.*, §§ 1.10, 1.49, 2.01 (emphasis added).[7]

As the Bankruptcy Plan and Confirmation Order already set forth the manner in which these claims are treated and the amount of payment, the district court's adjudication of the merits of these claims will not adversely affect the uniform administration of bankruptcy law. *See In re Homeland Stores*, 204 B.R. at 434 (withdrawing reference of ERISA litigation from bankruptcy court that had already confirmed reorganization plan: "Thus, although the bankruptcy case is still officially 'open'—ostensibly to resolve a few remaining core matters—the Bankruptcy

---

[7] As discussed above, class members' post-Effective Date causes of action are neither core nor non-core and are outside of the bankruptcy court's jurisdiction.

Court has fulfilled its *raison d'etre*. This adversary action does not implicate the expertise of the Bankruptcy Court in juggling creditors' or debtors' rights or wading through the complexities of the Bankruptcy Code; rather it is litigation that although brought by a party in bankruptcy proceedings, could just as well have been initiated in the district court.").

In sum, each of the *Orion* factors supports Plaintiff's motion for permissive withdrawal of the reference.

**C. This Motion To Withdraw the Reference Is Timely.**

Plaintiff timely filed this motion to withdraw the reference. "There is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a reference to the bankruptcy court." *Lone Star Indus. v. Rankin County Economic Dev. Dist.*, 158 B.R. 574, 577 (S.D.N.Y. 1993). Courts decide whether such a motion is timely on a case-by-case basis "in light of the status of the bankruptcy proceedings." *In re Texaco Inc.*, 84 B.R. 911, 919 (S.D.N.Y. 1988). "[A] time lapse that constitutes an unreasonably long delay in one case will not necessarily render a withdrawal motion untimely in another. *In re FWI Forwarding Co.*, 2005 U.S. Dist. LEXIS 941, at *17 (S.D.N.Y. Jan. 24, 2005).

In general, motions under Section 157(d) are untimely if they are filed significantly after the time the moving party has notice of grounds for withdrawal. *See, e.g., In re WorldCom, Inc.*, 06 Civ. 3407 (JGK), 2006 U.S. Dist. LEXIS 52318, at *8-10 (S.D.N.Y. July 26, 2006) (motion was untimely where over 18 months had elapsed between debtor's objection to proof of claim and claimant's motion to withdraw the reference); *In re FMI Forwarding*, 2005 U.S. Dist. LEXIS 941, at *17-21 (motion was untimely when made 18 months after movant became aware of grounds for the motion); *In re Rickel & Assocs., Inc.*, 2003 U.S. Dist. LEXIS 23136, at *2 (S.D.N.Y. Dec. 24, 2003) (motion was untimely when filed 31 months after commencement of adversary proceeding).

"Conversely, those cases where motions were denied as untimely after only a few months involved very clear indications of tactical delays and forum shopping after the bankruptcy judge made intermittent findings adverse to the moving party." *In re The VWE Group*, 359 B.R. at 447

(citing *Lone Star*, 158 B.R. at 577 ("Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success."); *Laine v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) ("Only after the Bankruptcy Court denied their motions to dismiss, having invested a significant amount of time and energy, did Defendants try another tack and seek withdrawal of the reference.")).

Plaintiff's motion to withdraw the reference is timely. The Arizona District Court referred this case to the Arizona Bankruptcy Court on May 24, 2007. On June 13, 2007, MCI moved to transfer the case to the New York Bankruptcy Court, and before Plaintiff's time to file a response had expired under the local rules, the Arizona Bankruptcy Court granted MCI's motion to transfer on June 18, 2007. This case first appeared on the New York Bankruptcy Court docket on July 3, 2007.

Nothing in this case has transpired since its transfer to New York. Neither party has filed any motions. Although a status conference is scheduled for October 30, 2007, the bankruptcy court has yet to hold any proceedings or make any rulings. Plaintiff has not sought any tactical delay or engaged in forum-shopping with this motion. Accordingly, the motion is timely filed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court withdraw the reference of this class action to the bankruptcy court.

Dated: October 25, 2007

Respectfully submitted,

**ANDERSON KILL & OLICK, P.C.**

/s/ Mark D. Silverschotz
Mark D. Silverschotz (MDS-8393)

1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Daniel C. Girard
A. J. De Bartolomeo
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative Plaintiff Shary Everett