WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (AP3629)
Lydia Protopapas
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Attorneys for Defendants, MCI, LLC, *et al.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SHARY EVERETT, on behalf of herself and all others similarly situated,** | § § § | **Chapter 11** |
| **Plaintiff,** | § § | **Case No. 02-13533-AJG (Jointly Administered)** |
| **v.** | § § | |
| **MCI, INC., a Delaware Corporation,** | § § | **Case No. 07-9590 (DC)** |
| **Defendant.** | § | **Adv. No. 07-01792 (AJG)** |
| **In re** | § § § | |
| **WORLDCOM, INC.,** *et al.* | § § | |
| **Reorganized Debtors.** | § | |

## OBJECTION TO PLAINTIFF SHARY EVERETT'S
## MOTION TO WITHDRAW THE REFERENCE

Defendant MCI, LLC f/k/a MCI, Inc., and its affiliates (collectively, "MCI") respectfully submit this Objection to the Motion to Withdraw the Reference (the "Motion to Withdraw"), dated October 25, 2007, filed by Plaintiff, Shary Everett, on behalf of herself and a putative class ("Plaintiff" and/or "Everett").  The Motion to Withdraw should be denied in its entirety because the Bankruptcy Court is the appropriate forum in which to adjudicate the underlying action.

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ........................................................... 3

    A.     MCI's Bankruptcy Case ................................................................. 3

    B.     The Putative Class Action Complaint ................................................. 4

    C.     The Rule 12(c) Motion for Judgment on the Pleadings ....................... 6

    D.     The Motion to Withdraw ................................................................. 8

III.    LEGAL ARGUMENT ............................................................................................ 9

    A.     The Motion to Withdraw the Adversary Proceeding is Barred by the Law of the Case and Principles of Comity ................................................... 9

    B.     Mandatory Withdrawal of the Adversary Proceeding is Unwarranted .............. 11

    C.     There is No Cause for Permissive Withdrawal of the Adversary Proceeding ..... 17

        (1)     The Adversary Proceeding is a Core Proceeding ................................... 18

        (2)     The Adversary Proceeding is an Equitable Proceeding .......................... 21

        (3)     The Interests of Judicial Economy and Uniformity in the Administration of Bankruptcy Laws Will be Served by the Bankruptcy Court's Adjudication of the Adversary Proceeding............. 22

        (4)     Denying the Withdrawal of the Reference Will Prevent Plaintiff from Forum Shopping ................................................................. 26

        (5)     Plaintiff's Demand for a Jury Trial Does Not Warrant Withdrawal of the Reference ....................................................................... 27

IV.     CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*ACC Bondholder Group v. Adelphia Committee Corp. (In re Adelphia Committee Corp.)*, 367 B.R. 84 (S.D.N.Y. 2007)................................................................................................14, 15

*American Telegraph &Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581 (S.D.N.Y. 1988)................. 11

*Arizona v. California*, 460 U.S. 605 (1983).................................................................................. 9

*Ben Cooper, Inc. v. Insurance Co. of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir. 1990), *vacated*, 498 U.S. 964 (1990)........................................................... 17

*Christianson v. Colt Industrial Operating Corp.*, 486 U.S. 800 (1988) ...................................... 9

*Cibro Petroleum Products v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108 (S.D.N.Y. 2001) ......................................................................................................................... 20

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) .........................................11, 13

*DiLaura v. Power Authority of N.Y.*, 982 F.2d 73 (2d Cir. 1992)................................................. 9

*In re El Paso Electric Co.*, 77 F.3d 793 (5th Cir. 1996) ........................................................... 25

*Enron Power Marketing, Inc. v. Virginia Electric & Power Co. (In re Enron Corp.)*, 318 B.R. 273 (S.D.N.Y. 2004) ........................................................................................................ 25

*Exec. Risk Indemnity, Inc. v. Brooks (In re Jackson Brook Institute, Inc.)*, 280 B.R. 779, 785 (Dist. Me. 2002) ....................................................................................................................16, 21

*Formica Corp.*, 305 B.R. 147 (S.D.N.Y. 2004)........................................................................ 25

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).............................................................. 19

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Investment Fund, Ltd.)*, 343 B.R. 63 (S.D.N.Y. 2006) ......................................................................................................................... 11

*Gulf Research & Development Co. v. Schlumberger Well Sur. Corp.*, 98 F. Supp. 198 (D. Del. 1951) ................................................................................................................................... 10

*Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384 (2d Cir. 1990)......................................................................... 19

*Hassett v. Citicorp N. America, Inc. (In re CIS Corp. II)*, 188 B.R. 873 (S.D.N.Y. 1995).....11, 16

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982)........................................ 10

## TABLE OF AUTHORITIES
### (continued)

Page

*Ionosphere Clubs, Inc.*, 103 B.R. 416 (S.D.N.Y. 1989) .............................................................. 11

*Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.)*, 182 B.R. 379
(S.D.N.Y. 1995) ........................................................................................................ 12, 18, 25

*Kenai Corp. v. National Union Fire Insurance Co. (In re Kenai Corp.)*, 136 B.R. 59
(S.D.N.Y. 1992) ................................................................................................................... 16

*Kuck v. Berkey Photo, Inc.*, 85 F.R.D. 39 (S.D.N.Y. 1979) ........................................................ 23

*LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.)*, 193 B.R. 669 (S.D.N.Y.
1996) ................................................................................................................................... 11

*Langenkamp v. Culp*, 498 U.S. 42 (1990) .................................................................................. 19

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir.
2002) ................................................................................................................................... 18

*McCrory Corp. v. 99 Centrals Only Stores (In re McCrory Corp.)*, 160 B.R. 502 (S.D. N.Y.
1993) ................................................................................................................................... 18

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ......................................................................... 14

*O'Connell v. Terranova (In re Adelphia Institute, Inc.)*, 112 B.R. 534 (S.D.N.Y. 1990) . 12, 13, 25

*Official Comm. of Unsecured Creditors v. Lay (In re Enron Corp.* II) 295 B.R. 21 (S.D.N.Y.
2003) ................................................................................................................................... 19

*Oneida Ltd. v. Pension Benefit Guaranty Corp.*, 372 B.R. 107 (S.D.N.Y. 2007) ...... 11, 12, 18, 19

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d
Cir. 1993) ....................................................................................................................... 16, 25

*In re Pan American World Airways, Inc.*, 132 B.R. 4 (S.D.N.Y. 1991) ...................................... 19

*Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33
(S.D.N.Y. 1987) ................................................................................................................... 11

*Pereira v. United Jersey Bank, N.A*, 201 B.R. 644 (S.D.N.Y. 1996) .......................................... 20

*Resolution Trust Corp. v. Best Products Co. (In re Best Products Co.)*, 68 F.3d 26 (2d Cir.
1995) ................................................................................................................................... 17

*Sentner v. Amtrak*, 540 F. Supp. 557 (D.N.J. 1982) .................................................................. 11

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Shugrue v. Air Line Pilots Association International*, 922 F.2d 984 (2d Cir. 1990), *cert. denied*, 502 U.S. 808 (1991) .................................................. 12

*Silverman v. U.W. Marx, Inc. (In re Leco Enterprise, Inc.)*, 125 B.R. 385 (S.D.N.Y. 1991) ...... 25

*Simon v. Safelight Glass Corp.*, 128 F.3d 68 (2d Cir. 1997) ...................................................... 14

