# Exhibit A

FILED_____LODGED_____
_____ _____ . _____

2005 JUL 18  PM 4: 58

CLERK US _____ COURT
DISTRICT OF ARIZONA

1   Grant Woods (AZ Bar No. 006106)
    **GRANT WOODS, PC**
2   1726 North Seventh Street
    Phoenix, Arizona 85006
3   Telephone: (602) 258-2599
    Facsimile: (602) 258-5070
4
5   Robert B. Carey (AZ Bar No. 011186)
    Stephanie Levin Bozzo (AZ Bar No. 018470)
    **HAGENS BERMAN SOBOL SHAPIRO PLLC**
6   2425 E. Camelback Road, Suite 650
    Phoenix, Arizona 85016
7   Telephone: (602) 840-5900
    Facsimile: (602) 840-3012
8
9   Daniel C. Girard
    Aaron M. Sheanin
    Sanjay M. Ranchod
10  Stefanie G. Bernay
    **GIRARD GIBBS & De BARTOLOMEO LLP**
11  601 California Street, Suite 1400
    San Francisco, California 94108
12  Telephone: (415) 981-4800
    Facsimile: (415) 981-4846
13
14  Attorneys for Individual and Representative Plaintiff

15              **UNITED STATES DISTRICT COURT**

16                    **DISTRICT OF ARIZONA**

17
18  SHARY EVERETT, on behalf of herself and    Case No. **CV'05  2122 PHX ROS**
    all others similarly situated,
19              Plaintiff                      CLASS ACTION COMPLAINT
20
21          v.
22  MCI, INC., a Delaware Corporation,
23
24              Defendant.
25                                             DEMAND FOR JURY TRIAL
26
27
28

CLASS ACTION COMPLAINT                    E-FILED                           1

1  Plaintiff Shary Everett, on behalf of herself and all others similarly situated throughout

2  the United States, alleges by and through her attorneys, upon information and belief, as follows:

3  **JURISDICTION AND VENUE**

4  1.    This action asserts claims for violations of the Communications Act of

5  1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment. This court has

6  jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(d), and pursuant to

7  47 U.S.C. § 207. This court has supplemental jurisdiction over the state law claims pursuant to

8  28 U.S.C. § 1367.

9  2.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because

10  a substantial number of the acts giving rise to the violations of law complained of herein

11  occurred and had their primary effect in this judicial district.

12  **NATURE OF THE CASE**

13  3.    This is a class action on behalf of all persons in the United States who were billed

14  by MCI, Inc. ("MCI") for monthly service charges and related taxes, regulatory fees, and other

15  charges despite the fact they did not have an active account with MCI or an ongoing business

16  relationship with MCI at any relevant time. Many of the persons who were billed by MCI

17  without authorization are former MCI subscribers. Other persons who were billed by MCI

18  without authorization never have been MCI subscribers. Plaintiff had no contractual

19  relationship with MCI at the time she was billed by MCI for monthly service charges.

20  4.    Consumers who have detected unauthorized charges from MCI in their telephone

21  bills and attempted to dispute the charges report that MCI representatives often refuse to

22  reverse, refund, or credit back the charges. Consumers who do not pay unauthorized charges

23  are turned over to collections agencies.

24  5.    On behalf of herself and all similarly situated persons throughout the United

25  States, Plaintiff brings claims for violations of the Communications Act of 1934, as amended,

26  47 U.S.C. §§ 151, et seq. ("Communications Act"), and for unjust enrichment. This action seeks

27  to recover, among other things, damages sustained by Plaintiff and the Class as a result of

28  MCI's practice of assessing monthly service charges and related fees without authorization to

1 | non-MCI customers; equitable relief; and declaratory relief.

2 | ## THE PARTIES

3 | 6.    Plaintiff Shary Everett is a resident of Goodyear, Arizona.

4 | 7.    Defendant MCI, Inc. is a Delaware corporation that provides local and long

5 | distance telephone service to customers in the State of Arizona and throughout the United

6 | States, and maintains offices and facilities within the State of Arizona.

7 | ## FACTUAL ALLEGATIONS

8 | 8.    Consumers throughout the United States contract with local exchange carriers

9 | (LECs) to provide them with local telephone services. The LECs provide monthly bills for

10 | local telephone services to such consumers. MCI has agreements with LECs throughout the

11 | United States pursuant to which LECs permit MCI to include bills for long distance service

12 | along with the monthly telephone bills the LECs issue to consumers for local telephone service.

13 | For other consumers, MCI assesses charges for long distance service on separate bills that it

14 | sends directly to consumers. These bills, whether issued by a LEC or by MCI, represent that

15 | certain telephone charges have been incurred by the consumer, and that payment is due from

16 | the consumer for such charges.

17 | ### Defendant MCI's Unlawful Practice of Billing Non-Customers For Monthly Charges

18 | 9.    MCI bills consumers without their authorization for monthly service charges and

19 | related taxes, regulatory fees, and other charges even though these consumers do not have an

20 | active account with MCI or an ongoing business relationship with MCI. The consumers who

21 | receive the bills in question are not MCI customers, have not used MCI services at any relevant

22 | time, and have instead either contracted for long distance service with carriers other than MCI

23 | or canceled their long distance service.

24 | 10.    MCI misuses data it purchases from LECs to generate bills for consumers whom it

25 | has no reasonable basis to believe are current MCI customers. The data MCI receives from

26 | LECs include codes and/or other information that reveal the subscriber status of telephone lines.

27 | 11.    A telephone line may be designated to the MCI network even though MCI is not

28 | maintaining an active account with the owner of that line. Former MCI subscribers who

1   canceled their MCI service but did not also advise their LEC of the change may remain
2   designated to the MCI network. Such a consumer who remains designated to the MCI network
3   would appear to have an inactive MCI account because he or she would not have made any
4   long distance calls through MCI. A person who never has been an MCI subscriber but who has
5   been designated to the MCI network similarly would appear to have an inactive MCI account.

