# Exhibit C

Grant Woods (AZ Bar No. 006106)
**GRANT WOODS, PC**
1726 North Seventh Street
Phoenix, Arizona 85006
Telephone: (602) 258-2599
Facsimile: (602) 258-5070

Robert B. Carey (AZ Bar No. 011186)
**HAGENS BERMAN SOBOL
SHAPIRO PLLC**
2425 E. Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Daniel C. Girard (admitted *pro hac vice*)
A. J. De Bartolomeo (admitted *pro hac vice*)
Aaron M. Sheanin (admitted *pro hac vice*)
Lindy K. Lucero (admitted *pro hac vice*)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiff Shary Everett

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>MCI, INC., a Delaware Corporation,<br><br>Defendant. | Case No.  CIV 05-2122-PHX-ROS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**<br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

# **TABLE OF CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT .................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ............................................................... 2

    A.   Procedural History ........................................................................................ 2

    B.   MCI's Bankruptcy ........................................................................................ 3

    C.   The Impact of MCI's Motion on Claimants ............................................ 4

III. ARGUMENT ......................................................................................................... 5

    A.   The Motion to Dismiss for Lack of Subject Matter Jurisdiction Fails ..................... 5

        1.   The Court Has Subject Matter Jurisdiction ............................................. 5

        2.   A Bankruptcy Court Cannot Divest This Court of Jurisdiction ........................... 7

    B.   Neither The Bankruptcy Discharge Nor The Discharge Injunction Preclude Ms. Everett's Post-Petition Claims ..................... 9

    C.   The Motion for Change of Venue to the Bankruptcy Court Fails ........................ 10

        1.   Venue is Proper in this Court ................................................................. 10

        2.   MCI Has Waived Its Right to Challenge Venue .................................... 11

        3.   MCI Has Not Shown A Change of Venue is Warranted ....................... 12

IV.  CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Case**                                                 **Page**

*Brock v. American Messenger Service, Inc.*,
65 B.R. 670 (D.N.H. 1986) ........................................................................... 11, 13

*Celotex Corp. v. Rapid Am. Corp.*,
124 F.3d 619 (4th Cir. 1997) ................................................................................... 8

*City of Moreno Valley v. Century-TCI Calif., L.P.*,
2003 U.S. Dist. LEXIS 4490 (C.D. Cal. Mar. 24, 2003) ..................................... 12

*Combined Broad., Inc. v. Urban Telecomms. Corp.*,
1992 U.S. App. LEXIS 18595 (4th Cir. Aug. 11, 1992) ......................................... 8

*Dunmore v. United States*,
358 F.3d 1107 (9th Cir. 2004) ................................................................................. 6

*Everett v. MCI, Inc.*,
2006 U.S. Dist. LEXIS 71871 (D. Az. Sep. 29, 2006)…………………………………2

*In re Allegheny*,
74 B.R.. 397 (Bkrtcy. W.D.Pa. 1987) .................................................................... 10

*In re Castlerock Properties*,
781 F.2d 159 (9th Cir. 1986) ......................................................................... 6, 7, 12

*In re Gruntz*,
202 F.3d 1074 (9th Cir. 2000) ................................................................................. 5

*In re Office Products Co. Securities Litig.*,
313 B.R. 73 (D.D.C. 2004) .......................................................................... 5, 6, 8, 9

*In re Wood*,
825 F.2d 90 (5th Cir. 1987) ..................................................................................... 5

*In re Worldcom, Inc. Sec. Litig.*,
294 B.R. 553 (S.D.N.Y. 2003) ........................................................................... 8, 10

*Luciano v. Maggio*,
139 B.R. 572 (E.D.N.Y. 1992) ..................................................................... 10, 11, 12, 13

*Mar. Elec. Co., Inc. v. United Jersey Bank*,
1992 U.S. App. LEXIS 5144 (3d Cir. 1992) ...................................................... 6, 8

*Olick v. Parker & Parsley Petroleum Co.*,
    145 F.3d 513 (2d Cir. 1998) ........................................................................8

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ........................................................................6

*R.A. Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ......................................................................11

*Stjernholm v. Peterson*,
    83 F.3d 347 (10th Cir. 1996) ....................................................................11

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ..................................................................................12


**Statutes**

11 U.S.C. § 1141(d)(1)(A). ...........................................................................3

28 U.S.C. § 157 .............................................................................1, 5, 6, 7, 12

28 U.S.C. § 1331 ..............................................................................................6

28 U.S.C. § 1332(d) .........................................................................................6

28 U.S.C. §  1334 ...................................................................................1, 5, 6, 8

28 U.S.C. § 1391(b)(2) ............................................................................10, 11

28 U.S.C. § 1404(a) .......................................................................................12

28 U.S.C. § 1409 .....................................................................................10, 11

Fed. R. Civ. P. 12(b) ..............................................................................1, 2, 11

Fed. R. Civ. P. 12(g) ...................................................................................2, 11

Fed. R. Civ. P. 12(h) ......................................................................................11


**Miscellaneous**

1 *Collier on Bankruptcy*,
(Lawrence P. King, ed., 15th ed. rev. 2006).................................................9

Baiker-McKee *et al.*, *Federal Civil Rules Handbook*,
Rule 12(b)(3), at p.343 (Thompson-West, 2006) .......................................11

## I.     **SUMMARY OF ARGUMENT**

Defendant MCI, LLC, f/k/a MCI, Inc. ("MCI") moves to dismiss or, in the alternative, for summary judgment.  MCI has suddenly discovered after more than a year of litigation that the Bankruptcy Court for the Southern District of New York (hereinafter, "the Bankruptcy Court") has exclusive subject matter jurisdiction over this case.  Without explaining the meaning of the term, MCI asserts that Plaintiff Shary Everett's claims were "discharged" by the Worldcom bankruptcy and that she is barred by a bankruptcy court injunction from prosecuting her case.  MCI offers no explanation for its failure to raise these arguments in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) that the Court heard and denied less than two months ago.

