Mark D. Silverschotz (MDS-8393)
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Daniel C. Girard
A. J. De Bartolomeo
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiff Shary Everett

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARY EVERETT, on behalf of herself and all others similarly situated, | Adversary Proceeding |
| Plaintiff, | Case No. 07-01792-AJG |
| v. | |
| MCI, INC., a Delaware Corporation, | Case No. 07-9590 (DC) |
| Defendant. | |
| In re: | Chapter 11 |
| WORLDCOM, INC., *et al.*, | Case No. 02-13533-AJG |
| Debtors. | (Jointly Administered) |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO WITHDRAW THE REFERENCE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ..................................................................................................................... 2

    A.   28 U.S.C. § 157(d) Mandates Withdrawal Of The Reference. ............................... 2

    B.   Permissive Withdrawal Is Appropriate. ................................................................. 3

        1.  This Case Presents Non-Core Claims And Claims That Are Neither Core
           Nor Non-Core………………………………………………………… …… …3

           a.  This Court Can Make The Core/Non-Core Determination. ......................... 3

           b.  Plaintiff Has Not Requested Payment Of An Administrative Expense. ...... 4

           c.  This Case Is *Not* A Core Proceeding Enumerated In Section 157(b)(2) ..... 4

        2.  MCI Does Not Dispute That The Bankruptcy Court Lack Jurisdictions
           Over Class Members' Post-Effective Date Claims. ........................................... 6

        3.   Withdrawing The Reference Will Prevent MCI From Forum-Shopping. ... 7

        4.   Withdrawing The Reference Supports Judicial Economy. .......................... 8

    C.   The Law Of The Case And Principles Of Comity Do Not Bar This Court From
       Withdrawing The Reference. ................................................................................. 9

III.   CONCLUSION ................................................................................................................. 10

**CASES**

Bevilacqua v. Bevilacqua
208 B.R. 11 (E.D.N.Y. 1997) ................................................................................................ 5

Brennan v. AT&T Corp.
2006 U.S. Dist. LEXIS 8237 (S.D. Ill. Feb. 8, 2006) ................................................................ 3

Drew v. WorldCom, Inc. (In re WorldCom, Inc.)
2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 24, 2006) ............................................................ 8

Hayman Cash Register Co. v. Sarokin
669 F.2d 162 (3d Cir. 1982) .................................................................................................. 9

In re Best Payphones, Inc.
370 B.R. 532  (S.D.N.Y. 2007); ............................................................................................ 2

In re Chateaugay Corp.
86 B.R. 33 (S.D.N.Y. 1987) .................................................................................................. 3

In re Complete Management, Inc.
2002 U.S. Dist. LEXIS 18344 (S.D.N.Y. Sep. 27, 2002) .......................................................... 5

In re FMI Forwarding Co.
2004 U.S. Dist. LEXIS 10941 (S.D.N.Y. June 16, 2004) ........................................................ 3

In re Ionosphere Clubs, Inc.
922 F.2d 984  (2d Cir. 1990) ................................................................................................ 2

In re Keene Corp.
182 B.R. 379 (S.D.N.Y. 1995) ............................................................................................... 2

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.
375 B.R. 719 (S.D.N.Y. 2007) ............................................................................................... 6

In re Orion Pictures Corp.
4 F.3d 1095 (2d Cir. 1993) ............................................................................................... 4, 6

In re Parmalat Sec. Litig.
497 F. Supp.2d 526 (S.D.N.Y. 2007) .................................................................................... 9

In re The VWE Group, Inc.
359 B.R. 441 (S.D.N.Y. 2007); .......................................................................................... 3, 6

In re Winimo Realty Corp.
270 B.R. 108 (S.D.N.Y. 2001) .............................................................................................. 4

Mishkin v. Ageloff
270 B.R. 562 (S.D.N.Y. 2001)) ............................................................................................... 8

In re WorldCom, Inc.
343 B.R. 412 (S.D.N.Y. 2006) ................................................................................................ 9

National Comms. Assoc., Inc. v. AT&T Co.
1998 U.S. Dist. LEXIS 3198 (S.D.N.Y. Mar. 16, 1998)………………………….....……….4

Tultex Corp. v. Freeze Kids, L.L.C.
 252 B.R. 32  (S.D.N.Y. 2000) ................................................................................................. 5

Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.
209 B.R. 307  (S.D.N.Y. 1997) ............................................................................................... 3

