```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x
In re                             :
WORLDCOM, INC. et al.,            :
                Debtors.          :
- - - - - - - - - - - - - - - - -x
SHARY EVERETT, on behalf of       :
herself and all others similarly
situated,                         :
                Plaintiff,        :
        - against -               :
MCI, INC., a Delaware Corporation,:
                                  :
                Defendant.
                                  :
- - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/08

**AMENDED**
**MEMORANDUM DECISION**

07 Civ. 9590 (DC)

Adversary Pro. No.
07-1792 (AJG)

**APPEARANCES:** (see last page)

**CHIN, District Judge**

      Plaintiff Shary Everett moves to withdraw the reference of this adversary proceeding to the United States Bankruptcy Court for the Southern District of New York. For the reasons that follow, the motion is granted.

**BACKGROUND**

**A.   The Facts**

      Plaintiff is a resident of Goodyear, Arizona who at all times relevant received residential telephone service through Qwest, a local exchange carrier ("LEC"). (Compl. ¶¶ 6, 23). Defendant MCI, Inc. ("MCI") is a Delaware corporation that

provides local and long distance telephone service to customers in Arizona and throughout the United States. (Id. ¶ 7).

In or around February 2003, MCI assessed long distance service charges against plaintiff. (Id. ¶ 25). Plaintiff was not an MCI customer at the time and attempted on several occasions to have the charges reversed. (Id. ¶¶ 24, 26). Notwithstanding her efforts, MCI continued to assess charges against her and plaintiff received a collections notice for failure to pay in July 2003. (Id. ¶¶ 26-27). She subsequently paid the fee and restricted all long distance service on her telephone line to prevent further charges. (Id. ¶ 28).

**B.    The WorldCom Bankruptcy**

In July 2002, MCI's predecessor, WorldCom, Inc. ("WorldCom"), and certain of its subsidiaries (collectively, the "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code. By order dated October 31, 2003, the Bankruptcy Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"), which became effective on April 20, 2004 (the "Effective Date"). At some point thereafter, WorldCom became MCI.

The Plan provided that "upon the Effective Date, all existing claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated." (Plan § 10.02).[1] Section 12.01 further stated that "the Bankruptcy Court shall

---

[1]    Cites to the Plan refer to the excerpts quoted at Def. Opp. 3 n.2.

have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan."  (Id. § 12.01).

**C.   Prior Proceedings**

In July 2005, on behalf of herself and others similarly situated, plaintiff commenced this putative class action against MCI in the United States District Court for the District of Arizona.  The complaint asserts a claim for unjust enrichment and three counts under the Communications Act of 1934 (the "Communications Act"), for crafting and implementing a scheme to bill non-customers a monthly service charge (a "minimum usage fee" or "MUF").  (Compl. ¶¶ 38-63).

In September 2005, after plaintiff had filed her complaint, but before she moved for class certification,[2] MCI credited $12.00 to her LEC to reverse the charges she had paid to MCI.  (Everett Decl. in Opp. to MTD ¶ 5).  Nevertheless, plaintiff continued with the instant action.  The parties thereafter engaged in multiple rounds of motion practice before Judge Silver in the Arizona District Court.  That month, MCI moved to dismiss the action, on the alternative grounds that (1) plaintiff's reimbursement rendered the complaint moot and (2) the Federal Communications Commission ("FCC") had "primary jurisdiction" over plaintiff's claims because their adjudication

---

[2]   Plaintiff apparently moved for class certification before the Arizona District Court on May 30, 2006.  See Everett v. MCI, Inc., No 05-2122-PHX-ROS, 2006 U.S. Dist. LEXIS 71871, at *12 n.7 (D. Ariz. Sept. 29, 2006) ("Everett I").  From the record before the Court, it does not appear that the motion was ever decided.

would require significant interpretation of the Communications Act.  The Arizona District Court denied the motion, expressing "strong concerns" that dismissing the case as moot "would only result in repetitious claims" and rejecting the notion that plaintiff's claims were so complex as to require the FCC's expert analysis.[3]  Everett I, 2006 U.S. Dist. LEXIS 71871, at *20-23.

MCI next moved for judgment on the pleadings or, in the alternative, for summary judgment.  As a third option, it requested that the Arizona District Court refer the matter to the Bankruptcy Court pursuant to Section 12.01 of the Plan and 28 U.S.C. § 157(a).[4]  Plaintiff opposed MCI's request, arguing in relevant part that her claims did not implicate "core" bankruptcy matters and should remain before the Arizona District Court. (Pl. Opp. to MSJ at 7-9).

