**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHARY EVERETT, on behalf of herself and all
others similarly situated,

               Plaintiff,

    v.

MCI, INC., a Delaware Corporation,

               Defendant.

No. 07 Civ. 9590 (DC)

 

**DECLARATION OF A.J. De BARTOLOMEO**
**IN SUPPORT OF UNOPPOSED MOTION FOR LEAVE TO FILE**
**[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT**

I, A.J. De Bartolomeo, declare as follows:

1.  I am a member in good standing of the State Bar of California and am admitted to appear pro hac vice before this Court.  I am a partner of the law firm of Girard Gibbs LLP, counsel for Plaintiff Shary Everett in the above-captioned action.  I make this declaration in support of Plaintiff's unopposed motion for leave to file her [Proposed] First Amended Class Action Complaint.  I have personal knowledge of the facts stated herein and, if called on to do so, could and would testify competently thereto.

2.  Attached hereto as **Exhibit A** is a true and correct copy of the Class Action Complaint filed in this action in the United States District Court for the District of Arizona on July 18, 2005.

3.  Attached hereto as **Exhibit B** is a true and correct copy of the Proposed First Amended Class Action Complaint Plaintiffs seek to file in the United States District Court for the Southern District of New York by the accompanying unopposed motion.

4.  Attached hereto as **Exhibit C** is a true and correct copy of an e-mail exchange that I had with MCI's attorney, Lee Taylor, in which Mr. Taylor informed me that MCI would not oppose Plaintiff's motion to amend her complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of July, 2008, at San Francisco, California.

A. J. De Bartolomeo

1

## CERTIFICATE OF SERVICE

I, A. J. De Bartolomeo, hereby certify that on July 14, 2008, I caused the following

document(s) to be filed electronically with the United States District Court for the Southern

District of New York through the Court's mandated ECF service:

1.    **DECLARATION OF A.J. De BARTOLOMEO IN SUPPORT OF
      UNOPPOSED MOTION FOR LEAVE TO FILE [PROPOSED] FIRST
      AMENDED CLASS ACTION COMPLAINT**

Counsel of record are required by the Court to be registered e-filers, and as such are

automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of July, 2008 at San Francisco, California.


                                            */s/ A. J. De Bartolomeo*

# EXHIBIT A

FILED    LODGED
RECEIVED    COPY

JUL 1 8 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                    J   DEPUTY

1    Grant Woods (AZ Bar No. 006106)
     **GRANT WOODS, PC**
2    1726 North Seventh Street
     Phoenix, Arizona 85006
3    Telephone: (602) 258-2599
     Facsimile: (602) 258-5070
4
     Robert B. Carey (AZ Bar No. 011186)
5    Stephanie Levin Bozzo (AZ Bar No. 018470)
     **HAGENS BERMAN SOBOL SHAPIRO PLLC**
6    2425 E. Camelback Road, Suite 650
     Phoenix, Arizona 85016
7    Telephone: (602) 840-5900
     Facsimile: (602) 840-3012
8
     Daniel C. Girard
9    Aaron M. Sheanin
     Sanjay M. Ranchod
10   Stefanie G. Bernay
     **GIRARD GIBBS & De BARTOLOMEO LLP**
11   601 California Street, Suite 1400
     San Francisco, California 94108
12   Telephone: (415) 981-4800
     Facsimile: (415) 981-4846
13
     Attorneys for Individual and Representative Plaintiff
14

15                **UNITED STATES DISTRICT COURT**

16                      **DISTRICT OF ARIZONA**

17

18   SHARY EVERETT, on behalf of herself and    Case No. **CV'05  2122 PHX ROS**
     all others similarly situated,
19                                               **CLASS ACTION COMPLAINT**
                    Plaintiff
20
21            v.
22   MCI, INC., a Delaware Corporation,
23
                    Defendant.
24                                               **DEMAND FOR JURY TRIAL**
25
26
27
28

1    Plaintiff Shary Everett, on behalf of herself and all others similarly situated throughout

2 the United States, alleges by and through her attorneys, upon information and belief, as follows:

3                              **JURISDICTION AND VENUE**

4    1.    This action asserts claims for violations of the Communications Act of

5 1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment. This court has

6 jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(d), and pursuant to

7 47 U.S.C. § 207. This court has supplemental jurisdiction over the state law claims pursuant to

8 28 U.S.C. § 1367.

9    2.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because

10 a substantial number of the acts giving rise to the violations of law complained of herein

11 occurred and had their primary effect in this judicial district.

12                               **NATURE OF THE CASE**

13    3.    This is a class action on behalf of all persons in the United States who were billed

14 by MCI, Inc. ("MCI") for monthly service charges and related taxes, regulatory fees, and other

15 charges despite the fact they did not have an active account with MCI or an ongoing business

16 relationship with MCI at any relevant time. Many of the persons who were billed by MCI

17 without authorization are former MCI subscribers. Other persons who were billed by MCI

18 without authorization never have been MCI subscribers. Plaintiff had no contractual

19 relationship with MCI at the time she was billed by MCI for monthly service charges.

20    4.    Consumers who have detected unauthorized charges from MCI in their telephone

21 bills and attempted to dispute the charges report that MCI representatives often refuse to

22 reverse, refund, or credit back the charges. Consumers who do not pay unauthorized charges

23 are turned over to collections agencies.

24    5.    On behalf of herself and all similarly situated persons throughout the United

25 States, Plaintiff brings claims for violations of the Communications Act of 1934, as amended,

26 47 U.S.C. §§ 151, et seq. ("Communications Act"), and for unjust enrichment. This action seeks

27 to recover, among other things, damages sustained by Plaintiff and the Class as a result of

28 MCI's practice of assessing monthly service charges and related fees without authorization to

---

CLASS ACTION COMPLAINT                                                    2

1  non-MCI customers; equitable relief; and declaratory relief.

2  <center>**THE PARTIES**</center>

3      6.    Plaintiff Shary Everett is a resident of Goodyear, Arizona.

4      7.    Defendant MCI, Inc. is a Delaware corporation that provides local and long

5  distance telephone service to customers in the State of Arizona and throughout the United

6  States, and maintains offices and facilities within the State of Arizona.

7  <center>**FACTUAL ALLEGATIONS**</center>

8      8.    Consumers throughout the United States contract with local exchange carriers

9  (LECs) to provide them with local telephone services. The LECs provide monthly bills for

10  local telephone services to such consumers. MCI has agreements with LECs throughout the

11  United States pursuant to which LECs permit MCI to include bills for long distance service

12  along with the monthly telephone bills the LECs issue to consumers for local telephone service.