*Statutory Committee of Unsecured Creditors v. Motorola, Inc ( In re Iridium Operating LLC)*, 285 B.R. 822 (S.D. N.Y. 2002).................................................................................18, 24

*Tileston v. Ullman*, 318 U.S. 44 (1943).................................................................................. 23

*United States Lines, Inc. v. American S.S. Owners Mutual Protection & Indemnity Association, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) ........................ 17

*Wedtech Corp. v. Banco Popular De Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293 (S.D.N.Y. 1988) .................................................................................................... 25

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200 (2d Cir. 2002) ............................ 9

*In re WorldCom, Inc.*, 343 B.R. 412 (Bankr. S.D.N.Y. 2006).........................................13, 14, 21

*Zdrok v. V Secret Catalogue, Inc.*, 215 F. Supp. 2d 510 (D.N.J. 2002) ...................................... 10

### STATE CASES

*LTV Corp. v. Commonwealth of Pennsylvania's Department of Env. Resources (In re Chateaugay)*, 1992 WL 297460 (S.D.N.Y. Oct. 7, 1992) .......................................................... 16

### DOCKETED CASES

*Drew v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 06 Civ. 3407, *Slip Op* ............................ 22

*In re WorldCom, Inc.*, No. 02-13533 ...................................................................... 22

*In re WorldCom, Inc.*, No. 02-13533 ...................................................................... 22

*In re WorldCom, Inc.*, No. 03-cv-06120.................................................................. 22

### FEDERAL STATUTES

47 U.S.C. §§ 151, *et seq* .............................................................................................. 5

28 U.S.C. § 157(a)......................................................................................................... 7

28 U.S.C. § 157(b) ....................................................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

**Page**

28 U.S.C. § 157(b)(1) ................................................................................... 23

28 U.S.C. § 157(b)(2) ....................................................................2, 4, 5, 7, 16-17

28 U.S.C. § 157(b)(3) .................................................................................... 7

28 U.S.C. § 157(d) .................................................................................8, 11, 16

## I.  PRELIMINARY STATEMENT

Plaintiff's Motion for Mandatory and Permissive Withdrawal of the Reference of the Adversary Proceeding[1] should be denied.  First, the law of the case and principles of comity bar the re-litigation of issues previously decided by the Arizona District Court.  Because that court has previously determined that Plaintiff must adjudicate her claims in the Bankruptcy Court and that the Bankruptcy Court must make the initial determination as to the core or non-core nature of her claims, Plaintiff should not now be permitted to re-litigate those issues in this Court.

Second, there is no basis for mandatory withdrawal because the Adversary Proceeding will not require the Bankruptcy Court to engage in significant interpretation, as opposed to simple application, of non-bankruptcy federal laws.  In resolving the Motion to Dismiss that was previously litigated in the underlying matter, the Arizona District Court determined that the Complaint does not present complicated issues of first impression under the Communications Act. As such, Plaintiff is now judicially estopped from asserting a contradictory position.  Moreover, the Complaint does not present issues implicating a "substantial and material conflict" between the Communications Act and title 11, but will instead merely require the Bankruptcy Court to undertake two sets of separate and distinct legal inquiries.

Third, there is no cause for permissive withdrawal of the reference because the matter is core.  Indeed, Plaintiff (i) asserts either prepetition or postpetition claims that were fully liquidated prior to the Effective Date and therefore discharged by the Plan; (ii) filed the Complaint in the Arizona District Court in violation of the Plan injunction; and (iii) admits that if she prevails in recovering the amounts asserted in the Complaint, she will be required to seek payment of an administrative expense claim under the Plan.   As such, the issues raised in the Adversary

---

[1]    Capitalized terms used but not defined in this section shall have the meanings which are hereinafter set forth.

Proceeding are "core" within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (I). Moreover, because a proceeding to recover an administrative expense claim is an equitable proceeding and Plaintiff admits that she seeks to recover such a claim, the Adversary Proceeding is equitable in nature.

All other factors bearing on the propriety of permissive withdrawal also favor a denial of the Motion to Withdraw. In particular, the denial will serve the interest of preventing Plaintiff from forum shopping and promote the interests of judicial economy and uniformity in the administration of bankruptcy laws. Judicial economy will be served because the Bankruptcy Court is significantly more familiar with (i) the facts and circumstances of MCI's lengthy and complex bankruptcy cases; (ii) the nature of MCI's businesses; (iii) the provisions of the Plan and the Confirmation Order; and (iv) class actions involving claims related to MCI's long-distance services.

In addition, the propriety of denying the withdrawal of the reference is not altered by Plaintiff's demand for a jury trial (even if such claim is valid) because the Bankruptcy Court can conduct jury trials in core proceedings. Moreover, even if the Adversary Proceeding were non-core, it is in its initial stages and may be dismissed or significantly narrowed in scope after the Bankruptcy Court renders its initial discharge determinations. As such, the Motion to Withdraw is premature and Plaintiff is therefore not entitled to an immediate withdrawal of the reference based on her alleged right to a jury trial.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.      MCI's Bankruptcy Case

On July 21, 2002 and November 8, 2002 (the "Petition Date"), WorldCom, Inc. n/k/a MCI and certain of its direct and indirect subsidiaries (collectively, the "Debtors" and/or the "Reorganized Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Honorable Arthur J. Gonzalez of the United  States Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court") has presided over the Debtors' bankruptcy cases since the Petition Date.

On October 31, 2003, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). The Plan became effective on April 20, 2004 (the "Effective Date").

Pursuant to sections 524(a) and 1141(d) of the Bankruptcy Code, sections 10.02, 10.03 and 10.04 of the Plan, and paragraphs 16, 17 and 18 of the Confirmation Order, (i) all claims and liabilities against MCI that arose prior to the Effective Date have been discharged, and (ii) as of the Effective Date, all persons have been, and are, precluded and permanently enjoined from commencing or continuing any action or other proceeding against the Debtors or the Reorganized Debtors with respect to any discharged claim.[2]

In addition to discharging and enjoining the prosecution of all pre-Effective Date claims, the Plan further provides for the Bankruptcy Court's retention of exclusive jurisdiction over all such pre-Effective Date claims. Specifically, section 12.01 of the Plan provides:

---

[2]     Section 10.02 of the Plan provides: . . .

> Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims . . . shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim . . . based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date [i.e., April 20, 2004], whether or not such holder has filed a proof of Claim . . .

Plan § 10.02; Confirmation Order ¶ 16. Section 10.03 of the Plan further provides:

> Upon the Effective Date . . . each holder . . . of a Claim . . . and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, right, and liabilities that arose prior to the Effective Date [i.e., April 20, 2004]. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against . . . the Debtors.

Plan § 10.03; Confirmation Order ¶ 17; *see also* Section 10.04 of the Plan, which, *inter alia*, permanently enjoins the commencement or continuation of any action or other proceeding of any kind against the Debtors or Reorganized Debtors with respect to any discharged claim. Plan § 10.04; Confirmation Order ¶ 18.

> The Bankruptcy Court *shall have exclusive jurisdiction* of all matters arising out of, and related to, the Chapter 11 Cases and the Plan . . ., [including] . . . (c) *To hear and determine any objection to Administrative Expense Claims or Claims*; . . . (e) To issue such orders in aid of execution and consummation of the Plan . . .; (h) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan . . .; (i) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference . . . with the enforcement of the Plan; . . . (l) *To resolve any Disputed Claims*; [and] (m) To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code . . .