6       12.   MCI identifies inactive accounts by comparing the data it receives from LECs to
7   its own lists of active accounts. For telephone lines that have an inactive MCI account or that
8   do not have any MCI account, MCI either uses the inactive account to bill the owner of that line
9   or creates a new account for that line through which it can bill the owner of that line. MCI does
10   so without the knowledge, consent, or authorization of the owners of these telephone lines.

11       13.   MCI does not verify whether a consumer had previously canceled or terminated
12   their MCI service or whether a consumer had previously requested cancellation or termination
13   of their MCI service. MCI does not verify whether a consumer intends to switch their long
14   distance service to MCI or subscribe to MCI as their preferred long distance carrier.

15       14.   MCI uses an inactive account or creates a new account for a telephone line to bill
16   the owner of that line, as described above, by enrolling the telephone line and/or the owner of
17   that line in the "Basic Dial-1" long distance plan or another MCI long-distance calling plan that
18   carries a monthly service charge. MCI then indicates to the relevant LEC that the owner of that
19   line intends to establish a new account with MCI that carries a monthly service charge when, in
20   fact, the consumer does not. Plaintiff and Class members did not affirmatively select an MCI
21   long distance plan that carries a monthly service charge at any relevant time, and they were
22   enrolled in such a plan without their knowledge, consent, or authorization.

23       15.   Since 2002, MCI has charged a minimum usage fee ("MUF") to persons enrolled
24   in its "Basic Dial-1" long distance plan. Persons who did not generate bills for long distance
25   telephone calls in a given month equal to or exceeding $3.00 or $5.00 were charged the
26   difference between the amount of charges for long distance telephone calls they made and the
27   amount of the minimum usage fee. MCI also has charged a $3.95 monthly recurring fee, which
28

1  is charged regardless of the amount of bills for long distance telephone calls generated in a
2  given month, to persons enrolled in its "Basic Dial-1" long distance plan.

3      16.    According to internal MCI documents, MCI established the MUF program for its
4  "Basic Dial-1" long distance plan "to generate an additional $24.6M in revenue through the
5  application of the new $3 minimum usage fee." This revenue would not otherwise be generated
6  because the MUF was to be applied to persons with no usage on the MCI network. MCI
7  established the MUF program because not doing so would "unnecessarily avoid[] a significant
8  source of additional revenue from this customer segment." MCI has acknowledged that it
9  could have avoided assessing monthly service charges and related fees without authorization,
10  but did so because it could generate tens of millions of dollars in additional revenue.

11      17.    MCI did not obtain valid authorization at any relevant time from members of the
12  Class to enroll them in an MCI long distance plan that carries a monthly service charge prior to
13  assessing them monthly service charges and related fees. Plaintiff and other Class members
14  have not consented to pay a monthly service charge or related fees in connection with MCI long
15  distance service at any relevant time.

16      18.    During the Class period, MCI placed unauthorized monthly service charges and
17  related taxes, regulatory fees, and other charges on bills distributed by LECs to consumers
18  throughout the United States. For other consumers, MCI placed unauthorized monthly service
19  charges and related taxes, regulatory fees, and other charges on separate bills that it issued
20  directly to consumers throughout the United States.

21      19.    MCI has assessed a monthly service charge, including an MUF and monthly
22  recurring fee, without authorization to a staggering number of consumers nationwide. In
23  California alone, MCI assessed an MUF to approximately 500,000 consumers between June
24  2002 and February 2004.

25      20.    MCI's unlawful practice described herein affects former MCI long distance
26  subscribers who cancel MCI long distance service and switch their long distance service to
27  another carrier, former MCI long distance subscribers who cancel MCI long distance service

28

CLASS ACTION COMPLAINT

5

1    and do not select a new long distance carrier, and persons who have never been MCI
2    subscribers. This practice also affects persons who have a secondary telephone line that has
3    never been subscribed to MCI.

4        21.    MCI has obstructed the efforts of consumers to obtain credits, adjustments
5    or refunds of the improper charges. Consumers complain that in response to requests for
6    refunds and corrections to MCI billing records MCI representatives promise refunds and
7    corrections which are subsequently not made, that MCI issues "credits" to consumers who are
8    not MCI customers and thus cannot use the credits, and that even if MCI issues a credit or
9    refund for unauthorized charges, the unauthorized charges reappear in subsequent billing
10   statements or MCI imposes new, unauthorized charges in later billing periods.

11       22.    MCI's policy and practice is to reverse, refund, or credit back unauthorized
12   charges only to persons who threaten to bring legal action, lodge complaints with regulatory
13   authorities, or take other action in response to being billed without authorization by MCI.
14   Consumers who do not pay unauthorized charges are turned over to collections agencies.

15                        **Plaintiff Shary Everett's Experience**

16       23.    At all relevant times, Plaintiff Shary Everett had residential telephone service
17   through Qwest and had either long distance service through AT&T or no long-distance service.

18       24.    Mrs. Everett has not contracted with MCI or obtained services from MCI at any
19   time since approximately 1999, when she terminated MCI long distance service on a telephone
20   line at a previous address.

21       25.    Beginning in or around February 2003 and continuing thereafter, MCI assessed
22   Mrs. Everett a monthly service charge and related charges in connection with an MCI long
23   distance plan. The charges were not incurred or authorized by Mrs. Everett.

24       26.    On several occasions, Mrs. Everett attempted to have the unauthorized MCI
25   charges reversed or removed and/or to stop MCI from billing her for unauthorized charges.
26   When she called MCI, its representatives refused to reverse or remove the unauthorized MCI
27   charges assessed to her. MCI continued to assess Mrs. Everett charges without authorization.
28

27.    In or around July 2003, Mrs. Everett received a collections notice for failure to pay unauthorized charges assessed by MCI.

28.    Mrs. Everett subsequently paid unauthorized charges assessed by MCI. To prevent MCI from continuing to bill her for unauthorized charges, Mrs. Everett terminated her AT&T long distance service and restricted all long distance service on her telephone line.