MCI's arguments are meritless.  MCI's theory is that the chapter 11 reorganization plan ("Bankruptcy Plan") in the *In re WorldCom* litigation and the Bankruptcy Court's order confirming the Bankruptcy Plan ("Confirmation Order") divest this Court of jurisdiction to hear and adjudicate Ms. Everett's claims.  By statute, however, this Court has original subject matter jurisdiction over all civil proceedings "arising under title 11 [of the United States Code], or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  A bankruptcy court may hear cases and "core proceedings arising under title 11, or arising in a case under title 11," upon referral from the District Court.  28 U.S.C. § 157(a).  A bankruptcy court may <u>not</u>, however, decide matters that are "not core proceeding[s] but that [are] otherwise related to a case under title 11."  28 U.S.C. § 157(c)(1).  Instead, non-core matters, such as Ms. Everett's claims here, may only be adjudicated in the District Court.

MCI also misconstrues the Bankruptcy Plan itself.  That Plan does not extinguish Ms. Everett's post-petition claims, as MCI contends, nor does it enjoin Ms. Everett, or others, from pursuing such claims in proceedings before the District Court.  Such claims are "Disputed Administrative Expense Claims," and should they become "Allowed by Final Order" (the Plan defines a Final Order as an order of the Bankruptcy Court *or any of other court of competent jurisdiction* that is no longer subject to appeal), would be entitled to payment in full.  *See* Bankruptcy Plan, §§ 1.09, 1.10, 1.43, 1.49, 2.01.  If this Court enters a final judgment in

1  Plaintiffs' favor on the claims asserted herein, and the judgment is sustained on appeal, Ms.

2  Everett and the members of the class will be entitled under the Bankruptcy Plan to recover the

3  full amount of the judgment.  *See id.*, § 2.01.

4        Lacking any legal basis to challenge the Court's jurisdiction, MCI's alternative

5  requested relief is for a change of venue.  That relief is not available to MCI, however.  Under

6  Fed. R. Civ. P. 12(g) and (h)(1), MCI was required to assert any venue challenge at the time it

7  filed its original Rule 12(b)(1) motion.   MCI failed to contest venue in its prior motion and has

8  waived its right to do so now.

9        The Court should deny MCI's motion in its entirety.

10 **II.    STATEMENT OF RELEVANT FACTS**

11       **A.    Procedural History**

12       On July 18, 2005, Shary Everett filed a class action against MCI for billing unauthorized

13 charges to her and other non-customers in violation of the Communications Act of 1934 and the

14 common law.  Ms. Everett seeks to represent a class of all persons MCI considered "zero usage

15 non-Plan Consumers" who were enrolled by MCI in an account for which MCI charged a

16 minimum usage fee, monthly recurring charge or other monthly service charge.

17       Ms. Everett's individual claims include allegations that MCI charged her a minimum

18 usage fee and related charges beginning in February 2003 and subsequently threatened her with

19 collections.  In 2003, Ms. Everett paid the charges and restricted all long distance service on her

20 telephone line to prevent MCI from continuing to bill her without authorization.

21       After Ms. Everett filed her class action complaint, MCI issued a credit to her local

22 exchange carrier in an effort to moot her claim.  On September 29, 2005, MCI filed a motion to

23 dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), contending

24 that the case was moot and, alternatively, that the Court should refer the case to the Federal

25 Communications Commission under the doctrine of primary jurisdiction.   After extensive

26 briefing, on September 29, 2006, the Court denied MCI's motion to dismiss.  *See Everett v.*

27 *MCI, Inc.,* CIV 05-2122-PHX-ROS, 2006 U.S. Dist. LEXIS 71871 (D. Az. Sep. 29, 2006).

28       Dissatisfied with the Court's ruling, on October 31, 2006, MCI filed the present motion

for judgment on the pleadings, or in the alternative, motion for summary judgment.  MCI now argues that Ms. Everett's individual and class claims should be dismissed or referred to the Bankruptcy Court under the Bankruptcy Plan and Confirmation Order.

### B.     MCI's Bankruptcy

MCI's predecessor, WorldCom, Inc., filed petitions for bankruptcy under title 11 of the Bankruptcy Code, on July 21, 2002 and November 8, 2002, in the Bankruptcy Court for the Southern District of New York.  On October 31, 2003, the Bankruptcy Court issued the Confirmation Order, approving the Bankruptcy Plan.  On April 20, 2004, the Plan became effective.

The Bankruptcy Plan establishes three categories of claims against MCI:  (1) claims that accrued before MCI filed its bankruptcy petitions ("pre-petition claims"); (2) claims that accrued after MCI filed its bankruptcy petitions but before the Plan became effective ("post-petition claims"); and (3) claims that accrued after the Plan became effective ("post-confirmation claims").  The Bankruptcy Plan discharges pre-petition claims under specified terms and conditions, and does not apply to post-confirmation claims.  *See* Bankruptcy Plan, §§ 10.02 & 4.07; 11 U.S.C. § 1141(d)(1)(A).

Of importance here, the Bankruptcy Plan discharges post-petition claims by converting them to "Administrative Expense Claims."  Such claims are defined in the Plan as:

> any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including . . . any actual and necessary costs and expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the . . . the rendition of services. . . .

Bankruptcy Plan, § 1.09.

Persons asserting valid Administrative Expense Claims are entitled to payment *in full*. *Id.*, § 2.01 ("[E]ach holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable. . . .").