United States v. Weiss
1998 U.S. Dist. LEXIS 3265 (E.D.N.Y. Mar. 13, 1998) ......................................................... 5

United States v. Williams
205 F.3d 23 (2d Cir. 2000) ...................................................................................................... 9

Universal Oil Ltd. v. Allfirst Bank
419 F.3d 83 (2d Cir. 2005) ...................................................................................................... 7

Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP
 994 F. Supp. 202 (S.D.N.Y. 1996), *adopted in its entirety,* 201 B.R. 635 (S.D.N.Y. 1996)
 *rev'd on other grounds*, 135 F.3d 837 (2d Cir. 1992)……………………………...…………..8

**STATUTES**

28 U.S.C. § 157(b)(2) ............................................................................................................  4

28 U.S.C. § 1391(b)(2)  ........................................................................................................... 7

28 U.S.C. § 1409(e) ................................................................................................................ 7

I.      INTRODUCTION

Plaintiff alleges that MCI violated the Federal Communications Act and the common law by billing minimum monthly charges to non-customers. After failing to convince the Arizona District Court to dismiss or to refer the case to the Federal Communications Commission ("FCC"), MCI forum-shopped to the bankruptcy court, arguing that the case was related to WorldCom's bankruptcy. Although the Arizona District Court referred the case to the bankruptcy court under that district's standing general reference order, the case does not belong there, and the reference should be withdrawn.

WorldCom's bankruptcy is a side-show, not the main event. The bankruptcy plan is ***not*** "at the core of the parties' disputes," as MCI argues. (Objection at 21.) The parties' disputes center on the legality of MCI's scheme for billing non-customers. MCI conceded that resolving those disputes will require substantial and material interpretation of federal telecommunications law, when it previously argued that only the FCC was competent to decide the case. The claims at issue have nothing to do with WorldCom's bankruptcy. They arise out of MCI's normal business operations, seek a determination of MCI's liability under the Communications Act, and are non-core. Moreover, the bankruptcy court lacks jurisdiction over thousands of class members' claims arising after the bankruptcy plan became effective. The most efficient way to resolve the entire case and prevent unnecessary duplication is to withdraw the reference.

MCI's arguments against withdrawal are unpersuasive. MCI argues against mandatory withdrawal, but fails to cite the correct legal standard. MCI argues that resolution of the case will not require substantial and material interpretation of federal telecommunications law, but fails to square that contention with its affirmative defenses of primary jurisdiction, preemption and the filed rate doctrine. MCI argues that this action does not present issues of first impression, but fails to identify any case in which a court has ruled on the underlying questions of federal law. MCI argues that this case is a core proceeding for payment of administrative expenses, but fails to recognize that Plaintiff has not filed a proof of claim with the bankruptcy court. MCI argues that this motion is a forum-shopping exercise, but fails to address its own

1

attempts to evade the jurisdiction of the district court. Finally, MCI argues that the law of the case and judicial comity preclude this Court from withdrawing the reference, but fails to say that the Arizona District Court never decided the issues presented here.

        The Court should grant Plaintiff's motion.

## II. ARGUMENT

### A. 28 U.S.C. § 157(d) Mandates Withdrawal Of The Reference.

MCI bases its opposition to mandatory withdrawal on an erroneous interpretation of the legal standard. MCI argues that Section 157(d) mandates withdrawal of the reference only if "there is a 'substantial and material' conflict between non-bankruptcy federal laws and title 11," and that no such conflict exists here. (Objection at 12.) While some courts have noted that a conflict between bankruptcy law and other federal law would support mandatory withdrawal,[1] the Second Circuit has never adopted this formulation of Section 157(d). Instead, the Second Circuit construes the statute to require withdrawal of the reference if "***substantial and material consideration of non-Bankruptcy Code federal statutes is necessary*** for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (emphasis added).

        This case meets the Second Circuit's standard. MCI has long argued that resolution of this case will require substantial and material interpretation of the Communications Act.[2] (*See* Pl.'s Br. at 8-9.) MCI moved to refer the case to the FCC, arguing that it "raises issues that are uniquely within the FCC's expertise and ***that are not within the conventional experience of the courts***." (Ex. O at 13 (emphasis added).)[3] After losing that motion, in its answer and most recent case management plan, MCI continued to raise primary jurisdiction, preemption, and the

---

[1] *See, e.g., In re Best Payphones, Inc.*, 370 B.R. 532, 536 (S.D.N.Y. 2007); *In re Keene Corp.*, 182 B.R. 379, 382 (S.D.N.Y. 1995).