In a three-page order, Judge Silver granted MCI's request to refer the matter to the Bankruptcy Court, without considering whether the complaint raised core or non-core claims.

---

[3]  To the contrary, Judge Silver held, "Plaintiff's allegations of consumer fraud [were] well within the competence of [the] Court."  Id. at *22.

[4]  Section 157(a) states, "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).
  The Arizona District Court's corresponding General Order 01-15 states, "Pursuant to 28 U.S.C. § 157(a), the court hereby refers to the bankruptcy judges for this district all cases under title 11 and all proceedings under title 11 or arising in or related to a case under title 11."  General Order 01-15 (D. Ariz. Jun. 29, 2001).

See Everett v. MCI, Inc., No 05-2122-PHX-ROS (D. Ariz. May 24, 2007) ("Everett II").  In so doing, she stated:

> Since Plaintiff's claims arose and were liquidated prior to the Effective Date of the Plan, the Plan dictates how those claims must be resolved.  The Plan states that the Bankruptcy Court retains exclusive jurisdiction to hear and determine Administrative Expense Claims.  Accordingly, this Court must refer those claims to the Bankruptcy Court pursuant to the general order, the Plan and 28 U.S.C. § 157(a).

Id. at 2.[5]  The court further opined that "whether Plaintiff's claims are classified as core or non-core . . . is irrelevant at this point, as that determination must be made by the Bankruptcy Court."  Id.  Following Judge Silver's order, the case was transferred to the United States Bankruptcy Court for the District of Arizona.  By order dated June 18, 2007, the Arizona Bankruptcy Court transferred the case to the Bankruptcy Court in New York, where it was assigned to Judge Gonzalez.

On October 30, 2007, plaintiff filed the instant motion seeking mandatory or, in the alternative, permissive withdrawal of the reference to the Bankruptcy Court.

---

[5]   A claim is generally classified as "liquidated" if it is for an amount that has been ascertained or can be readily calculated.  Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 304 (2d Cir. 1997) (Chapter 13 case); see Black's Law Dictionary 240 (7th ed. 1999).  In that sense, plaintiff's individual claims were "liquidated prior to the Effective Date" to the extent that they sought compensatory damages -- the unauthorized charges plus interest -- that could be "readily calculated" at that time.

**DISCUSSION**

**A.    Applicable Law**

    **1.    Mandatory Withdrawal**

Mandatory withdrawal of the reference to a bankruptcy court is governed by 28 U.S.C. § 157(d), which provides that "[t]he district court shall, on timely motion of a party, . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the Untied States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  Despite its broad language, courts have narrowly construed § 157(d) "to prevent litigants [from] using it as an 'escape hatch' out of bankruptcy court."  Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.), No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (citation omitted).  Accordingly, mandatory withdrawal is reserved for cases requiring "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990) (mandatory withdrawal "reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding" (citation omitted)).

2. **Permissive Withdrawal**

Where withdrawal is not mandated, § 157(d) provides that "the district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). While § 157(d) does not define "cause," the Second Circuit has established a two-part test for determining whether cause exists to withdraw a reference under the permissive withdrawal standard. Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).

First, the court must evaluate whether the claim is core or non-core. Id. Section 157(b)(2) sets forth a non-exhaustive list of core proceedings, which includes "matters concerning the administration of the estate," the "allowance or disallowance of claims against the estate," and "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(A)-(B), (I). More generally, courts "have emphasized that core proceedings must 'invoke a substantive right' created by federal bankruptcy law that would not exist outside of a bankruptcy case." The VWE Group, Inc. v. Amlicke (In re The VWE Group, Inc.), 359 B.R. 441, 448 (S.D.N.Y. 2007) (quoting Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld L.L.P., 201 B.R. 635, 639 (S.D.N.Y. 1996)). Conversely, "non-core proceedings involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law

and would exist in the absence of a bankruptcy case." Id. (internal quotations omitted).

Second, the court must weigh "questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." In re Orion, 4 F.3d at 1101. For instance, as a bankruptcy court's ruling on a non-core matter is subject to de novo review, a district court may conclude that its adjudication of the matter in the first instance would be more efficient. See id. While the status of a claim as core or non-core informs issues of efficiency and uniformity, however, it is not dispositive. Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.), 182 B.R. 379, 383 (S.D.N.Y. 1995) (citing In re Orion, 4 F.3d at 1101).