13  For other consumers, MCI assesses charges for long distance service on separate bills that it

14  sends directly to consumers. These bills, whether issued by a LEC or by MCI, represent that

15  certain telephone charges have been incurred by the consumer, and that payment is due from

16  the consumer for such charges.

17  <u>**Defendant MCI's Unlawful Practice of Billing Non-Customers For Monthly Charges**</u>

18      9.    MCI bills consumers without their authorization for monthly service charges and

19  related taxes, regulatory fees, and other charges even though these consumers do not have an

20  active account with MCI or an ongoing business relationship with MCI. The consumers who

21  receive the bills in question are not MCI customers, have not used MCI services at any relevant

22  time, and have instead either contracted for long distance service with carriers other than MCI

23  or canceled their long distance service.

24      10.    MCI misuses data it purchases from LECs to generate bills for consumers whom it

25  has no reasonable basis to believe are current MCI customers. The data MCI receives from

26  LECs include codes and/or other information that reveal the subscriber status of telephone lines.

27      11.    A telephone line may be designated to the MCI network even though MCI is not

28  maintaining an active account with the owner of that line. Former MCI subscribers who

---

CLASS ACTION COMPLAINT                                             3

1  canceled their MCI service but did not also advise their LEC of the change may remain

2  designated to the MCI network.  Such a consumer who remains designated to the MCI network

3  would appear to have an inactive MCI account because he or she would not have made any

4  long distance calls through MCI.  A person who never has been an MCI subscriber but who has

5  been designated to the MCI network similarly would appear to have an inactive MCI account.

6      12.    MCI identifies inactive accounts by comparing the data it receives from LECs to

7  its own lists of active accounts.  For telephone lines that have an inactive MCI account or that

8  do not have any MCI account, MCI either uses the inactive account to bill the owner of that line

9  or creates a new account for that line through which it can bill the owner of that line.  MCI does

10  so without the knowledge, consent, or authorization of the owners of these telephone lines.

11      13.    MCI does not verify whether a consumer had previously canceled or terminated

12  their MCI service or whether a consumer had previously requested cancellation or termination

13  of their MCI service.  MCI does not verify whether a consumer intends to switch their long

14  distance service to MCI or subscribe to MCI as their preferred long distance carrier.

15      14.    MCI uses an inactive account or creates a new account for a telephone line to bill

16  the owner of that line, as described above, by enrolling the telephone line and/or the owner of

17  that line in the "Basic Dial-1" long distance plan or another MCI long-distance calling plan that

18  carries a monthly service charge.  MCI then indicates to the relevant LEC that the owner of that

19  line intends to establish a new account with MCI that carries a monthly service charge when, in

20  fact, the consumer does not.  Plaintiff and Class members did not affirmatively select an MCI

21  long distance plan that carries a monthly service charge at any relevant time, and they were

22  enrolled in such a plan without their knowledge, consent, or authorization.

23      15.    Since 2002, MCI has charged a minimum usage fee ("MUF") to persons enrolled

24  in its "Basic Dial-1" long distance plan.  Persons who did not generate bills for long distance

25  telephone calls in a given month equal to or exceeding $3.00 or $5.00 were charged the

26  difference between the amount of charges for long distance telephone calls they made and the

27  amount of the minimum usage fee.  MCI also has charged a $3.95 monthly recurring fee, which

28

1   is charged regardless of the amount of bills for long distance telephone calls generated in a

2   given month, to persons enrolled in its "Basic Dial-1" long distance plan.

3     16. According to internal MCI documents, MCI established the MUF program for its

4   "Basic Dial-1" long distance plan "to generate an additional $24.6M in revenue through the

5   application of the new $3 minimum usage fee." This revenue would not otherwise be generated

6   because the MUF was to be applied to persons with no usage on the MCI network. MCI

7   established the MUF program because not doing so would "unnecessarily avoid[] a significant

8   source of additional revenue from this customer segment." MCI has acknowledged that it

9   could have avoided assessing monthly service charges and related fees without authorization,

10  but did so because it could generate tens of millions of dollars in additional revenue.

11    17. MCI did not obtain valid authorization at any relevant time from members of the

12  Class to enroll them in an MCI long distance plan that carries a monthly service charge prior to

13  assessing them monthly service charges and related fees. Plaintiff and other Class members

14  have not consented to pay a monthly service charge or related fees in connection with MCI long

15  distance service at any relevant time.

16    18. During the Class period, MCI placed unauthorized monthly service charges and

17  related taxes, regulatory fees, and other charges on bills distributed by LECs to consumers

18  throughout the United States. For other consumers, MCI placed unauthorized monthly service

19  charges and related taxes, regulatory fees, and other charges on separate bills that it issued

20  directly to consumers throughout the United States.

21    19. MCI has assessed a monthly service charge, including an MUF and monthly

22  recurring fee, without authorization to a staggering number of consumers nationwide. In

23  California alone, MCI assessed an MUF to approximately 500,000 consumers between June

24  2002 and February 2004.

25    20. MCI's unlawful practice described herein affects former MCI long distance

26  subscribers who cancel MCI long distance service and switch their long distance service to

27  another carrier, former MCI long distance subscribers who cancel MCI long distance service

28

CLASS ACTION COMPLAINT

5

1    and do not select a new long distance carrier, and persons who have never been MCI

2    subscribers.  This practice also affects persons who have a secondary telephone line that has

3    never been subscribed to MCI.

4        21.    MCI has obstructed the efforts of consumers to obtain credits, adjustments

5    or refunds of the improper charges.  Consumers complain that in response to requests for

6    refunds and corrections to MCI billing records MCI representatives promise refunds and

7    corrections which are subsequently not made, that MCI issues "credits" to consumers who are

8    not MCI customers and thus cannot use the credits, and that even if MCI issues a credit or

9    refund for unauthorized charges, the unauthorized charges reappear in subsequent billing

10   statements or MCI imposes new, unauthorized charges in later billing periods.

11       22.    MCI's policy and practice is to reverse, refund, or credit back unauthorized

12   charges only to persons who threaten to bring legal action, lodge complaints with regulatory

13   authorities, or take other action in response to being billed without authorization by MCI.