Plan § 12.01 (emphasis added); Confirmation Order ¶ 32.

## B.    The Putative Class Action Complaint

On July 18, 2005 (*i.e.*, over a year after the Effective Date), Plaintiff filed a putative class action complaint (the "Complaint", which is attached hereto as Exhibit A) in the United States District Court for the District of Arizona (the "Arizona District Court").  Pursuant to the Complaint, Plaintiff alleges that, "[s]ince 2002," MCI has improperly assessed "monthly service charges and related taxes, regulatory fees, and other charges to persons that did not have an active account with MCI or an on-going business relationship with MCI."  Complaint ¶¶ 3, 15.  Plaintiff further alleges that "[a]lthough MCI hatched its scheme to charge unauthorized minimum usage fees during the pre-petition period between March and June 2002, the damages to the Plaintiff and class members were caused by MCI's improper billings during the post-petition/post-confirmation periods."  Motion to Withdraw p.6, n.2.  Consistent with these allegations, the Complaint states that "beginning in or around February 2003" [*i.e.*, after the Petition Date, but before the Effective Date of the Plan], MCI improperly assessed Plaintiff a monthly service charge and related amounts in connection with an MCI long-distance plan.  Complaint ¶ 25.  Plaintiff also contends that she made several unsuccessful attempts to have the unauthorized charges removed from her account (*id.* at ¶

26) and that in July 2003 (*i.e.*, prior to the Effective Date), she received a collections notice for her failure to pay the unauthorized charges. *Id.* at ¶¶ 27-29.

Accordingly, Plaintiff's own allegations are that (i) MCI's allegedly unauthorized billing program was first implemented during the prepetition period; (ii) all of the invoices requesting payment of the allegedly unauthorized billing charges were sent to Plaintiff during the postpetition/pre-Effective Date period; and (iii) all of Plaintiff's claims arising out of the allegedly unauthorized billing program were fully liquidated during the postpetition/pre-Effective Date period when MCI (a) invoiced Plaintiff for amounts that she refused to pay and (b) allegedly sent her a collections notice.

Based on the foregoing allegations, Plaintiff contends that MCI's billing practices violate, and entitle her to damages under, the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.* (the "Communications Act"). Complaint ¶ 5. Plaintiff also seeks equitable relief, including a claim based on unjust enrichment. Complaint p.14.

On September 29, 2005, MCI filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b) (the "Motion to Dismiss"), alleging that (a) the action was moot because MCI had previously refunded the $9.88 in disputed billing charges which form the basis of her Complaint; and (b) the Arizona District Court should defer to the expertise of the Federal Communications Commission (the "FCC") under the primary jurisdiction doctrine. Plaintiff opposed the Motion to Dismiss and, on September 29, 2006, the Arizona District Court denied the motion. The Order denying the Motion to Dismiss is attached hereto as Exhibit B. Thereafter, on October 16, 2006, MCI filed its original answer to the Complaint and enumerated a number of affirmative defenses, including discharge in bankruptcy.

## C.    The Rule 12(c) Motion for Judgment on the Pleadings

On October 31, 2006 (*i.e.*, two weeks after answering the Complaint), MCI filed a Motion for Judgment on the Pleadings (the "Motion for Judgment") pursuant to Federal Rule of Civil Procedure 12(c). In its Motion for Judgment, MCI urged that (a) Everett's claims were either prepetition or postpetition/pre-Effective Date claims that were discharged and enjoined from further prosecution by virtue of the Plan, the Confirmation Order, and sections 524(a) and 1141(d) of the Bankruptcy Code; and (b) the action should be adjudicated by the Bankruptcy Court pursuant to the retained jurisdiction provisions of Section 12.01 of the Plan and the corresponding provisions of the Confirmation Order.

On or about November 17, 2006, Plaintiff filed her Opposition to Defendant's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (the "Objection" which is attached hereto as Exhibit C) wherein she argued to the Arizona District Court that (i) the Complaint does not involve core matters under 28 U.S.C. § 157(b), but instead involves only non-core matters (Objection pp.1, 5-6); (ii) the Bankruptcy Court does not have jurisdiction to hear non-core matters such as those presented in the Complaint and therefore the Arizona District Court should hear the action (*id.* at 1); and (iii) the Plan's discharge, injunction and exclusive jurisdiction provisions do not bar Plaintiff from proceeding against MCI outside the Bankruptcy Court because the Plan permits Plaintiff to liquidate her administrative expense claim in other fora. *Id.* at pp.3-4.

On May 24, 2007, the Arizona District Court overruled the Objection and ordered that Plaintiff's action be adjudicated in the Bankruptcy Court (the "Arizona District Court Order", which is attached hereto as Exhibit D).[3] The Arizona District Court Order expressly states that the

---

[3]    Following the entry of the Arizona District Court Order, the Clerk of the Court referred the action to the Bankruptcy Court for the District of Arizona (rather than NY) where it was docketed on June 6, 2007 as Adversary Proceeding No. 07-00333 (RJH). Although the term "Bankruptcy Court" was not defined in the Arizona District Court Order, all of Plaintiff's and MCI's pleadings filed in connection with the Motion to Dismiss defined the

Bankruptcy Court has jurisdiction over the Complaint and that it is the proper court in which to adjudicate the matter:

> Since Plaintiff's claims arose and were liquidated prior to the Effective Date of the Plan, the Plan dictates how those claims must be resolved. The Plan states that the Bankruptcy Court retains exclusive jurisdiction to hear and determine Administrative Expense Claims. Accordingly, this Court must refer those claims to the Bankruptcy Court pursuant to the general order, the Plan and 28 U.S.C. § 157(a).

Arizona District Court Order at p.2:9-13.

The Arizona District Court Order further states that any determination as to the core or non-core nature of the claims presented in the Complaint must be made by the Bankruptcy Court and not by the District Court:

> [W]hether Plaintiff's claims are classified as core or non-core under 28 U.S.C. § 157(b)(2) is irrelevant at this point, as that determination must be made by the Bankruptcy Court. See 28 U.S.C. § 157(b)(3) (stating that "the bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title [11]").

Arizona District Court Order, p.2:24-28.

In accordance with the foregoing, the Arizona District Court Order expressly provides that (i) the Bankruptcy Court has exclusive jurisdiction over Plaintiff's claim; (ii) Plaintiff's claim must be adjudicated by the Bankruptcy Court; and (iii) any determination concerning the core or non-core nature of Plaintiff's claim must be made by the Bankruptcy Court. While Plaintiff opposed the relief granted by the Arizona District Court Order, she did not request that such order be reconsidered, nor did she seek leave to appeal it.

---

Bankruptcy Court as the "Bankruptcy Court for the Southern District of New York." Accordingly, on June 13, 2007, MCI filed a Motion to Implement Order by Forwarding Matter to the Bankruptcy Court for the Southern District of New York wherein it requested that the Arizona District Court Order be given its intended effect by forwarding the matter to the NY Bankruptcy Court for resolution. On June 18, 2007, the Arizona Bankruptcy Court granted MCI's motion, and on July 6, 2007, the matter appeared on Judge Gonzalez's docket as adversary proceeding 07-01792.