29.    MCI has not refunded the unauthorized charges paid by Mrs. Everett.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action on behalf of herself and all other similarly situated persons throughout the United States as members of a proposed plaintiff Class initially defined as:

**All persons and entities who, on or after July 18, 2001, (1) were assessed or paid non-usage monthly charges in connection with an MCI calling plan and (2) were not MCI customers at the time the charges were assessed.**

Excluded from the Class are persons who filed complaints with the Federal Communications Commission, in compliance with 47 C.F.R. 1.716, 1.719, 1.720, or 1.721, regarding Defendant's conduct alleged herein; Defendant; any entity in which Defendant has or had a controlling interest; any officers or directors of Defendant; the legal representatives, heirs, successors, and assigns of Defendant; and any judge assigned to this action and his or her immediate family.

31.    This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil Procedure and case law thereunder.

### Numerosity of the Class
### (Fed. R. Civ. P. 23(a)(1))

32.    Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff estimates that the Class comprises at least tens of thousands of members. The precise number of Class members and their addresses are unknown to Plaintiff at this time, but can be ascertained from MCI's records. Class members may be notified of the

CLASS ACTION COMPLAINT

1  pendency of this action by mail, supplemented (if deemed necessary or appropriate by the
2  Court) by published notice.

### Existence and Predominance of Common Questions of Fact and Law
(Fed. R. Civ. P. 23(a)(2); 23(b)(3))

5   33.   Common questions of law and fact exist as to all members of the Class. These
6  questions predominate over the questions affecting only individual Class members. These
7  common legal and factual questions include:

    (a)   Whether MCI has assessed non-usage monthly charges on telephone lines
without the end-user's authorization;

    (b)   Whether MCI has enrolled end-users in calling plans that carry a monthly
service charge without their authorization;

    (c)   Whether MCI's assessment of charges on telephone lines without
authorization violates the Communications Act of 1934, as amended,
47 U.S.C. §§ 151, et seq.;

    (d)   Whether MCI was unjustly enriched by the charges it collected on
telephone lines without authorization; and

    (e)   The nature of the relief, including damages, equitable and declaratory
relief, to which Plaintiff and Class members are entitled.

### Typicality of Claims
(Fed. R. Civ. P. 23(a)(3))

34.   Plaintiff's claims are typical of the claims of the Class because Plaintiff,
like all other Class members, was assessed monthly service charges by MCI on one or
more telephone lines without her authorization.

### Adequacy of Representation
(Fed. R. Civ. P. 23(a)(4))

35.   Plaintiff is an adequate representative of the Class, because her interests do not
conflict with the interests of the Class members she seeks to represent, and she has retained
counsel competent and experienced in complex class action and telecommunications litigation.

CLASS ACTION COMPLAINT

1  The interests of the Class members will be fairly and adequately protected by Plaintiff and her
2  counsel.

## Superiority of the Class Action
### (Fed. R. Civ. P. 23(b)(3))

36.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member may be small, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by MCI's conduct. It would be virtually impossible for Class members individually to obtain effective redress for the wrongs done to them. Furthermore, even if the Class members themselves could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented with the complex legal and factual issues of this case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## The Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

37.    In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for MCI; or

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

CLASS ACTION COMPLAINT

(c)    MCI has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class members as a whole.

### FIRST CAUSE OF ACTION
#### (Violations of the Communications Act of 1934, 47 U.S.C. § 201)

38.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

39.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members for violations of 47 U.S.C. § 201.

40.    47 U.S.C. § 201(b) states, "All charges, practices, classifications, and regulations for and in connection with such communication service [i.e., service for interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

41.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons who have no contractual relationship with MCI for services they have not requested or received, and that MCI has not provided.

42.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons monthly service charges in connection with an MCI calling plan who do not have an active MCI account and who have not agreed to enroll in said calling plan.

43.    Plaintiff and Class members have been injured as a result of MCI's above-described violations of 47 U.S.C. § 201 in an amount to be determined according to proof.

44.    Under 47 U.S.C. §§ 206 and 207, Plaintiff and Class members are entitled to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 202)

45.    Plaintiff hereby incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

46.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members for violations of 47 U.S.C. § 202.

47.    47 U.S.C. § 202(a) states in relevant part:

> Charges, services, etc. It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

48.    MCI has assessed persons who were not MCI customers at any relevant time, including Plaintiff, for charges for telephone service they did not request, authorize, subscribe to, or use. MCI has failed to reverse, refund, or credit back such unauthorized charges to Plaintiff. MCI has reversed, refunded, or credited back charges for telephone service to other persons who were assessed such charges without authorization.

49.    MCI has violated 47 U.S.C. § 202(a) by unreasonably discriminating in charges and practices for or in connection with communication service, and by subjecting a class of consumers (namely, those persons who were assessed unauthorized charges for telephone service and for whom MCI failed to reverse, refund, or credit back such charges) to unreasonable prejudice.

50.    As a direct and proximate result of MCI's above-described practice of discrimination in violation of 47 U.S.C. § 202(a), Plaintiff and Class members have been injured in an amount to be determined at trial.

51.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled both to recover the full amount of damages sustained as a result of MCI's above-described

1  violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

2  wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

3  entitled to a judgment declaring that MCI violated the Communications Act of 1934.

4

### THIRD CAUSE OF ACTION
(Violations of the Communications Act of 1934, 47 U.S.C. § 203)

5

6  52.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

7  paragraphs as if fully set forth herein, and further alleges as follows:

8  53.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

9  for violations of 47 U.S.C. § 203.