The Plan does not set any deadline for filing a post-petition claim. Id. MCI may settle Administrative Expense Claims without Bankruptcy Court approval. *Id.*, § 7.06. Pending resolution of MCI's liability on the post-petition claims of Ms. Everett and the class, the Bankruptcy Plan considers those claims to be Disputed Administrative Expense Claims. *See* Bankruptcy Plan, §§ 1.09, 1.43. Those claims are payable once they become "Allowed by Final Order" of the "Bankruptcy Court or *any other court of competent jurisdiction.*" *Id.*, §§ 1.10, 1.49 (italics added).

Thus, the Bankruptcy Plan expressly provides that courts, other than the Bankruptcy Court, have the authority to resolve Disputed Administrative Expense Claims such as those at issue here.

### C.    The Impact of MCI's Motion on Claimants

MCI's arguments do not apply to class members with post-confirmation claims. As to them, this litigation will continue in this Court. MCI conceded as much during a recent hearing. (Tr. of Nov. 1, 2006 Hr'g at 7:4-12, attached hereto as Ex. A.) Notably, other class members with post-confirmation claims have already submitted declarations to this Court attesting that they are prepared to represent the class.[1]

MCI's motion is instead directed to Ms. Everett and other post-petition claimants. The Bankruptcy Plan treats their post-petition claims, which have not yet been adjudicated by any Court, as Administrative Expense Claims. Bankruptcy Plan, § 1.09. Under the Bankruptcy Plan, if Ms. Everett prevails in her suit, she and all other class members who have post-petition claims will be entitled to recover one-hundred percent of the judgment. *Id.*, § 2.01.

Thus, the issue is not whether Ms. Everett's claims survived the bankruptcy, but whether the Bankruptcy Plan precludes this Court from hearing this case. As explained below, it does not.

---

[1] If necessary, Plaintiffs will seek leave to join as additional class representatives other class members with post-confirmation claims.

III.  **ARGUMENT**

A.    **The Motion to Dismiss for Lack of Subject Matter Jurisdiction Fails**

MCI argues that this Court lacks jurisdiction to adjudicate Plaintiffs' class action complaint, and that the Bankruptcy Court instead possesses exclusive jurisdiction over this proceeding.  MCI's only support for its assertion is the Bankruptcy Plan itself, which states that "[t]he Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things . . . [¶] [t]o hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan . . . ."  Bankruptcy Plan, § 12.01.  MCI misapprehends the language and effect of the Bankruptcy Plan, as well as federal jurisdictional law.

1.    **The Court Has Subject Matter Jurisdiction**

The source of federal jurisdiction over bankruptcy matters is 28 U.S.C. § 1334, which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [Bankruptcy], or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Once subject matter jurisdiction under section 1334 exists in the district courts, the federal courts' bankruptcy authority may be delegated to Bankruptcy Judges under 28 U.S.C. § 157.

Under Section 157, the jurisdiction of bankruptcy judges is derivative of, but not co-extensive with, the jurisdiction of district courts. Instead, with respect to proceedings other than the bankruptcy petition itself, 28 U.S.C. § 157 allocates the jurisdiction created by 28 U.S.C. § 1334 between "core" and "non-core" proceedings.

Specifically, if a district court makes a referral, the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under, or arising in a case under title 11 . . . and may enter appropriate orders and judgments."  28 U.S.C. § 157(b)(1) (emphasis added).  In general, a "core proceeding[] arising under, or arising in a case under title 11" is one that, "'by its nature, could arise only in the context of a bankruptcy case.'"  In re Gruntz, 202 F.3d 1074, 1081 (9th Cir. 2000) (citing In re Wood, 825 F.2d 90, 97 (5th Cir.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

5

1  1987)); see also In re Office Products Co. Securities Litig., 313 B.R. 73, 79 (D.D.C. 2004)

2  ("Claims 'arising in' a case under title 11 are limited to 'administrative matters that arise only

3  in bankruptcy cases and have no existence outside of the bankruptcy proceedings.'") (internal

4  citations omitted).

5       In contrast, absent the consent of the parties, bankruptcy judges may hear – *but cannot*

6  *adjudicate* – matters that are not core proceedings but that are "otherwise related to a case

7  under title 11." 28 U.S.C. § 157(c)(1). Bankruptcy judges may only propose findings of fact

8  and conclusions of law to federal district courts in such non-core proceedings. *See id.*; *In re*

9  *Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986). "Non-core proceedings" are not

10 integral to the restructuring of debtor-creditor relations and do not involve a cause of action

11 arising under title 11. *See In re Gruntz*, 202 F.3d at 1081. Stated simply, "[n]on-core

12 proceedings . . . do not depend on the Bankruptcy Code for their existence and . . . [can]

13 proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004).

14      This class action is a non-core proceeding that should be litigated in the District Court.

15 Ms. Everett brings claims for violation of the federal telecommunications laws and for unjust

16 enrichment. This Court has original subject matter jurisdiction over these claims pursuant to 28

17 U.S.C. §§ 1331 and 1332(d). Ms. Everett's claims do not depend upon the Bankruptcy Code

18 for their existence. Therefore, they are "non-core" claims for which original subject matter

19 jurisdiction under 28 U.S.C. § 1334(b) rests solidly in the District Court. *See In re Office*

20 *Prods. Sec. Litig.*, 313 B.R. at 80; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

21      Nor can MCI be heard to argue, as it appears to do in its motion, that 28 U.S.C. §

22 1334(b) confers "related to" jurisdiction *only* upon the specific district court presently

23 exercising jurisdiction over the Bankruptcy Plan – here, the Southern District of New York.