[2] Although mandatory withdrawal does not apply to Plaintiff's unjust enrichment claim, judicial economy supports permissive withdrawal of that claim, if the Court determines that withdrawal of the federal claims is mandated.

[3] Citations to "Ex. __" refer to exhibits to the Declaration of A. J. De Bartolomeo In Support Of Motion To Withdraw The Reference, submitted with Plaintiff's opening brief.

2

filed rate/filed tariff doctrine as affirmative defenses. (Ex. Q at 7-9; Ex. R at 7-9.) In its Objection, MCI does not address, let alone renounce, these defenses. While the Arizona District Court was persuaded that referral to the FCC was unwarranted, there can be little doubt that MCI's affirmative defenses will require substantial and material consideration of the Communications Act and FCC regulations. As a result, mandatory withdrawal is appropriate.

Withdrawal is also mandated because the case presents complicated issues of first impression under federal, non-bankruptcy law. *See In re Chateaugay Corp.*, 86 B.R. 33, 38 (S.D.N.Y. 1987). As explained in Plaintiff's opening brief, no court has decided the underlying legal question in this case: whether a long-distance carrier violates the Communications Act by billing minimum monthly fees to non-customers, without their authorization, after obtaining data from local exchange carriers. Although MCI admitted as much in earlier briefing, it now goes to great lengths to retreat from its prior arguments. Regardless, MCI fails to identify *any* case in which a court has ruled on the underlying legal question.[4] The issues of first impression presented here must be decided by the district court, not the bankruptcy court.

### B. Permissive Withdrawal Is Appropriate.

#### 1. This Case Presents Non-Core Claims And Claims That Are Neither Core Nor Non-Core.

##### a. This Court Can Make The Core/Non-Core Determination.

MCI argues that the bankruptcy court must decide whether the claims presented here are core or non-core. That argument lacks merit. *See In re FMI Forwarding Co.*, 2004 U.S. Dist. LEXIS 10941, at *6 n.5 (S.D.N.Y. June 16, 2004) ("The courts of this Circuit have ruled time and again that, in the context of a withdrawal motion, the district court ruling on such a motion does not have to wait for the bankruptcy court to determine whether the claims at issue are core or non-core."); *In re The VWE Group, Inc.*, 359 B.R. 441, 447-48 (S.D.N.Y. 2007); *Union*

---

[4]   The Arizona District Court cited *Brennan v. AT&T Corp.*, No. 04-CV-433, 2006 U.S. Dist. LEXIS 8237, at *4 (S.D. Ill. Feb. 8, 2006), in its decision not to refer this case to the FCC under the doctrine of primary jurisdiction. That decision concluded that the district court was competent to adjudicate Communications Act claims of a similar nature to those at issue here, but did not address the merits of those claims.

3

*Turnpike, Inc. v. Howard Beach Fitness Center, Inc.*, 209 B.R. 307, 311 (S.D.N.Y. 1997). This Court has the authority to decide that these claims are non-core.

### b. Plaintiff Has Not Requested Payment Of An Administrative Expense.

MCI argues that this case is a core bankruptcy proceeding, because Plaintiff will be required to seek payment of an administrative expense under WorldCom's bankruptcy plan, if she prevails on the merits. MCI's argument lacks merit, as it conflates this litigation over MCI's liability with a later proceeding for payment of damages that have not yet been awarded.

A request for payment of an administrative expense is a core proceeding. *See In re Winimo Realty Corp.*, 270 B.R. 108, 123 (S.D.N.Y. 2001). Plaintiff has not requested payment of an administrative expense, however. She has filed a class action alleging that MCI violated the Communications Act during the course of its normal business operations.[5] These claims do not invoke a substantive right created by bankruptcy law, do not arise under bankruptcy law, and would exist in the absence of WorldCom's bankruptcy. *In re The VWE Group,* 359 B.R. at 448. As a result, Plaintiff's are non-core.[6]

### c. This Case Is *Not* A Core Proceeding Enumerated In Section 157(b)(2).

MCI argues that this class action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"), (B) ("allowance or disallowance of claims against the estate") and (I) ("determinations as to the dischargeability of particular debts"). None of these provisions applies, however.