**B.  Application**

   **1.  Mandatory Withdrawal**

In this case, withdrawal of the bankruptcy reference is not mandated, for plaintiff's claims are not so complex as to require "significant interpretation" of non-bankruptcy federal law.

While the complaint charges MCI with violating the Communications Act, none of its underlying claims -- that MCI (1) unjustly billed persons with whom it had no contractual relationship; (2) manufactured charges that subjected the class to unreasonable prejudice; and (3) charged rates not set forth in its contracts with members of the class -- raise questions that

- 8 -

require "substantial and material consideration" of the Communications Act.  To the contrary, the complaint centers largely on whether MCI executed a deceptive billing scheme.  In opposing MCI's motion to dismiss on the grounds that the FCC had primary jurisdiction over the case, plaintiff dismissed the notion that her claims involved an intricate analysis of the Communications Act.  Arguing that her complaint merely raised basic questions of consumer fraud that did not require the FCC's expert knowledge, she stated:

> The causes of action, brought under the Communications Act and the common law, assert that MCI engaged in a deceptive scheme.  They do not challenge the reasonableness of MCI's MUF, but rather MCI's decision to assess an MUF to non-customers.  The conduct alleged is well within the conventional experience of this Court.

(Pl. Opp. to MTD at 11).  The Arizona District Court concurred with plaintiff's assessment, finding that her "allegations of consumer fraud [fell] well within [its] competency."  Everett I, 2006 U.S. Dist. LEXIS 71871, at *22.  The same factors that militated against referral to the FCC now weigh against mandatory withdrawal.  Though they invoke the Communications Act by name, plaintiff's claims require only "simple application" rather than "significant interpretation" of the Communications Act.  See Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.), No. 06-C-432-S, 2006 WL 3017422 (W.D. Wis. Sept. 18, 2006) (denying mandatory withdrawal on grounds that plaintiff's claims required "mere application" of the Communications Act to the facts presented, rather than interpretation or analysis of

significant open and unresolved issues involving non-bankruptcy statute).

### 2. Permissive Withdrawal

As to permissive withdrawal, the first issue is whether the claims raised in plaintiff's complaint are core.[6] The second is whether withdrawing the reference would serve the interests of judicial efficiency.

#### a. Core/Non-core

The claims raised in plaintiff's complaint are non-core; they involve disputes over the legality of MCI's billing practices that have little relation to the Bankruptcy Code, do not arise under federal bankruptcy law, and would exist in the absence of a bankruptcy case. The key issue is whether MCI engaged in a deceptive scheme to bill plaintiff and others for long distance services for which they had not subscribed. Plaintiff has no other relationship to MCI or the bankruptcy

---

[6] As a preliminary matter, I hold that this question is for the Court. Defendants contend that under principles of comity and the "law of the case" doctrine, I must defer to the Arizona District Court's reference and leave the question of core/non-core status for the Bankruptcy Court to decide. I disagree. General Order 01-15 instructs the Arizona District Court to initially refer to the Bankruptcy Court all matters "arising in or related to a case under title 11." In her order, Judge Silver explicitly withheld judgment on whether the claims were core or non-core -- or, by extension, whether withdrawal of the reference for "cause" would be warranted. Courts have repeatedly held that for withdrawal purposes, district courts may make the core/non-core determination in the first instance. See, e.g., In re The VWE Group, 359 B.R. at 447-48; Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp. (In re FMI Forwarding Co.), No. 01 Civ. 9462 (DAB), 2004 WL 1348956, at *6 n.5 (S.D.N.Y. June 16, 2004). Accordingly, I do so here.

estate; she is neither an MCI customer nor a party to any contract involving the estate.  That the "unauthorized" charges against her were assessed after Debtors filed their bankruptcy petition does not render them core.  See Weiner's, Inc. v. T.G. & Y. Stores Co., 191 B.R. 30, 34 (S.D.N.Y. 1996) ("I am unpersuaded that the fact that a claim arises post-petition can, without more, transform the claim into a core proceeding"); Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 758 (S.D.N.Y. 1994).  Her claims stand independent of MCI's reorganization; a determination as to whether MCI subjected plaintiff to an illegal billing scheme neither turns on principles of bankruptcy law nor directly affects a core bankruptcy function.