14   Consumers who do not pay unauthorized charges are turned over to collections agencies.

15                    **Plaintiff Shary Everett's Experience**

16       23.    At all relevant times, Plaintiff Shary Everett had residential telephone service

17   through Qwest and had either long distance service through AT&T or no long-distance service.

18       24.    Mrs. Everett has not contracted with MCI or obtained services from MCI at any

19   time since approximately 1999, when she terminated MCI long distance service on a telephone

20   line at a previous address.

21       25.    Beginning in or around February 2003 and continuing thereafter, MCI assessed

22   Mrs. Everett a monthly service charge and related charges in connection with an MCI long

23   distance plan.  The charges were not incurred or authorized by Mrs. Everett.

24       26.    On several occasions, Mrs. Everett attempted to have the unauthorized MCI

25   charges reversed or removed and/or to stop MCI from billing her for unauthorized charges.

26   When she called MCI, its representatives refused to reverse or remove the unauthorized MCI

27   charges assessed to her.  MCI continued to assess Mrs. Everett charges without authorization.

28

---

CLASS ACTION COMPLAINT

1  27. In or around July 2003, Mrs. Everett received a collections notice for failure to

2 pay unauthorized charges assessed by MCI.

3  28. Mrs. Everett subsequently paid unauthorized charges assessed by MCI.  To

4 prevent MCI from continuing to bill her for unauthorized charges, Mrs. Everett terminated her

5 AT&T long distance service and restricted all long distance service on her telephone line.

6  29. MCI has not refunded the unauthorized charges paid by Mrs. Everett.

7         **CLASS ACTION ALLEGATIONS**

8  30. Plaintiff brings this action on behalf of herself and all other similarly situated

9 persons throughout the United States as members of a proposed plaintiff Class initially defined

10 as:

11    **All persons and entities who, on or after July 18, 2001, (1) were assessed or paid**
    **non-usage monthly charges in connection with an MCI calling plan and (2) were**
12    **not MCI customers at the time the charges were assessed.**

13

14 Excluded from the Class are persons who filed complaints with the Federal Communications

15 Commission, in compliance with 47 C.F.R. 1.716, 1.719, 1.720, or 1.721, regarding Defendant's

16 conduct alleged herein; Defendant; any entity in which Defendant has or had a controlling

17 interest; any officers or directors of Defendant; the legal representatives, heirs, successors, and

18 assigns of Defendant; and any judge assigned to this action and his or her immediate family.

19  31. This action has been properly brought and may properly be maintained as a class

20 action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil

  Procedure and case law thereunder.

21        **Numerosity of the Class**
22        **(Fed. R. Civ. P. 23(a)(1))**

23  32. Members of the Class are so numerous that their individual joinder is

24 impracticable.  Plaintiff estimates that the Class comprises at least tens of thousands of

25 members.  The precise number of Class members and their addresses are unknown to Plaintiff at

26 this time, but can be ascertained from MCI's records.  Class members may be notified of the

27

28

1  pendency of this action by mail, supplemented (if deemed necessary or appropriate by the

2  Court) by published notice.

3      ### Existence and Predominance of Common Questions of Fact and Law
4      ### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

5      33.    Common questions of law and fact exist as to all members of the Class.  These

6  questions predominate over the questions affecting only individual Class members.  These

7  common legal and factual questions include:

8          (a)    Whether MCI has assessed non-usage monthly charges on telephone lines

9                 without the end-user's authorization;

10         (b)    Whether MCI has enrolled end-users in calling plans that carry a monthly

11                service charge without their authorization;

12         (c)    Whether MCI's assessment of charges on telephone lines without

13                authorization violates the Communications Act of 1934, as amended,

14                47 U.S.C. §§ 151, et seq.;

15         (d)    Whether MCI was unjustly enriched by the charges it collected on

16                telephone lines without authorization; and

17         (e)    The nature of the relief, including damages, equitable and declaratory

18                relief, to which Plaintiff and Class members are entitled.

19      ### Typicality of Claims
20      ### (Fed. R. Civ. P. 23(a)(3))

21      34.    Plaintiff's claims are typical of the claims of the Class because Plaintiff,

22  like all other Class members, was assessed monthly service charges by MCI on one or

23  more telephone lines without her authorization.

24      ### Adequacy of Representation
25      ### (Fed. R. Civ. P. 23(a)(4))

26      35.    Plaintiff is an adequate representative of the Class, because her interests do not

27  conflict with the interests of the Class members she seeks to represent, and she has retained

28  counsel competent and experienced in complex class action and telecommunications litigation.

---

CLASS ACTION COMPLAINT

1  The interests of the Class members will be fairly and adequately protected by Plaintiff and her

2  counsel.

3  ### Superiority of the Class Action
   ### (Fed. R. Civ. P. 23(b)(3))
4

5  36.    A class action is superior to other available means for the fair and efficient adjudication

6  of this dispute.  The damages suffered by each individual Class member may be small, especially given

7  the burden and expense of individual prosecution of the complex and extensive litigation necessitated

8  by MCI's conduct.  It would be virtually impossible for Class members individually to obtain effective

9  redress for the wrongs done to them.  Furthermore, even if the Class members themselves could afford

10 such individual litigation, the court system could not.  Individualized litigation presents a potential for

11 inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all

12 parties and to the court system presented with the complex legal and factual issues of this case.  By

13 contrast, the class action device presents far fewer management difficulties, and provides the benefits of

14 single adjudication, economy of scale, and comprehensive supervision by a single court.

15 ### The Risk of Inconsistent or Dispositive Adjudications and
   ### the Appropriateness of Final Injunctive or Declaratory Relief
16 ### (Fed. R. Civ. P. 23(b)(1) and (2))

17 37.    In the alternative, this action may properly be maintained as a class action,

18 because:

19        (a)    the prosecution of separate actions by individual Class members would

20               create a risk of inconsistent or varying adjudication with respect to

21               individual Class members, which would establish incompatible standards

22               of conduct for MCI; or

23        (b)    the prosecution of separate actions by individual Class members would

24               create a risk of adjudications with respect to individual members of the

25               Class which would, as a practical matter, be dispositive of the interests of

26               other Class members not parties to the adjudications, or substantially

27               impair or impede their ability to protect their interests; or

28

---

CLASS ACTION COMPLAINT

(c)    MCI has acted or refused to act on grounds generally applicable to the

Class, thereby making appropriate final injunctive or corresponding

declaratory relief with respect to the Class members as a whole.