Moreover, although the Complaint was finally docketed in the Bankruptcy Court on July 6, 2007 as Adversary Proceeding 07-01792 (the "Adversary Proceeding"), Plaintiff did not take any steps to proceed with the lawsuit until approximately four (4) months later when the Bankruptcy Court *sua sponte* scheduled its first status conference in the matter.  Indeed, it was not until five (5) days prior to the scheduled October 30, 2007 status conference that Plaintiff filed her Motion to Withdraw.

**D.    The Motion to Withdraw**

Pursuant to the Motion to Withdraw, Plaintiff argues that this Court should withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) so that this Court may adjudicate the Adversary Proceeding.  In support of this request, Plaintiff argues that (1) mandatory withdrawal is required under 28 U.S.C. § 157(d) because resolution of Plaintiff's claim requires "substantial and material application of the Communications Act" (Motion to Withdraw pp.7-9); and (2) permissive withdrawal is appropriate because (a) the Adversary Proceeding presents only non-core matters (*id.* pp.10-11); (b) judicial economy will be served by (i) allowing this Court, which is better suited to manage complex class action litigation, to resolve the Adversary Proceeding, and (ii) preventing the Bankruptcy Court, which lacks jurisdiction over class members' post-Effective Date claims, from wasting its resources by adjudicating only a portion of the claims that are at issue in the Complaint (*id.* pp.11-15); (c) Plaintiff has requested a jury trial yet the Bankruptcy Court cannot conduct such a trial in the absence of Plaintiff's consent; (d) withdrawal will properly prevent MCI from forum shopping (*id.* pp.15-16); and (e) the Adversary Proceeding turns on considerations of telecommunications law and therefore the interest in promoting uniformity of bankruptcy administration will not be implicated by the withdrawal.  *Id.* pp.17-18. Each of these contentions fails for the multiple reasons hereinafter set forth.

**III.  LEGAL ARGUMENT**

A.     **The Motion to Withdraw the Adversary Proceeding is Barred by the Law of the Case and Principles of Comity**

The law of the case bars Plaintiff's collateral attack on the Arizona District Court's findings that the Bankruptcy Court (i) is the proper court to adjudicate the Adversary Proceeding; and (ii) must make the initial determination concerning the core or non-core nature of the Adversary Proceeding.  "The doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)); *see also Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 218 (2d Cir. 2002); *DiLaura v. Power Authority of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992).  The rule, which applies in any case where the parties have 'had a 'full and fair' opportunity to litigate the initial determination'" (*Westerbeke*, 304 F.2d at 219), serves to protect against the re-litigation of settled issues and to promote the finality and efficiency of the judicial process.  *Christianson*, 486 U.S. at 815-816.; *see also Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991) (stating that the doctrine has developed in order "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").  Indeed, courts "should be loathe to [reconsider settled issues] . . . in the absence of extraordinary circumstances, such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618).

In the instant case, the Arizona District Court's rulings are not clearly erroneous, will not work a manifest injustice and do not implicate extraordinary circumstances warranting re-litigation.  Rather, Plaintiff has had a full and fair opportunity to litigate, and has in fact litigated, the issues of whether the Bankruptcy Court was the appropriate forum to adjudicate Plaintiff's

claim and whether the Complaint involves core or non-core matters. *See* generally the Motion for

Judgment and the Objection. Moreover, despite the Arizona District Court's adverse rulings on

these issues, Plaintiff did not seek reconsideration of, nor request permission to appeal, the Arizona

District Court Order. Instead, Plaintiff asks this Court to allow her to re-litigate these issues so that

she may obtain relief which differs from that which was ordered by the Arizona District Court.[4]

This requested second bite at the apple should not be granted. *See, e.g., Hayman Cash Register Co.

v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) (holding that the law of the case is designed to prevent

a "disappointed litigant . . . a second opportunity to litigate a matter that has been fully considered

by a court of coordinate jurisdiction . . . ."). In short, because the Arizona District Court has already

determined that the Adversary Proceeding should be adjudicated by the Bankruptcy Court and that

the Bankruptcy Court must make any core/non-core determination, Plaintiff is not now entitled to

collaterally attack those rulings by seeking contrary determinations from this Court.

      In addition to the law of the case doctrine, principles of comity also bar Plaintiff's re-

litigation of the Arizona District Court Order. *See Hayman*, 669 F.2d at 169 (stating "principles of

comity among courts of the same level of the federal system provide a further reason why the

transferee court should not independently reexamine an issue already decided by a court of equal

authority"); *Gulf Research & Dev. Co. v. Schlumberger Well Sur. Corp.*, 98 F. Supp. 198 (D. Del.

1951) (citations omitted) (giving deference to prior ruling of sister court based on principles of

comity and considerations of orderly functioning of the judicial process); *see also Zdrok v. V Secret

Catalogue, Inc.*, 215 F. Supp. 2d 510, 515 (D.N.J. 2002) (applying notions of judicial comity, the

---

[4]    *See, e.g.*, Motion to Withdraw pp.10-11 (urging this Court to conclude that the Adversary Proceeding presents only non-core claims despite the Arizona District Court's ruling that "whether Plaintiff's claims are classified as core or non-core under 28 U.S.C. § 157(b)(2) is . . . [a] determination [that] must be made by the Bankruptcy Court."); Motion to Withdraw pp.10-17 (urging that the Adversary Proceeding be adjudicated by this Court rather than the Bankruptcy Court despite the Arizona District Court's ruling that the Bankruptcy Court must hear her claims).

court concluded, "[t]herefore, to give proper recognition to that court's [California] decision, this Court will bar litigation of these issues in New Jersey."); *Sentner v. Amtrak*, 540 F. Supp. 557, 558 (D.N.J. 1982) (same).  In accordance with the foregoing principles of comity, this Court should not permit Plaintiff to re-litigate issues which have already been decided by the Arizona District Court.

**B.**    **Mandatory Withdrawal of the Adversary Proceeding is Unwarranted**

Plaintiff argues that the reference of the Adversary Proceeding to the Bankruptcy Court must be withdrawn pursuant to 28 U.S.C. § 157(d).  This provision states, in relevant part, "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

Despite the facially broad language of the statute, the provision is narrowly construed,[5] and courts commonly and consistently caution against its use as an "escape hatch" from the Bankruptcy Court.  *See, e.g., Oneida Ltd. v. Pension Benefit Guar. Corp.*, 372 B.R. 107, 110 (S.D.N.Y. 2007) (stating that "[i]n order to ensure that it does not become an 'escape hatch' for matters properly before the bankruptcy court, the Second Circuit has construed § 157(d) narrowly . . .") (internal citations omitted).[6]  Indeed, courts in this district apply the provision only where the bankruptcy court is required "to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *Exxon*, 932 F.2d at 1026; *see also*

---

[5]    *See, e.g., City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *see also Hassett v. Citicorp N. Am., Inc. (In re CIS Corp. II)*, 188 B.R. 873, 877 (S.D.N.Y. 1995).

[6]    *See also Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund, Ltd.)*, 343 B.R. 63, 66 (S.D.N.Y. 2006) ("despite the broad language of § 157(d) which if read literally could result in a broad escape hatch through which most bankruptcy matters could be removed to a district court . . . courts have narrowly construed the mandatory withdrawal provision.") (internal citations omitted); *LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.)*, 193 B.R. 669, 673 (S.D.N.Y. 1996) (same); *Ionosphere Clubs, Inc.*, 103 B.R. 416, 419 (S.D.N.Y. 1989) (same); *American Tel. &Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 584 (S.D.N.Y. 1988) (same); *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 36 (S.D.N.Y. 1987) (same).