10  54.    47 U.S.C. §203 states in relevant part:

11

12  (a)    Every common carrier, except connecting carriers, shall, within such
reasonable time as the Commission shall designate, file with the
13  Commission and print and keep open for public inspection schedules
showing all charges for itself and its connecting carriers for interstate and
14  foreign wire or radio communication between the different points on its
own system . . . .
15

. . . .
16

17  (c)    No carrier, unless otherwise provided by or under authority of this Act,
shall engage or participate in such communication unless schedules have
18  been filed and published in accordance with the provisions of this Act and
with the regulations made thereunder; and no carrier shall (1) charge,
19  demand, collect, or receive a greater or less or different compensation, for
such communication, or for any service in connection therewith, between
20  the points named in any such schedule than the charges specified in the
schedule then in effect, or (2) refund or remit by any means or device any
21  portion of the charges so specified, or (3) extend to any person any
privileges or facilities, in such communication, or employ or enforce any
22  classifications, regulations, or practices affecting such charges, except as
specified in such schedule.
23

24

25  55.    MCI billed Plaintiff and Class members for charges for telephone service they did

26  not request, authorize, subscribe to, or use.  Members of the Class had no contract with MCI at

27  any relevant time.  MCI thus has violated 47 U.S.C. § 203(c) by charging, demanding, or

28

CLASS ACTION COMPLAINT

1    collecting compensation under rates and conditions that are not set forth in tariffs or in

2    contracts with the members of the Class and/or charging, demanding, or collecting

3    compensation from persons with whom MCI has no contract of any kind.

4        56.    By charging Plaintiff and Class members with whom it has no contract, for

5    services that were neither requested from nor provided by MCI, MCI has violated 47 U.S.C.

6    § 203(c)(1) in that it charged, demanded, collected, or received compensation at rates greater or

7    different than the rates specified in its tariffs.

8        57.    As a direct and proximate result of MCI's above-described violations of 47 U.S.C.

9    §§ 203(c) and 203(c)(1), Plaintiff and Class members have been injured in an amount to be

10   determined according to proof.

11       58.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled

12   both to recover the full amount of damages sustained as a result of MCI's above-described

13   violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

14   wrongful conduct. Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

15   entitled to a judgment declaring that MCI violated the Communications Act of 1934.

16
                           **FOURTH CAUSE OF ACTION**
17                               **(Unjust Enrichment)**

18       59.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

19   paragraphs as if fully set forth herein, and further alleges as follows:

20       60.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

21   for unjust enrichment.

22       61.    MCI has assessed Plaintiff and Class members for charges for telephone services

23   they did not request, authorize, subscribe to, or use, and it has collected from Plaintiff and Class

24   members and retained money for such charges. Accordingly, MCI has received, and continues

25   to receive, money at the expense of Plaintiff and Class members.

26       62.    MCI has received benefits from Plaintiff and Class members that it has unjustly

27   and inequitably retained at their expense.

28

---

CLASS ACTION COMPLAINT
                            13

63.    As a direct and proximate result of MCI's violations of law, Plaintiff and Class members were deprived of the use of their monies that were unlawfully billed, collected, and retained by MCI, and are therefore entitled to restoration of their monies.

## REQUEST FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

A.    An order that this action is properly brought and maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff and her counsel of record to represent the proposed Class;

B.    An order declaring unlawful the acts and conduct of MCI complained of herein;

C.    An order permanently enjoining MCI from engaging in the unlawful acts and conduct complained of herein and any attempts by MCI to collect the erroneous or unlawful charges it has assessed, including the reporting to credit agencies of non-payment of such charges;

D.    An order that MCI withdraw or reverse any adverse reports made to credit agencies in connection with erroneous charges;

E.    An order compelling restitution, disgorgement, and/or other equitable relief as the Court deems proper;

F.    A judgment declaring that MCI violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.;

G.    An award of compensatory damages to Plaintiff and the Class, together with an award of consequential and incidental damages and costs suffered by Plaintiff and Class members because of MCI's wrongful conduct;

H.    An award of pre-judgment and post-judgment interest to Plaintiff and the Class;

I.    An award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class in this action, including expert-witness fees; and

J.    Such other relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT

14

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:  July 18, 2005

HAGENS BERMAN SOBOL SHAPIRO PLLC

By: _____

Robert B. Carey
Stephanie Levin Bozzo
2425 E. Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Grant Woods
**GRANT WOODS, PC**
1726 North Seventh Street
Phoenix, Arizona 85006
Telephone: (602) 258-2599
Facsimile: (602) 258-5070

Daniel C. Girard
Aaron M. Sheanin
Sanjay M. Ranchod
Stefanie G. Bernay
**GIRARD GIBBS & De BARTOLOMEO LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative Plaintiff

CLASS ACTION COMPLAINT

15

# Exhibit B

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Shary Everett, on behalf of herself and all)    No. 05-2122-PHX-ROS
    others similarly situated,               )
10                                            )    **ORDER**
                    Plaintiff,               )
11                                           )
    vs.                                      )
12                                           )
                                             )
13  MCI, Inc.,                               )
                                             )
14                  Defendant.               )
                                             )
15  _____   )

16

17          This action arises out of charges that were allegedly improperly assessed with respect

18  to local and long distance services provided by Defendant.  Pending is Defendant's Motion

19  To Dismiss.  (Doc. #11).  For the reasons set forth below, the Motion is denied.

20  **I.      BACKGROUND**

21          Plaintiff Shary Everett contends that in or around February 2003 MCI assessed her

22  account ("Everett Account") a monthly service charge and related charges in the amount of

23  $9.88 in connection with an MCI long distance plan that were neither incurred nor

24  authorized.  (Doc. #1, ¶25).[1]  Plaintiff further alleges that despite several requests to have the

25

26  _____

27      [1]      The account against which these charges were assessed is in Plaintiff's
    husband's name but is for the telephone number at the residence they share.  Plaintiff
28  contends she is jointly responsible for paying the bill.

1  charges reversed or removed, she received a collections notice in July 2003 for failure to pay

2  the unauthorized charges and subsequently paid them.  (Id., ¶¶ 27-29).

3      Defendant's records indicate that in December 2002, MCI received an order from the

4  Local Exchange Carrier ("LEC") for MCI to provide long distance services for the Everett's

5  phone number.  (Id., ¶ 7).[2]  This particular order was one where MCI designated itself as the

6  carrier through the LEC during a move.  (Id.).  Once the account was active with long

7  distance service, it became subject to minimum usage fees as set forth in MCI's Federal

8  Communications Commission ("FCC") Tariff and the MCI General Service Agreement,

9  which is mailed to all customers and is available on its website.  (Id.).  Such fees were billed

10 on the December 2002 and January 2003 invoices in the total amount of $9.88.  (Id.).