24 "Instead, the district courts *generally* enjoy [Section] 1334(b)'s grant of 'related to' bankruptcy

25 jurisdiction." *Maritime Elect. Co. v. United Jersey Bank*, Case No. 90-6057, 1992 U.S. App.

26 LEXIS 5144, at *10 (3d Cir., Mar. 24, 1992) (italics in original). "*All* district courts are

27 empowered by the statute to hear cases 'related to' specific bankruptcies pending in other

28 district courts." *Id.* (italics in original).

1    This Court has original jurisdiction over this proceeding under governing law.  The

2 Court should deny MCI's motion.

3    **2.    A Bankruptcy Court Cannot Divest This Court of Jurisdiction**

4    Ignoring governing legal precedent and citing only excerpted portions of the Bankruptcy

5 Plan, MCI contends that the Plan somehow divests this Court of its Article III jurisdiction to

6 adjudicate non-core claims "related to" the bankruptcy estate.  The Bankruptcy Plan, however,

7 does not support MCI's proposition, and federal law is to the contrary.

8    MCI points to section 12.01 of the Plan as conferring exclusive jurisdiction on the

9 Bankruptcy Court.   That section, entitled "Retention of Jurisdiction" states that "The

10 Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to,

11 the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and

12 1142 of the Bankruptcy Code. . . ."  This "exclusive jurisdiction" allows the Bankruptcy Court

13 to effectuate and implement the Bankruptcy Plan and to resolve disputes and core claims

14 arising out of the Bankruptcy Plan.  *See* Bankruptcy Plan, § 12.01.

15    The Bankruptcy Plan expressly relies on sections 105(a) and 1142 of the Bankruptcy

16 Code as the basis for the Bankruptcy Court's retention of jurisdictional authority.[2]   These

17 provisions empower the Bankruptcy Court to issue "any order, process, or judgment" necessary

18 to carry out and enforce the provisions of the Plan in "core" proceedings.  The Bankruptcy

19 Court can only issue orders and perform functions in such proceedings, however, to the extent

20 they are not inconsistent with the limited grant of jurisdictional authority afforded it under 28

21 U.S.C. § 157.  As explained above, that statute allows the Bankruptcy Court to enter judgments

22

23

24    [2]  11 U.S.C. § 105(a) empowers the Bankruptcy Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

25

26    11 U.S.C. § 1142, in turn, empowers the Bankruptcy Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any

27 instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the

28 consummation of the plan."

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

7

in "core" proceedings only. *See In re Castlerock Properties*, 781 F.2d at 161. In short, the Bankruptcy Court may not rely on its own Bankruptcy Plan to expand its jurisdictional reach to allow it to adjudicate non-core proceedings without the consent of the parties. The text of the Bankruptcy Plan acknowledges this fact, by limiting the Bankruptcy Court's power to issue only such orders, process and judgments as are necessary to its limited subject matter jurisdiction.

Nor can MCI articulate any legal basis by which the Bankruptcy Court, or any order entered by the Bankruptcy Court, can deprive this Court of its statutory grant of original subject matter jurisdiction over all "non-core" proceedings, a point underscored by the case law. *See, e.g., In re US Office Products Securities Litig.*, 313 B.R. at 80-81 (citing *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) (holding that "the district court was not divested of jurisdiction by reason of [the plaintiff's] bankruptcy"); *Celotex Corp. v. Rapid Am. Corp.*, 124 F.3d 619, 626 (4th Cir. 1997) (stating that a bankruptcy plan could not divest the district court of subject matter jurisdiction); *Mar. Elec. Co., Inc. v. United Jersey Bank*, No. 90-6057, 1992 U.S. App. LEXIS 5144, at *11 (3d Cir. 1992) (holding that a defendant's bankruptcy did not divest a district court of its original subject matter jurisdiction under 28 U.S.C. § 1334(b)); *Combined Broad., Inc. v. Urban Telecomms. Corp.*, No. 91-2254, 1992 U.S. App. LEXIS 18595, at *5 (4th Cir. Aug. 11, 1992) (rejecting a defendant's argument that "the bankruptcy court's reservation of jurisdiction in the bankruptcy plan effectively divested the district court of jurisdiction"); *In re Worldcom, Inc. Sec. Litig.*, 294 B.R. 553, 557 (S.D.N.Y. 2003) (noting that allowing a bankruptcy court to divest a district court of jurisdiction "would create perverse incentives for the parties to engage in delay and gamesmanship in both the bankruptcy reorganization and the related litigation")).

In re US Office Products Co. Sec. Litig., 313 B.R. 73 (D.D.C. 2004), is on point. There, the plaintiffs brought federal securities fraud and common law claims against US Office Products ("USOP"). Id. at 76-77. While the suit was pending, USOP filed for chapter 11 bankruptcy, and the bankruptcy court confirmed the company's reorganization plan. Id. at 77-78. When USOP moved for summary judgment, the plaintiffs argued that the district court

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

8

lacked jurisdiction to hear the motion, because the plan and order reserved "exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases." Id. at 80. The district court concluded that it had subject matter jurisdiction over the case, despite the bankruptcy court's reservation of "exclusive jurisdiction." Id. at 80-81. Notably, the district court held that, "even if the plaintiffs had filed their complaint *after* the Plan and Order's referral, this court still could have exercised original jurisdiction." Id. at 81 (italics added).

As in *In re US Office Products*, the Bankruptcy Court's reservation of "exclusive jurisdiction" does not divest this Court of jurisdiction to hear Ms. Everett's non-core claims on behalf of herself and other post-petition claimants.