First, Plaintiff has never filed a proof of claim in the bankruptcy court. (Ex. N.) MCI's

---

[5]  Claims for violations of Sections 201 and 202 of the Communications Act are legal in nature. Plaintiff and the class have the right to a jury trial on these claims under the Seventh Amendment. *See National Comms. Assoc., Inc. v. AT&T Co.*, 92 Civ. 1735 (LAP), 1998 U.S. Dist. LEXIS 3198, at *116-28 (S.D.N.Y. Mar. 16, 1998). The bankruptcy court lacks the power under Article III to hold a jury trial on these non-core claims. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

[6]  Class members' post-Effective Date claims are neither core nor non-core, and are not subject to the bankruptcy court's jurisdiction.

argument to the contrary is unfounded. Accordingly, this case does not involve the "allowance or disallowance of claims against the estate" under Section 157(b)(2)(B). *See Bevilacqua v. Bevilacqua*, 208 B.R. 11, 15 (E.D.N.Y. 1997) ("[W]ere plaintiff to be awarded damages in its suit and *then* file a proof of claim in the bankruptcy court to recover such damages, *that* proceeding would be core pursuant to § 157(b)(2)(B).") (emphasis added); *Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32, 37 (S.D.N.Y. 2000) ("***When and if*** Freeze Kids files a proof of claim, that claim will constitute a core bankruptcy proceeding. But the fact that at some later time defendant may file a proof of claim in order to collect on a judgment is not a sufficient basis" to conclude that an action is a core bankruptcy proceeding.) (emphasis added).

Second, Plaintiff's claims arise under the Communications Act and could have been brought regardless of the bankruptcy. As the Court can decide these claims without reference to bankruptcy law, they do not involve any determinations concerning the dischargeability of a debt under Section 157(b)(2)(I). *See United States v. Weiss*, 97-CV-4949, 1998 U.S. Dist. LEXIS 3265, at *9 (E.D.N.Y. Mar. 13, 1998) (adversary proceeding alleging debtor defrauded Medicare required determinations of False Claims Act and common law, did not arise under bankruptcy law, and was a non-core proceeding: "Plaintiff clearly could have brought an action in district court to determine Weiss' liability regardless of whether Weiss had filed for bankruptcy.").

Third, the catch-all provision of Section 157(b)(2)(A), which generally classifies "matters concerning the administration of the estate" as core proceedings, cannot be construed so broadly to encompass the claims here. *See In re Complete Management, Inc.*, 02 Civ. 1736 (NRB), 2002 U.S. Dist. LEXIS 18344, at *6-7 (S.D.N.Y. Sep. 27, 2002) ("[S]ince some of the provisions of § 157 are so broad that they could be construed to include almost any matter relating to bankruptcy, . . . the Second Circuit has insisted that a determination of whether a matter is core requires a further examination into the nature of the proceedings.") (internal quotations omitted). This case asserts Communications Act claims arising out of MCI's normal business operations. A decision on the merits will not affect the administration of the bankruptcy estate. MCI's overly-broad construction of Section 157(b)(2)(A) would "render the distinction between core

5

and non-core claims meaningless," and should be rejected. *Id.* at *10. *See also In re Orion*, 4 F.3d at 1102 (noting that an expansive interpretation of § 157(b)(2)(A) would "create an exception to *Marathon* that would swallow the rule").

As none of these provisions apply, Plaintiff's claims are non-core.

### 2. MCI Does Not Dispute That The Bankruptcy Court Lacks Jurisdiction Over Class Members' Post-Effective Date Claims.

Plaintiff moved for class certification several months before MCI tried to refer this case to the bankruptcy court. The putative class includes some consumers with pre-Effective Date claims and others with post-Effective Date claims. As explained in Plaintiff's opening brief, the bankruptcy court lacks *any* subject matter jurisdiction over the post-Effective Date claims. (*See* Pl.'s Br. at 11-12.) If Plaintiff's motion is denied, another class member will assert those claims in the district court. As a result, this litigation will be divided into two cases—one with pre-Effective Date claims in the bankruptcy court, and another with post-Effective Date claims in the district court. Such duplication would waste judicial resources and create the likelihood of inconsistent rulings on discovery, class certification and the merits.

MCI does not deny that the bankruptcy court lacks jurisdiction over post-Effective Date claims. Nor does MCI deny that litigation in two courts would be inefficient and lead to inconsistent outcomes. Instead, MCI suggests that the Court should ignore this issue entirely, because "the operative complaint is brought by only one Plaintiff—Shary Everett—whose claim arose pre-Effective Date," and "no class has been certified" as of yet. (Objection at 22-23.)