MCI posits that the matter is nevertheless core under §§ 157(b)(2)(B) (matters concerning the "allowance or disallowance of claims against the estate"); (I) ("determinations as to the dischargeability of particular debts"); and the catch-all provision, (A) ("matters concerning the administration of the estate").  I disagree.

First, this action does not concern the "allowance or disallowance of claims against the estate" as plaintiff has filed no proof of claim against MCI in the Bankruptcy Court.  The determinative factor under § 157(b)(2)(B) is whether plaintiff has filed a proof of claim to recover damages from the estate (thereby triggering the bankruptcy court's determination whether to allow or disallow the claim).  See Tultex Corp. v. Freeze

- 11 -

Kids, L.L.C., 252 B.R. 32, 37-38 (S.D.N.Y. 2000).  While plaintiff initiated this class action in the Arizona District Court, she has filed no claim in the Bankruptcy Court and, accordingly, has done nothing to subject herself to the its equitable power.

MCI contends that should plaintiff prevail on the merits, "she will be required to seek payment of an administrative expense under the Plan," thereby rendering the matter core.  (Def. Opp. 17).  This does not suffice; it conflates the Court's determination of MCI's underlying liability with some later proceeding for the recovery of damages should plaintiff prevail.  That plaintiff may eventually file a proof of claim to collect on any judgment she wins at the district court level does not render this current stage of the litigation core. See Tultex, 252 B.R. at 38. ("When and if [a party] files a proof of claim, that claim will constitute a core bankruptcy proceeding.  But the fact that at some later time [that party] may file a proof of claim in order to collect on a judgment is not a sufficient basis" to render a proceeding core.); see also Bevilacqua v. Bevilacqua, 208 B.R. 11, 16 (E.D.N.Y. 1997).

Second, while "determinations as to the dischargeability of particular debts" are core, the threshold issue in this matter is whether MCI's billing scheme was lawful -- not whether the Plan "discharges" any debts MCI may eventually owe non-customers as a result of that scheme.  To the extent that plaintiff charges MCI with engaging in deceptive billing

practices, the question of MCI's liability bears little relation to federal bankruptcy law; it will be determined on the basis of common law fraud and the Communications Act. See United States v. Weiss, No. 97 Civ. 4949 (FB), 1998 WL 118091, at *3 (E.D.N.Y. Mar. 13, 1998). The primacy of non-core issues in this proceeding remains unaltered by MCI's contention that if it is held liable, its "debt" to plaintiff may be discharged by the Plan. See id. (finding that though the dischargeability of a debt was at issue, "the adversary proceeding, to the extent it s[ought] to determine [defendant's] liability for the alleged . . . fraud, [wa]s a non-core proceeding"). To hold otherwise would allow MCI to render claims core, irrespective of their nature, by merely suggesting that if liable, the Plan would cover its resulting damages.

Third, plaintiff's claims "concern the administration" of MCI's estate in only the broadest sense. A ruling on whether MCI engaged in an unlawful billing practice will bear no direct impact on the administration of MCI's estate. Plaintiff's claims do not pertain to an agreement involving a critical asset of the estate. Nor has plaintiff filed a proof of claim in the Bankruptcy Court. In essence, the only direct connection between plaintiff and the estate is that her alleged injuries were sustained during the pendency of WorldCom's bankruptcy.

MCI conclusorily contends that her claims are therefore subject to the Plan and "concern" its administration. Yet to find plaintiff's claims core on such a thin basis would collapse

the distinction between core and non-core matters as virtually any claim against a debtor will, in some general fashion, "concern the administration" of its estate.  See In re Orion, 4 F.3d at 1102 (holding that an overbroad construction of § 157(b)(2)(A) would "swallow the rule"); Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 68 F.3d 26, 31 (2d Cir. 1995) (warning that certain provisions in § 157 "are so broad that they could be construed to include almost any matter relating to bankruptcy" (citation and internal quotation marks omitted)); In re CIS Corp., 172 B.R. at 757 ("A debtor cannot reclassify what is essentially a non-core . . . cause of action by declaring that it affects either 'the liquidation of assets of the estate' or 'the administration of the estate.'").  Given their insubstantial connection to the administration of MCI's estate, I conclude that plaintiff's claims are non-core.

     **b.**    **Efficiency**

The second issue is whether withdrawing the reference would promote judicial efficiency and serve the best interests of the parties.  I conclude that it would.  Nothing in the record indicates that resolution of the questions raised by plaintiff's specific complaint will bear significant impact on other MCI proceedings before Judge Gonzalez.  Conversely, denying the motion may subject the parties to inconsistent rulings, and result in both duplicative litigation and a waste of judicial resources.