## FIRST CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 201)

38.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein, and further alleges as follows:

39.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members for violations of 47 U.S.C. § 201.

40.    47 U.S.C. § 201(b) states, "All charges, practices, classifications, and regulations for and in connection with such communication service [i.e., service for interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

41.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons who have no contractual relationship with MCI for services they have not requested or received, and that MCI has not provided.

42.    In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons monthly service charges in connection with an MCI calling plan who do not have an active MCI account and who have not agreed to enroll in said calling plan.

43.    Plaintiff and Class members have been injured as a result of MCI's above-described violations of 47 U.S.C. § 201 in an amount to be determined according to proof.

44.    Under 47 U.S.C. §§ 206 and 207, Plaintiff and Class members are entitled to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees.

CLASS ACTION COMPLAINT

1

2

## SECOND CAUSE OF ACTION
### (Violations of the Communications Act of 1934, 47 U.S.C. § 202)

3      45.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

4  paragraphs as if fully set forth herein, and further alleges as follows:

5      46.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

6  for violations of 47 U.S.C. § 202.

7      47.    47 U.S.C. § 202(a) states in relevant part:

8

9          Charges, services, etc.  It shall be unlawful for any common carrier to make any
           unjust or unreasonable discrimination in charges, practices, classifications,
10         regulations, facilities, or services for or in connection with like communication
           service, directly or indirectly, by any means or device, or to make or give any
11         undue or unreasonable preference or advantage to any particular person, class of
           persons, or locality, or to subject any particular person, class of persons, or
12         locality to any undue or unreasonable prejudice or disadvantage.

13

14     48.    MCI has assessed persons who were not MCI customers at any relevant time,

15  including Plaintiff, for charges for telephone service they did not request, authorize, subscribe

16  to, or use.  MCI has failed to reverse, refund, or credit back such unauthorized charges to

17  Plaintiff.  MCI has reversed, refunded, or credited back charges for telephone service to other

   persons who were assessed such charges without authorization.

18     49.    MCI has violated 47 U.S.C. § 202(a) by unreasonably discriminating in charges

19  and practices for or in connection with communication service, and by subjecting a class of

20  consumers (namely, those persons who were assessed unauthorized charges for telephone

21  service and for whom MCI failed to reverse, refund, or credit back such charges) to

22  unreasonable prejudice.

23     50.    As a direct and proximate result of MCI's above-described practice of

24  discrimination in violation of 47 U.S.C. § 202(a), Plaintiff and Class members have been

25  injured in an amount to be determined at trial.

26     51.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled

27  both to recover the full amount of damages sustained as a result of MCI's above-described

28

CLASS ACTION COMPLAINT

11

1   violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

2   wrongful conduct. Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

3   entitled to a judgment declaring that MCI violated the Communications Act of 1934.

### THIRD CAUSE OF ACTION
**(Violations of the Communications Act of 1934, 47 U.S.C. § 203)**

6   52.   Plaintiff hereby incorporates by reference and realleges each of the foregoing

7   paragraphs as if fully set forth herein, and further alleges as follows:

8   53.   Plaintiff asserts this claim against MCI on behalf of herself and all Class members

9   for violations of 47 U.S.C. § 203.

10   54.   47 U.S.C. §203 states in relevant part:

12   (a)   Every common carrier, except connecting carriers, shall, within such
      reasonable time as the Commission shall designate, file with the
13         Commission and print and keep open for public inspection schedules
      showing all charges for itself and its connecting carriers for interstate and
14         foreign wire or radio communication between the different points on its
      own system . . . .

15   . . . .

17   (c)   No carrier, unless otherwise provided by or under authority of this Act,
      shall engage or participate in such communication unless schedules have
18         been filed and published in accordance with the provisions of this Act and
      with the regulations made thereunder; and no carrier shall (1) charge,
19         demand, collect, or receive a greater or less or different compensation, for
      such communication, or for any service in connection therewith, between
20         the points named in any such schedule than the charges specified in the
      schedule then in effect, or (2) refund or remit by any means or device any
21         portion of the charges so specified, or (3) extend to any person any
      privileges or facilities, in such communication, or employ or enforce any
22         classifications, regulations, or practices affecting such charges, except as
      specified in such schedule.

25   55.   MCI billed Plaintiff and Class members for charges for telephone service they did

26   not request, authorize, subscribe to, or use. Members of the Class had no contract with MCI at

27   any relevant time. MCI thus has violated 47 U.S.C. § 203(c) by charging, demanding, or

---

CLASS ACTION COMPLAINT

1    collecting compensation under rates and conditions that are not set forth in tariffs or in

2    contracts with the members of the Class and/or charging, demanding, or collecting

3    compensation from persons with whom MCI has no contract of any kind.

4       56.    By charging Plaintiff and Class members with whom it has no contract, for

5    services that were neither requested from nor provided by MCI, MCI has violated 47 U.S.C.

6    § 203(c)(1) in that it charged, demanded, collected, or received compensation at rates greater or

7    different than the rates specified in its tariffs.

8       57.    As a direct and proximate result of MCI's above-described violations of 47 U.S.C.

9    §§ 203(c) and 203(c)(1), Plaintiff and Class members have been injured in an amount to be

10   determined according to proof.

11      58.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiff and Class members are entitled

12   both to recover the full amount of damages sustained as a result of MCI's above-described

13   violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's

14   wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiff and Class members also are

15   entitled to a judgment declaring that MCI violated the Communications Act of 1934.

16                        **FOURTH CAUSE OF ACTION**
17                           **(Unjust Enrichment)**

18      59.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

19   paragraphs as if fully set forth herein, and further alleges as follows:

20      60.    Plaintiff asserts this claim against MCI on behalf of herself and all Class members

21   for unjust enrichment.

22      61.    MCI has assessed Plaintiff and Class members for charges for telephone services

23   they did not request, authorize, subscribe to, or use, and it has collected from Plaintiff and Class

24   members and retained money for such charges.  Accordingly, MCI has received, and continues

25   to receive, money at the expense of Plaintiff and Class members.

26      62.    MCI has received benefits from Plaintiff and Class members that it has unjustly

27   and inequitably retained at their expense.

28

---

CLASS ACTION COMPLAINT

63.     As a direct and proximate result of MCI's violations of law, Plaintiff and Class members were deprived of the use of their monies that were unlawfully billed, collected, and retained by MCI, and are therefore entitled to restoration of their monies.