*Oneida,* 372 B.R. at 110.  To determine whether a matter requires "significant interpretation" rather than "straightforward application" of a federal law, courts look to whether (i) there is a "substantial and material" conflict between non-bankruptcy federal laws and title 11;[7] and/or (ii) "complicated issues of first impression are implicated under non-bankruptcy federal laws."[8]  In the instant case, there is neither.

        First, the Adversary Proceeding does not present issues which implicate a "substantial and material conflict" between the Communications Act and title 11.  Indeed, while the Bankruptcy Court will be required to resolve bankruptcy law issues, and may also be required to resolve Communications Act issues, the two sets of legal inquiries will be largely distinct.  That is, (i) bankruptcy laws will first be considered to determine when Plaintiff's claims arose and whether and to what extent they are discharged and enjoined by the Plan; (ii) if Plaintiff's claims are found not to have been discharged, then the Communications Act will be applied to determine whether MCI violated the statute in such a manner as to result in its liability to Plaintiff; and (iii) if such a Communications Act claim exists, bankruptcy laws will again be applied to determine whether and to what extent the Plan and section 503(b) of the Bankruptcy Code permit Plaintiff to recover an administrative expense claim.  None of these separate and distinct inquiries presents a conflict between the Communications Act and title 11 and in fact Plaintiff has not even alleged as much. *See* Motion to Withdraw pp.7-9.  Accordingly, mandatory withdrawal of the reference is not warranted based on a potential conflict of bankruptcy and other federal laws.

---

[7]     *Shugrue v. Air Line Pilots Ass'n Int'l,* 922 F.2d 984, 995 (2d Cir. 1990), *cert. denied,* 502 U.S. 808 (1991); *O'Connell v. Terranova (In re Adelphia Inst., Inc.),* 112 B.R. 534, 536 (S.D.N.Y. 1990).

[8]     *Adelphia Inst.,* 112 B.R. at 536; *Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.),* 182 B.R. 379, 382 (S.D.N.Y. 1995) (same).

Second, the Adversary Proceeding does not present "complicated issues of first impression . . . under non-bankruptcy federal laws." This standard requires Plaintiff to establish not only that the issue is novel, but also that it is so "complicated" as to require significant interpretation, as opposed to merely a straightforward application, of non-bankruptcy federal laws. *Adelphia Inst.,* 112 B.R. at 536; *Exxon,* 932 F.2d at 1026 (same). In the instant case, Plaintiff has not met her burden of demonstrating that the Bankruptcy Court will be required to engage in a "significant interpretation" of one or more provisions of the Communications Act, and accordingly, the reference of the Adversary Proceeding should not be mandatorily withdrawn.[9]

Plaintiff cannot meet this standard by merely claiming that the Complaint involves the issue of "whether a long-distance carrier violates the Communications Act by billing minimum monthly fees to non-customers." Motion to Withdraw p.9. Indeed, the Complaint does not even challenge the validity of the minimum usage fees *per se*. Rather, the Complaint alleges that MCI violated the Communications Act by engaging in an allegedly deceptive practice—*i.e.*, establishing accounts, and applying minimum usage fees to such accounts, without sufficient customer authorization or consent. In opposing MCI's Motion to Dismiss on the grounds that her claim did not implicate issues within the FCC's primary jurisdiction, Plaintiff characterized her claim as involving simple and straightforward questions about "whether MCI's billing practices deceived

---

[9]    Moreover, even if the Bankruptcy Court were required to engage in something more than a straightforward application of the Communications Act, it is particularly well-suited to do so as it has presided over MCI's bankruptcy cases for over five (5) years and is intimately familiar with the facts and circumstances of its lengthy and complex bankruptcy case, the nature of its business, and litigation involving claims related to its long-distance services. *See, e.g., In re WorldCom, Inc.,* 343 B.R. 412 (Bankr. S.D.N.Y. 2006). Accordingly, if, as Plaintiff alleges, the Bankruptcy Court is required to address "the manner in which LECs and long distance carriers ('IXCs') exchange information, the rules that apply to the exchange of information between IXCs and the LECs, the rules that apply to how IXCs should and can use information that is supplied by LECs, and which entity is liable, if any, when an IXC relies on incorrect information provided by a LEC" (Motion to Withdraw p.8), it is most capable of doing so. Indeed, during the multi-year course of MCI's chapter 11 case, the Bankruptcy Court has presided over literally hundreds, if not thousands, of claims, objections, adequate protection issues, automatic stay violations, motions to assume and reject contracts and leases and other matters involving CLECs and IXCs. Hence, there is no other court that is better suited to consider the foregoing issues.

customers" and whether "MCI's decision to assess a MUF [minimum usage fee] to non-customers" was appropriate.  *See* Plaintiff's Opposition to Motion to Dismiss Class Action Complaint pp.11, 14, which is attached hereto as <u>Exhibit E</u>.  In denying the Motion to Dismiss, the Arizona District Court agreed with Plaintiff's characterization, stating:  "This Court need not decide whether the alleged unlawful charges were reasonable, but rather whether MCI's decision to assess the fee to non-customers was part of a deceptive scheme.  Plaintiff's allegations of consumer fraud are well within the competence of this Court."  *See* the September 29, 2006 Order Denying Motion to Dismiss p.11, which is attached hereto as <u>Exhibit B</u>.  This finding, together with the Arizona District Court's further observation that, "other courts have rejected such attempts to refer jurisdiction over cases involving similar issues," *id*., conclusively establishes that the claim does not present complicated issues of first impression under the Communications Act, but instead involves routine allegations of consumer fraud.[10]  Because the Arizona District Court adopted Plaintiff's position concerning the routine nature of her claims, Plaintiff is now judicially estopped from taking a contrary position.[11]

Plaintiff's further contention that "MCI has already admitted [in its Motion to Dismiss] that this case presents issues of first impression under the Communications Act" (Motion to Withdraw p.9), is both irrelevant and incorrect.  It is irrelevant because the Arizona District Court rejected MCI's arguments in support of primary jurisdiction, finding that the allegations pled were in the nature of garden-variety deception claims.  *See* Exhibit B.  Plaintiff's contention is incorrect

---

[10]    Indeed, if it were otherwise, the proper forum for the resolution of this dispute would not be the District Court, but the FCC.

[11]    *See, e.g., New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001) (stating that judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal citations omitted); *Simon v. Safelight Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997) (holding that judicial estoppel "applies when a tribunal in a prior proceeding has accepted a claim at issue by rendering a favorable decision."); *ACC Bondholder Group v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.),* 367 B.R. 84,  91, 93 (S.D.N.Y. 2007) (same).

because MCI did not state that Plaintiff's Communications Act claim presented an issue of first impression. Rather, MCI simply quoted a Ninth Circuit decision which states that "[p]rimary jurisdiction is properly invoked when a claim . . . requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *See* Motion to Dismiss p.12 attached as Exhibit O to the Motion to Withdraw. Although MCI quoted the preceding language in its Motion to Dismiss, it ***did not*** proceed to argue that the Complaint presented an issue of first impression or that the issues presented therein were particularly complicated. Instead, MCI enumerated the traditional factors for determining whether an action may be dismissed on primary jurisdiction grounds[12] and proceeded to argue that the application of those factors to Plaintiff's lawsuit warranted the dismissal of the Complaint. *Id.* at pp.12-15. MCI did not state that the Complaint raised complicated issues of first impression and any contrary suggestion is false.