11 Defendant's records further indicate that in February 2003, Plaintiff called to dispute

12 authorization of the account, but did not request a credit.  (Id., ¶ 8).  MCI's procedure was to

13 advise Plaintiff to contact the LEC to switch services away from MCI in order to cancel her

14 account.  (Id., ¶ 9).  Three days after Everett's call, MCI received a disconnect order from the

15 LEC and cancelled the Everett Account.  (Id.).  MCI records do not indicate that the Everetts

16 initiated any other contact.  (Id., ¶10).

17     On behalf of herself and others similarly situated, Plaintiff filed a putative class action

18 on July 19, 2005 for violations of the Communications Act of 1934, 47 U.S.C. §§ 151, et

19 seq., ("Communications Act") and for unjust enrichment.  (Doc. #1).  Plaintiff seeks

20 monetary damages, equitable relief and declaratory relief.  Upon filing her lawsuit,

21 Defendant credited the LEC with $12.00 for the Everett's Account (Doc. #11, Exh. A at ¶11),

22 although the credit did not post to Plaintiff's account until after the Motion For Class

23 Certification was filed.  (Doc. #46).

24

25

---

26     [2]     Notably, only a LEC, and not a long distance carrier such as MCI, can switch
27 a customer's long distance provider from one carrier to another.  (Doc. #11, p. 4).  All
   changes made to service, including switching the designated long distance carrier, are
28 transmitted by the LEC to the appropriate long distance carrier.

1    Plaintiff is a resident of Goodyear, Arizona.  Defendant MCI, Inc. is a Delaware

2    corporation providing local and long distance telephone service to customers in Arizona and

3    throughout the United States, and maintains offices within the State of Arizona.  Because this

4    case involves a federal question under the Communications Act, the Court has jurisdiction

5    pursuant to 28 U.S.C. § 1331 over the federal claim, and supplemental jurisdiction pursuant

6    to 28 U.S.C. § 1367 over the state law claim.  (Doc. #1).

7    On September 29, 2005 Defendant MCI filed a Motion To Dismiss.  (Doc. #11).

8    Plaintiff responded on October 31, 2005 (Doc. #12), and Defendant replied on November 15,

9    2005.    (Doc. #16).    On April 26, 2006 the Court held oral argument and ordered

10   supplemental briefing.[3]  On May 26, 2006 the parties filed simultaneous supplemental briefs

11   (Doc. #38, Defendant's Supplemental Brief; Doc. #39, Plaintiff's Supplemental Brief), and

12   on June 9, 2006 simultaneous opposition briefs were filed (Doc. #46, Defendant's Opposition

13   Brief; Doc. #48, Plaintiff's Opposition Brief) followed by simultaneous replies filed on June

14   23, 2006.  (Doc. #51, Defendant's Reply In Support of Its Supplemental Brief; Doc. #52,

15   Plaintiff's Reply In Support of Its Supplement Brief).

16   **II.    DISCUSSION**

17       **A.    Legal Standard**

18   Defendant argues that the Court should dismiss Plaintiff's claim pursuant to Rule

19   12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction

20   because (1) it is moot,[4] and (2) Plaintiff's claims fall within the primary jurisdiction of the

21   _____

22       [3]    The Court ordered supplemental briefing on the following issues: (1) whether
      Manson v. MCI, Inc. and Telecom USA, Inc., Case No. 04-73374 (E.D. Mich. Feb. 24,
23    2005), is controlling in this case; (2) whether it is disputed that Plaintiff has received all
      damages; (3) whether it is determinative that Plaintiff alleges fraud; (4) whether or not the
24    court's application of the "picking-off" doctrine in Manson is distinguishable; (5) whether the
      potential class members may be transitory such that there is a likelihood of repetition.
25

26       [4]    Defendant also argues that Plaintiff lacks standing, because the Everett account
      was in her husband's name.  (Doc. #38, p. 2 fn 1).  The cases on which Defendant relies do
27    not support its contention that Plaintiff lacks standing to sue over charges assessed to an
      account for which she is jointly responsible.  Ms. Everett paid the debts from a joint checking
28

- 3 -

1    Federal Communications Commission ("FCC").  Plaintiff, as the party seeking to invoke the

2    jurisdiction of the court, bears the burden of establishing subject matter jurisdiction.  See

3    McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936); Fenton v.

4    Freedman, 748 F.2d 1358, 1359 (9th Cir. 1994).  A Rule 12(b)(1) motion to dismiss for lack

5    of subject matter jurisdiction may be either a facial or a factual challenge.  When the moving

6    party challenges jurisdiction based on the allegations in the complaint, the court must

7    consider all the allegations in the complaint as true, and will not look beyond the face of the

8    complaint to determine jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549

9    F.2d 884, 891 (3d Cir. 1977).

10        On the other hand, when a court reviews a complaint under a factual challenge, the

11   allegations have no presumptive truthfulness, Ritza v. International Longshoremen's and

12   Warehousemen's Union, 837 F.2d 369 (9th Cir. 1988) (quoting Mortensen, 549 F.2d at 891),

13   and the court is not limited to the allegations in the pleadings if the "jurisdictional issue is

14   separable from the merits of [the] case."  Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th

15   Cir. 1987).  Rather, the court weighing the evidence has discretion to allow affidavits,

16   documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

17   See Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, 56 F.3d 1177

18   (9th Cir. 1995), Mortensen, 549 F.2d at 891.

19        **B.    Analysis**

20            **1.    Mootness**

21        Defendant contends that Plaintiff's claim is moot, because it credited Plaintiff for all

22   of her alleged damages plus interest, and as a result, there is no actual, ongoing controversy.