### B.    Neither The Bankruptcy Discharge Nor The Discharge Injunction Preclude Ms. Everett's Post-Petition Claims

MCI is wrong to suggest that discharge in bankruptcy eliminates Ms. Everett's post-petition claims. "[T]he confirmation of the chapter 11 plan operates as a discharge of all preconfirmation debts *not paid in the plan*." 1 *Collier on Bankruptcy*, P 1:03[4][d] (Lawrence P. King, ed., 15th ed. rev. 2006) (italics added). Here, the Bankruptcy Plan expressly provides for payment of post-petition claims such as Ms. Everett's.

Rather than extinguish post-petition claims, the Bankruptcy Plan treats them as Administrative Expense Claims and provides for payment in full once they are "Allowed" under the Plan. *See id.*, § 1.09; § 2.01. To ensure that Administrative Expense Claims will be paid when liability is established, the Bankruptcy Plan does not set a deadline for filing such claims.

Moreover, the discharge injunction imposed by the Bankruptcy Court in the Confirmation Order does not preclude Ms. Everett from pursuing her Administrative Expense Claims. MCI concedes as much, but contends she may do so only in the Bankruptcy Court, because the Bankruptcy Court reserved "exclusive jurisdiction" over such claims. (MCI Mem. at 5 n.4). Assuming for the sake of argument that the Bankruptcy Court were to read its Confirmation Order to divest this Court's jurisdiction, the Bankruptcy Court would exceed its

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

9

authority as it cannot strip this Court of its original jurisdiction over these non-core claims. *In re US Office Products Co. Sec. Litig.*, 313 B.R. at 80-81.

This Court has the authority to fix and determine MCI's liability and damages for the post-petition Administrative Expense Claims of Ms. Everett and the class. If MCI refuses to pay a judgment, Ms. Everett may seek an order from the Bankruptcy Court directing payment pursuant to the Bankruptcy Plan. Therefore, the Court should deny MCI's motion.

C.    **The Motion for Change of Venue to the Bankruptcy Court Fails**

1.    **Venue is Proper in this Court**

Venue for proceedings "arising under title 11 or arising in or related to a case under title 11" is governed by 28 U.S.C. § 1409. 28 U.S.C. § 1409(e) sets forth the venue rules for "non-core" proceedings as follows:

> A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the district court in which such case is pending.

Section 1409(e) enables a party to bring non-core claims "arising in or related to a case under title 11" in any judicial district in which the claims might have been brought under "applicable nonbankruptcy venue provisions." *Luciano v. Maggio*, 139 B.R. 572, 575 (E.D.N.Y. 1992). "The permissive aspect" of section 1409(e), "may be characterized as reflecting the Congressional intent to return the postpetition reorganizing debtor to the mainstream of ordinary citizenry.'" *Id.* (citing *In re Allegheny*, 74 B.R. 397, 400 (Bnkr. W.D. Pa. 1987)).

Original venue for Ms. Everett's claims is proper in the District Court for the District of Arizona. As discussed, above, Plaintiff's individual and class claims are "related to a case under title 11" (the 2002 bankruptcy petitions filed in *In re Worldcom, Inc.*), and are based on claims that arose in February 2003, i.e., "after the commencement" or filing of the bankruptcy petition in the Bankruptcy Court. The claims also "aris[e] . . . from the operation of the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

10

business of the debtor," MCI, as the successor-in-interest to WorldCom, Inc.  Finally, Ms. Everett's claims are all brought "under applicable nonbankruptcy venue provisions" in her home State of Arizona, pursuant to 28 U.S.C. § 1391(b)(2).

Venue is proper in this Court and this judicial district under 28 U.S.C. § 1409(e).

## 2.  <u>MCI Has Waived Its Right to Challenge Venue</u>

MCI's alternative requested form of relief is for an order dismissing or transferring this proceeding to the Bankruptcy Court, for lack of proper venue.  *See* Mot., at 6.  MCI's assertion that venue is improper fails, however.  As explained above, venue for Ms. Everett's individual and class claims is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and 1409(e) .

MCI's alternative relief is procedurally improper as well.  A party seeking to dismiss for lack of venue or under the common law doctrine of forum non conveniens, whether based on a forum selection clause (such as the Bankruptcy Plan), or otherwise, must timely assert that relief in a motion under Fed. R. Civ. P. 12(b)(3).  *See* Baiker-McKee *et al.*, *Federal Civil Rules Handbook*, Rule 12(b)(3), at p.343 (Thompson-West, 2006) ("*Handbook*"); Bankr. R. 7012 (incorporating Fed. R. Civ. P. 12(b)-(h) in bankruptcy adversary proceedings).  Venue challenges are *waived*, unless asserted within the Rule 12 motion and responsive pleading time period.  *See* Fed. R. Civ. P. 12(g) and (h)(1); *R.A. Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (motion to dismiss based on forum selection clause properly treated as Rule 12(b)(3) motion to dismiss for improper venue); *Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996) (right to contest venue is waived if party fails to raise that defense either in responsive pleadings or Rule 12(b)(3) motion).

MCI did not challenge venue in its original Rule 12 motion, and it is precluded from doing so now.  Rule 12(g) prohibits the filing of successive motions to dismiss.  By failing to challenge venue in its original Rule 12 motion, MCI has forever waived its right to contest venue.  Fed. R. Civ. P. 12(h); see Handbook, at 384 (observing that the waiver provision of Rule 12(h) imposes a mandatory, not discretionary, obligation upon the district court).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

11

### 3.    MCI Has Not Shown A Change of Venue is Warranted

Even if the Court overlooks all of these deficiencies, MCI's request for transfer to the Bankruptcy Court should be denied for yet another reason. MCI has not met and cannot meet its burden to "clearly" show that transfer to the Bankruptcy Court is appropriate under the circumstances. *See Luciano*, 139 B.R. at 572; *accord Brock v. American Messenger Service, Inc.*, 65 B.R. 670, 672 (D.N.H. 1986) ("The burden of establishing that a case should be transferred is on the movant and unless the evidence and circumstances of the case are strongly in favor of the transfer, the plaintiff's choice of forum should rarely be disturbed.").