MCI's insistence that the Court should disregard absent class members is unsound. The Court has the authority to protect the interests of absent class members in the pre-certification stage. *Cf. In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 375 B.R. 719 (S.D.N.Y. 2007) (allowing substitution of plaintiff whose claims became moot before certification "in order to protect absent class members"). The Court should exercise that authority by withdrawing the reference of the entire case to allow all claims to proceed in a single forum.

Withdrawing the reference is appropriate even if the Court focuses only on the named

parties. Plaintiff informed the Court that she will seek permission to add Candace Bentley, a class member with post-Effective Date claims, as another named plaintiff. (*See* Pl.'s Br. at 12-13.) Plaintiff submitted a proposed amended complaint to that effect. (Ex. U.) Despite her clear statement, MCI argues that Plaintiff is being equivocal, because she also said that she "may file an amended motion for class certification to include Ms. Bentley as an additional class representative." (Pl.'s Br. at 15 n.6.) Whether an amended certification motion is necessary should be decided after the completion of relevant discovery and, if appropriate, following consultation with the Court. Plaintiff's reservation of her right to file an amended motion does not detract from her commitment to include Ms. Bentley as an additional party.[7] As the bankruptcy court lacks jurisdiction over Ms. Bentley's post-Effective Date claims, the Court should withdraw the reference.

### 3. Withdrawing The Reference Will Prevent MCI From Forum-Shopping.

MCI's accusations of forum-shopping by Plaintiff are specious. Plaintiff filed this case in July 2005 in the District of Arizona, where she resides and her claim arose. MCI did not timely challenge venue which was proper in the District of Arizona under 28 U.S.C. § 1391(b)(2).[8] Although MCI was well-aware of WorldCom's bankruptcy (having litigated that matter since July 2002), MCI did not suggest that the bankruptcy had any impact on this case until just after the Arizona District Court denied its motion to dismiss. MCI makes no attempt to explain why it waited more than one year before mentioning the bankruptcy. Indeed, if issues involving the bankruptcy plan "are at the core of the parties' dispute," as MCI now contends (Opposition at 21), one would have expected MCI to have raised those issues at the outset.

---

[7]   MCI argues erroneously that Plaintiff should have sought to add Ms. Bentley earlier. Had Ms. Bentley asserted her claims in the bankruptcy court before moving to withdraw the reference, she would have given up her right to challenge the bankruptcy court's jurisdiction. *See Universal Oil Ltd. v. Allfirst Bank*, 419 F.3d 83, 98 (2d Cir. 2005).

[8]   As the claims in this case arise after the commencement of the bankruptcy and relate to MCI's normal business operations, venue was also proper under 28 U.S.C. § 1409(e).

MCI's silence about its own effort to evade the Arizona District Court is breathtaking. MCI tried first to pick off Plaintiff's claim and then to refer the case to the FCC. Only *after* these attempts failed did MCI conveniently remember that its predecessor had filed the largest bankruptcy in history. MCI now attempts to use the bankruptcy to escape adverse rulings by the district court. An order withdrawing the reference will prevent MCI's forum-shopping efforts from being rewarded. *See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 994 F. Supp. 202 (S.D.N.Y. 1996) (recommending withdrawal of reference where trustee invoked bankruptcy court jurisdiction to avoid outcome of adverse ruling), *adopted in its entirety,* 201 B.R. 635, 639 (S.D.N.Y. 1996), *rev'd on other grounds*, 135 F.3d 837 (2d Cir. 1992).

### 4.    Withdrawing The Reference Supports Judicial Economy.

MCI's argument that withdrawing the reference will undermine judicial economy lacks merit. MCI contends that granting Plaintiff's motion will contravene supposedly uniform decisions denying other motions to withdraw the reference in the WorldCom bankruptcy litigation. That no other motion to withdraw the reference has been granted is irrelevant, however. The inquiry on each motion is fact-specific. *See Mishkin v. Ageloff*, 270 B.R. 562, 566 (S.D.N.Y. 2001)). Of the four motions to which MCI cites (Objection at 22 n.17), only one was decided at all. *See Drew v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 24, 2006). That motion was denied as untimely filed. It has no precedential value here, as MCI concedes that Plaintiff's motion is timely. As a result, a decision in Plaintiff's favor will not undermine any purported uniformity.