First, as plaintiff's claims are non-core, any ruling on their merits would be subject to de novo review at the district court level.

Second, MCI does not contest plaintiff's assertion that the Bankruptcy Court lacks jurisdiction over claims arising after the Plan became effective.[7] While plaintiff's individual claims arose prior to the Effective Date, she asserts that the putative class includes persons whose claims arose both before and after that date.[8] MCI does not deny that it charged MUFs in both periods to consumers who had not selected MCI as a long distance carrier. Accordingly, leaving plaintiff's individual claims before the Bankruptcy Court could splinter the putative class action into two separate litigations -- one for pre-Effective Date claims in the Bankruptcy Court and one for post-Effective Date claims in this Court.

---

[7] Plaintiff states that these claims fall outside the scope of the Plan, and thus beyond the Bankruptcy Court's jurisdiction. See Hosp. & Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns-Manville Corp.), 7 F.3d 32, 34 (2d Cir. 1993); see also Craig's Stores of Texas Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.), 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").

[8] Indeed, at the motion to dismiss stage, plaintiff submitted the sworn declaration of Candace Bentley, a putative class member who testified that she had received unauthorized MUF charges beginning July 2004 -- after the Effective Date -- and that she was prepared to serve as a named plaintiff. (Bentley Decl.). Plaintiff has submitted a proposed amended complaint adding Bentley as a named plaintiff, which she intends to seek permission to file should the Court withdraw the reference to the Bankruptcy Court. (Prop. Am. Compl. ¶¶ 31-35; see Pl. Mem. 13).

Third, the case appears to be in the relatively early stages of litigation before the Bankruptcy Court.  As of this motion's filing in October 2007, the parties had yet to appear for a status conference and the Bankruptcy Court had made no rulings in the case.[9]

MCI contends that the Bankruptcy Court is more equipped to consider the operative law and facts presented in this case, as it has presided over several other disputes relating to the Plan and the bankruptcy estate and, in other cases, has denied parties' motions to withdraw the reference.  (See Def. Opp. 21-22).  This does not suffice; while Judge Gonzalez has more than ably presided over the WorldCom bankruptcy proceedings, each motion to withdraw the reference entails a fact-specific inquiry and here, where plaintiff's claims are no more than tangentially related to WorldCom's bankruptcy, subject to de novo review, and span a purported time period that may otherwise split the action into two separate litigations, I conclude that judicial economy would be better served by withdrawing the reference and proceeding in a single court.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to withdraw the reference of the adversary proceeding to the

---

[9] In the interim, Judge Gonzalez granted plaintiff's request for certain discovery from MCI, yet without delving into the merits of plaintiff's underlying claims.  See Everett v. MCI, Inc. (In re WorldCom, Inc.), No. 07-01792 (AJG), 2008 WL 427986, at *2 (Bankr. S.D.N.Y Feb. 14, 2008) ("[T]he Court determines that it is appropriate to limit discovery at this time to matters that bear directly on the class certification issue.  This is without prejudice to any further discovery that may be undertaken should the case proceed on the merits.").

Bankruptcy Court is granted.  The parties shall appear for a pre-trial conference on June 27, 2008 at 11:30 AM.

    SO ORDERED.

Dated:    New York, New York
            June 18, 2008

Amended:  June 23, 2008

                                    DENNY CHIN
                                    United States District Judge

**APPEARANCES**

For Plaintiff:         ANDERSON KILL & OLICK, P.C.
                              By:  Mark D. Silverschotz, Esq.
                       1251 Avenue of the Americas
                       New York, New York  10020

                              - and -

                       GIRARD GIBBS LLP
                              By:  A.J. De Bartolomeo, Esq.
                                   Jonathan K. Levine, Esq.
                                   Aaron M. Sheanin, Esq.
                       601 California Street, 14th Floor
                       San Francisco, California  94108


For Defendants:        MUNGER, TOLLES & OLSON
                              By:  Henry Weissman, Esq.
                       355 South Grand Avenue, 35th Floor
                       Los Angeles, California  90071

                              - and -

                       WEIL, GOTSHAL & MANGES LLP
                              By:  Alfredo R. Perez, Esq.
                                   Lydia T. Protopapas, Esq.
                       700 Louisiana Street, Suite 1600
                       Houston, Texas  77002