### REQUEST FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

A.     An order that this action is properly brought and maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff and her counsel of record to represent the proposed Class;

B.     An order declaring unlawful the acts and conduct of MCI complained of herein;

C.     An order permanently enjoining MCI from engaging in the unlawful acts and conduct complained of herein and any attempts by MCI to collect the erroneous or unlawful charges it has assessed, including the reporting to credit agencies of non-payment of such charges;

D.     An order that MCI withdraw or reverse any adverse reports made to credit agencies in connection with erroneous charges;

E.     An order compelling restitution, disgorgement, and/or other equitable relief as the Court deems proper;

F.     A judgment declaring that MCI violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.;

G.     An award of compensatory damages to Plaintiff and the Class, together with an award of consequential and incidental damages and costs suffered by Plaintiff and Class members because of MCI's wrongful conduct;

H.     An award of pre-judgment and post-judgment interest to Plaintiff and the Class;

I.     An award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class in this action, including expert-witness fees; and

J.     Such other relief as the Court may deem just and proper.

1

## DEMAND FOR JURY TRIAL

2  Plaintiff hereby demands a trial by jury on all claims so triable.

3

4 DATED:  July 18, 2005     **HAGENS BERMAN SOBOL SHAPIRO PLLC**

5

6           By: _____

7

8           Robert B. Carey
            Stephanie Levin Bozzo

9           2425 E. Camelback Road, Suite 650
            Phoenix, Arizona 85016

10          Telephone: (602) 840-5900
            Facsimile: (602) 840-3012

11

12          Grant Woods
            **GRANT WOODS, PC**

13          1726 North Seventh Street
            Phoenix, Arizona 85006

14          Telephone: (602) 258-2599
            Facsimile: (602) 258-5070

15

16          Daniel C. Girard

17          Aaron M. Sheanin
            Sanjay M. Ranchod

18          Stefanie G. Bernay

19          **GIRARD GIBBS & De BARTOLOMEO LLP**
            601 California Street, Suite 1400

20          San Francisco, California 94108
            Telephone: (415) 981-4800

21          Facsimile: (415) 981-4846

22

23          Attorneys for Individual and Representative Plaintiff

24

25

26

27

28

CLASS ACTION COMPLAINT

**EXHIBIT B**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARY and TOM EVERETT, and CANDACE BENTLEY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs<br><br>v.<br><br>VERIZON BUSINESS GLOBAL, LLC, a Delaware Corporation, f/k/a MCI, Inc.<br><br>       Defendant. | Case No.  07 Civ. 9590 (DC)<br><br>**[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Shary and Tom Everett and Candace Bentley, on behalf of themselves and all others similarly situated throughout the United States, allege by and through their attorneys, upon information and belief, as follows:

## JURISDICTION AND VENUE

1.      This action asserts claims for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq.; and for unjust enrichment.  This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(d) and 1367, and 47 U.S.C. § 207.

2.      This action was originally filed on July 18, 2005, in the United States District Court for the District of Arizona, where venue was proper pursuant to 28 U.S.C. § 1391(b)(2).  A substantial number of the acts giving rise to the violations of law complained of herein occurred and had their primary effect in that judicial district.  On Defendant's motion, this action was referred to the bankruptcy court and transferred to the Southern District of New York.  Accordingly, Defendant has consented to venue in this judicial district.

## NATURE OF THE CASE

3.      This class action arises out of a decision by MCI, Inc., predecessor-in-interest to

Defendant Verizon Business Global, LLC, ("MCI") to implement an aggressive billing initiative directed at non-customers of MCI. MCI harvested data from local telephone service providers on hundreds of thousands of consumers who did not have active long-distance accounts with MCI. MCI then activated accounts for these consumers in its "Basic Dial-1" default billing plan without their authorization or consent, and sent them bills for approximately seven to ten dollars in monthly charges. These charges included minimum usage fees or monthly recurring charges and related fees and taxes. As a result, MCI has billed monthly charges to hundreds of thousands of persons, despite the fact that they never authorized, requested or used MCI telecommunication services and had no valid contractual or customer relationship with MCI at any relevant time.

4.      Consumers who detected these unauthorized charges from MCI and attempted to dispute them reported that MCI representatives often refused to reverse, refund or credit back the charges. Consumers also reported that MCI representatives conditioned the issuance of refunds or credits on the consumer's agreement to subscribe to MCI for long-distance service, or otherwise used the improper billings as a means to sell MCI services. Consumers who did not pay MCI for the unauthorized charges were threatened with adverse notations on their credit reports and/or turned over to collections agencies.

5.      On behalf of themselves and all similarly situated persons throughout the United States, Plaintiffs bring claims for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq. ("Communications Act"), and for unjust enrichment.

## THE PARTIES

6.      Plaintiffs Shary and Tom Everett are citizens of Arizona, residing in Goodyear, Arizona.

7.      Plaintiff Candace Bentley is a citizen of Oklahoma, residing in Harrah, Oklahoma.

8.      Defendant Verizon Business Global, LLC, formerly known as MCI LLC, is the successor-in-interest to MCI, Inc., the defendant in this action when the case was filed. Verizon Business Global, LLC is a Delaware corporation with its principal place of business at One Basking Ridge Way, Basking Ridge, New Jersey. Defendant is referred to herein as "MCI."

During the class period, MCI provided long-distance telephone service to consumers throughout the United States.

## SUBSTANTIVE ALLEGATIONS

### Defendant MCI's Unlawful Billing Practices

9.      Before the beginning of the class period, MCI's relationships with its customers were governed by the tariff it filed with the Federal Communications Commission ("FCC"). Upon detariffing, the FCC directed long-distance carriers such as MCI to "establish legal relationships with their customers in an alternative way, for example, by issuing short, standard contracts that contain their basic rates, terms and conditions of service." Interstate Interexchange Marketplace (Second Report & Order), 11 FCC Rcd. 20730, 20807, ¶ 150 (1996).

10.     As of April 1, 2002, MCI offered to provide long-distance services to its customers under the terms of a standardized General Services Agreement For Residential Customers ("GSA"). MCI amended its GSA from time to time during the class period. Each version of the GSA defines the exclusive manner of acceptance of the contract in the same way: "BY ENROLLING IN, USING, OR PAYING FOR COMPANY SERVICES, YOU AGREE TO THE RATES, CHARGES, AND TERMS AND CONDITIONS IN THIS AGREEMENT."