Finally, Plaintiff, omits any reference to the fact that in addition to her Communications Act claim, she also asserts a state law claim for unjust enrichment. As a state law (rather than a non-bankruptcy federal law) claim, it is not subject to the mandatory withdrawal provisions of § 157(d). Moreover, before Plaintiff's state law and Communications Act claims can even be adjudicated, a threshold determination must be made as to whether Plaintiff's claims are discharged by the Plan. This issue is purely a matter of bankruptcy law and, like Plaintiff's state law claim, it is not subject to the mandatory withdrawal provisions of § 157(d).

**C.    There is No Cause for Permissive Withdrawal of the Adversary Proceeding**

---

[12]    These factors include whether (1) the question at issue (a) is within the conventional expertise of judges and (b) lies particularly within the agency's discretion; (2) there exists a substantial danger of inconsistent rulings; and (3) a prior application to the agency has been made.

Pursuant to 28 U.S.C. § 157(d), "a district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] on its own motion or on timely motion of any party, for cause shown."  While 28 U.S.C. § 157(d) does not define the term "cause," the Second Circuit considers the following factors: (1) whether the proceeding is core or non-core, (2) whether the proceeding is legal or equitable, and (3) whether the withdrawal will promote efficiency, prevent forum shopping and foster uniformity in the administration of bankruptcy law. *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) (citing *Kenai Corp. v. National Union Fire Ins. Co.* (*In re Kenai Corp.*), 136 B.R. 59, 61 (S.D.N.Y. 1992)).  Of the foregoing factors, the first factor (*i.e.*, the core or non-core nature of the claim) is the most important "since it is upon this issue that questions of efficiency and uniformity will turn."  *Orion*, 4 F.3d at 1101.  Moreover, courts in this circuit have consistently held that each of the foregoing factors should be narrowly construed.  *CIS Corp. II*, 188 B.R. at 877.

For the multiple reasons described below, Plaintiff has not carried her burden[13] of demonstrating "cause" for permissive withdrawal.

### (1)    The Adversary Proceeding is a Core Proceeding

This Court should find that the Adversary Proceeding is core even if it does not defer to the Arizona District Court's ruling concerning the need for the Bankruptcy Court to adjudicate this issue.  To determine whether a proceeding is core, a court must first look to the broad, non-exclusive list of core proceedings codified at 28 U.S.C. § 157(b)(2).  These proceedings include, *inter alia*, "matters concerning the administration of the estate," the "allowance or disallowance of claims against the estate," and "determinations as to the dischargeability of particular debts."  28

---

[13]    *See Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*, 280 B.R. 779, 785 (Dist. Me. 2002) (movant bears the burden of establishing cause for the withdrawal of the reference); *see also LTV Corp. v. Commonwealth of Pennsylvania's Dept. of Env. Resources (In re Chateaugay)*, 1992 WL 297460, at *4 (S.D.N.Y. Oct. 7, 1992) (same).

U.S.C. § 157(b)(2)(A), (B) and (I).  In addition, a court should consider Congress's and the Second

Circuit's expansive views of the proper scope of the proceedings enumerated in 28 U.S.C.

§ 157(b)(2).  As recounted by the Second Circuit:

> [T]he legislative history . . . indicates that Congress intended that
> "core proceedings" would be interpreted broadly, close to or
> congruent with constitutional limits.  The sponsors repeatedly said
> that 95 percent of the proceedings brought before bankruptcy judges
> would be core proceedings.  They used arguments strongly suggesting
> that they were pressing the notion to its constitutional bounds.  They
> referred to the suits in the non-core category as 'Marathon-type'
> cases, which they understood to be proceedings of a very limited
> kind."  *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.
> 1987) (Breyer, J.).

*Ben Cooper, Inc. v. Ins. Co. of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394,

1398-99 (2d Cir. 1990) (citations omitted), *vacated*, 498 U.S. 964 (1990), *opinion reinstated*, 964

F.2d 36 (2d Cir. 1991); *see also*, *United States Lines, Inc. v. American S.S. Owners Mut. Protection*

*& Indem. Assn., Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 636-37 (2d Cir. 1999) (same);

*Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995)

(same).

   In accordance with 28 U.S.C. § 157(b)(2) and its applicable legislative history, the

Adversary Proceeding is core because it fits squarely within the enumerated categories of

subsections (A), (B) and (I).  In particular, because Plaintiff (i) asserts either prepetition or

postpetition claims that were fully liquidated prior to the Effective Date and therefore discharged by

the Plan; (ii) filed the Complaint in the Arizona District Court in violation of the Plan injunction;

and (iii) admits that if she prevails in recovering the amounts asserted in the Complaint, she will be

required to seek payment of an administrative expense claim under the Plan, the issues raised in the

Adversary Proceeding are "core" within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (I).  This

is because Plaintiff's prosecution of discharged claims, violation of the Plan injunction and pursuit

of an administrative expense claim affect the "administration of the estate," require the "allowance or disallowance of claims against the estate" and entail "determinations as to the dischargeability of particular debts." Accordingly, the Adversary Proceeding is core.

Moreover, under established Second Circuit precedent, "[a] matter is core if it invokes a substantive right provided by the Code or is a proceeding that by its nature could only arise in the context of a bankruptcy case." *McCrory Corp. v. 99 Cents Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 506 (S.D.N.Y. 1993); *Keene*, 182 B.R. at 382 (same). This formulation of core jurisdiction is readily satisfied in the instant case because issues related to the discharge of debts, the injunction provisions of a Plan and the allowance or disallowance of an administrative expense claim invoke substantive rights and defenses that may only arise in the context of a bankruptcy case. *Oneida*, 372 B.R. at 111 (issues related to plan discharge are core proceedings); *(Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) (issues related to plan injunctions are core proceedings); *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 831-33, n.2 (S.D.N.Y. 2002) (requests for administrative expense claims are core proceedings).

Despite the foregoing, Plaintiff contends that the Adversary Proceeding is non-core because it asserts claims based on violations of the Communications Act and unjust enrichment that "do not depend upon the Bankruptcy Code for their existence." Motion to Withdraw p.11. Contrary to this contention, however, the Second Circuit has stated:

> Section 157(b)(3) expressly provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." Hence, the mere fact that [the plaintiff's] claim raises issues of state law does not preclude a holding that the adversary proceeding is core. *The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power*.

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990) (internal citations omitted) (emphasis added).[14]

In accordance with the foregoing, the fact that the claims raised in the Adversary Proceeding may be determined by reference to either state or federal law does not alter the fundamentally core nature of the proceeding. Indeed, virtually all claims asserted against a bankruptcy estate require the Bankruptcy Court to consider underlying state or federal law. This reality does not remove a claim from the core of federal bankruptcy power. Accordingly, under Second Circuit precedent, Plaintiff's reliance on the federal and state law bases for her claim does nothing to further her assertion that the Adversary Proceeding is non-core. Rather, because the Adversary Proceeding is in fact core and this determination is the most important factor bearing on whether there is "cause" to permissively withdraw the reference, Plaintiff's request should be denied.[15]

### (2)    The Adversary Proceeding is an Equitable Proceeding

It is well settled that the filing of a claim against the bankruptcy estate "triggers the process of [the] 'allowance and disallowance of claims,'" and subjects the claimant "to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (*quoting Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989)); *see also In re Pan American World*

---

[14]    In a similar case involving ERISA claims, Judge Cedarbaum recently ruled that:

> Oneida's adversary proceeding is a core bankruptcy proceeding. The sole issue to be decided is whether the DRA Premiums are discharged pursuant to Oneida's Plan of Reorganization or remain obligations of Oneida after its discharge. The specific federal provision on which the Bankruptcy Court must rely to make that decision applies *only* to companies [that are or were] in bankruptcy reorganization. Thus, this adversary proceeding involves rights that "would not exist independent of a bankruptcy environment."