23

24

_____

25   account she shared with her husband (Doc. #39, p.5; Everett Decl., ¶4), and has suffered an

26   economic injury for which she has standing to sue.  See San Diego County Gun Rights

27   Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient

     basis for standing").  Moreover, it appears that Ms. Everett was authorized to make changes

28   to the account on behalf of her husband.  (Doc. #38, Exh. A).

1  (Doc. #11, Exh. A, ¶ 11).[5]  Plaintiff argues that Defendant's attempt to satisfy her claim

2  shortly after it was filed, and before she could file a Motion for Class Certification, is an

3  attempt to "pick-off" her claim and should not be subject to the mootness limitation.

4        Article III of the United States Constitution requires a plaintiff to present an actual

5  case or controversy, which is a prerequisite to the Court's exercise of subject matter

6  jurisdiction.  See American-Arab Antidiscrimination Comm. v. Thornburgh, 940 F.2d 445,

7  448 (9th Cir. 1991).  The doctrine of mootness is derived from the case-or-controversy

8  limitation.  See Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1128-29 (9th Cir. 2005).

9  A live controversy must persist throughout all stages of the litigation.  See id.  When this

10  condition is not met, the case has become moot and is no longer within the Court's

11  constitutional purview.  Id.

12        In most cases, a case becomes moot when a defendant offers to satisfy the plaintiff's

13  requested relief.  Holstein v. City of Chicago, 29 F.3d 1145, 1147 (7th Cir. 1994).  But, when

14  the plaintiff attempts to represent a class, the mootness doctrine is somewhat different.  See

15  Bd. of School Comm'rs v. Jacobs, 420 U.S. 128, 129 (1975); Kuahulu v. Employers Ins. of

16  Wausau, 557 F.2d 1334, 1336 (9th Cir. 1977).  The application of the mootness doctrine

17  depends on the idiosyncrasies of each case and "does not require an automatic dismissal in

18  every case where the district court has failed to certify the class before the representative's

19  claim has become moot."  Kuahulu, 557 F.2d at 1336.  A plaintiff whose claims have been

20  satisfied and are no longer active may  avoid dismissal by showing that the claims are

21  nonetheless "capable of repetition, yet evading review."  Sosna v. Iowa, 419 U.S. 393, 401-

22  02 (1975).  Application of this exception to the mootness doctrine is limited to situations

23  where "(1) the challenged action is in its duration too short to be fully litigated prior to its

24  cessation or expiration, and (2) there is a reasonable expectation that the same complaining

25

26        [5]    Plaintiff's request for costs and interest does not create a case or controversy.

27  See Bank of Marin v. England, 385 U.S. 99, 111 n. 1 (1966) (Fortas, J., dissenting) (citations
omitted).  Nor does Plaintiff's claim for attorneys' fees save an otherwise moot case.  See

28  Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990).

1    party will be subject to the same action again." <u>Weinstein v. Bradford</u>, 423 U.S. 147 (1975).

2    In addition, the Supreme Court has held, "Requiring multiple plaintiffs to bring separate

3    actions, which effectively could be 'picked off' by a defendant's tender of judgment before

4    an affirmative ruling on class certification could be obtained, obviously would frustrate the

5    objectives of class actions; moreover it would invite waste of judicial resources by

6    stimulating successive suits brought by others claiming aggrievement." <u>Deposit Guaranty</u>

7    <u>Nat'l Bank v. Roper</u>, 445 U.S. 326, 339 (1980).  Where a named plaintiff's claims become

8    moot before the court certifies a class, the class certification motion is deemed to relate back

9    to the named plaintiff's standing when she filed the class complaint.  <u>See</u>, <u>Wade v. Kirland</u>,

10   118 F.3d 667, 670 (9th Cir. 1997).  The "relation-back" exception applies where the claims

11   are transitory or acutely susceptible to mootness as a result of the defendant's effort to pick

12   them off.  <u>See</u>, <u>e.g.</u>, <u>id</u>; <u>Weiss v. Regal Collections</u>, 385 F.3d 337, 347-48 (3d Cir. 2004).

13        Defendant cites two cases involving similar facts in which courts have dismissed the

14   action on grounds of mootness where the claims were satisfied before the court certified the

15   class action.  In <u>Manson v. MCI, Inc. and Telecom USA, Inc.</u>, Case No. 04-73374 (E.D.

16   Mich. Feb. 24, 2005), aff'd by the Sixth Circuit without opinion on April 25, 2006 (Doc. #36,

17   Exh. A), the court held that there was no case or controversy over plaintiff's moot claims

18   where MCI issued a credit to plaintiff in an amount equal to or greater than the potential

19   damages.[6]  The court rejected plaintiff's argument that defendants were attempting to "pick

20   off" the claims with settlement offers in an attempt to avoid a class action, because the

21   motion for class certification had not yet been filed.  Defendant argues that like <u>Manson</u>, at

22

23

24   _____

25        [6]    Although Sixth Circuit Rule 28(g) disfavors the "[c]itation of unpublished
     decisions in briefs and oral arguments in this Court and in the district courts within this
26   Circuit, except for the purposes of establishing res judicata, estoppel, or the law of the case,"
     Defendant is not prohibited from citing the case in this Circuit.  Contrary to Defendant's
27   assertion that the Sixth Circuit's oral disposition "compels dismissal of this case" (Doc. #38,
28   p. 2), the Sixth Circuit decision is not binding on this Court.

1    the time MCI credited Plaintiff's account, no Motion For Class Certification had been filed.[7]

2         Like <u>Manson</u>, Plaintiff's claim was satisfied before the motion for class certification

3    had been filed.[8] <u>Manson</u> is distinguishable on other grounds, because the defendants in that

4    case agreed to institute a recovery program to determine what other class members were

5    entitled to the same credit afforded plaintiff such that all claims would be moot, therefore

6    alleviating any concerns that there would be repetitious claims. Here, MCI has not offered

7    to credit other putative plaintiffs who were also improperly charged. At oral argument, MCI

8    contended that based on the factual circumstances in <u>Manson</u>, it was easier to rectify the

9    wrong, whereas here, the alleged wrong is based on incorrect information MCI receives from

10   the LEC. MCI further contends that through its liberal credit policy, all putative plaintiffs

11   who requested a credit received one. Under this reasoning, however, MCI has placed the

12   burden on the putative plaintiff to contact MCI and not only identify herself as an account

13   holder whose account was improperly charged, but also request a credit. If a putative

14   plaintiff fails to do so, perhaps because she is unable to reach a live person through the

15   automated customer service line, then the putative plaintiff is deemed to have accepted the

16   services. MCI's policy does not sufficiently rectify the problem or alleviate this Court's

17   concern over future claims.