A district court may transfer an action to the district court for another district for the convenience of the parties or in the interest of justice. *See* 28 U.S.C. § 1404(a) (transfer generally), § 1412 (transfer in bankruptcy proceeding). The goal of the change of venue statutes "is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Luciano*, 139 B.R. at 576 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (further internal citation omitted)). The inquiry on a motion to transfer under that section is two-fold:

> First, whether the action sought to be transferred is one that "might have been brought" in the district court which the movant seeks to have the case litigated, that is, the "transferee court." If so, second, whether, considering "the convenience of parties and witnesses" and "the interest of justice," a transfer to the proposed district is appropriate.

*Luciano*, 139 B.R. at 576.

The difficulty with MCI's request to transfer this action to the Bankruptcy Court lies in the fact that the Bankruptcy Court cannot constitutionally exercise the same degree of authority over these proceedings as MCI contends that it possesses under the Bankruptcy Plan. Under 28 U.S.C. § 157(a), as discussed above, the Bankruptcy Court may hear this matter as a related, non-core proceeding, but it if does, the Bankruptcy Court may only "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1).

A transfer to the Bankruptcy Court for the limited purpose of hearing the matters in dispute hardly comports with the notion of judicial economy – particularly where, as here, the Bankruptcy Court would have to submit its findings of fact and conclusions of law to a District

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

12

Court, whether in Arizona or in New York, for subsequent *de novo* review. *See In re Castlerock Properties*, 781 F.2d at 162; *City of Moreno Valley v. Century-TCI Calif., L.P.*, Case No. EDCV 02-1387-VAP (SGLx), 2003 U.S. Dist. LEXIS 4490, at *7 (C.D. Cal. Mar. 24, 2003) ("Since the action is not a core proceeding, the bankruptcy judge will be required to submit proposed findings of fact and conclusions of law to a district court for *de novo* review. . . . In other words, the case ultimately would have to be determined outside of the bankruptcy court. . . ."). Courts routinely deny motions to transfer brought on similar facts, finding that the interests of justice would not be served. *See, e.g., Luciano*, 139 B.R. at 576-77 (denying defendant's motion to transfer non-core proceeding from Eastern District of New York to the bankruptcy division of the District of New Jersey); *Brock*, 65 B.R. at 672-73 (denying motion to transfer non-core action from District of New Hampshire to the bankruptcy division of the District of Maine where defendant's bankruptcy petition was pending).

Moreover, justice will be served by maintaining the entire action before this Court. As explained above, regardless of the outcome of this motion, this class action will proceed on behalf of persons with post-confirmation claims. Therefore, this Court will have greater knowledge and experience with the factual and legal questions at issue than any other district court. Subdividing the class among multiple courts would create the possibility of inconsistent legal rulings and thwart the interest of judicial economy. As a result, the Court should deny MCI's request to transfer to the Bankruptcy Court.

## IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that MCI's "motion for judgment on the pleadings, or in the alternative, motion for summary judgment" should be denied.


DATED:  November 17, 2006          **GIRARD GIBBS LLP**

                                   By:   */s/ Aaron M. Sheanin*
                                        Aaron M. Sheanin

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

13

Daniel C. Girard
A. J. De Bartolomeo
Lindy K. Lucero
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Robert B. Carey
**HAGENS BERMAN SOBOL SHAPIRO PLLC**
2425 E. Camelback Road, Suite 650
Phoenix, Arizona 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Grant Woods
**GRANT WOODS, PC**
1726 North Seventh Street
Phoenix, Arizona 85006
Telephone: (602) 258-2599
Facsimile: (602) 258-5070

Attorneys for Individual and Representative Plaintiff
Shary Everett

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

_____

|  |  |  |
|---|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **CIV05-2122-PHX-ROS** |
| vs. | ) ) ) | Phoenix, Arizona November 1, 2006 10:10 a.m. |
| MCI, INC., a Delaware corporation, | ) ) | |
| Defendant. | ) ) | |

_____ )

**BEFORE:  THE HONORABLE ROSLYN O. SILVER, JUDGE**
**REPORTER'S TRANSCRIPT OF PROCEEDINGS**
**TELEPHONIC CONFERENCE**

**APPEARANCES:**

**For the Plaintiff:**

> **GIRARD GIBBS LLP**
> By:  Aaron M. Sheanin, Esq.
>      Lindy K. Lucero, Esq.
> 601 California Street, Suite 1400
> San Francisco, California  94108

**For the Defendant:**

> **DLA PIPER US LLP**
> By:  Quincy M. Crawford, Esq.
> 6225 Smith Avenue
> Baltimore, Maryland  21209

> **LEWIS & ROCA, LLP**
> By:  Lawrence A. Kasten, Esq.
> 40 North Central Avenue
> Phoenix, Arizona  85004-4429

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC. 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<u>**P R O C E E D I N G S**</u>

1

2      THE CLERK:  CV05-2122.  *Everett v. MCI* on for

3    telephonic conference.  Counsel, please announce.

4      MR. SHEANIN:  Good morning, Your Honor.  This is

5    Aaron Sheanin from Girard Gibbs on behalf of plaintiff Shary

6    Everett.

7      MR. KASTEN:  Good morning, Your Honor.  Lawrence

8    Kasten from Lewis & Roca on behalf of the defendant.

9      MR. CRAWFORD:  Monte Crawford from DLA Piper on

10   behalf of the defendant MCI as well and I'm joined by in-house

11   counsel Keith Buell.

12      THE COURT:  All right.  Counsel, did you receive a

13   copy of the cases that I found and faxed to you?