There is no basis for MCI's argument that withdrawing the reference will subject it to inconsistent rulings concerning the scope of the discharge, the bankruptcy injunction, and the payment of administrative expenses. MCI has not identified any other case on file with claims arising from MCI's normal business operations both during and after the bankruptcy. That no such case exists is not surprising, as more than three years have elapsed since MCI *emerged* from bankruptcy. MCI's argument is speculative at best and should be rejected.

Nor will judicial economy be served if this case remains before the bankruptcy court.

8

Although the bankruptcy court is experienced with MCI's business as it relates to the administration of the bankruptcy, that court's specialized expertise does not extend to Plaintiff's claims under the Communications Act or the FCC regulations at issue in this case.[9]  Judicial economy will be served by withdrawing the reference.

### C. The Law Of The Case And Principles Of Comity Do Not Bar This Court From Withdrawing The Reference.

MCI argues that this Court must defer to the Arizona District Court's Order referring this class action to the bankruptcy court under the law of the case and principles of comity.  MCI's analysis is flawed.  Neither doctrine precludes this Court from withdrawing the reference.

"The law of the case doctrine is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided."  *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (quotation omitted).  The doctrine does not apply unless a court has decided a particular issue of law.  *See In re Parmalat Sec. Litig.*, 497 F. Supp.2d 526, 530 (S.D.N.Y. 2007).  Similarly, while deference should be accorded to other federal courts, judicial comity does not prevent this Court from examining an issue unless it was "already decided by a court of equal authority."  *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982).

Neither doctrine applies here, as the Arizona District Court did not rule on the issues at bar.  MCI argued before the Arizona District Court that the order confirming WorldCom's bankruptcy plan had discharged and enjoined Plaintiff's claims and divested that court of subject matter jurisdiction. (*See* Exhibit C to MCI's Objection.)  Briefing before that court primarily concerned the propriety of jurisdiction and venue.

The Arizona District Court referred this case to the bankruptcy court as a matter of course after concluding that it was required to do so under that the district's standing General Order 01-

---

[9] MCI is wrong in arguing that the bankruptcy court recently decided "claims which are closely analogous to" those at issue here. (Objection at 21.)  Notably, the case to which MCI cites did not allege any causes of action under the Communications Act.  *See In re WorldCom, Inc.*, 343 B.R. 412 (S.D.N.Y. 2006).

9

15. General Order 01-15—which MCI fails to address in its papers—automatically refers to the bankruptcy court for the District of Arizona "all cases under title 11 and all proceedings under title 11 or arising in or related to a case under title 11." This case is related to WorldCom's bankruptcy, as Plaintiff's claims arose while the company was in bankruptcy. As a result, the Arizona District Court believed it was constrained to refer the case to the bankruptcy court.

The Arizona District Court did not address the critical issues raised in this motion including: (1) whether mandatory or permissive withdrawal is appropriate; (2) whether adjudication of Plaintiff's claims will involve substantial and material interpretation of federal, non-bankruptcy law; (3) whether the claims are core, non-core or neither;[10] and (4) whether MCI engaged in forum-shopping. As the Arizona District Court did not rule on these issues, neither the law of the case nor judicial comity prevents this Court from deciding them now.

### III.     CONCLUSION

For the foregoing reasons and those stated in Plaintiff's opening brief, Plaintiff respectfully requests that the Court withdraw the reference of this class action to the bankruptcy court.

Dated:  November 28, 2007                              Respectfully submitted,

 */s/ Jonathan K. Levine*
Jonathan K. Levine (JL-8390)

Daniel C. Girard
A. J. De Bartolomeo
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

---

[10]     The Arizona District Court declined to rule on the core/non-core issue, although it had been briefed by the parties. (*See* Ex. L at 2).

10

Mark D. Silverschotz (MDS-8393)
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733


Attorneys for Individual and Representative
Plaintiff Shary Everett

CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on the 28th day of November 2007, caused the foregoing Reply Memorandum In Support Of Motion To Withdraw The Reference to be filed and served via the Court's ECF system upon the following counsel:

> Alfredo R. Perez
> Lydia Protopapas
> WEIL, GOTSHAL & MANGES LLP
> 700 Louisiana, Suite 1600
> Houston, Texas 77002
>
> Henry Weissmann
> Munger Tolles & Olson LLP
> 355 South Grand Avenue, 35th Floor
> Los Angeles, CA 90071-1560

  /s/   Jonathan K. Levine

**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone: 415-981-4800
Facsimile: 415-981-4846