11.     Throughout the class period, MCI only had the authority to bill and collect monthly charges from consumers with whom it had valid legal or contractual relationships governed by the GSA.  MCI had no legal authority or justification for billing consumers who had not entered into valid legal or contractual relationships, had not agreed to establish an account with MCI, and did not use the MCI network.

### MCI Harvested Inaccurate Billing Data From Local Exchange Carriers About Non-Customers Of MCI

12.     Consumers who buy telephone services for a specific telephone line are called "end-users." End-users contract with local exchange carriers ("LECs") for local telephone service and with "primary interexchange carriers" ("IXCs") for long-distance telephone service. The LECs maintain records of the IXCs to which their end-users subscribe for long-distance

service.

13.    The billing scheme at issue in this litigation arises out of MCI's "business decision" to rely on electronic data from the LECs alone as providing sufficient justification for treating an end-user associated with a telephone number as an MCI customer.

14.    During the class period, MCI bought and received LEC data to identify telephone lines that are shown in LEC databases as being assigned or "presubscribed" to MCI for long-distance service.

15.    The LEC data MCI received was often dated, inaccurate and unreliable.  During the class period, the LEC data identified end-users who had never been MCI customers as being presubscribed to MCI.  The LEC data also identified one-time MCI customers who had previously canceled MCI service as being presubscribed to MCI.

16.    MCI activated "accounts" for end-users upon receiving LEC data identifying them as presubscribed to MCI.  Because these end-users had not affirmatively selected an MCI billing plan, MCI placed them by default in its "Basic Dial-1" billing plan.

## MCI Billed Monthly Charges To Non-Customers

17.    In March 2002, MCI devised a plan to increase its revenues by millions of dollars, by billing a $3 minimum usage fee to consumers on the "Basic Dial-1" billing plan.  Under this plan, end-users who did not generate bills with at least $3 in charges for long-distance telephone calls in a given month would be charged the difference between the $3 minimum usage fee and the total charges for the calls made during that month.

18.    MCI expected to generate much of these revenues from millions of end-users who did not use MCI for long-distance calls, had not affirmatively selected a calling plan, and were placed by default on the "Basic Dial-1" billing plan.  MCI considered these end-users to be "zero usage non-Plan consumer customers."  Before MCI implemented the minimum usage fee in June 2002, these end-users did not generate revenue for MCI.

19.    According to an internal MCI Business Case Write-up, MCI decided that it "needed to generate an additional $24.6M in revenue through the application of the new $3

minimum usage fee from zero usage non-Plan Consumer customers. . . ." MCI's documents show that MCI established the minimum usage fee program because not doing so would "unnecessarily avoid[] a significant source of additional revenue from this customer segment."

20.     In June 2002, MCI started assessing a $3 minimum usage fee to end-users for whom MCI had activated Basic Dial-1 accounts.  At subsequent times, MCI increased the minimum usage fee and then replaced the minimum usage fee with a monthly recurring charge. The monthly recurring charge was imposed on all Basic Dial-1 accounts regardless of whether they had long-distance traffic on the MCI network.

21.     The "zero usage non-plan consumer customers" whom MCI billed had not contracted with MCI at any relevant time, did not use MCI long-distance services at any relevant time, and instead either contracted for long-distance service with carriers other than MCI or previously canceled their MCI long-distance service.  MCI had no legal authority to assess minimum usage fees or monthly recurring charges to these end-users.  Nevertheless, by billing monthly charges to these end-users, MCI represented that they incurred the charges, and that they owed MCI payment for such charges.

22.     During the class period, MCI assessed unauthorized monthly charges to a substantial number of consumers nationwide.  In California alone, MCI assessed minimum usage fees to approximately 500,000 consumers between July 2002 and February 2004.

23.     MCI obstructed the efforts of consumers to obtain credits, adjustments or refunds of the improper charges.  Consumers have complained that, in response to requests for refunds and corrections to MCI billing records, MCI representatives promised refunds and corrections which were subsequently not made, that MCI issued "credits" to consumers who were not MCI customers and thus could not use the credits, and that even if MCI issued a credit or refund for unauthorized charges, the unauthorized charges reappeared in subsequent billing statements, or MCI imposed new, unauthorized charges in later billing periods.

24.     MCI's policy and practice was to reverse, refund, or credit back unauthorized charges only to persons who threatened to bring or actually brought legal action, lodged

complaints with regulatory authorities, or took other action in response to being billed by MCI without their authorization. Consumers who did not pay unauthorized charges were turned over to collections agencies. When consumers contacted MCI to complain about the negative credit references, MCI refused to remove the negative credit references from the credit reports.

### Plaintiffs Shary and Tom Everett's Experience

25.     At all relevant times, Plaintiffs Shary and Tom Everett had local residential telephone service through Qwest, and had either long-distance service through AT&T or no long-distance service.

26.     The Everetts had not contracted with MCI or obtained services from MCI at any time since approximately August 2002, when they terminated MCI long-distance service.

27.     In or around August 2002, the Everetts subscribed to AT&T for long-distance service. At approximately the same time at the Everetts' request, Qwest placed a "freeze" on the Everetts' account to prevent their long-distance service from being switched to another carrier without their prior knowledge and consent.

28.     In or around December 2002, MCI received LEC data concerning the Everetts' telephone number. MCI activated a "Basic Dial-1" account for the Everetts on which it began assessing minimum usage fees and related charges. The Everetts did not authorize or incur the charges.

29.     On several occasions, Mrs. Everett contacted MCI to have the unauthorized MCI charges reversed or removed, and to prevent MCI from assessing additional unauthorized charges. MCI's representatives refused to reverse or remove the unauthorized charges. MCI continued to assess charges to the Everetts without their authorization.

30.     In or around March 2003, the Everetts received a notification that payment for the charges was past due. The notice informed the Everetts that failure to pay the charges would result in collections.

31.     Subsequently, on or about April 10, 2003, Mrs. Everett sent MCI a check in the amount of $9.88 to pay in full the unauthorized charges assessed by MCI to prevent damage to

her family's credit.

32.     To prevent MCI from continuing to bill them, Mrs. Everett terminated her AT&T long-distance service and restricted all long-distance service on her telephone line.