> *Oneida*, 372 B.R. at 112 (emphasis in original) (citations omitted).

[15]    *See, e.g., Official Comm. of Unsecured Creditors v. Lay (In re Enron Corp. II)*, 295 B.R. 21, 26 (S.D.N.Y. 2003) (citations omitted) ("the fact that claims alleged in an adversary proceeding are core . . . . strongly indicate[s] that there is no cause to withdraw the reference.").

*Airways, Inc.*, 132 B.R. 4, 7 (S.D.N.Y. 1991) ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power").

Plaintiff freely admits that if she prevails on her Communications Act claims in the Adversary Proceeding, she will be entitled to payment of an administrative expense claim. *See* Motion to Withdraw p.17 ("the Bankruptcy Plan and Confirmation Order establish the procedure for paying such [administrative expense] claims and set the amount that class members are entitled to receive: Persons asserting valid Administrative Expense Claims are entitled to payment in full."). Given Plaintiff's admission, there is little doubt that the claims asserted in the Adversary Proceeding constitute requests for payment of postpetition (and potentially even prepetition) claims against MCI's bankruptcy estate. A proceeding to recover such an administrative expense claim is an equitable proceeding. *See Cibro Petroleum Prods. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 122 (S.D.N.Y. 2001) ("[r]esolution of post-petition [administrative expense] claims are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition claims."). Accordingly, Plaintiff's claims against the estate are equitable in nature and this factor therefore favors the denial of her request to permissively withdraw the Adversary Proceeding.[16]

> (3)    **The Interests of Judicial Economy and Uniformity in the Administration of Bankruptcy Laws Will be Served by the Bankruptcy Court's Adjudication of the Adversary Proceeding**

Considerations of the efficient use of judicial resources and uniformity in the administration of bankruptcy laws strongly favor the denial of the Motion to Withdraw. In particular, because the Bankruptcy Court has presided over all facets of the underlying bankruptcy

---

[16]    In addition to Plaintiff's Communications Act claim, the Complaint also seeks to recover based on a theory of unjust enrichment. Such a basis of recovery is unquestionably "an equitable remedy, available only when there is no adequate remedy at law." *Pereira v. United Jersey Bank, N.A*, 201 B.R. 644, 677 (S.D.N.Y. 1996).

cases for over five (5) years, it is has gained enormous familiarity with the complex nature of MCI's businesses, the regulatory environment in which it operates, as well as its contracts, customers and billing practices.  Given that all of the foregoing matters are at issue in the Adversary Proceeding, the withdrawal of the reference will result in the loss of the Bankruptcy Court's substantial knowledge base and experience.  *See Jackson Brook*, 280 B.R. at 779 ("withdrawal of the reference . . . in the context of this longstanding bankruptcy case, with whose facts the bankruptcy judge is infinitely more familiar, would waste resources and would not expedite the bankruptcy process").

In addition to being considerably more familiar with the nature of MCI's business, the Bankruptcy Court is also infinitely more familiar with the Plan—including its discharge, injunction and jurisdiction provisions—as it itself approved the Plan pursuant to the Confirmation Order and has presided over post-Effective Date disputes regarding the proper scope and interpretation of those provisions.  Because the foregoing Plan-related issues are at the core of the parties' disputes, judicial economy and consistency in the administration of bankruptcy laws will be served by allowing the Bankruptcy Court to adjudicate the Adversary Proceeding.

Moreover, even if Plaintiff's claims survive MCI's Plan-related defenses, the Bankruptcy Court will still be better positioned to address the substance of her underlying state and federal law claims because the Bankruptcy Court has recently determined the merits of claims which are closely analogous to those now being prosecuted by her.  *See, e.g., WorldCom,* 343 B.R. at 430 (denying class certification of claims involving MCI's alleged misrepresentation of the cost to consumers of its long-distance services).  In short, because the Bankruptcy Court is significantly more familiar with (i) the facts and circumstances of MCI's lengthy and complex bankruptcy cases; (ii) the nature of MCI's businesses; (iii) the provisions of the Plan and the Confirmation Order; and

(iv) class actions involving claims related to MCI's long-distance services, judicial economy will be served by allowing it to adjudicate the Adversary Proceeding.

Any contrary decision would (1) contravene the uniform district court decisions denying claimants' efforts to withdraw the reference of matters pending before MCI's Bankruptcy Court,[17] and (2) expose MCI to inconsistent and uncoordinated rulings concerning the proper scope of the Plan's discharge and injunction provisions and the requirements for the allowance of an administrative expense claim. Because these issues are central to the administration of MCI's bankruptcy case, any decisions regarding them rest squarely in the Bankruptcy Court.[18]

Despite the foregoing, Plaintiff alleges that judicial economy will be served by adjudicating the Adversary Proceeding in this Court because the Bankruptcy Court does not have subject matter jurisdiction over any post-Effective Date claimants who are members of the putative class. Plaintiff thus contends that "splitting the class into two separate actions—one for pre-Effective Date claims . . . and one for post-Effective Date claims. . .—is inefficient, wasteful of the resources of the courts and parties and creates the potential for inconsistent rulings on discovery, class certification and the merits." Motion to Withdraw p.13. Contrary to this contention, however, the operative Complaint is brought by only one Plaintiff—Shary Everett—whose claim arose pre-

---

[17]   Of the four (4) motions seeking to withdraw the reference from MCI's Bankruptcy Court, none has been granted by the relevant district court. *See, e.g., Drew v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 06 Civ. 3407, *Slip Op.* Doc. 19401 (S.D.N.Y. July 24, 2006) (Koeltl, J.) (denying motion to withdraw the reference); Telnet Comm, Inc.'s Motion to Withdraw the Reference, *In re WorldCom, Inc.*, No. 02-13533, Doc. 8802 (Bankr. S.D. N.Y. filed Sept. 10, 2003) (motion has not been noticed for oral argument since movant filed the motion over three (3) years ago); Aerotel, Ltd.'s Motion to Withdraw Reference, *In re WorldCom, Inc.*, No. 03-cv-06120, Doc. 1 (S.D. N.Y. filed Aug. 13, 2003) (motion has not been noticed for oral argument since movant filed the motion over three (3) years ago); Electronic Data Sys., Corp.'s Motion to Withdraw the Reference, *In re WorldCom, Inc.*, No. 02-13533, Doc. 1984 (Bankr. S.D. N.Y. filed Nov. 15, 2002) (withdrawn by movant due to settlement).

[18]   Moreover, it is important to recognize that even if the Complaint is adjudicated in this Court, Plaintiff must ultimately seek payment of an administrative expense claim in the Bankruptcy Court by demonstrating that the requirements of section 503(b) of the Bankruptcy Code have been met. This adjudication will require a hearing on the merits. As such, withdrawing the reference will result in duplicative and wasteful litigation that will delay the ultimate resolution of Plaintiff's claims.