18        Defendant also cites to <u>Labora v. MCI Telecommunications Corp.</u>, No. 98-1073 (S.D.

19   Fl. July 20, 1998), in which the plaintiff filed a class action alleging improper and duplicative

20   billing practices.[9] Plaintiff, a customer, did not contact MCI's customer service center to

21

22   _____

23        [7]    Plaintiff filed a Motion For Class Certification on May 30, 2006 (Doc. #43).

24        [8]    Although Defendant issued a credit to the LEC before Plaintiff filed its Motion
     For Class Certification, the credit did not post to Plaintiff's account until after the Motion was
25   filed. (Doc. #46). Whether the claim was mooted on the date the credit was issued or the
     date the credit appeared is immaterial, as this Court rejects the brightline rule that focuses
26   solely on the date on which the motion for class certification was filed.

27        [9]    Like the Sixth Circuit's disposition in <u>Manson</u>, the Eleventh Circuit's summary
28   affirmance in <u>Labora</u> has no precedential value. <u>See</u> 11th Cir. R. 36-1.

1    inquire about the calls and instead filed a class action complaint.  Upon receipt of the

2    complaint, however, MCI refunded the plaintiff the total alleged duplicate charges of $1.52

3    and moved to dismiss the complaint as moot.  The court held that this credit mooted

4    plaintiff's cause of action and rendered him ineligible to represent the class, and also held that

5    his request for costs and interest did not salvage the otherwise moot case.  It was upheld with

6    no written opinion by the Eleventh Circuit.

7         This case is also distinguishable, because in Labora, the court found relevant that prior

8    to the filing of the lawsuit, MCI had no notice that it had improperly charged the plaintiff.

9    The fact that MCI credited the plaintiff shortly after the complaint was filed was more

10   indicative of an intent to rectify an error upon receiving notice than of any intent to "pick-

11   off" the plaintiff's claim.  In this case, Plaintiff notified Defendant that she did not authorize

12   initiation of services well before filing suit.  Defendant argues that its policy prevented it

13   from issuing a credit until Plaintiff specifically requested one, which its records indicate

14   Plaintiff did not do at the time she called to inquire about the charges.  Defendant further

15   contends that the fact it credited Plaintiff pursuant to its internal policy is evidence that it is

16   not intending to "pick off" her claim.  The basis for the refund is immaterial, however, where

17   unlike Labora, Defendant was on notice beforehand but did not act until after the lawsuit was

18   filed.  Moreover, it is these very policies and practices that are issue in this lawsuit.

19        Plaintiff cites the Third Circuit decision, Weiss v. Regal Collections, 385 F.3d 337,

20   344 (3d Cir. 2004), as support for its argument that mootness should not apply.  Weiss

21   involved a plaintiff who, within six weeks of filing his amended complaint and before filing

22   a motion for class certification, was made an offer of judgment by defendant under Fed. R.

23   Civ. P. 68 for the amount of statutory damages plus attorneys' fees and costs.  The plaintiff

24   declined the offer of judgment, and the district court granted the defendant's motion to

25   dismiss on grounds of mootness.  Id. at 340.  In reversing the district court's opinion, the

26   Third Circuit held that the defendant's offer of judgment, which provided complete relief to

27   Weiss but not to the class, would not be given effect, because to allow the defendant to make

28   an offer of judgment to a named plaintiff prior to class certification would undermine the

1  purposes of Rule 23. <u>Id.</u> at 345. The Third Circuit cited precedent for its holding that a class

2  action would not be moot if a trial court lacked the opportunity to rule on a pending motion

3  for class certification when a defendant made an offer of judgment. <u>Id.</u> at 346 (citing <u>Susman</u>

4  <u>v. Lincoln Am. Corp.</u>, 587 F.2d 866, 869-71 (7th Cir. 1978); <u>Zeidman v. J. Ray McDermott</u>

5  <u>& Co.</u>, 651 F.2d 1030, 1051 (5th Cir. 1981); <u>Lusardi V. Xerox Corp.</u>, 975 F.2d 964, 975 (3d

6  Cir. 1992)). In rejecting a brightline rule followed by other courts, the Third Circuit instead

7  focused on whether the plaintiff had unduly delayed in moving for certification; it held that

8  plaintiff had not delayed, and as a result, found the case was not moot. <u>See</u> <u>id.</u> at 348.

9      This is an issue of first impression in the Ninth Circuit, whether a claim is rendered

10  moot where plaintiff's damages are satisfied not only before a court has ruled on a motion for

11  class certification, but before plaintiff has even filed such a motion. Defendant seeks

12  adoption of a brightline rule focusing solely on whether a motion for certification was filed

13  at the time plaintiff's damages were satisfied.