14      MR. SHEANIN:  Your Honor, this is Aaron Sheanin.

15   Because our office is in California and opens at nine o'clock,

16   we just received them.  And I am in the process of reviewing

17   them as we speak, so I may be slightly delayed in terms of

18   having full knowledge about the case.

19      THE COURT:  Okay.  Well, I will summarize it for you.

20   Mr. Kasten and Mr. Crawford, have you had a chance to look at

21   them?

22      MR. CRAWFORD:  This is Monte Crawford, Your Honor.

23   Yes, we've had the opportunity to review the case.  We

24   received them about an hour ago.

25      THE COURT:  Okay.  Let me bring you up to date on a

UNITED STATES DISTRICT COURT

couple other things.  I think you know, because I think my

Judicial Assistant told you that the Case Management Plan, I

know, has been filed and so the Rule 16 conference has been

moved up to November 30th.  And if there are any discovery

issues at that time, we can resolve them.  For example, it

seems to me there should be phased discovery, first on the

issue of whether or not the Class can be certified.

As the cases indicate, generally discovery is allowed

for Class certification.  It's not stayed.  Technically,

the -- under Rule 26(f), discovery can't begin until you have

met and conferred and a Case Management Plan has been filed.

Apparently, it has -- you have done that.  The only thing

remaining is to have the Rule 16 conference.

So the easy answer to the question is that I'm going

to allow discovery.  And if there are any questions as to the

scope of that discovery, whether or not there's any protective

order that needs to be filed or needs to be issued by this

Court will be undertaken at the time those issues are

appropriately presented to me.

Is there any question?

MR. CRAWFORD:  This is Monte Crawford, Your Honor.

Two issues with respect to that.  One, with respect

to the issue of Class -- I'm looking at the computer and the

cases talking about need for discovery in order to prepare a

motion for Class certification.  Both of those cases seem to

1    involve situations where the Class motion has not been filed

2    yet.

3            Technically, right now there's a date set of

4    November 29th for us the file our opposition for the motion

5    for Class certification.  Is it going to be the case that if

6    we're going to go forward with Class certification discovery,

7    that it's anticipated that these motions will then be later

8    and we no longer have a date of November 29th to file our

9    opposition?

10            THE COURT:  Yes, that is correct.

11            MR. CRAWFORD:  Okay.  And second point, Your Honor,

12    which is something that actually we just filed yesterday so

13    you may not have had an opportunity to review it or be aware

14    of it yet, but we filed a motion -- basically a motion for

15    judgment on the grounds that Shary Everett's claim basically

16    arose during the course of the bankruptcy proceedings of

17    WorldCom, Inc.; that her claim is discharged in bankruptcy and

18    that the Bankruptcy Court discharge injunction prohibits her

19    from going forward with any claim against the debtors in this

20    case, including moving forward with discovery.

21            THE COURT:  Yes, I have received it and I have

22    reviewed it.  And obviously, I am not going to prestate your

23    ruling.  I am wondering if you can tell me why it was filed

24    now, when it appears that the Confirmation Order has been

25    around since 2003.

1          MR. CRAWFORD:  And the answer to that is simply, Your

2     Honor, when we received this case when this case came in, we

3     viewed this case as basically, essentially as being the same

4     type of case we had dealt with previously in terms of the

5     *Manson* and *Labora* decisions.

6          The consumer files something.  Requests a credit.  We

7     provided a credit and the case is moot.  And we kind of

8     proceeded along those lines.  This Court ruled on the Motion

9     to Dismiss the case was not moot and could go forward.

10         At that point in time we went back and basically

11    prepared the Answer.  And in preparing the Answer, we were

12    exploring all aspects and facets of the case.  And one of

13    the (inaudible) was discharged in bankruptcy, we went back and

14    compared the timing of her complaint and everything else.  And

15    at that point we came to the realization that in examining

16    that affirmative defense of bankruptcy, that, in essence, in

17    fact, her claims arose during the bankruptcy period and was,

18    in fact, discharged and the bankruptcy injunction did apply.

19         And that was basically the reason why it has come up

20    at this time as opposed to previously.

21         THE COURT:  Mr. Sheanin, have you received the

22    motion?

23         MR. SHEANIN:  I received the motion, Your Honor,

24    yesterday, and had a chance to review it for about fifteen

25    minutes before I had the privilege of taking my children

1    trick-or-treating for Halloween.

2           So my views on it are a few points.  One, is briefly,

3    we think that it lacks merit and at the appropriate time we

4    will respond to it on the merits.

5           But beyond that, one, I think, that if we wait until

6    the decks are cleared of all motion practice before we engage

7    in discovery, we will be here for quite some time.  I imagine

8    MCI can file motion after motion after motion to try to

9    eliminate this case.  So far we've gone 15 months without any

10   discovery, so we don't believe this motion is appropriate for

11   it.

12          Beyond that, we think this is another attempt to pick

13   off Ms. Everett's individual claims.  Obviously, they say the

14   claim arose in 2003 and was discharged in bankruptcy, but

15   we've already submitted evidence that MCI has continued this

16   activity, that is the billing of noncustomers at least in

17   2005, far beyond the bankruptcy period.

18          If for whatever reason the Court accepts MCI's

19   position that Ms. Everett's claim has been discharged in the

20   bankruptcy proceedings, we will still have another client and

21   we will still have another -- still have a Class that will be

22   litigated on these matters.

23          So we don't believe that at the end of the day this

24   motion will eliminate the litigation.  And we don't believe,

25   therefore, that it's worth -- or that it's appropriate as a

UNITED STATES DISTRICT COURT

1   vehicle to stop discovery at this time.