33.     MCI refused to refund or credit Mrs. Everett's $9.88 payment of the unauthorized charges until after she filed this lawsuit. In September 2005, approximately two months after Mrs. Everett filed this case, MCI allegedly attempted to issue a credit to the Everetts' current LEC for the unauthorized minimum usage fees and related charges. That credit did not post to the Everetts' account until sometime in or around June 2006, over three years after the Everetts' paid the unauthorized charges in order to avoid being sent to collections by MCI.

<u>**Plaintiff Candace Bentley's Experience**</u>

34.     At all relevant times, Plaintiff Candace Bentley had residential telephone service through McLeod Telephone Company and did not have long-distance service.

35.     Ms. Bentley has not contracted with MCI or obtained services from MCI at any time since approximately 2000, when she terminated MCI long-distance service.

36.     On or around July 2004, MCI received LEC data concerning one of Ms. Bentley's former telephone numbers. MCI activated a "Basic Dial-1" account for Ms. Bentley on the former telephone number on which it began assessing minimum usage fees and related charges. Ms. Bentley did not authorize or incur those charges, and did not pay MCI. MCI mailed the bill to an address where Ms. Bentley had not lived for over two and one-half years.

37.     In or around August 2005, MCI placed an adverse notation on Ms. Bentley's credit report for failure to pay the unauthorized charges that it assessed on Ms. Bentley's former telephone number and sent to Ms. Bentley's former address. This adverse notation reduced Ms. Bentley's credit score. As a result of the reduced credit score, Ms. Bentley received a less favorable interest rate on a home equity loan, causing her to pay more in interest than she would have otherwise paid.

38.     Ms. Bentley contacted MCI to have the unauthorized charges reversed, and to have MCI remove the adverse notations from her credit report. MCI's representatives did not remove

the adverse notations from her credit report.

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this action on behalf of themselves and all other similarly situated persons throughout the United States as members of a proposed plaintiff Class initially defined as:

> **All "zero usage non-plan consumer customers" on MCI's Basic Dial-1 plan, who were charged a minimum usage fee or monthly recurring charge on or after July 22, 2002, and who were damaged thereby.**

Excluded from the Class are persons who filed complaints seeking damages with the Federal Communications Commission, in compliance with 47 C.F.R. 1.716, 1.719, 1.720, or 1.721, regarding Defendant's conduct alleged herein; Defendant; any entity in which Defendant has or had a controlling interest; any officers or directors of Defendant; the legal representatives, heirs, successors, and assigns of Defendant; and any judge assigned to this action and his or her immediate family.

40.    This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil Procedure and case law thereunder.

### Numerosity of the Class
### (Fed. R. Civ. P. 23(a)(1))

41.    Members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs estimate that the Class comprises at least tens of thousands of members. The precise number of Class members and their addresses are unknown to Plaintiffs at this time, but can be ascertained from MCI's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

### Existence and Predominance of Common Questions of Fact and Law
### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

42.    Common questions of law and fact exist as to all members of the Class. These

questions predominate over the questions affecting only individual Class members. These common legal and factual questions include:

    (a) Whether MCI had valid contractual or other legal relationships with "zero usage non-plan consumer customers";

    (b) Whether MCI charged minimum usage fees or monthly recurring charges to "zero usage non-plan consumer customers";

    (c) Whether MCI's billing minimum usage fees or monthly recurring charges to "zero usage non-plan consumer customers" is an unjust or unreasonable charge, practice, classification or regulation in violation of Section 201 of the Communications Act;

    (d) Whether MCI unjustly or unreasonably discriminated in charges, practices, classifications, regulations, facilities for or in connection with like communication service in violation of Section 202 of the Communications Act, by reversing, refunding or crediting minimum usage fees or monthly recurring charges to some, but not all "zero usage non-plan consumer customers";

    (e) Whether MCI was unjustly enriched by charging minimum usage fees or monthly recurring charges to "zero usage non-plan consumer customers";

    (f) Whether Class members sustained damages;

    (g) Whether MCI threatened to make and actually made negative reports to credit reporting agencies about "zero usage non-plan consumer customers" due to their failure to pay minimum usage fees or monthly recurring charges;

    (h) The nature of the relief to which Plaintiffs and Class members are entitled;

    (i) Whether the GSA constituted an offer, and if so, whether that offer was supported by consideration; and

    (j) Whether actual usage of MCI telecommunication services or other evidence of assent after receipt of the GSA was necessary for persons to have entered into customer agreements with MCI.

### Typicality of Claims
### (Fed. R. Civ. P. 23(a)(3))

43.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, were assessed minimum usage fees or monthly recurring charges by MCI, when they were not MCI customers and had not used MCI services at any relevant time.

### Adequacy of Representation
### (Fed. R. Civ. P. 23(a)(4))

44.    Plaintiffs are adequate representatives of the Class, because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in complex class action and telecommunications litigation. Plaintiffs' interests are aligned with those of the Class.  They all share an interest in stopping MCI from:  (1) charging minimum usage fees or monthly recurring charges to non-customers; (2) collecting these fees from non-customers; and (3) threatening to place and/or actually placing adverse notations on the credit reports of non-customers who refuse to pay the unauthorized charges.  The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority of the Class Action
### (Fed. R. Civ. P. 23(b)(3))

45.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member may be small, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by MCI's conduct.  It would be virtually impossible for Class members individually to obtain effective redress for the wrongs done to them.  Furthermore, even if the Class members themselves could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented with the complex legal and factual issues of this case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

## The Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2))

46.    In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for MCI; or

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    MCI has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class members as a whole.

## FIRST CAUSE OF ACTION (Violations of the Communications Act of 1934, 47 U.S.C. § 201)

47.    Plaintiffs incorporate by reference and reallege each of the foregoing paragraphs as if fully set forth herein, and further allege as follows:

48.    Plaintiffs assert this claim against MCI on behalf of themselves and all Class members for violations of 47 U.S.C. § 201.

49.    47 U.S.C. § 201(b) states, "All charges, practices, classifications, and regulations for and in connection with such communication service [i.e., service for interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

50.     In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to bill persons who have no valid contractual or legal relationship with MCI for services they have not requested or received, and that MCI has not provided.

51.     In violation of 47 U.S.C. § 201(b), it is unjust or unreasonable for MCI to activate accounts for, and assess monthly charges that were not incurred to, persons without their authorization.