Effective Date.  Plaintiff's assertion that the case will also involve post-Effective Date claims is speculative, at best, as no class has been certified and MCI vehemently denies the propriety of any such class certification.

Moreover, although Plaintiff asserts that Candace Bentley has a post-Effective Date claim, the Motion to Withdraw cannot be decided on the basis of facts and parties that are not included in the operative Complaint.[19]  Although Plaintiff has long been aware of MCI's position that the Plan bars her claims, she has failed to seek leave to amend the Complaint to add Ms. Bentley as a party.  Indeed, even now, Plaintiff equivocates as to whether she intends to add Ms. Bentley as a party to the case.  *Compare* the Motion to Withdraw p.13 (stating, "Plaintiff ***will*** seek permission to file a proposed amended complaint to include Ms. Bentley as named plaintiff") *with* Motion to Withdraw p.15 n.6 ("Plaintiffs ***may*** file an amended motion for class certification to include Ms. Bentley as an additional class representative.").  Such hesitancy is warranted as it appears from MCI's books and records that Ms. Bentley never paid a minimum usage fee and is therefore not even a claimant.  Where, as here, a class of plaintiffs has not been certified, and it has not been determined whether there are in fact any claimants who hold post-Effective Date claims, the potential for "splitting the class into two separate actions" is remote and therefore does not favor a withdrawal of the reference based on considerations of judicial economy.[20]

---

[19]    *See, e.g., Kuck v. Berkey Photo, Inc.,* 85 F.R.D. 39, 43 (S.D.N.Y. 1979) (holding that in a class action alleging wrongdoing to male employees who were not parties to the suit, female employees (even if acting as a class) did not have standing to assert the male employees' claims); *Tileston v. Ullman,* 318 U.S. 44, 45 (1943) (dismissing a putative 14th Amendment suit because it could not be brought by a physician on behalf of current and potential future patients who were not parties to the suit).

[20]    Plaintiff further alleges that because she has not consented to the Bankruptcy Court's entry of a final order in this non-core proceeding, the District Court should adjudicate the matter as it will serve the interests of judicial economy by obviating the need for *de novo* review of the Bankruptcy Court's findings.  Motion to Withdraw p.13. For the reasons described *supra,* the Adversary Proceeding is core, not non-core.  As such, the Bankruptcy Court may enter final orders without the consent of the parties and without the need for the District Court's *de novo* review of the matter.  *See* 28 U.S.C § 157(b)(1).

(4)    **Denying the Withdrawal of the Reference Will Prevent Plaintiff from Forum Shopping**

Notwithstanding the irony of her allegation, Plaintiff contends that the reference should be withdrawn so as to prevent ***MCI*** from forum shopping.  Motion to Withdraw pp.15-16.  MCI, however, does not seek a change of venue.  Rather, ***Plaintiff*** seeks a change of venue from the Bankruptcy Court to the District Court—as evidenced by the fact that Plaintiff is the movant.  Indeed, it is Plaintiff's disenchantment—not MCI's—with the current forum of the litigation that has led her to this Court.  Rather than filing the Complaint in the Bankruptcy Court in the first instance, Plaintiff instead sought to recover her alleged administrative expense claim in the Arizona District Court.  Discontented with that court's determination that the Bankruptcy Court has exclusive jurisdiction over her claims, Plaintiff then elected to prosecute the Motion to Withdraw in this Court.  Granting the Motion to Withdraw will therefore reward Plaintiff's forum shopping efforts and give effect to her utter disregard of the Arizona District Court Order directing that her claims be determined by the Bankruptcy Court.  Conversely, denying the Motion to Withdraw will thwart Plaintiff's forum shopping efforts and accord the proper measure of deference to the prior rulings of the Arizona District Court.  These factors therefore favor the denial of Plaintiff's request to permissively withdraw the reference of the Adversary Proceeding.

(5)    **Plaintiff's Demand for a Jury Trial Does Not Warrant Withdrawal of the Reference**

Plaintiff's demand for a jury trial under § 206 of the Communications Act (even if valid)[21] is not grounds to withdraw the reference because the Adversary Proceeding is core, and therefore, the Bankruptcy Court may itself conduct her jury trial.  *Iridium*, 285 B.R. at 835 (holding that it is improper to withdraw the reference of a core proceeding based on the right to a jury trial

---

[21]    MCI does not concede that Plaintiff is in fact entitled to a jury trial.

because the bankruptcy court may itself conduct the jury trial); *Silverman v. U.W. Marx, Inc. (In re Leco Enter., Inc.)*, 125 B.R. 385, 391 (S.D.N.Y. 1991) (same); *In re El Paso Elec. Co.*, 77 F.3d 793, 794 (5th Cir. 1996) (upholding a district court ruling that withdrawal was improper in a core proceeding despite plaintiff's requested jury trial).

Moreover, even if the Adversary Proceeding were non-core (which it is not), because it is in its initial stages and may be dismissed or significantly narrowed in scope after the Bankruptcy Court renders its initial discharge determinations, the reference should not be withdrawn at this time. *Orion*, 4 F.3d 1101-02 (a district court "might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.").[22]  In accordance with the foregoing authority, Plaintiff's purported right to a jury trial does not warrant the withdrawal of the reference.

## IV.  CONCLUSION

For all of the foregoing reasons, MCI respectfully requests that the Court deny Plaintiff's Motion to Mandatorily and Permissively Withdraw the Reference, together with such other and further relief as is just and proper.

Dated: Houston, Texas
     November 12, 2007

---

[22]  *See also Enron Power Mktg., Inc. v. Virginia Elec. & Power Co. (In re Enron Corp.)*, 318 B.R. 273, 275 (S.D.N.Y. 2004) ("even if the Bankruptcy Court determines that the proceeding is non-core, and thus this [district] Court concludes that [the Plaintiff] is entitled to a jury trial on its claims, the Court would still not withdraw the reference of the case to the Bankruptcy Court until the case is trial-ready."); *Keene*, 182 B.R. at 385 ("[A] rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme.") (internal and external citations omitted); *Adelphi Inst.*, 112 B.R. at 538 ("the potential requirement of a jury trial of this adversary proceeding does not require its present removal from the bankruptcy court."); *Formica Corp.*, 305 B.R. 147 (S.D.N.Y. 2004) (holding that even if a case proceeded to a jury trial, "discovery and other pretrial management will be handled most efficiently by the bankruptcy court."); *Wedtech Corp. v. Banco Popular De Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293, 297 (S.D.N.Y. 1988) ("Disturbing the reference at this pre-trial stage would defy logic, and be a gratuitous and unnecessary waste of judicial resources.").

WEIL, GOTSHAL & MANGES LLP


_/s/  Alfredo R. Pérez_
Alfredo R. Pérez (AP3629)
Lydia Protopapas
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:   (713) 224-9511
Attorneys for Defendants, MCI, LLC, *et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Objection to Plaintiff Shary Everett's Motion to Withdraw the Reference was duly served by first class mail, postage prepaid, and electronic mail on the party listed below on the 12th day of November, 2007.

A.J. De Bartolomeo
Aaron M. Sheanin
Gerard Gibbs LLP
601 California Street, 14th Floor
San Francisco, CA  94108
ajd@girardgibbs.com
ams@girardgibbs.com

_/s/  Alfredo R. Pérez_____
Alfredo R. Pérez