14      Defendant attempts to distinguish this case from <u>Weiss</u> by claiming that its credit was

15  not an offer of judgment made pursuant to Fed. R. Civ. P. 68. Regardless of whether it was

16  issued as part of a formal settlement offer or not, Defendant's credit satisfied Plaintiff's claim;

17  thus, for purposes of mooting Plaintiff's claim, it is the same as an offer of judgment.   To

18  hold otherwise would permit a defendant to circumvent the practical considerations

19  underlying the court's reasoning in <u>Weiss,</u> as well as subsequent cases, which speak most

20  closely to the issues at hand while recognizing the modifications to Fed. R. Civ. P. 23 in 2003

21  allowing for more time to file for certification. Creating a brightline based on whether the

22  claim was satisfied before the filing of the class certification motion would necessitate that

23  putative plaintiffs seek class certification on the date a complaint is filed or immediately

24  thereafter in order to preserve their claim; similarly, it would encourage defendants to "race

25  to pay off" named plaintiffs very early in the litigation before a motion for class certification

26  is filed, which is inconsistent with the purposes of Rule 23. <u>Liles v. American Corrective</u>

27  <u>Counseling Servs., Inc.</u>, 201 F.R.D. 452, 455 (S.D. Iowa 2001); <u>Schaake v. Risk</u>

28  <u>Management Alternatives, Inc.</u>, 203 F.R.D. 108 (S.D.N.Y. 2001) ("Taken to its absurd

logical conclusion, the policy urged by defendant . . . . would also allow defendants to essentially opt-out of Rule 23, by allowing a defendant to avoid liability for class wide relief, which could be prevented by the mere service of a Rule 68 offer at the outset of the case."); Nasca v. GC Servs. Ltd. P'ship, 01 Civ. 10127 (DLC), 2002 U.S. Dist. LEXIS 16992, at *9 (S.D.N.Y. Sept. 13, 2002) ("To allow a Rule 68 offer to moot a named plaintiff's claim in these circumstances [where an offer of judgment was made less than two months after defendant filed its answer] would encourage defendants to pick off named plaintiffs in the earliest stage of the case."); Bond v. Fleet Bank (RI), N.A., C.A. No. 01-177 L, 2002 U.S. Dist. LEXIS 4131, at *21-22 (D.R.I. Feb. 21, 2002) ("To permit Fleet to intentionally moot Bond's claims, before Bond had an opportunity to move for class certification, in an effort to avoid a class action, would do violence to the interests of justice."); David Hill Koysza, Preventing Defendants From Mooting Class Actions By Picking Off Named Plaintiffs, 53 Duke L.J. 781, 781-82 (Nov. 2003) (an offer of judgment to named plaintiffs before class certification "both thwarts the function of the class action device and vitiates the policies behind it"). Though Weiss involved an offer of judgment, the Court finds the Third Circuit's reasoning to be persuasive and rejects the brightline rule in favor of an approach that permits sufficient time to allow Rule 23 to play out.

Another inquiry is whether Plaintiff engaged in "undue delay" in not filing the Motion For Class Certification before the claim was satisfied. MCI credited the Plaintiff's account via the LEC only seven weeks after she filed her Complaint. Defendant had not answered or even moved against the Complaint; thus, Plaintiff had not had a reasonable opportunity to move for class certification at that time. In addition, unlike Manson where the court believed that the entire class action would be moot, because MCI indicated that it was in the process of "identify[ing] all customers incorrectly billed . . . . [and crediting] those accounts in full for any over-billing," Manson, slip op. at 8, MCI here has made no such effort. The Court has strong concerns that to render Plaintiff's claims moot would only result in repetitious claims.

## 2.    Primary Jurisdiction

1    Alternatively, Defendant argues that Plaintiff's claims should be dismissed, because

2 the FCC has primary jurisdiction over the claims. "Primary jurisdiction is not implicated

3 simply because a case presents a question, over which the FCC could have jurisdiction . . .

4 . Rather, primary jurisdiction is properly invoked when a case presents a far-reaching

5 question that 'requires expertise or uniformity in administration.'" Brown v. MCI WorldCom

6 Network Serv's, Inc., 277 F.3d 1166, 1172 (9th Cir. 2002) (citations omitted). In considering

7 whether to dismiss a federal action based on primary jurisdiction, courts have considered four

8 factors: (1) whether the question at issue is within the conventional expertise of judges; (2)

9 whether the question at issue lies particularly within the agency's discretion or whether it

10 requires the exercise of agency expertise; (3) whether there exists a substantial danger of

11 inconsistent rulings; and (4) whether a prior application to the agency has been made. See

12 Total Telecomm. Servs., Inc. v. Am. Tel. & Telegraph Co., 919 F. Supp. 472, 478 (D.D.C.

13 1996). "A court 'should be reluctant to invoke the doctrine of primary jurisdiction, which

14 often, but not always, results in added expense and delay to litigants . . . .'" McDonnell

15 Douglas Corp., 751 F.2d 220, 224 (8th Cir. 1984) (citations omitted).

16    This Court need not decide whether the alleged unlawful charges were reasonable, but

17 rather whether MCI's decision to assess the fee to non-customers was part of a deceptive

18 scheme. Plaintiff's allegations of consumer fraud are well within the competence of this

19 Court. See Nadar v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06 (1976) ("The standards

20 to be applied in an action for fraudulent misrepresentation are within the conventional

21 competence of the courts, and the judgment of a technically expert body is not likely to be

22 helpful."). Moreover, other courts have rejected such attempts to refer jurisdiction over cases

23 involving similar issues. See Brennan v. AT&T Corp., No. 04-CV-433, 2006 U.S. Dist.

24 LEXIS 8237, at *4 (S.D. Ill. Feb. 8, 2006) (rejecting defendant's argument to refer

25 jurisdiction over underlying claim that defendant deliberately charged improper non-usage

26 fees) (Doc. #20, Exh. A). Contrary to Defendant's assertion that the FCC has an interest in

27 adjudicating this matter, its recent Report and Order and Further Notice of Proposed

28 Rulemaking, which addresses the problem of LECs providing incorrect information to long

1   distance carriers such as MCI contains no such indication.  (Doc. #11, Exh. B&C).

2   Moreover, the Rulemaking did not address the issue raised in this action, which is whether

3   Defendant violated the Communications Act after obtaining data from the LECs by

4   establishing accounts and enrolling consumers in billing plans with MUFs without customer

5   authorization.   For these reasons, a referral would be improper.

6

7   Accordingly,

8           IT IS ORDERED that Defendant's Motion To Dismiss (Doc. #11) is denied.

9

10          DATED this 29th day of September, 2006.

11

12

13

14

15

16

17

18

19   _____
     Roslyn O. Silver
20   United States District Judge

21

22

23

24

25

26

27

28

- 12 -