2          MR. CRAWFORD:  Your Honor, this is Monte Crawford,

3   and we're not necessarily objecting to providing some rolling

4   discovery while this motion is pending.  Of course, though

5   since the discharge injunction issued by the Bankruptcy Court

6   applies to all persons who would have had a cause of action or

7   a claim arise prior to April 2004, it wouldn't necessarily

8   raise issues which we could speak with plaintiff's counsel

9   regarding the scope of that discovery and whether or not

10  they're seeking information relating to claims that have

11  already been discharged as opposed to claims dated after April

12  2004.

13         I just want to bring to the Court's attention with

14  respect to these issues that the pending motion may impact on

15  that.

16         THE COURT:  Oh, it certainly may, if I grant it,

17  but --

18         MR. CRAWFORD:  I think it's a very straightforward

19  motion.  It did arise in the bankruptcy time and the discharge

20  injunction is pretty clear on that point, so.

21         THE COURT:  Well, and in light of this motion -- and,

22  Mr. Sheanin, I know that you haven't had a chance to respond

23  to it, but you have given me some reason to believe that

24  perhaps if the discharge is appropriate for Ms. Everett and

25  others, that there still may be a Class, then with that in

1    mind, then I'm going to allow discovery.

2         But obviously, this motion needs to be resolved as

3    quickly as possible.  And if this is the case, I will

4    probably -- I will probably extend the date for the Rule 16

5    conference until this is briefed.

6         Is that what counsel would like for the Court to do?

7    Mr. Sheanin?

8         MR. SHEANIN:  Your Honor, we agree that the motion

9    should be resolved as quickly as possible.  As I understand

10   it, because this is a motion for judgment on the pleadings or

11   in the alternative a motion for summary judgment, that

12   plaintiffs would have 30 days from service to file their

13   opposition.  That should take us basically to the end of

14   November.

15        I don't think we would have a problem with moving the

16   Case Management Conference, the Rule 16 conference until after

17   this motion has been fully briefed, at which point I suppose

18   we can argue any matters before the Court at that time.

19   Again, provided, of course, that we're still allowed to have

20   discovery in the process of all of this.

21        THE COURT:  Mr. Crawford?

22        MR. CRAWFORD:  Yes, Your Honor.  We would prefer to

23   move the conference until such time as it is fully briefed so

24   that we can resolve everything at once.

25        THE COURT:  Okay.  I will do that.  I will probably

```
 1   set it for the original date, which is January, and I'm going

 2   to order counsel to confer and set a schedule for -- phased to

 3   schedule for discovery concerning the Class certification.

 4        And as I said, if there are any problems concerning

 5   that, you can bring it to my attention.  I don't anticipate

 6   that there will be any.

 7        Mr. Sheanin, is there anything else?

 8        MR. SHEANIN:  There is only one matter, Your Honor,

 9   which is that Mr. Crawford raised the notion that there are

10   certain claims that may have been discharged in bankruptcy

11   prior to a certain period and other claims that may not have

12   after a certain period.

13        Assuming that that is correct, which, as I say, we

14   will contest, Mr. Crawford seems to suggest that discovery

15   would only be limited to those claims that are afterwards.

16   And part of what we have pleaded is that there has been a

17   scheme that started in the earlier period and continued on

18   afterwards.

19        I would just like to suggest that our position would

20   be that discovery related to that scheme would still be

21   appropriate, even if parts of this scheme occurred in a period

22   that MCI contends are discharged where related claims be

23   discharged in the bankruptcy.

24        THE COURT:  Mr. Crawford?

25        MR. CRAWFORD:  I would have -- I think, Your Honor,
```

```
 1   in some cases I understand that -- just because documents

 2   relate to dates prior to the discharge, they may be relevant

 3   to post-discharge claims, but I think there are other

 4   circumstances where they are just seeking, you know,

 5   information solely to identify a Class of people before that

 6   may not be.

 7           I would be happy to discuss this on a case-by-case

 8   basis.  I fully recognize that just because claims after

 9   April 20, 2004, before then are discharged does not mean that

10   all documents before then would not be relevant.  I would

11   agree that some of them would be.  I would be happy to discuss

12   that with him on a case-by-case basis.

13           MR. SHEANIN:  As would we, Your Honor.  We would

14   discuss it on a case-by-case basis.

15           THE COURT:  All right.  That's appreciated.  All

16   right, counsel, this matter is adjourned.

17           MR. SHEANIN:  Thank you, Your Honor.

18           MR. CRAWFORD:  Thank you, Your Honor.

19       (Proceedings adjourned at 10:25 a.m.)

20                          * * *

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1

2                     C E R T I F I C A T E

3

4          I, ELIZABETH A. LEMKE, do hereby certify that I am

5   duly appointed and qualified to act as Official Court Reporter

6   for the United States District Court for the District of

7   Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9   a full, true, and accurate transcript of all of that portion

10  of the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control.

13         DATED at Phoenix, Arizona, this 16th day of November,

14  2006.

15

16

17

18         _____

19              ELIZABETH A. LEMKE, RDR, CRR

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2006, I electronically filed the attached document with the Clerk of the Court:

1. **PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

I also certify that the above document was filed using the CM/ECF system, which will send electronic notification of said filing to the following:

**Lawrence Arthur Kasten**
lkasten@lrlaw.com, ldrafton@lrlaw.com

**Quincy M. Crawford**
monty.crawford@dlapiper.com

**Charles P. Scheeler**
charles.scheeler@dlapiper.com

**Robert B. Carey**
rcarey@hbsslaw.com, karenw@hbsslaw.com

**Joel Grant Woods**
gw@grantwoodspc.net, sharonb@grantwoodspc.net


  /s/  *Aaron M. Sheanin*

**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108