52.     MCI's placing of such unauthorized, misleading or deceptive charges on the telephone bills of Plaintiffs and Class members is a form of "cramming," and is an unjust or unreasonable practice in violation of 47 U.S.C. § 201(b).  See In The Matter Of Truth-In-Billing and Billing Format, 14 FCC Rcd 7492 (FCC 1999).

53.     Plaintiffs and Class members have been injured as a result of MCI's above-described violations of 47 U.S.C. § 201 in an amount to be determined according to proof.

54.     Under 47 U.S.C. §§ 206 and 207, Plaintiffs and Class members are entitled to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees.

### SECOND CAUSE OF ACTION
**(Violations of the Communications Act of 1934, 47 U.S.C. § 202)**

55.     Plaintiffs hereby incorporate by reference and reallege each of the foregoing paragraphs as if fully set forth herein, and further allege as follows:

56.     Plaintiffs assert this claim against MCI on behalf of themselves and all Class members for violations of 47 U.S.C. § 202.

57.     47 U.S.C. § 202(a) states in relevant part:

Charges, services, etc.  It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

58.    MCI has assessed persons who were not MCI customers at any relevant time, including Plaintiffs and Class members, for charges for telephone service they did not request, authorize, subscribe to, or use.  MCI has failed to reverse, refund, or credit back such unauthorized charges to Plaintiffs and Class members.  MCI has reversed, refunded, or credited back charges for telephone service to other persons who were assessed such charges without authorization.

59.    MCI has violated 47 U.S.C. § 202(a) by unreasonably discriminating in charges and practices for or in connection with communication service, and by subjecting a class of consumers (namely, those persons who were assessed unauthorized charges for telephone service and for whom MCI failed to reverse, refund, or credit back such charges) to unreasonable prejudice.

60.    As a direct and proximate result of MCI's above-described practice of discrimination in violation of 47 U.S.C. § 202(a), Plaintiffs and Class members have been injured in an amount to be determined at trial.

61.    Under 47 U.S.C. §§ 206, 207, and 406, Plaintiffs and Class members are entitled both to recover the full amount of damages sustained as a result of MCI's above-described violations, together with reasonable attorney's fees, and to obtain an order enjoining MCI's wrongful conduct.  Under 47 U.S.C. §§ 151, et seq., Plaintiffs and Class members also are entitled to a judgment declaring that MCI violated the Communications Act of 1934.

### THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

62.    Plaintiffs hereby incorporate by reference and reallege each of the foregoing paragraphs as if fully set forth herein, and further allege as follows:

63.    Plaintiffs Shary and Tom Everett only assert this claim against MCI on behalf of themselves and all Class members for unjust enrichment.

64.    Plaintiffs and Class members had no valid contractual or other legal relationships with MCI at any relevant time.

65.    MCI has assessed Plaintiffs and Class members for charges for telephone services they did not request, authorize, subscribe to, or use, and it has collected from Plaintiffs and Class members and retained money for such unauthorized charges.  Accordingly, MCI has received, and continues to receive, money at the expense of Plaintiffs and Class members.

66.    MCI has received benefits from Plaintiffs and Class members that it has unjustly and inequitably retained at their expense.

67.    As a direct and proximate result of MCI's violations of law, Plaintiffs and Class members were deprived of the use of their monies that were unlawfully billed, collected, and retained by MCI, and are therefore entitled to restoration of their monies.

### <u>REQUEST FOR RELIEF</u>

Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

A.    An order that this action is properly brought and maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel of record to represent the proposed Class;

B.    An order declaring unlawful the acts and conduct of MCI complained of herein;

C.    An order permanently enjoining MCI from engaging in the unlawful acts and conduct complained of herein and any attempts by MCI to collect the erroneous or unlawful charges it has assessed, including the reporting to credit agencies of non-payment of such charges;

D.    An order that MCI withdraw or reverse any adverse reports made to credit agencies in connection with erroneous charges;

E.    An order compelling restitution, disgorgement, and/or other equitable relief as the Court deems proper;

F.    A judgment declaring that MCI violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, <u>et seq.</u>;

G.     An award of compensatory damages to Plaintiffs and the Class, together with an award of consequential and incidental damages and costs suffered by Plaintiffs and Class members because of MCI's wrongful conduct;

H.     An award of pre-judgment and post-judgment interest to Plaintiffs and the Class;

I.     An award of reasonable attorneys' fees and costs incurred by Plaintiffs and the Class in this action, including expert-witness fees; and

J.     Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  July 14, 2008               **GIRARD GIBBS LLP**

By: _____
     A. J. De Bartolomeo (pro hac vice)

Daniel C. Girard (pro hac vice)
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin (pro hac vice)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiffs

# EXHIBIT C

## A.J. De Bartolomeo

**From:**   Taylor, Lee [Lee.Taylor@mto.com]
**Sent:**   Monday, July 07, 2008 5:22 PM
**To:**   A.J. De Bartolomeo; Lydia.Protopapas@weil.com
**Cc:**   Aaron Sheanin; Taylor, Lee
**Subject:** RE: Everett v. MCI - proposed Amended Complaint

A.J.:

   Further to our conversation today, this will confirm that we will not oppose the motion for leave to amend the complaint.

Best,

Lee


LEE S. TAYLOR
MUNGER, TOLLES & OLSON LLP
560 MISSION STREET, 27TH FLOOR
SAN FRANCISCO, CA 94105
DIRECT DIAL  (415) 512-4056
FAX  (415) 644-6956
LEE.TAYLOR@MTO.COM

*PLEASE NOTE NEW TELEPHONE NUMBER AND ADDRESS


***NOTICE***

*This e-mail message is confidential, is intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not a named recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and delete this e-mail message from your computer. Thank you.*


**From:** A.J. De Bartolomeo [mailto:AJD@girardgibbs.com]
**Sent:** Tuesday, July 01, 2008 10:11 PM
**To:** Taylor, Lee; Lydia.Protopapas@weil.com
**Cc:** A.J. De Bartolomeo; Aaron Sheanin
**Subject:** Everett v. MCI - proposed Amended Complaint

Lee and Lydia,
Here is the proposed amended complaint. As discussed, please let us know if MCI will not oppose the motion for leave to amend by COB July 7th.
Plaintiffs will be filing the motion on July 14.
Thank you.


7/11/2008

A.J. De Bartolomeo
GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: (415) 981-4800
Fax: (415) 981-4846
ajd@girardgibbs.com
www.girardgibbs.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (415) 981-4800. Thank you.

7/11/2008